## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | |
| v. | |
| ASSA ABLOY AB | Case No. 22-CV-02791 (ABJ) |
| and | |
| SPECTRUM BRANDS HOLDINGS, INC. | |
| *Defendants*. | |

## SPECTRUM BRANDS HOLDINGS, INC.'S
## ANSWER AND DEFENSES

Defendant Spectrum Brands Holdings, Inc. ("Spectrum") responds to the allegations of the Complaint as set forth below.

### PRELIMINARY STATEMENT

1.      The Government brings this lawsuit purportedly to combat the "anticompetitive effects" allegedly stemming from the proposed sale (the "Transaction") of Spectrum's residential locks business ("HHI") to one of its alleged competitors, ASSA ABLOY AB ("ASSA ABLOY"). But the Government conveniently glosses over in its Complaint a critical component of the proposed Transaction: *that ASSA ABLOY has agreed to divestures that completely resolve the alleged competitive concerns.* As a result, after the Transaction is consummated, the competitive landscape for residential locks in North America will be virtually identical to what it is today, and the Defendants' businesses will continue to operate and compete as they do now—only with different corporate owners. In short, the Government's claim that competition will be "substantially lessened" as a result of the proposed deal is a red herring that has no basis in law or in fact.

2.      Even putting aside the Government's glaring failure to grapple with reality, the other

1

claims the Government makes in its Complaint plainly miss the mark. The Complaint alleges that the Transaction (without taking into account the divestiture) would result in substantially lessened competition in two segments of the residential door hardware market: (1) the segment for "premium" mechanical door hardware and (2) the segment for wirelessly connected digital door locks known as "smart locks." But, even putting aside the proposed divestiture of ASSA ABLOY's competing businesses, the Complaint largely ignores the realities of those market segments, which are far more dynamic and competitive than alleged, and in which ASSA ABLOY and Spectrum respectively compete far more closely with other brands than they do with each other.

3.      For example, the Government alleges that the Transaction (without taking into account the divestiture) would result in a "near monopoly" in the "premium" mechanical door market due to the combination of Spectrum's Baldwin brand and ASSA ABLOY'S EMTEK brand. But the Government ignores that the Baldwin brand and the space in which it operates are both highly segmented, with approximately two-thirds of Baldwin's sales coming in the very highest end of the market, where EMTEK has virtually no presence and where Baldwin faces robust competition from numerous well-established brands.

4.      Similarly, the Government alleges that the Transaction (without taking into account the divestiture) would result in an "effective duopoly" in the "smart lock" segment of the residential lock market. But Spectrum HHI's historically limited presence in that segment complements—rather than competes—with ASSA ABLOY. Moreover, the Government fails to account for the robust competition that Defendants already—and will increasingly—face, including from well-funded startups and technology companies that are well suited to develop the software necessary to compete in the technology-driven and rapidly growing segment.

5.      In any event, the Government's allegations as to the effect of the Transaction on these two segments are largely irrelevant because ASSA ABLOY has offered to entirely divest the

businesses giving rise to the alleged anticompetitive harm.  Specifically, ASSA ABLOY intends to sell its EMTEK and August Home businesses and its Yale Smart Residential business in the United States and Canada—the only markets where the Government has alleged harm.  EMTEK, August Home, and Yale Smart Residential in the United States and Canada will be sold as standalone businesses with all the assets needed to continue as effective competitors, including all necessary personnel, IP, and manufacturing facilities.

6.      This proposed divestiture will fully and completely eliminate any purported competitive harm resulting from the Transaction.  Indeed, given the divested businesses' long-standing history of success, including from before they were acquired by ASSA ABLOY, there is simply no reason to believe they will not be able to effectively compete going forward.  As a result, there will be *no* loss of competition in the relevant markets, much less the "substantial" loss of competition required to establish a violation of Section 7 of the Clayton Act.

7.      As noted above, the Complaint barely addresses ASSA ABLOY's proposed divestiture.  When it does, the allegations made by the Government are speculative and baseless:

8.      *First*, contrary to the Government's allegations, the parties intend to find a buyer—well before trial—who has the incentive, ability, and resources to use the divested assets to vigorously compete and preserve competition.

9.      *Second*, contrary to the Government's allegations, the divestiture will include everything necessary for the buyer to effectively compete, including R&D expertise and resources and intellectual property.

10.      *Third*, contrary to the Government's allegations, none of ASSA ABLOY's businesses or brands will be split within the U.S. market—the only geographic market that is the subject of the Complaint.  The EMTEK and August Home businesses and Yale Smart Residential business in the United States and Canada will be entirely divested.  There is no basis to believe that these divested

assets will not be able to compete in the U.S. market as effectively as they did under ASSA ABLOY's ownership.  The Government's conclusory assertions to the contrary are an invention. They are also squarely at odds with precedent.

