**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America,<br><br>                    Plaintiff,<br><br>v.<br><br>Assa Abloy AB,<br>Spectrum Brands Holdings, Inc.,<br><br>                    Defendants. | Civil Action No. 22-CV-2791-ABJ |

**[PROPOSED]**
***AMICUS CURIAE* BRIEF OF LAW PROFESSORS AS**
***AMICI CURIAE* IN SUPPORT OF NEITHER PARTY**

Jennifer E. Sturiale (DC Bar #1035010)
jsturiale@widener.edu
Delaware Law School, Widener University
4601 Concord Pike
Wilmington, DE 19803
Telephone: 646-660-1834

*Attorney for Amici Curia*

**EXHIBIT A**

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**……………………………………………………………………..i

**IDENTITY OF AMICI CURIAE AND INTEREST IN THIS CASE**…………………….…1

**SUMMARY OF ARGUMENT**……………………………………………………………….…1

    I.    **THE STRUCTURE FOR MERGER REVIEW CONTEMPLATED BY THE HART-SCOTT-RODINO ACT PUTS THE BURDEN OF JUSTIFYING THE PROPOSED DIVESTITURE REMEDY ON THE DEFENDANTS**……………..2

    II.    **EVEN APART FROM THE HART-SCOTT-RODINO ACT, DEFENDANTS SHOULD BEAR THE BURDEN OF ESTABLISHING THAT THE PROFFERED DIVESTITURE REMEDY PRESERVES COMPETITION**…….4

    III.    **THIS COURT SHOULD CONSIDER THE MERGER, AS MODIFIED, ONLY AS PART OF DEFENDANTS' REBUTTAL**…………………………………...8

    IV.    **CONCLUSION**………………………………………………………………..10

# **TABLE OF AUTHORITIES**

**Cases**

*Brown Shoe Co. v. United States*, 370 U.S. 294, (1962) ............................................................... 7

*California v. American Stores Co.*, 495 U.S. 271, (1990) ............................................................. 7

*FTC v. Elders Grain, Inc.*, 868 F.2d 901, (7th Cir. 1989) .............................................................. 7

*FTC v. RAG-Stiftung*, 436 F. Supp. 3d 278 (D.D.C. 2020) ........................................................... 4

*Hospital Corp. of Am. v. FTC*, 807 F.2d 1381, (7th Cir. 1986)...................................................... 7

*United* States v. *Aetna Inc.*, 240 F. Supp. 3d 1 (D.D.C. 2017) ....................................................... 4

*United States v. AT&T, Inc.*, 916 F.3d 1029, (D.C. Cir. 2019)....................................................... 7

*United States v. Baker Hughes Inc.*, 908 F.2d 981, (D.C. Cir. 1990)............................................. 9

*United States v. UnitedHealth Group Inc.*, Redacted Mem. Op.,

   No. 1:22-CV-0481 (D.C.C. Sept. 19, 2022)......................................................................... 5, 9

**Statutes**

15 U.S.C. §18................................................................................................................................ 1, 5

**Other Authorities**

Erik Hovenkamp & Steven C. Salop, *Litigation with Inalienable Judgments* (April 1, 2022),

   J. LEG. STUD. (forthcoming) ...................................................................................................... 8

Hart-Scott-Rodino Act of 1976, Pub. L. No. 94-435, Title II, § 201, 90 Stat. 1383 ............. *passim*

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law*: *An Analysis of Antitrust Principlesf*

   *and Their Application* (4th ed. 2016) ........................................................................................ 6

S. Rep. No. 1775, 81st Cong., 2d Sess., (1950) ............................................................................. 7

Steven C. Salop & Jennifer E. Sturiale, *Fixing "Litigating the Fix,"*

   85 ANTITRUST L.J. __ (forthcoming) ........................................................................................ 6, 9

Tr. of Status Conf., *United States v. Assa Abloy, Inc.*, No.22-cv-2791 (D.C.C. Dec. 5, 2022) ...... 5

