**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff,* v. ASSA ABLOY AB, *et al.*, *Defendants.* | Civil No. 1:22-cv-02791-ABJ |

**DEFENDANTS' PRETRIAL BRIEF**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................3

    I.    STEP ONE: THE GOVERNMENT MUST PRODUCE EVIDENCE SHOWING UNDUE MARKET CONCENTRATION POST-DIVESTITURE ...................................................................................................3

    II.    STEP TWO: THE DIVESTITURE EASILY REBUTS A *PRIMA FACIE* CASE BASED ON PRE-DIVESTITURE MARKET CONCENTRATION STATISTICS. .......................................................................................5

    III.    STEP THREE: THE GOVERNMENT BEARS THE ULTIMATE BURDEN OF PROVING A LIKELY AND SUBSTANTIAL LESSENING OF COMPETITION POST-DIVESTITURE. ........................................................9

    IV.    OTHER LEGAL STANDARDS RELEVANT TO THE GOVERNMENT'S CLAIMS AND DEFENDANTS' RESPONSES. .................11

CONCLUSION ..................................................................................................................12

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Brown Shoe Co. v. United States*,
  370 U.S. 294 (1962) .................................................................................................................. 11

*FTC v. Arch Coal, Inc.*,
  329 F. Supp. 2d 109 (D.D.C. 2004) ..................................................................................... 4, 9, 12

*FTC v. Arch Coal Inc.*,
  No. 1:04-cv-00534-JDB, ECF No. 67 (D.D.C. July 7, 2004) ........................................................ 3, 4

\* *FTC v. H.J. Heinz Co.*,
  246 F.3d 708 (D.C. Cir. 2001) ..................................................................................................... 2, 3

*FTC v. Libbey, Inc.*,
  211 F. Supp. 2d 34 (D.D.C. 2002) ................................................................................................... 4

*FTC v. RAG-Stiftung*,
  436 F. Supp. 3d 278 (D.D.C. 2020) ........................................................................................ 4, 5, 9

*FTC v. Sysco Corp.*,
  113 F. Supp. 3d 1 (D.D.C. 2015) ......................................................................................... 4, 7, 8, 12

*United States v. Aetna*,
  240 F. Supp. 3d 1 (D.D.C. 2017) ..................................................................................... 4, 6, 7, 8, 12

\* *United States v. Anthem*,
  236 F. Supp. 3d 171 (D.D.C. 2017) ...................................................................................... *passim*

\* *United States v. AT&T Inc.*,
  916 F.3d 1029 (D.C. Cir. 2019) ................................................................................................. 4, 11

\* *United States v. Baker Hughes Inc.*,
  908 F.2d 981 (D.C. Cir. 1990) .............................................................................................. *passim*

*United States v. Phila. Nat'l Bank*,
  374 U.S. 321 (1963) ........................................................................................................................ 3

\* *United States v. UnitedHealth Grp. Inc.*,
  No. 1:22-cv-0481 (CJN), 2022 WL 4365867 (D.D.C. Sept. 21, 2022) .......................................... *passim*

**Statutes**

15 U.S.C. § 18 .......................................................................................................................... 1, 7, 8, 9

Clayton Act ................................................................................................................................ *passim*

Hart-Scott-Rodino Act ......................................................................................................................... 7

**Other Authorities**

FTC, Mergers and Acquisitions Proposed Rulemaking, 41 Fed. Reg. 55488 (Dec. 20, 1976) ................................................................................................................................ 7

2020 Merger Remedies Manual, *available at* https://www.justice.gov/atr/page/file/1312416/download ....................................................... 7

Defendants respectfully submit this pre-trial brief to (i) address the Court's questions on "[w]ho bears the burden of proving the competitive implications of the divestiture, when must that party satisfy its burden, and what exactly must that party prove?" and (ii) set forth other applicable legal standards to be applied at trial.[1]

**INTRODUCTION**

Section 7 of the Clayton Act requires the government to show that the sale of HHI to ASSA ABLOY, along with the concurrent divestiture to Fortune Brands, is likely to "substantially lessen" competition. 15 U.S.C. § 18; *see also United States v. Anthem*, 236 F. Supp. 3d 171, 178 (D.D.C. 2017) (holding that the government bears the "burden to demonstrate that the proposed combination is likely to have a substantial effect on competition").