11.     At its core, the Government's position is that no divestiture—no matter how robust— would ever be sufficient to pass muster under this administration's novel interpretation of the antitrust laws.  The Government nakedly asserts, for example, that "[m]erely transplanting assets" from one corporate owner to another is not an effective antitrust remedy.  But the Government's basis for this broad assault on commerce is rank speculation.  According to the Government, such a transfer "creates unacceptable risks of diluting the intensity of competition—the risk of creating a firm with less incentive, ability, or resources than the original owner to use the divested assets in service of competition, the risk of entanglement or conflict between the buyer and seller of the divested assets, and the risk of the buyer liquidating or redeploying the divested assets."  But the same can be said—or hypothesized—about every transaction, including those between non-competitors.  Taken to its logical conclusion, the Government has staked out a position that would allow it to stop every corporate combination or sale based on flimsy speculation.

12.     The Government's attack on the Defendants' proposed remedy is flatly inconsistent with the position the Government has taken in numerous remedy proceedings; it is also at odds with this Court's repeated findings that such remedies are in the public interest.  In essence, the Government is attempting to circumvent decades of established practice and merger case law precedent.  But it cannot.  The Transaction, when assessed as it will actually be implemented, *has no negative impact on competition*.

## RESPONSE TO SPECIFIC ALLEGATIONS

Spectrum denies any allegation unless specifically and expressly admitted.  Any admission herein is limited to the express language of the response and shall not be deemed an implied admission of additional facts.

The headings in the Complaint are not allegations and therefore no response is required.  To the extent a response is required, Spectrum denies any allegations contained in the headings.

Diagrams and images in the Complaint are not allegations and therefore no response is required.  To the extent a response is required, Spectrum denies any allegations contained in diagrams and images.

The first paragraph of the preamble to the Complaint characterizes this action and asserts legal conclusions and argument to which no response is required.  To the extent a response is required, Spectrum answers as follows:  Spectrum admits that Plaintiff brings this antitrust lawsuit to enjoin ASSA ABLOY from acquiring a division of Spectrum, but denies the remaining allegations in the first sentence of the first paragraph of the preamble.  The second sentence of the first paragraph of the preamble quotes certain documents, and Spectrum respectfully refers the Court to the quoted documents for an accurate and complete statement of their contents.  Spectrum otherwise denies the allegations in the second sentence of the first paragraph of the preamble.

The second paragraph of the preamble to the Complaint characterizes this action and asserts legal conclusions and argument to which no response is required.  To the extent a response is required, Spectrum answers as follows:  The second paragraph of the preamble quotes certain documents, and Spectrum respectfully refers the Court to the quoted documents for an accurate and complete statement of their contents.  Spectrum otherwise denies the allegations in the second paragraph of the preamble.

The third paragraph of the preamble to the Complaint characterizes this action and asserts legal conclusions and argument to which no response is required.  To the extent a response is required, Spectrum denies the allegations in the third paragraph of the preamble.

The fourth paragraph of the preamble to the Complaint characterizes this action and asserts legal conclusions and argument to which no response is required.  To the extent a response is required, Spectrum answers as follows:  The fourth paragraph of the preamble quotes certain documents, and Spectrum respectfully refers the Court to the quoted documents for an accurate and complete statement of their contents.  Spectrum otherwise denies the allegations in the fourth paragraph of the preamble.

The fifth paragraph of the preamble to the Complaint characterizes this action and asserts legal conclusions and argument to which no response is required.  To the extent a response is required, Spectrum denies the allegations in the fifth paragraph of the preamble.

Spectrum further answers the numbered paragraphs of the Complaint as follows:

<u>Response to Paragraph 1</u>:

Spectrum admits the allegations in the first sentence of this paragraph.  Spectrum denies that the term "residential door hardware" has any well-established meaning in the industry and otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in the second sentence of this paragraph.

<u>Response to Paragraph 2</u>:

The first sentence of this paragraph contains legal conclusions to which no response is required; if a response is deemed required, Spectrum denies the allegations.  Spectrum admits that it owns the Baldwin and Kwikset brands and that ASSA ABLOY owns the August, EMTEK, and Yale brands, but denies the remaining allegations in the second and third sentences of this paragraph.