**EXHIBIT A**

## IDENTITY OF AMICI CURIAE AND INTEREST IN THIS CASE

*Amici* are scholars whose research and teaching focus is antitrust law.[1] *Amici*'s interest is in the correct development of antitrust law.[2]

## SUMMARY OF ARGUMENT

Congress's intent in passing Section 7 of the Clayton Act was to equip the agencies with a tool to prevent mergers where "the effect of . . . [an] acquisition may be substantially to lessen competition, or to tend to create a monopoly**.**" 15 U.S.C. §18. Where an agency challenges a merger, the parties may propose to divest some overlapping assets to ameliorate the competitive concerns. For a number of reasons, the parties should have the burden of establishing that such a divestiture will preserve competition potentially lost as a result of the merger as initially proposed. That allocation of the burden of proof is contemplated by the procedures required by the Hart-Scott-Rodino Act. The divestee may be incapable of competing as intensely as the party that presently owns the assets or lack the incentive to do so; indeed, the parties have an incentive to identify a divestiture buyer who will not, in fact, compete as intensely, thereby enabling the merging firm to secure market power and higher profits. Defendants that can secure supracompetitive profits through merger also are incentivized to far outspend and outgun the agencies in litigation, which can skew the trial outcome away from the merits. Placing the

---

[1] Institutional affiliations are provided solely for purposes of identification.

[2] The Department of Justice, Antitrust Division has consented to the filing of this brief. Defendants, however, object on the grounds that **"**the Court has not invited such briefs and other potentially interested third parties have been given no notice or opportunity to share their own views with the Court about these issues." Dec. 29, 2022 email from David I. Gelfand to Steven C. Salop, attached as **Exhibit C** to the Sturiale Declaration. Neither the parties nor their counsel have authored this brief, and neither they nor any other person or entity other than counsel for *amici curiae* contributed money that was intended to fund preparing or submitting this brief.

1

burden on the parties gives effect to Section 7's relatively expansive definition of antitrust liability, which reflects Congress's overarching concern with avoiding anticompetitive mergers.

## ARGUMENT

### I. THE STRUCTURE FOR MERGER REVIEW CONTEMPLATED BY THE HART-SCOTT-RODINO ACT PUTS THE BURDEN OF JUSTIFYING THE PROPOSED DIVESTITURE REMEDY ON THE DEFENDANTS.

Merging parties are required by the Hart-Scott-Rodino Act of 1976, Pub. L. No. 94-435, Title II, § 201, 90 Stat. 1383, 1390 (codified at 15 U.S.C. § 18a) to report their intended merger to the antitrust agencies for pre-merger review. If the agencies believe that the merger raises competition concerns sufficient to violate Section 7, or if the parties anticipate that the agencies will so conclude, the parties may propose remedies or fixes to the proposed transaction that will remove the competition concerns. That is what happened in this case.

The issue in this case is therefore whether defendants have met their burden of proving that the divestiture remedies they have proposed are sufficient to cure the competition problems that the reported merger is expected to create.[3] Alternatively, defendants could defend the proposed transaction only by rebutting the *Philadelphia National Bank* presumption that the merger as initially reported is anticompetitive.

---

[3] Defendants do not argue that the court should review the intended merger together with the proposed divestitures as if it were a new transaction that they plan to close without complying with the Hart-Scott-Rodino Act. If that were their position, the court would be faced with the very different question of whether it should permit the parties to close a transaction that they were required to report pursuant to the statute but chose not to report. We expect that, if the court concludes that the divestiture remedy is sufficient to cure the competition problems raised by the reported merger, the parties will ask the court to embody the remedy in a court order to avoid this issue and violation of the Act.

2

Defendants argue that the court should, instead, require the government to bear the burden of proving that a transaction different from the merger reported pursuant to the Hart-Scott-Rodino Act—specifically, the reported merger modified by adding to it the proposed divestitures—is anticompetitive. The burden of production issue raised by this argument has not been resolved by the prior cases concerning so-called "litigating the fix" issues. Those cases are inconsistent, and many of them address the different question of whether the court should even consider the proposed fix or remedy. *Amici* do not argue that the court should not consider the proposed divestitures on the ground that the modified transaction was not reported to the agencies in compliance with the statute. *Amici* make the narrower argument that, when "the fix" is litigated, the party that proposed it must bear the burden of demonstrating that it will suffice to cure the competition problems raised by the reported merger.