In *United States v. Baker Hughes Inc.*, 908 F.2d 981, 983 (D.C. Cir. 1990), the D.C. Circuit established a three-step framework for analyzing the likely competitive effect of a merger transaction. At step one, the government may establish a "presumption that the merger will substantially lessen competition" by showing that "the merger would result in undue concentration in the market." *Id.* at 191-92 (quotation omitted). If the government meets this initial burden, then at step two the burden then shifts to defendants to "*produce evidence* that shows that the market share statistics give an inaccurate account of the merger's probable effects on competition." *Id.* at 192 (quotation omitted) (emphasis added). If defendants rebut the government's presumption, then at step three "the burden of producing additional evidence of anticompetitive effect shifts to the government, and merges with the ultimate burden of persuasion, *which remains with the*

---

[1] As discussed in the joint status report filed separately, Defendants cannot concede the government's pre-divestiture market concentration statistics or its claim that, absent the proposed divesture, the merger is likely to substantially lessen competition in the relevant markets at step one of the *Baker Hughes* analysis.

1

*government at all times.*" *Id.* (emphasis added) (quoting *Baker Hughes*, 908 F.2d at 981-83; *FTC v. H.J. Heinz Co.*, 246 F.3d 708, 715 (D.C. Cir. 2001)).

Nothing in the Clayton Act or in controlling authority alters the government's burden of proof when the merger transaction involves a simultaneous divestiture. Rather, the burden of proving a violation of the Clayton Act "remains with the government at all times," including the burden of proving the competitive implications of the transaction in its entirety. *Id.* The government thus bears the burden at step one to show that the entire transaction—including any divestiture—will result in undue concentration in a relevant market.

Even if the government could rely on counterfactual pre-divestiture market concentration evidence to satisfy its burden at step one, Defendants' evidence at step two showing that the divestiture here will occur would necessarily shift the burden back to the government by showing that the government's step-one market concentration evidence "give[s] an inaccurate account of the merger's probable effects on competition." *Id.* At step three the government must then produce additional evidence and persuade the Court that the transaction post-divestiture is likely to lessen competition substantially in a relevant market. The government agrees: "[w]e have to persuade Your Honor at the end of the day, after they've come in with their divestiture evidence, that Your Honor believes that there's a substantial lessening of competition." *United States v. UnitedHealth Grp. Inc.*, No. 1:22-cv-0481 (CJN), 2022 WL 4365867, at *8 (D.D.C. Sept. 21, 2022).

Against this well-established law and its own concession, the government now asks this Court to adopt a new standard, contending that Defendants bear the burden of proving that the divestiture will replace any "competitive intensity" lost from the transaction. Defendants have no such burden under the Clayton Act or *Baker Hughes*. Rather, as noted above, the law requires the *government* to prove that the transaction is likely to substantially lessen competition. But more to

2

the point, the Court need not resolve this dispute regarding the applicable legal standard before trial because Defendants should prevail even under the government's (incorrect) standard. The divestiture of ASSA ABLOY's businesses in the alleged relevant markets to Fortune Brands will preserve the competition the government asserts will be lessened by the original transaction.