<u>Response to Paragraph 3</u>:

Spectrum admits that Spectrum and ASSA ABLOY entered into an Asset and Stock Purchase

Agreement on September 8, 2021, pursuant to which ASSA ABLOY agreed to acquire Spectrum

HHI for approximately $4.3 billion.  Spectrum respectfully refers the Court to the Asset and Stock

Purchase Agreement for an accurate and complete statement of its terms.  The second sentence of this

paragraph contains legal conclusions to which no response is required; if a response is deemed

required, Spectrum denies the allegations.

Response to Paragraph 4:

The first sentence of this paragraph contains legal conclusions to which no response is

required; if a response is deemed required, Spectrum denies the allegations.  Spectrum denies the

allegations in the second sentence of this paragraph.  The third sentence of this paragraph contains

legal conclusions to which no response is required; if a response is deemed required, Spectrum denies

the allegations.

Response to Paragraph 5:

Spectrum denies the allegations in the first sentence of this paragraph.  Spectrum denies that

the term "premium mechanical door hardware" has any well-established meaning in the industry and

otherwise lacks knowledge or information sufficient to form a belief about the truth of the remaining

allegations in the second sentence of this paragraph.  Spectrum denies the allegations in the third

sentence of this paragraph.

Response to Paragraph 6:

Spectrum denies that the term "smart locks" has any well-established meaning in the industry

and otherwise lacks knowledge or information sufficient to form a belief about the truth of the

allegations in the first and second sentences of this paragraph..  Spectrum denies the allegations in the

third sentence of this paragraph.  The fourth sentence of this paragraph contains legal conclusions to

which no response is required; if a response is deemed required, Spectrum denies the allegations.

Response to Paragraph 7:

Spectrum denies the allegations in the first sentence of this paragraph.  To the extent the second and third sentences of this paragraph quote documents, Spectrum respectfully refers the Court to the quoted documents for an accurate and complete statement of their contents.  Spectrum otherwise denies the allegations in the second and third sentences of this paragraph as they relate to Spectrum and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations.

Response to Paragraph 8:

Spectrum admits that, in the summer of 2022, the parties proposed to divest portions of ASSA ABLOY business units to an as-yet unidentified buyer, and denies the remainder of the allegations in the first sentence of this paragraph.  The second sentence of this paragraph contains legal conclusions to which no response is required; if a response is deemed required, Spectrum denies the allegations.

Response to Paragraph 9:

This paragraph contains legal conclusions to which no response is required; if a response is deemed required, Spectrum denies the allegations.

Response to Paragraph 10:

Spectrum admits the allegations in the first sentence of this paragraph.  Spectrum admits that ASSA ABLOY manufactures and sells residential and commercial door hardware, doors, and electronic access control systems, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in the second sentence of this paragraph.  Spectrum admits the allegations in the third sentence of this paragraph.  Spectrum lacks knowledge or information sufficient to form a belief about the truth of the allegations in the remaining sentences of this paragraph.

Response to Paragraph 11:

      Spectrum lacks knowledge or information sufficient to form a belief about the truth of the allegations in the first through fifth sentences of this paragraph.  The sixth sentence of this paragraph contains legal conclusions to which no response is required; if a response is deemed required, Spectrum denies the allegations.

Response to Paragraph 12:

      Spectrum admits the allegations in this paragraph.

Response to Paragraph 13:

      Spectrum admits the allegations in the first sentence of this paragraph.  Spectrum admits that Spectrum HHI manufactures and sells commercial door hardware, residential plumbing hardware, and builders' hardware, denies that the term "residential door hardware" has any well-established meaning in the industry, and otherwise lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in the second sentence of this paragraph.  Spectrum admits the remaining allegations in this paragraph.

Response to Paragraph 14:

      Spectrum denies the allegations in the first sentence of this paragraph.  Spectrum admits the allegations in the second sentence of this paragraph.

Response to Paragraph 15:

      Spectrum admits the allegations in the first sentence of this paragraph and respectfully refers the Court to the Asset and Stock Purchase Agreement for an accurate and complete statement of its terms.  Spectrum denies the allegations in the second sentence of this paragraph.

Response to Paragraph 16:

      Spectrum denies that the term "residential door hardware" has any well-established meaning in the industry, but admits the remaining allegations in this paragraph.

Response to Paragraph 17:

Spectrum denies that the term "residential door hardware" has any well-established meaning in the industry, but admits the remaining allegations in this paragraph.

Response to Paragraph 18:

Spectrum denies that the terms "residential door hardware" and "mechanical residential door hardware" have any well-established meaning in the industry, but admits the remaining allegations in this paragraph.

Response to Paragraph 19:

Spectrum denies that the terms "residential door hardware" and "mechanical residential door hardware" have any well-established meaning in the industry, but admits the remaining allegations in this paragraph.

Response to Paragraph 20:

Spectrum denies that the term "mechanical residential lock sets" has any well-established meaning in the industry, but admits the remaining allegations in this paragraph.