The Hart-Scott-Rodino Act suggests that the burden of justification must be on the defendants. In the first place, were the law otherwise, the merging parties could propose a merger, ascertain the antitrust agencies' reaction, and then propose a very different transaction that the agencies would have to persuade a court to block without the benefit of the full pre-merger review that the statute requires. Second, the case comes to the court at the culmination of the pre-merger proceedings required by the statute. Those proceedings resulted in a conclusion by the United States that the merger reported in accordance with the statute is unlawful, and defendants responded to the concerns of the United States by proposing a divestiture to remedy the competition problems. Just as any party proposing a remedy for otherwise unlawful conduct must bear the burden of proving the sufficiency of the remedy, so defendants here should have the burden of proving that the divestitures they propose will sufficiently solve the competition problems created by the merger they reported under the statute.

These implications of the regulatory scheme required by the Hart-Scott-Rodino Act provide a sufficient basis for the court to put the burden of proof on defendants.

## II. EVEN APART FROM THE HART-SCOTT-RODINO ACT, DEFENDANTS SHOULD BEAR THE BURDEN OF ESTABLISHING THAT THE PROFFERED DIVESTITURE REMEDY PRESERVES COMPETITION.

There are several additional reasons, unrelated to the Hart-Scott-Rodino Act, why the Court should place the burden of proof on defendants to show their proffered remedy is sufficient to preserve the competition potentially lost from the merger as proposed.

*First*, the proffer of a divestiture to a specific divestiture buyer, alone, is insufficient to ensure against the proposed merger's anticompetitive effects. A key factual issue before this Court is whether the divestiture buyer will, in fact, have the ability and incentive to replace sufficiently the competitive intensity and efficacy of the acquired firm. "To evaluate whether a divestiture will do so, courts consider the likelihood of the divestiture; the experience of the divestiture buyer; the scope of the divestiture, the independence of the divestiture buyer from the merging seller, and the purchase price." *FTC v. RAG-Stiftung*, 436 F. Supp. 3d 278, 304 (D.D.C. 2020) (citing *United* States v. *Aetna Inc.*, 240 F. Supp. 3d 1, 60-74 (D.D.C. 2017)).

There is no legal or economic basis simply to *presume* at the outset that the divesture buyer will have the ability and incentive to do so and, in effect, to require the government to rebut that presumption. Divestitures do not necessarily create a competitor that will provide sufficient competitive intensity to replace what was provided pre-merger by the owner of the divested assets. The divestee may have neither the capability nor the incentive to compete as intensely as does the current owner of the divested assets. The divestee may be disadvantaged from having higher costs, lower quality, or less experienced or proficient executives. The divestiture may lead to disruption of customer or supplier relationships, the need to line up or

4

renegotiate supplier agreements, the need to replace services provided by the divestiture seller, resignations of some key executives, or other disruptions that might prevent the divestiture buyer from rapidly restoring lost competition.  A divestee may be disadvantaged if it has a narrower portfolio of products to be sold alongside the divested products because the narrower portfolio will involve either reduced consumer demand from an inability to provide one-stop shopping services or higher per unit costs.  Finally, the divestee's business plan may not envision intense competition with the firm that sold the assets.  Indeed, the reasons why the divestiture may fall short are so numerous and common that they provide an economic justification for the Court to presume that the divestiture *may be* substantially to lessen competition, and thus shift the burden to the defendants.[4]

Merely requiring defendants to identify the divestiture buyer and proffer only limited evidence of a commitment to divest overlapping assets might be enough under Judge Nichols's preferred approach (as noted by the Court during the December 5 status conference).  *See* Tr. of Status Conf. at 24:6-7, *United States v. Assa Abloy, Inc.*, No.22-cv-2791 (D.C.C. Dec. 5, 2022). ("[T]he standard for what rebuts is quite low.")  But defendants' mere commitment to divest and their assertion of the sufficiency of the divestiture will not effectively ensure that the divestiture will in fact protect against anticompetitive effects from the merger.  Because determining the adequacy of the divestiture remedy logically comes after the court has determined that the