## ARGUMENT

### I. STEP ONE: THE GOVERNMENT MUST PRODUCE EVIDENCE SHOWING UNDUE MARKET CONCENTRATION POST-DIVESTITURE.

Under step one of *Baker Hughes*, the government can satisfy its *prima facie* burden of showing a likely substantial lessening of competition by proving that the transaction would result in a single firm "controlling an undue percentage share of the relevant market, and would result in a significant increase in the concentration of firms in that market.'" *H.J. Heinz Co.*, 246 F.3d at 715 (quoting *United States v. Phila. Nat'l Bank*, 374 U.S. 321, 363 (1963)). Because courts look to the *entirety* of a proposed transaction when deciding whether the government has met its burden at step one, the government's market concentration proof must take the divestiture into account. ASSA ABLOY is contractually bound to divest its businesses in the alleged relevant markets to Fortune Brands at the same time it acquires Spectrum's businesses. The government thus cannot show a post-divestiture increase in market concentration entitling it to a presumption.

As Judge Nichols recently observed, "the relevant transaction . . . is the proposed acquisition agreement including the proposed divestiture." *UnitedHealth*, 2022 WL 4365867, at *10 n.5 (emphasis removed). "[T]reating the acquisition and the divestiture as separate transactions that must be analyzed in separate steps" would allow the government to carry "its *prima facie* burden based on a fictional transaction and fictional market shares." *Id.* Other district judges in this circuit agree with that approach. In *Arch Coal*, the court concluded that Section 7 of the Clayton Act requires consideration of both the original acquisition and the related divestiture

3

at the same time. *FTC v. Arch Coal Inc.*, No. 1:04-cv-00534-JDB, ECF No. 67 at 5 (D.D.C. July 7, 2004); *id*. at 7 (holding that whether the "challenged transaction may substantially lessen competition … requires the Court to review the *entire* transaction in question.") (emphasis in original); *see also FTC v. Arch Coal, Inc.*, 329 F. Supp. 2d 109, 125 (D.D.C. 2004) (evaluating post-divestiture market at step one); *FTC v. Sysco Corp.*, 113 F. Supp. 3d 1, 53-54 (D.D.C. 2015) (same); *FTC v. RAG-Stiftung*, 436 F. Supp. 3d 278, 304-08 (D.D.C. 2020) (same); *FTC v. Libbey, Inc.*, 211 F. Supp. 2d 34, 51 (D.D.C. 2002) (analyzing amended merger agreement at step one).

The cases the government cited at the December 5th hearing are not to the contrary. *See* Dec. 5, 2022 Hr'g Tr. at 6, 28. The *Sysco* court, for example, proceeded to step two of the *Baker Hughes* framework only after finding undue market concentration *post-divestiture*. 113 F. Supp. 3d at 53-55. In *United States v. Aetna*, the court reached step two of the framework because, unlike here, defendants continued to pursue the original transaction *without* the divestiture and could not establish that the proposed divestiture would occur. 240 F. Supp. 3d 1, 17, 63-64 (D.D.C. 2017).

No authority supports the government's claim that it can satisfy its burden at step one by relying on a hypothetical market concentration that will never exist in the real world. Both the transaction and divestiture should be considered together under step one of the *Baker Hughes* framework because they will occur simultaneously, as a matter of contract and court order. Ignoring the divestiture would conflict with the requirement that cases be resolved "on the basis of the record evidence relating to the market and its *probable* future" *Arch Coal*, 329 F. Supp. 2d at 116–17 (emphasis added); *see also United States v. AT&T Inc.,* 916 F.3d 1029, 1032 (D.C. Cir. 2019) (the government must show "that the proposed merger is likely to substantially lessen competition, which encompasses a concept of reasonable probability") (quotation and citation

4

omitted). The only "probable future" for the relevant markets the government has alleged includes the divestiture.

To the extent that the government tries to satisfy its burden of proof through evidence *other than* market concentration statistics and the *Baker Hughes* burden-shifting framework, it must show that the acquisition and divestiture is likely to lessen competition substantially through alternative evidence. That could include evidence relevant to any alleged insufficiency of the divestiture to prevent a substantial lessening of competition, such as "the likelihood of the divestiture; the experience of the divestiture buyer; the scope of the divestiture[;] the independence of the divestiture buyer from the merging seller[;] and the purchase price." *RAG-Stiftung*, 436 F. Supp. 3d at 304.