Response to Paragraph 21:

Spectrum denies that the terms "residential door hardware," "mechanical residential door hardware," and "mechanical residential door hardware" have any well-established meaning in the industry, but admits the remaining allegations in this paragraph.

Response to Paragraph 22:

Spectrum admits the allegations in the first sentence of this paragraph.  Spectrum admits that door hardware used in residences is generally less complex, less costly, and less durable than commercial door hardware, but denies the remaining allegations in the second and third sentences of this paragraph.

Response to Paragraph 23:

Spectrum admits that most hardware used in residences is mechanical, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

Response to Paragraph 24:

Spectrum denies that the terms "digital door hardware," "digital door locks," and "smart locks" have any well-established meaning in the industry, but otherwise admits the remaining allegations in this paragraph.

Response to Paragraph 25:

Spectrum denies that the term "smart locks" has any well-established meaning in the industry, but otherwise admits the remaining allegations in this paragraph.

Response to Paragraph 26:

Spectrum denies that the terms "smart locks," "residential digital door lock," and "residential door hardware" have any well-established meaning in the industry, but otherwise admits the remaining allegations in the first sentence of this paragraph.  Spectrum denies that the terms "smart locks" and "residential digital door locks" have any well-established meaning in the industry, but otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in the second sentence of this paragraph.

Response to Paragraph 27:

Spectrum denies that the term "smart locks" has any well-established meaning in the industry, but otherwise admits the allegations in this paragraph.

Response to Paragraph 28:

Spectrum denies the allegations in the first sentence of this paragraph.  Spectrum admits that it offers residential door hardware products through multiple brands and that it offers both mechanical and digital door hardware that span a wide range of product features and price points, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations

in the second sentence of this paragraph.  Spectrum lacks knowledge or information sufficient to form a belief about the truth of the allegations in the third sentence of this paragraph.  Spectrum lacks knowledge or information sufficient to form a belief about the truth of the allegations in the fourth sentence of this paragraph.

Response to Paragraph 29:

Spectrum admits that it sells products under the Baldwin Estate, Baldwin Reserve, Baldwin Prestige, and Kwikset brands, and that ASSA ABLOY sells products under the Yale, August, EMTEK, Valli & Valli, and Sure-Loc brands, but denies the remaining allegations in this paragraph.

Response to Paragraph 30:

Spectrum admits that it generally distributes residential door hardware to retailers directly or through wholesale distributors, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

Response to Paragraph 31:

Spectrum admits the allegations in this paragraph.

Response to Paragraph 32:

This paragraph contains legal conclusions to which no response is required; if a response is deemed required, Spectrum denies the allegations.

Response to Paragraph 33:

Spectrum denies that the term "premium mechanical door hardware" as used in this paragraph has any well-established meaning in the industry.  Spectrum admits that certain mechanical door hardware is made of high-quality, durable metals and is highly customizable, design-driven, and constructed with superior craftsmanship and that such hardware is offered in a variety of styles, designs, and finishes, but denies the remaining allegations in the first and second sentences of this paragraph.  Spectrum denies the allegations in the third sentence of this paragraph.  To the extent the fourth sentence of this paragraph quotes documents, Spectrum respectfully refers the Court to the

quoted documents for an accurate and complete statement of their contents.  Spectrum otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in the fourth sentence of this paragraph with respect to EMTEK, and denies the remaining allegations in the sentence.  Spectrum admits that mechanical door hardware with certain features is generally more expensive than mechanical door hardware without those features, but otherwise denies the allegations in the fifth sentence of this paragraph.  Spectrum lacks knowledge or information sufficient to form a belief about the truth of the allegations in the sixth sentence of this paragraph.

Response to Paragraph 34:

Spectrum denies that the term "premium mechanical door hardware" has any well-established meaning in the industry, but otherwise admits the allegations in the first sentence of this paragraph. Spectrum denies the allegations in the second sentence of this paragraph.  Spectrum lacks knowledge to admit or deny the allegations in the third and fourth sentences of this paragraph.  Spectrum admits the allegations in the fifth sentence of this paragraph.

Response to Paragraph 35:

Spectrum denies that the term "premium mechanical door hardware" as used in this paragraph has any well-established meaning in the industry.  Spectrum lacks knowledge to admit or deny the allegations in the first sentence of this paragraph.  Spectrum admits that EMTEK, Baldwin Reserve, and Baldwin Estate sell higher end lock fixtures that affix to residential doors, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in the second sentence of this paragraph.  Spectrum lacks knowledge or information sufficient to form a belief about the truth of the allegations in the third sentence of this paragraph.  Spectrum admits that ASSA ABLOY owns Valli & Valli, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in the fourth sentence of this paragraph.  Spectrum admits that it has used, among other things, higher price points, premium product features, distribution through

specialized retailers, and marketing to distinguish between its mechanical door brands, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in the fifth sentence of this paragraph. Spectrum admits that there are certain mechanical door hardware brands not owned by Defendants, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in the sixth sentence of this paragraph.