---

[4] In *United States v. UnitedHealth Group Inc.*, Judge Nichols indicated that the Section 7 standard was "*substantially* . . . lessen competition." Redacted Mem. Op., No. 1:22-CV-0481 (D.C.C. Sept. 19, 2022), at 19.  We respectfully note that the standard is the more expansive "*may be* substantially . . . lessen competition." 15 U.S.C. § 18.  Judge Nichols's hypothetical relies on his erroneous articulation of the standard and also assumes the evidence *has already shown* that the reduction in competition will be insubstantial.  *See id.* & n.4.  But regardless of the difference in the standards, the disagreement *here* is about which party should have the initial burden of producing the relevant evidence regarding whether the divestiture is sufficient.

merger as initially reported to the agencies would be anticompetitive, defendants should be required to produce evidence that the divestiture will be sufficient to eliminate the risk to competition posed by that merger.

*Second*, and related, placing the burden on defendants reflects appropriate judicial skepticism regarding the ability and incentive of a divestee, *chosen by the defendants*, to compete sufficiently to preserve competition. Indeed, the defendants have every incentive to behave in a completely contrary manner—*i.e.*, to choose a divestiture asset package and buyer that will not preserve competition, thereby enabling the defendants to secure market power and anticompetitive profits. Steven C. Salop & Jennifer E. Sturiale, *Fixing "Litigating the Fix,"* 85 ANTITRUST L.J. __ (forthcoming) at 27. Thus, a judicial approach of *automatically* assuming and predicting that a proposed divestiture will sufficiently replace the lost competition, and consequently exploding the structural presumption, could create an unintended and unacceptable probability of lessening competition and harming consumers.

*Third*, the defendants also have better access to the relevant information regarding whether the divestee will have the capability and incentive to provide sufficient competitive intensity. "Burden shifting is proper because the parties are more likely to possess the information needed to rebut any inference based on structure." Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law*: *An Analysis of Antitrust Principles and Their Application* ¶941h (4th ed. 2016).

*Fourth,* placing the burden on defendants is consistent with Section 7 of the Sherman Act's greater concern with "false negatives" (wrongly permitting an anticompetitive merger to proceed) over "false positives" (wrongly preventing a procompetitive or neutral merger to proceed). Steven C. Salop & Jennifer E. Sturiale, *Fixing "Litigating the Fix,"* at 4-5.

Congress's intent in passing Section 7 was to address "monopolistic tendencies in their incipiency and well before they have attained such effects as would justify a Sherman Act proceeding."

*Brown Shoe Co. v. United States*, 370 U.S. 294, 318 n.32 (1962) quoting S. Rep. No. 1775, 81st Cong., 2d Sess., at 4-5 (1950)). "Section 7 . . . creates a relatively expansive definition of antitrust liability: To show that a merger is unlawful, a plaintiff need only prove that its effect 'may be substantially to lessen competition.'" *California v. American Stores Co.*, 495 U.S. 271, 284 (1990). In making the prediction as to a merger's likely effects, "doubts are to be resolved against the transaction." *FTC v. Elders Grain, Inc.*, 868 F.2d 901, 906 (7th Cir. 1989) (Posner, J.). This lower standard of proof is reflected in the various articulations courts have used, such as "reasonable probability"[5] and "appreciable danger."[6]

*Fifth*, placing the burden on defendants accounts for the reality of litigation incentives and tactics. Defendants that acquire market power by reducing or eliminating competition through merger can anticipate a stream of future supracompetitive profits. These profits incentivize the defendants to invest heavily in their litigation with the agencies—indeed, to dramatically outspend and outgun the agencies—to skew the litigation outcomes away from the

---

[5] *United States v. AT&T, Inc.*, 916 F.3d 1029, 1032 (D.C. Cir. 2019). The use of the words "may be" means the statute applies "to the reasonable probability of the prescribed [sic] effect" and not "the mere possibility." *Brown Shoe*, 370 U.S. at 323 n.39 (quoting S. Rep. No. 1775, 81st Cong., 2d Sess. 6 (1950)).
[6] *Hospital Corp. of Am. v. FTC*, 807 F.2d 1381, 1389 (7th Cir. 1986).