## II. STEP TWO: THE DIVESTITURE EASILY REBUTS A *PRIMA FACIE* CASE BASED ON PRE-DIVESTITURE MARKET CONCENTRATION STATISTICS.

Even if pre-divestiture market concentration statistics could satisfy the government's burden at step one, Defendants easily rebut the government's *prima facie* case at step two by producing evidence "discrediting the data underlying the initial presumption in the government's favor" or "show[ing] that the market share statistics give an inaccurate account of the merger's probable effects on competition in the relevant market." *Anthem*, 236 F. Supp. 3d at 192 (quotations omitted). Defendants' production burden at step two is a low bar. *Id.* at 213 (holding that the "quantum of evidence defendants must produce to shift the burden back is relatively low" and that "the defendants are not required to clearly disprove anticompetitive effect, but rather to make a showing") (quotation and citation omitted); *see also Baker Hughes*, 908 F.2d at 992 ("Imposing a heavy burden of production on a defendant would be particularly anomalous where

5

. . . it is easy to establish a prima facie case. . . . The Herfindahl–Hirschman Index cannot guarantee litigation victories.").

In practical terms, step two's focus is evaluating whether the government's statistics "predict future anticompetitive consequences." *Anthem*, 236 F. Supp. 3d at 213 (citation omitted). Hypothetical changes in market concentration that will never happen have no predictive value. *UnitedHealth*, 2022 WL 4365867, at *10 n.5. ASSA ABLOY will divest its current businesses in the alleged relevant markets, and that fact alone shows that the government's pre-divestiture market concentration statistics do not accurately predict the transaction's "probable effects on competition." *Anthem*, 236 F. Supp. 3d at 192. To be sure, Defendants must "produc[e] evidence that the divestiture will actually occur," but here there is no doubt that the divestiture will be consummated. *Aetna*, 240 F. Supp. 3d at 60. ASSA ABLOY has entered a binding divestiture agreement with Fortune Brands (ECF No. 50) and asks the Court to *order* the divestiture. Dec. 5 Hr'g Tr. at 23:2-6. The divestiture will occur if the transaction occurs. Thus, even if the Court followed the government's approach and determined that pre-divestiture market concentration statistics satisfied the government's burden at step one, the existence of the divestiture in this case is more than sufficient at step two to shift the burden of production back to the government.

In contrast, the government argues that it is Defendants' burden at step two "to show that [the] divestiture will protect competition and protect the competitive intensity . . . that is going to be lost" as a result of the pre-divestiture transaction. *Id.* at 6:4-5. *Amici* strike a similar chord, urging repeatedly that the "Court should place the *burden of proof* on defendants to show [the divestiture] is sufficient to preserve the competition potentially lost from the merger as proposed." *See* ECF No. 54-3 at 4 (emphasis added). That is not the law. As the Assistant Attorney General in charge of the DOJ's Antitrust Division explained in public remarks last year, the government

aims to *change* the law on divestitures. *See* Ex. 1, Jonathan Kanter, Assistant Att'y Gen. of the Antitrust Div., Dep't of Just., Remarks to the New York State Bar Association Antitrust Section (Jan. 24, 2022) (https://www.justice.gov/opa/speech/assistant-attorney-general-jonathan-kanter-antitrust-division-delivers-remarks-new-york.justice.gov/opa/speech/assistant-attorney-general-jonathan-kanter-antitrust-division-delivers-remarks-new-york) (stating that "we cannot accept anything less than an injunction blocking the merger" and "we need to be willing to take risks and ask the courts to *reconsider the application of old precedents*") (emphasis added). While the government and *amici* may prefer to change the law, *Baker Hughes* and Section 7 dictate the result here.