Response to Paragraph 36:

Spectrum denies that the term "premium mechanical door hardware" as used in this paragraph has any well-established meaning in the industry. Spectrum admits that it offers a lineup of locks and lock sets needed to fully outfit a home, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations the in the first sentence of this paragraph. Spectrum admits that it offers entrance lock sets, interior knob and lever lock sets, and deadbolts, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in the second sentence of this paragraph. Spectrum admits that it sells mechanical sliding door hardware, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in the third sentence of this paragraph.

Response to Paragraph 37:

This paragraph contains legal conclusions to which no response is required; if a response is deemed required, Spectrum denies the allegations.

Response to Paragraph 38:

This paragraph contains legal conclusions to which no response is required; if a response is deemed required, Spectrum denies the allegations.

Response to Paragraph 39:

This paragraph contains legal conclusions to which no response is required; if a response is deemed required, Spectrum denies the allegations.

Response to Paragraph 40:

Spectrum denies that the term "smart locks" as used in this paragraph has any well-established meaning in the industry.  Spectrum admits the allegations in the first through third sentences of this paragraph.  Spectrum admits that smart locks are generally more expensive than non-connected locks, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in the fourth sentence of this paragraph.  Spectrum lacks knowledge or information sufficient to form a belief about the truth of the allegations in the fifth sentence of this paragraph.

Response to Paragraph 41:

Spectrum denies that the terms "smart locks," "mechanical door hardware," and "non-connected digital door locks" as used in this paragraph have any well-established meaning in the industry.  Spectrum lacks knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of this paragraph  Spectrum admits the allegations in the second sentence of this paragraph.  Spectrum admits that certain technological functions distinguish smart locks from non-connected locks, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in the third sentence of this paragraph.  The fourth sentence of this paragraph contains legal conclusions to which no response is required; if a response is deemed required, Spectrum denies the allegations.  This fifth sentence of this paragraph contains legal conclusions to which no response is required; if a response is deemed required, Spectrum denies the allegations.  Spectrum admits that smart locks are sold through a variety of channels, including firms that specialize in consumer electronics and home security technology, including consumer electronics retailers, home security companies, and smart home companies, but denies the remaining allegations in the sixth sentence of this paragraph.

Response to Paragraph 42:

This paragraph contains legal conclusions to which no response is required; if a response is deemed required, Spectrum denies the allegations.

Response to Paragraph 43:

This first sentence of this paragraph contains legal conclusions to which no response is required; if a response is deemed required, Spectrum denies the allegations.  Spectrum admits it made certain stipulations as to the relevant geographic market in the Geographic Market Stipulation, executed on February 2, 2022.  Spectrum refers the Court to that stipulation for an accurate and complete statement of its contents.  Spectrum admits that residential door hardware sold outside the United States is often not compatible with doors used in the United States, but denies the remaining allegations in the third sentence of this paragraph.

Response to Paragraph 44:

This paragraph contains legal conclusions to which no response is required; if a response is deemed required, Spectrum denies the allegations.

Response to Paragraph 45:

Spectrum respectfully refers the Court to the Supreme Court decisions quoted in this paragraph for an accurate and complete statement of their opinions.  This paragraph otherwise contains legal conclusions to which no response is required; if a response is deemed required, Spectrum denies the allegations.

Response to Paragraph 46:

This paragraph contains legal conclusions to which no response is required; if a response is deemed required, Spectrum denies the allegations.

Response to Paragraph 47:

This paragraph contains legal conclusions to which no response is required; if a response is deemed required, Spectrum denies the allegations.

Response to Paragraph 48:

 This paragraph contains legal conclusions to which no response is required; if a response is deemed required, Spectrum denies the allegations.

Response to Paragraph 49:

 Spectrum denies the allegations in the first sentence of this paragraph.  The second and third sentences of this paragraph contain legal conclusions to which no response is required; if a response is deemed required, Spectrum denies the allegations

Response to Paragraph 50:

 The first sentence of this paragraph quotes documents, and Spectrum respectfully refers the Court to the quoted documents for an accurate and complete statement of their contents.  Spectrum otherwise denies the allegations in the first sentence of this paragraph.  Spectrum lacks knowledge or information sufficient to form a belief about the truth of the allegations in the second sentence of this paragraph.  Spectrum denies that the term "premium mechanical door hardware" has any well-established meaning in the industry, but otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegations in the third sentence of this paragraph.