7

merits and secure the profits from market power in the long run.[7]  In other words, defendants are willing to spend more on litigation in the short run to charge more in the long run.

### III. THIS COURT SHOULD CONSIDER THE MERGER, AS MODIFIED, ONLY AS PART OF DEFENDANTS' REBUTTAL.

We are not suggesting that the court should ignore the merger as modified.  That would be inappropriate, as it would require the Court to ignore the reality of the changed circumstances surrounding the merger.  *See FTC v. Libbey*, 211 F. Supp. 2d 34, 46 (D.C.C. 2002). ("[P]arties to a merger agreement that is being challenged by the government can abandon that agreement and propose a new one in an effort to address the government's concerns.  And when they do so . . . , it becomes the new agreement the Court must evaluate in deciding whether an injunction should be issued.").

At the same time, the divestiture remedy has only come before this Court because defendants proposed it as a way of salvaging their merger, which was made necessary because of the competitive problems of the merger reported to the agencies under the HSR Act.  It is, in effect, defendants' rebuttal to the governments proof that the reported merger is unlawful.  It is appropriate, therefore, that the parties proposing the divestiture remedy should have the initial burden. We therefore suggest that the burden of producing evidence that the merger as modified would be sufficient to preserve competition be assigned to the defendants to properly reflect both the congressional intent regarding the proper application of Section 7 and the risks associated

---

[7] For analysis of this incentive in the context of private litigation*, See* Erik Hovenkamp & Steven C. Salop, *Litigation with Inalienable Judgments* (April 1, 2022), J. LEG. STUD. (forthcoming), https://ssrn.com/abstract=4072927 or http://dx.doi.org/10.2139/ssrn.4072927.

8

with such a remedy resulting from the defendants' incentives and the divestee's ability and incentives.

Specifically, the government should be permitted to satisfy its *prima facie* evidentiary burden by focusing on the unremedied merger as *originally proposed*. The government should be deemed to have met its burden if it (i) establishes that the transaction absent the divestiture or other proposed remedies would satisfy the structural presumption, or (ii) provides sufficient other evidence of probable harm.

The burden would then shift to the defendants to produce sufficient evidence that the divestiture buyer and other remedies will provide sufficient competitive intensity to prevent anticompetitive effects. This does not mean, as Judge Nichols suggested, that defendants must show "exactly the same level of competition that existed before the merger." *UnitedHealth Group Inc.*, No. 1:22-CV-0481, at 19. They merely must produce evidence indicating sufficient competitive intensity to preserve competition. Such a successful evidentiary showing would then weaken, if not completely dissipate, the weight of the initial structural presumption. Salop & Sturiale, *Fixing "Litigating the Fix."* at 28. If the defendants satisfy this rebuttal burden of production, then the burden would shift back to the plaintiff, which bears the ultimate burden of persuasion. *United States v. Baker Hughes Inc.*, 908 F.2d 981, 982-83 (D.C. Cir. 1990).

9

## **CONCLUSION**

Thus, for all these reasons, we recommend that this Court approach defendants' remedial proposals with substantial skepticism and require a high degree of confidence before accepting their evidence that the proposed divestiture is sufficient. The Court should allow the government to carry the burden of its *prima facie* case with evidence that the originally-proposed merger would violate the structural presumption, and thereby place a substantial burden of production on the defendant to provide sufficient evidence to rebut the presumption that the merger will create an appreciable risk of substantially lessening competition.

DATED: January 3, 2023                     */s/*   Jennifer E. Sturiale

                                                          Jennifer E. Sturiale (DC Bar #1035010)
                                                          jsturiale@widener.edu
                                                          Delaware Law School, Widener University
                                                          4601 Concord Pike
                                                          Wilmington, DE 19803
                                                          Telephone: 646-660-1834

                                                          *Attorney for Amici Curiae*