The government tries to bootstrap its new standard by divorcing from its context language in *Sysco* and *Aetna* that a divestiture should "replac[e] the competitive intensity lost as a result of the merger." *Sysco*, 113 F. Supp. 3d at 72-73; *Aetna*, 240 F. Supp. 3d at 60.[2] The government misreads both cases, which evaluate only whether the divestiture replaces competition to the degree that, post-divestiture, there is not a "substantial lessening of competition." 15 U.S.C. § 18. That is why "both sides" in *Sysco* relied upon this language, 113 F. Supp. 3d at 72, which came from the DOJ's 2004 "Policy Guide to Merger Remedies," the latest version of which the government withdrew last year.[3] *See* 2020 Merger Remedies Manual, *available at* https://www.justice.gov/atr/page/file/1312416/download.

---

[2] *Amici* cite no authority for their proposed rule, other than the Hart-Scott-Rodino Act, which has nothing to do with proving a Section 7 violation. *See, e.g.*, ECF No. 54-3 at 3. Indeed, "[t]he [Hart-Scott-Rodino] amendment to the Clayton Act does not change the standards to be used in determining the legality of mergers and acquisitions." FTC, Mergers and Acquisitions Proposed Rulemaking, 41 Fed. Reg. 55488 (Dec. 20, 1976).

[3] The DOJ's Policy Guide to Merger Remedies is, in any event, not binding law.

No court has held that defendants have a heightened burden of *proving* that a divestiture perfectly *replicates* pre-merger competition. Indeed, the *Sysco* court itself held that defendants do not have to show that a divestiture "*replicate[s]* pre-merger HHI levels." 113 F. Supp. 3d at 73-74 (emphasis added). Moreover, the *Sysco* and *Aetna* courts both rejected divestitures as deficient only after extensive factual analysis showed they were woefully inadequate, without applying a strict "replication of competition" standard. *See, e.g., Sysco,* 113 F. Supp. 3d at 73 (finding that divestiture buyer will have "less than half" of seller's sales in the relevant market and only one third of the distribution centers); *Aetna*, 240 F. Supp. 3d at 65 (finding that divestiture buyer would need to build its provider network "from scratch").

In the most recent consideration of this issue, another judge on this court held that "shift[ing] the burden of persuasion to the defendant to prove that there is no competitive harm—rather than to require the government to prove that there is substantial harm . . . cannot be squared with the text of Section 7 or with *Baker Hughes*." *UnitedHealth*, 2022 WL 4265867, at *9 (emphasis removed). As the court explained, the government's and *amici*'s approach is "inconsistent with the text of Section 7"—which only prohibits transactions where the likely effect is "*substantially* to lessen competition," 15 U.S.C. § 18 (emphasis added)—and "would make a mess of the *Baker Hughes* framework and the ultimate burden of persuasion." *Id*.

Although the government misreads *Sysco* and *Aetna*, this Court need not resolve any perceived dispute regarding the applicable legal standard before trial. Defendants will ultimately prevail *regardless* of what standard the Court applies. Unlike with the incomplete divestitures at issue in *Sysco* and *Aetna*, the competition that exists today in the government's alleged markets will continue to exist following the transaction because of the divestiture of ASSA ABLOY's businesses in those markets to Fortune Brands. This case will turn not on whether the divestiture

8

is analyzed at step one or step two of the *Baker Hughes* framework, but on whether the government can carry its ultimate burden of proving that, despite the divestiture, the transaction is likely to substantially lessen competition in the relevant markets.

### III.  STEP THREE: THE GOVERNMENT BEARS THE ULTIMATE BURDEN OF PROVING A LIKELY AND SUBSTANTIAL LESSENING OF COMPETITION POST-DIVESTITURE.