Response to Paragraph 51:

 The first sentence of this paragraph contains legal conclusions to which no response is required; if a response is deemed required, Spectrum denies the allegations in the first sentence of this paragraph.  The second sentence of this paragraph quotes documents, and Spectrum respectfully refers the Court to the quoted documents for an accurate and complete statement of their contents.  Spectrum otherwise denies the allegations in the second sentence of this paragraph.

Response to Paragraph 52:

 Spectrum denies the allegations in the first sentence of this paragraph.  The second and third sentences of this paragraph quote documents, and Spectrum respectfully refers the Court to the

quoted documents for an accurate and complete statement of their contents.  Spectrum otherwise denies the allegations in the second and third sentences of this paragraph.

Response to Paragraph 53:

Spectrum denies the allegations in this paragraph.

Response to Paragraph 54:

Spectrum denies the allegations regarding Baldwin; but lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegations in this paragraph.

Response to Paragraph 55:

Spectrum lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

Response to Paragraph 56:

Spectrum denies the allegations in the first sentence of this paragraph.  The remaining sentences of this paragraph quote documents, and Spectrum respectfully refers the Court to the quoted documents for an accurate and complete statement of their contents.  Spectrum otherwise denies the allegations in the remaining sentences of this paragraph.

Response to Paragraph 57:

Spectrum denies the allegations in the first sentence of this paragraph.  The second and third sentences of this paragraph quote documents, and Spectrum respectfully refers the Court to the quoted documents for an accurate and complete statement of their contents.  Spectrum otherwise denies the allegations in the second and third sentences of this paragraph.

Response to Paragraph 58:

Spectrum admits that list prices are sometimes used as reference points for discounts, but denies the remaining allegations in the first sentence of this paragraph.  The second and third sentences of this paragraph quotes documents, and Spectrum respectfully refers the Court to the

quoted documents for an accurate and complete statement of their contents.  Spectrum otherwise denies the allegations in the second and third sentences of this paragraph.

Response to Paragraph 59:

Spectrum denies the allegations in this paragraph.

Response to Paragraph 60:

Spectrum admits that lead times are one facet of competition in the mechanical door hardware market, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in the first sentence of this paragraph.  Spectrum lacks knowledge or information sufficient to form a belief about the truth of the allegations in the second and third sentences of this paragraph.

Response to Paragraph 61:

Spectrum admits that it made investments to improve Baldwin's lead times, but denies the remaining allegations in the first sentence of this paragraph.  The second sentence of this paragraph quotes documents, and Spectrum respectfully refers the Court to the quoted documents for an accurate and complete statement of their contents.  Spectrum otherwise denies the allegations in the second sentence of this paragraph.  The third sentence of this paragraph quotes documents, and Spectrum respectfully refers the Court to the quoted documents for an accurate and complete statement of their contents.  Spectrum otherwise admits that it implemented a "Quick Ship" program, but denies the remaining allegations in the third sentence of this paragraph.

Response to Paragraph 62:

Spectrum admits that in-store displays are often used by showrooms and other dealers, but denies the remaining allegations in the first sentence of this paragraph.  Spectrum admits that in-store displays help dealers sell door hardware, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in the second sentence of this paragraph.  Spectrum

lacks knowledge or information sufficient to form a belief about the truth of the allegations in the third sentence of this paragraph.

Response to Paragraph 63:

Spectrum denies the allegations regarding Baldwin, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in the first sentence of this paragraph. Spectrum lacks knowledge or information sufficient to form a belief about the truth of the allegations in the second sentence of this paragraph. Spectrum admits that it provides in-store displays in "tiers" based on, among other things, dealers' estimated annual sales volumes, but denies the remaining allegations in the third sentence of this paragraph. Spectrum admits that it sometimes provides in-store displays for free, but denies the remaining allegations in the fourth sentence of this paragraph. The fifth sentence of this paragraph quotes documents, and Spectrum respectfully refers the Court to the quoted documents for an accurate and complete statement of their contents. Spectrum otherwise denies the allegations in the fifth sentence of this paragraph.

Response to Paragraph 64:

Spectrum admits that aesthetics, customization, and expansive optionality are distinguishing features of certain mechanical door hardware, but denies the remaining allegations in the first sentence of this paragraph. Spectrum lacks knowledge or information sufficient to form a belief about the truth of the allegations in the second sentence of this paragraph that EMTEK has been known for years as a new product introduction "machine," and denies the remaining allegations in the second sentence of this paragraph. The third sentence of this paragraph contains legal conclusions to which no response is required; if a response is deemed required, Spectrum denies the allegations.