As this Court has recognized, once Defendants meet their step-two burden of production, the burden then shifts back to the government to prove that the transaction is likely to substantially lessen competition in the relevant markets. 15 U.S.C. § 18; *Anthem*, 236 F. Supp. 3d at 178 (D.D.C. 2017). "[P]laintiffs have the burden on every element of their Section 7 challenge, and a failure of proof in any respect will mean the transaction should not be enjoined." *Id*. at 192 (quoting *Arch Coal*, 329 F. Supp. 2d at 116). Indeed, both the government and *amici* concede that the ultimate burden of proof rests with the government. *UnitedHealth*, 2022 WL 4365867, at *8; ECF No. 54-3 at 9 (acknowledging that the government "bears the ultimate burden of persuasion."); *see also Baker Hughes*, 908 F.2d at 991 (The "burden of persuasion never shifts away from plaintiff."). As this Court noted during the December 5, 2022, status conference: "it seems to me at the end of the day they've done what they need to do, you've done what you need to do and now we're back and they have to prove that this divestiture would substantially lessen competition still, at the end of the day." *See* Dec. 5, 2022 Hr'g Tr. at 23:12-16. That is correct.

As noted above, in evaluating whether the government carries its burden at trial, the Court must consider whether the government has proven a likely substantial lessening of competition in the relevant markets, including by evaluating factors such as "the likelihood of the divestiture; the experience of the divestiture buyer; the scope of the divestiture[;] the independence of the divestiture buyer from the merging seller[;] and the purchase price." *RAG-Stiftung*, 436 F. Supp. 3d at 304. The government cannot satisfy its burden here because the $800 million divestiture is

9

certain to occur; Fortune Brands is a strong buyer that is independent of ASSA ABLOY; and the divestiture resolves all competitive overlaps in the alleged relevant markets.

To the extent that it argues a divestiture flips the ultimate burden of proof, the government is wrong. *Baker Hughes* expressly rejected a similar argument relating to entry. The government urged the D.C. Circuit there to adopt a new legal standard requiring defendants to make a "clear showing" that entry of new competitors into the relevant market would be "quick and effective" in order to rebut the government's *prima facie* case. 908 F.2d at 983 (emphasis omitted). The court found "no merit in the legal standard propounded by the government" because it was "devoid of support in the statute, in the case law, and in the government's own Merger Guidelines." *Id*. The court also rejected the standard because it "in effect shifts the government's ultimate burden of persuasion to the defendant." *Id*. The court explained:

> In this setting, allocation of the burdens of proof assumes particular importance. By shifting the burden of producing evidence, present law allows both sides to make competing predictions about a transaction's effects. If the burden of production imposed on a defendant is unduly onerous, the distinction between that burden and the ultimate burden of persuasion—always an elusive distinction in practice—disintegrates completely. A defendant required to produce evidence "clearly" disproving future anticompetitive effects must essentially persuade the trier of fact on the ultimate issue in the case—whether a transaction is likely to lessen competition substantially. Absent express instructions to the contrary, we are loath to depart from settled principles and impose such a heavy burden.

*Id.* at 991.

The same principle applies with greater force to the special standard for which the government advocates here. Imposing any burden of proof on Defendants—particularly a burden of proving a replication of "competitive intensity"—would impermissibly shift the burden of persuasion to defendants to prove the ultimate issue in this case. As the D.C. Circuit recognized, imposing such a burden on Defendants "would be particularly anomalous where, as here, it is easy to establish a prima facie case . . . simply by presenting market concentration statistics." *Id*. at 992

("To allow the government virtually to rest its case at that point, leaving the defendant to prove the core of the dispute, would grossly inflate the role of statistics in actions brought under section 7."). The D.C. Circuit further recognized the vagueness and "manipulability" of the government's proposed standard. *Id.* at 988. Whatever "competitive intensity" might mean, such a malleable standard "would move far toward forcing [Defendants] to rebut a probability with a certainty." *Id*. at 992. It would also impermissibly relieve the government of its burden of proving a violation of Section 7.