Response to Paragraph 65:

The first sentence of this paragraph contains legal conclusions to which no response is required; if a response is deemed required, Spectrum denies the allegations. The second sentence of

this paragraph quotes documents, and Spectrum respectfully refers the Court to the quoted documents for an accurate and complete statement of their contents.  Spectrum otherwise denies the allegations in the second sentence of this paragraph.  Spectrum denies the allegations in the third sentence of this paragraph.

Response to Paragraph 66:

The first sentence of this paragraph quotes documents, and Spectrum respectfully refers the Court to the quoted documents for an accurate and complete statement of their contents.  Spectrum otherwise denies the allegations in the first sentence of this paragraph.  Spectrum denies the allegations in the second sentence of this paragraph.

Response to Paragraph 67:

Spectrum denies the allegations in the first sentence of this paragraph.  Spectrum lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

Response to Paragraph 68:

This paragraph quotes documents, and Spectrum respectfully refers the Court to the quoted documents for an accurate and complete statement of their contents.  Spectrum otherwise denies the allegations in this paragraph.

Response to Paragraph 69:

Spectrum lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

Response to Paragraph 70:

Spectrum lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

Response to Paragraph 71:

The first sentence of this paragraph contains legal conclusions to which no response is required; if a response is deemed required, Spectrum denies the allegations in the first sentence of this paragraph.  Spectrum lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

Response to Paragraph 72:

To the extent this paragraph quotes documents, Spectrum respectfully refers the Court to the quoted documents for an accurate and complete statement of their contents.  Spectrum otherwise admits that it has developed new smart locks, including a new Z-Wave smart lock, but denies the allegations asserted in this paragraph.

Response to Paragraph 73:

This paragraph contains legal conclusions to which no response is required; if a response is deemed required, Spectrum denies the allegations.

Response to Paragraph 74:

This paragraph contains legal conclusions to which no response is required; if a response is deemed required, Spectrum denies the allegations.

Response to Paragraph 75:

This paragraph contains legal conclusions to which no response is required; if a response is deemed required, Spectrum denies the allegations.

Response to Paragraph 76:

Spectrum denies the allegations in the first through fifth sentences of this paragraph.  The sixth sentence of this paragraph quotes documents, and Spectrum respectfully refers the Court to the quoted documents for an accurate and complete statement of their contents.  Spectrum otherwise denies the allegations in the sixth sentence of this paragraph.

Response to Paragraph 77:

      Spectrum denies the allegations in this paragraph.

Response to Paragraph 78:

      This paragraph contains legal conclusions to which no response is required; if a response is deemed required, Spectrum denies the allegations.

Response to Paragraph 79:

      This paragraph contains legal conclusions to which no response is required; if a response is deemed required, Spectrum denies the allegations.

Response to Paragraph 80:

      Spectrum denies the allegations in the first and second sentences of this paragraph.  Spectrum lacks knowledge or information sufficient to form a belief about the truth of the allegations in the third sentence of this paragraph.  Spectrum denies the allegations in the fourth sentence of this paragraph.

Response to Paragraph 81:

      Spectrum denies the allegations in the first sentence of this paragraph.  The second sentence of this paragraph quotes documents, and Spectrum respectfully refers the Court to the quoted documents for an accurate and complete statement of their contents.  Spectrum otherwise denies the allegations in the second sentence of this paragraph.

Response to Paragraph 82:

      The first sentence of this paragraph contains legal conclusions to which no response is required; if a response is deemed required, Spectrum denies the allegations.  Spectrum admits that Defendants proposed a remedy to antitrust enforcers in the summer of 2022 that would involve ASSA ABLOY selling certain businesses that sell residential door hardware in the United States, but denies the remaining allegations in the second sentence of this paragraph.  Spectrum denies the allegations in the third sentence of this paragraph.

23

Response to Paragraph 83:

      This paragraph contains legal conclusions to which no response is required; if a response is deemed required, Spectrum denies the allegations.

Response to Paragraph 84:

      Spectrum admits that Defendants have not disclosed certain details of the proposed remedy, including the identity of the buyer, because the details have not yet been finalized, but denies the remaining allegations in the first sentence of this paragraph.  Spectrum admits the allegations in the second sentence of this paragraph.  The third sentence of this paragraph contains legal conclusions to which no response is required; if a response is deemed required, Spectrum denies the allegations. Spectrum denies the allegations in the fourth sentence of this paragraph.

Response to Paragraph 85:

      This paragraph contains legal conclusions to which no response is required; if a response is deemed required, Spectrum denies the allegations.