## IV. OTHER LEGAL STANDARDS RELEVANT TO THE GOVERNMENT'S CLAIMS AND DEFENDANTS' RESPONSES.

"[A] necessary predicate to deciding whether a merger contravenes the Clayton Act is defining the relevant market." *Anthem*, 236 F. Supp. 3d at 192 (citation omitted). A relevant product market is "determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and the substitutes for it." *Id*. at 194 (*citing Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962)). The relevant geographic market is "the region in which the seller operates, and to which the purchaser can practicably turn for supplies." *Id*. at 202 (quotation omitted). In addition to rebutting the government's *prima facie* case with divestiture evidence, Defendants may do so by, for example, producing evidence showing that (a) Defendants are not close competitors; (b) customers are sophisticated and have bargaining power; (c) entry and expansion of competitors; or (d) efficiencies or synergies from the transaction. *See Anthem,* 236 F. Supp. 3d at 214-15.

Section 7 requires more than a "mere possibility" of harm to competition. *Brown Shoe*, 370 U.S. at 323; *Baker Hughes*, 908 F.2d at 984 ("Section 7 involves probabilities, not certainties or possibilities."). The government must show "that the proposed merger is likely to substantially lessen competition, which encompasses a concept of reasonable probability." *AT&T*, 916 F.3d at

11

1032 (emphasis omitted); *see also Anthem*, 236 F. Supp. 3d at 178 (The government has the "burden to demonstrate that the proposed combination is likely to have a substantial effect on competition.").

## CONCLUSION

The respective burdens on the parties under the *Baker Hughes* framework are clear. The government cannot meet its *prima facie* burden at step one based on *pre-divestiture* market concentration statistics that will never come to pass. *See, e.g., Arch Coal,* 329 F. Supp. at 125 (evaluating *post-divestiture* market concentration statistics). Nevertheless, if the analysis proceeds to step two, any such presumption would be necessarily rebutted by the divestiture, which establishes that such statistics do not accurately predict the transaction's "probable effects on competition." *Anthem*, 236 F. Supp. 3d at 192. While the government and *amici* urge a new standard that Defendants must prove that a divestiture replicates "competitive intensity," such a standard is inconsistent with Section 7, is not required by *Sysco* or *Aetna*, was rejected by the court in *UnitedHealth*, and impermissibly allows the government to sidestep its burden of proof under *Baker Hughes*. That is not the law.

Defendants will prevail regardless of the applicable legal standard, however, and therefore resolving this dispute before trial is unnecessary. *See UnitedHealth*, 2022 WL 4365867, at *10 (concluding "that the evidence leads to the same result under either standard" because "the divestiture will restore the competitive intensity lost because of the acquisition"). The facts elicited at trial will demonstrate that the divestiture of ASSA ABLOY's businesses in the alleged relevant markets to Fortune Brands will ensure that competition in those markets will not be substantially lessened.

Dated: January 13, 2023				Respectfully submitted,

/s/ *Justin W. Bernick*
Justin W. Bernick (DC Bar No. 988245)
Charles A. Loughlin (D.C. Bar No. 448219)
William L. Monts, III (DC Bar No. 428856)
**HOGAN LOVELLS US LLP**
555 Thirteenth Street, NW
Washington, D.C. 20004
(202) 637-5600
chuck.loughlin@hoganlovells.com
justin.bernick@hoganlovells.com
william.monts@hoganlovells.com

/s/ *David I. Gelfand*
David I. Gelfand (D.C. Bar No. 416596)
Daniel P. Culley (D.C. Bar No. 988557)
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 974-1500
Facsimile: (202) 974-1999
dculley@cgsh.com
dgelfand@cgsh.com

*Counsel for Defendant ASSA ABLOY AB*

/s/ *Paul Spagnoletti*
Paul Spagnoletti
Arthur J. Burke
Greg D. Andres
Nikolaus J. Williams
**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, NY 10017
(212) 450-4000
paul.spagnoletti@davispolk.com
arthur.burke@davispolk.com
greg.andres@davispolk.com
nikolaus.williams@davispolk.com

Jesse Solomon (DC Bar # 998972)
**DAVIS POLK & WARDWELL LLP**
901 15th Street, NW
Washington, DC 20005
(202) 962-7138
jesse.solomon@davispolk.com

*Counsel for Defendant*
*Spectrum Brands Holdings, Inc.*