Response to Paragraph 86:

      This paragraph contains legal conclusions to which no response is required; if a response is deemed required, Spectrum admits that the United States brings this action under Section 15 of the Clayton Act, 15 U.S.C. § 25 and that this Court has subject-matter jurisdiction over this action, but denies the remaining allegations in this paragraph.

Response to Paragraph 87:

      Spectrum admits that it is engaged in interstate commerce and that it sells products to numerous customers located throughout the United States, but lacks knowledge to admit or deny the remaining allegations in this paragraph.

Response to Paragraph 88:

      The first sentence of this paragraph contains legal conclusions to which no response is required; if a response is deemed required, Spectrum denies the allegations.  Spectrum admits that it

transacts business in this District, but lacks knowledge to admit or deny the remaining allegations in the second sentence of this paragraph.  Spectrum admits the allegations in the third sentence of this paragraph.

Response to Paragraph 89:

 This paragraph contains legal conclusions to which no response is required; if a response is deemed required, Spectrum admits that it entered into certain agreements with the United States concerning venue, but otherwise denies the remaining allegations in this paragraph.

Response to Paragraph 90:

 Spectrum incorporates its response to paragraphs 1 through 89 above.

Response to Paragraph 91:

 This paragraph contains legal conclusions to which no response is required; if a response is deemed required, Spectrum denies the allegations.

Response to Paragraph 92:

 This paragraph contains legal conclusions to which no response is required; if a response is deemed required, Spectrum denies the allegations.

Response to Paragraph 93:

 This paragraph consists of Plaintiff's prayer for relief to which no response is required.  To the extent that a response is required, Spectrum denies that any of the relief requested is permitted or appropriate and further requests (1) that the Court order the divestiture of ASSA ABLOY's EMTEK and US Smart Residential businesses as proposed; (2) that it be awarded the costs incurred in defending this action; and (3) that it be awarded any and all other relief the Court may deem just and proper.

**DEFENSES**

 Spectrum denies that it carries the burden of proof on any issue in this action.  Without waiving the right to assert that the United States carries the burden of proof on any issue and without

assuming the burden of proof on any issue that would otherwise rest with Plaintiff, Spectrum asserts the following defenses.  Spectrum has not knowingly or intentionally waived any applicable defense and expressly reserves the right to plead additional defenses should discovery reveal any such defenses.

1.      The Complaint fails to state a claim upon which relief can be granted.

2.      Plaintiff's claims are too speculative to support any claim for which relief can be granted.

3.      Plaintiff has failed to allege any appropriate product or geographic market or markets.

4.      Plaintiff has failed to establish that Defendants exercise market power with respect to any relevant market.

5.      Plaintiff has failed to establish that the Transaction is likely to have any anticompetitive effect, whether unilateral or coordinated, or result in any anticompetitive harm to customers or consumers, in any relevant market.

6.      The customers at issue in the Complaint have a variety of tools and options to ensure that they receive competitive pricing and terms.

7.      The Transaction will not harm competition, consumers, or consumer welfare because there is, and will continue to be, entry and expansion by competitors, which is timely, likely, and sufficient.

8.      The Transaction will have procompetitive effects, and will result in merger-specific efficiencies, cost synergies, and other procompetitive effects that will benefit customers and consumers.

9.      Even if Plaintiff had established that the Transaction is likely to have any anticompetitive effects, those effects will be eliminated by the Divestiture.

10.     The injunctive relief that Plaintiff seeks is inequitable and inconsistent with the public

interest.

Defendants reserve the right to amend or seek to amend their Answer and/or Defenses.


Respectfully submitted,


Dated:      New York, NY                    DAVIS POLK & WARDWELL LLP
            October 14, 2022

                                            By:  *Paul Spagnoletti*
                                                 Paul Spagnoletti

                                            Paul Spagnoletti (*pro hac vice*)
                                            Arthur J. Burke (*pro hac vice*)
                                            Greg D. Andres (*pro hac vice*)
                                            Nikolaus J. Williams (*pro hac vice*)
                                            450 Lexington Avenue
                                            New York, NY 10017
                                            (212) 450-4000
                                            paul.spagnoletti@davispolk.com
                                            arthur.burke@davispolk.com
                                            greg.andres@davispolk.com
                                            nikolaus.williams@davispolk.com

                                            Jesse Solomon (D.C. Bar No. 998972)
                                            901 15th Street, NW
                                            Washington, DC 20005
                                            (202) 962-7138
                                            jesse.solomon@davispolk.com

                                            *Attorneys for Defendant Spectrum
                                            Brands Holdings, Inc.*