UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

                *Plaintiff*,

      v.

ASSA ABLOY AB, *et al.*,

                *Defendants.*

Civil Case No. 22-2791-ABJ

**PRETRIAL BRIEF OF PLAINTIFF UNITED STATES OF AMERICA**

ASSA ABLOY's proposed acquisition of a division of its rival, Spectrum Brands, is illegal. It violates Section 7 of the Clayton Act, 15 U.S.C. § 18, because its "effect may be substantially to lessen competition," *id.*, in the United States markets for (i) premium mechanical door hardware and (ii) smart locks. The proposed acquisition is presumptively unlawful because it would further concentrate two markets already concentrated by decades of consolidation. Corroborating that presumption is extensive evidence that the acquisition would eliminate head-to-head competition between Defendants, which today benefits consumers.

The sure-fire and preferred remedy for this unlawful acquisition is to enjoin it outright. *United States v. Phila. Nat'l Bank*, 374 U.S. 321, 323-24 (1963) (acquisition "forbidden by" Section 7 "must be enjoined"). To avoid that result, Defendants now—months after the Complaint was filed—attempt to cure their anticompetitive deal by unilaterally proposing a separate, conditional transaction in which ASSA ABLOY would carve out and divest pieces of its integrated global business to a self-selected buyer, Fortune Brands. This divestiture is a proposed remedy—an alternative to full-stop injunction, not part of determining whether the challenged acquisition violates Section 7. Because the divestiture is a proposed remedy, Defendants bear the burden to show the divestiture would cure the loss of competition that their Section 7 violation would cause. They have that burden regardless whether the divestiture is considered in rebuttal under the burden-shifting framework for liability or as a remedy separate from that framework. This standard is rigorous because when carveout divestitures fail to restore competition, as they often do,[1] consumers are left to bear the cost, and there is no way to turn

---

[1] *See, e.g.*, Brent Kendall & Peg Brickley, *Albertsons to Buy Back 33 Stores It Sold as Part of Merger With Safeway*, WALL ST. J. (Nov. 24, 2015); David McLaughlin et al., *Hertz Fix in Dollar Thrifty Deal Fails as Insider Warned*, Bloomberg (Nov. 29, 2013).

back the clock. This brief sets forth the legal standards for evaluating (1) liability under Section 7 (pp. 1-7) and (2) the appropriate remedy for any violation (pp. 7-12).

## I. Liability Under Section 7 of the Clayton Act

***Section 7 is designed to halt anticompetitive mergers and trends toward concentration in their incipiency.*** An acquisition violates Section 7 if its "effect . . . *may be* substantially to lessen competition, or to tend to create a monopoly." 15 U.S.C. § 18 (emphasis added). This "prophylactic measure," *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 485 (1977), "arrest[s] the anticompetitive effects of market power in their incipiency," *FTC v. Proctor & Gamble Co.*, 386 U.S. 568, 577 (1967). Increased concentration is especially suspect in an industry marked by "a trend toward concentration," *United States v. Pabst Brewing Co.*, 384 U.S. 546, 552-53 (1966), because such a trend—as exists in the relevant markets here, *see* Compl. ¶¶ 11, 14, 47-48, ECF No. 43—is a "highly relevant factor in deciding how substantial the anti-competitive effect of the merger may be." *Pabst Brewing*, 384 U.S. at 552-53.

***Reasonable probability of reduced competition establishes a violation.*** Under Section 7, the United States need only show that an acquisition has "a reasonable probability" of diminishing competition. *United States v. E.I. du Pont de Nemours Co.*, 353 U.S. 586, 607 (1957) ("*du Pont I*"); *cf. Kyles v. Whitley*, 514 U.S. 419, 434 (1995) ("reasonable probability" means less than preponderance). It does not require proof that a deal "will cause" anticompetitive effects, just that it "will create an appreciable danger of such consequences in the future." *United States v. Anthem, Inc.*, 236 F. Supp. 3d 171, 192 (D.D.C. 2017). "[D]oubts are to be resolved against the transaction." *FTC v. Elder Grains, Inc.*, 868 F.2d 901, 906 (7th Cir. 1989).

***The HSR Act process facilitates pre-consummation investigations of questionable acquisitions.*** The Hart-Scott-Rodino ("HSR") Act, 15 U.S.C. § 18a, amended the Clayton Act to give the United States "a fair and reasonable opportunity" to fully investigate acquisitions before

challenging them under Section 7, H.R. Rep. 94-1373, at 5 (1976). It requires merging parties to notify antitrust enforcers of reportable acquisitions, and it empowers enforcers to investigate such acquisitions in the first instance. 15 U.S.C. § 18a. If an HSR Act investigation concludes that a filed acquisition would violate Section 7, enforcers have a "duty" to "institute proceedings in equity to prevent and restrain" the violation. 15 U.S.C. § 25. This case is one such proceeding.

*The relevant geographic market is the United States.* Courts must first determine "relevant product and geographic markets." *United States v. Marine Bancorp., Inc.*, 418 U.S. 602, 618 (1974). The parties stipulate that the relevant geographic market is the United States. Compl. ¶ 43; ASSA ABLOY Answer ¶ 43, ECF No. 37; Spectrum Answer ¶ 43, ECF No. 36.

*Definition of the relevant product markets.* The United States alleges two relevant product markets: (1) premium mechanical door hardware, and (2) smart locks. *See* Compl. ¶¶ 32-42. "[A] product market includes all goods that are reasonable substitutes," and "[w]hether goods are 'reasonable substitutes' depends on two factors: functional interchangeability and cross-elasticity of demand." *FTC v. Sysco Corp.*, 113 F. Supp. 3d 1, 25 (D.D.C. 2015); *accord Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962).

Defining the relevant market is intended to be "a pragmatic, factual" analysis, "not a formal, legalistic one." *Brown Shoe*, 370 U.S. at 336. "This is because the 'market,' as most concepts in law or economics, cannot be measured by metes and bounds." *Anthem*, 236 F. Supp. 3d at 193; *see also FTC v. Tronox Ltd.*, 332 F. Supp. 3d 187, 202 (D.D.C. 2018) ("fuzziness is inherent in bounding any market"). "Market definition is more art than science, . . . the goal of [which] is to enable and facilitate the examination of competitive effects." *United States v. Bertelsmann SE & Co. KGaA*, -- F. Supp. 3d. --, 2022 WL 16949715, at *18 (D.D.C. Nov. 15, 2022). To define the relevant product market, courts look to the "practical indicia" set forth by

3

the Supreme Court in *Brown Shoe*. *See*, *e.g.*, *FTC v. Whole Foods Market, Inc.*, 548 F.3d 1028, 1039 (D.C. Cir. 2008) (opinion of Brown, J.); *Anthem*, 236 F. Supp. 3d at 194; *see also Brown Shoe*, 370 U.S. at 325 (listing seven "practical indicia"). "[D]efendants' business records are 'strong evidence' for defining the relevant product market." *Anthem*, 236 F. Supp. 3d at 194.

    ***Burden-shifting framework for liability.*** Once the United States establishes a relevant market, "[a] burden-shifting analysis applies" to determine whether an acquisition, submitted for review under the HSR Act, violates Section 7. *United States v. Anthem, Inc.*, 855 F.3d 345, 349 (D.C. Cir. 2017) (burden-shifting framework "consider[s] *the merger's* effect on competition" (emphasis added)). In challenging a horizontal acquisition, the United States may "establish a presumption of anticompetitive effect by showing that the 'transaction will lead to undue concentration in the [relevant] market.'" *Id.* (quoting *United States v. Baker Hughes, Inc.*, 908 F.2d 981, 982 (D.C. Cir. 1990)). "The burden shifts, once the prima facie case is made, to the defendant to rebut the presumption." *Id.* To rebut the presumption, defendants must "affirmatively show[] why a given transaction is unlikely to substantially lessen competition" or "discredit[] the data underlying the initial presumption in the government's favor." *Baker Hughes*, 908 F.2d at 991. If defendants overcome the presumption, "the burden of producing additional evidence of anticompetitive effect shifts to the government, and merges with the ultimate burden of persuasion, which remains with the government at all times." *Id.* at 983.

    **The prima facie *case: an acquisition creating undue concentration is presumptively unlawful.*** Market-share statistics showing that a particular acquisition would "lead to undue concentration" trigger a "presumption of anticompetitive effect" from that acquisition. *Anthem*, 855 F.3d at 349; *accord Phila. Nat'l Bank*, 374 U.S. at 363 (undue concentration is "inherently likely to lessen competition substantially"). In evaluating Section 7 liability, it is appropriate to

look to the concentrating effect of the challenged acquisition alone. *United States v. Aetna, Inc.*, 240 F. Supp. 3d 1, 41-42 (D.D.C. 2017); *Sysco*, 113 F. Supp. 3d at 55. The presumption arises because "competition is likely to be greatest when there are many sellers, none of which has any significant market share," *Phila. Nat'l Bank*, 374 U.S. at 363, and therefore increased concentration presumably harms competition through, *inter alia*, unilateral effects (elimination of competition between merging firms) and coordinated effects (tacit coordination or overt collusion among fewer remaining competitors). *See, e.g., id.*; *FTC v. H.J. Heinz Co.*, 246 F.3d 708, 715-16 (D.C. Cir. 2001); *Bertelsmann*, 2022 WL 16949715, at *20, *23, *27.

**The prima facie *case may go beyond the presumption.*** A presumption of reduced competition is sufficient to establish a *prima facie* Section 7 violation. *See, e.g., Bertelsmann*, 2022 WL 16949715, at *11. The United States may also bolster its *prima facie* case with additional evidence "tending to show that the merger would substantially lessen competition," such as evidence that the challenged acquisition may "eliminate[] head-to-head competition between close competitors." *Aetna*, 240 F. Supp. 3d at 91; *accord Heinz*, 246 F.3d at 716-17; *Bertelsmann*, 2022 WL 16949715, at *22. "The more compelling the prima facie case, the more evidence the defendant must present to rebut it successfully." *Baker Hughes*, 908 F.2d at 991.

**The prima facie *case considers only the effect of the challenged acquisition, as filed under the HSR Act.*** An acquisition violates Section 7 when "the effect of *such acquisition* may be substantially to lessen competition, or to tend to create a monopoly." 15 U.S.C. § 18 (emphasis added). Accordingly, the Government's *prima facie* burden can be met by showing "that *a transaction* will lead to undue concentration." *Baker Hughes*, 908 F.2d at 982 (emphasis added); *accord Anthem*, 855 F.3d at 349; *Heinz*, 246 F.3d at 715. The *prima facie* case "is easy

5

to establish," *Baker Hughes*, 908 F.2d at 992, and does not encompass market events or conditions extraneous to the challenged acquisition itself.

Companies control whether to propose and how to structure acquisitions that trigger a filing under the HSR Act, and antitrust enforcers determine which of those transactions to challenge. *See supra* pp.2-3. Here, the United States challenges the ASSA-Spectrum acquisition, as filed under the HSR Act, *see* Compl. ¶¶ 91-93, and therefore that is the only acquisition the United States must prove violates Section 7. *See, e.g., Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013) (plaintiffs "are the masters of their complaints"). Two and one-half months after the Complaint was filed, Defendants signed a divestiture agreement that was never submitted or investigated under the HSR Act. Before the Complaint was filed, Defendants had only informally proposed the general contours of a potential divestiture. They had not drafted a sale agreement, solicited bids, or answered many questions about the proposal, let alone identified a buyer. Once the proposed divestiture took shape mid-litigation, Defendants chose to circumvent review under the HSR Act and submit the divestiture as a proposed remedy instead.

**The UnitedHealth *case does not abrogate established law.*** Limiting the *prima facie* case to the challenged acquisition squares with *United States v. UnitedHealth Grp. Inc.*, -- F. Supp. 3d --, 2022 WL 4365867 (D.D.C. Sept. 21, 2022). There, in evaluating horizontal theories of harm, the court "proceed[ed] under the Government's proposed standard," holding that the Government was entitled to a presumption of reduced competition based on pre-divestiture market-share statistics, *id*. at *10, and requiring defendants to "prove in rebuttal that the proposed divestiture . . . will 'restore the competition lost by the merger,'" *id*. at *11 (quoting *United States v. Aetna, Inc.*, 240 F. Supp. 3d 1, 91 (D.D.C. 2017)). As the court acknowledged, these holdings have "support in District case law." *Id*. at *8 (collecting cases).

6

Statements in *UnitedHealth* suggesting that the United States must account for potential remedies in the *prima facie* case, *see id.* at *9, are contrary to established law. *First*, this alternative approach is contrary to the Clayton Act and the law of remedies, which establish that a violation is separate from and antecedent to any potential remedy. *See infra* pp.8-9. *Second*, it is contrary to Supreme Court precedent holding that "[t]he burden is not on the Government to show" that partial-divestiture remedies "would violate § 7." *United States v. E.I. du Pont de Nemours & Co.*, 366 U.S. 316, 331 (1961) ("*du Pont II*"). *Third*, it is contrary to the *Baker Hughes* framework, which makes it Defendants' burden to show that other market events or conditions render the Government's *prima facie* evidence "an unreliable predictor of the merger's anticompetitive effects." *Bertelsmann*, 2022 WL 16949715, at *11; *accord Anthem*, 855 F.3d at 349-50; *Baker Hughes*, 908 F.2d at 991. *Finally*, it would create perverse incentives for merging parties to short-circuit the HSR Act review process and to engage in litigation gamesmanship that delays and limits disclosure of facts about proposed remedies.

***Defendants' rebuttal burden is substantial.*** Rebutting the presumption requires presenting "significant evidence," *Marine Bancorp.*, 418 U.S. at 632, from which a reasonable factfinder could conclude that the challenged acquisition does not violate Section 7. *Cf. St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (requirements of "burden of production"). A rebuttal case must be at least as strong as the *prima facie* case. *Heinz*, 246 F.3d at 720-25; *Baker Hughes*, 908 F.2d at 991. Thus, a strong *prima facie* case requires an "extraordinary" rebuttal showing, which the Court must analyze "rigorous[ly]." *Heinz*, 246 F.3d at 720-21.

## II. Remedies for Acquisitions That Violate Section 7

***Full-stop injunction is the presumptive remedy for illegal acquisitions.*** When an acquisition would violate Section 7, the presumptive remedy is a "full stop injunction" that prohibits the acquisition from proceeding. *FTC v. PPG Indus., Inc.*, 798 F.2d 1500, 1506 (D.C.

7

Cir. 1986); *accord Cal. v. Am. Stores Co.*, 495 U.S. 271, 280-81 (1990) ("preferred remedy"); *Phila. Nat'l Bank*, 374 U.S. at 323-24 (unlawful acquisition "must be enjoined"); *du Pont II*, 366 U.S. at 329-31 ("natural remedy" that is "simple" and "sure"); *see also* 15 U.S.C. § 25 (contemplating that violations "be enjoined or otherwise prohibited"). It "should always be in the forefront of a court's mind when a violation of § 7 has been found." *du Pont II*, 366 U.S. at 331.

***Antitrust remedies must "restore" competition and "eliminate the effects" of unlawful acquisitions.*** "The relief in an antitrust case must be effective to redress the violations and to restore competition," *i.e.*, to "restor[e] the *status quo ante*." *Ford Motor Co. v. United States*, 405 U.S. 562, 573 & n.8 (1972). A full-stop injunction does so simply and certainly, *see du Pont II*, 366 U.S. at 331, and any remedy short of full-stop injunction must similarly "eliminate the effects of the [illegal] acquisition," *du Pont I*, 315 U.S. at 607; *see also Ford*, 495 U.S. at 576 (remedy ought to "restore the pre-acquisition competitive structure of the market"); *United States v. U.S. Gypsum Co.*, 340 U.S. 76, 88 (1950) (remedy must "cure the ill effects of the illegal conduct, and assure the public freedom from its continuance"). It is not the United States' burden to show that a remedy other than full-stop injunction "would violate § 7," *du Pont II*, 366 U.S. at 331, and "all doubts as to the remedy are to be resolved in [the Government's] favor," *id*. at 334.

***A violation must be found before a remedy is ordered.*** Federal courts have "jurisdiction to prevent and restrain violations" of the Clayton Act. 15 U.S.C. § 25. Therefore, a court must find a "violation[]" before ordering an injunctive remedy that "prevent[s]" or "restrain[s]" that violation. *Id.*; *see Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 399 (1982) ("remedial powers of the federal courts . . . could be exercised only on the basis of a violation of the law"); *accord United States v. Greater Buffalo Press, Inc.*, 402 U.S. 549, 556 (1971) (courts do "not reach the question of remedy" if there is "no violation of § 7"); *Zenith Radio Corp. v.*

8

*Hazeltine Rsch., Inc.*, 395 U.S. 100, 130, 141 (1969) (court must find "actual or threatened violation of the antitrust laws" to "justify [an] injunction").

**Defendants' conditional divestiture is a proposed remedy.** A divestiture should be evaluated under the law of remedies when it is (1) separate from and conditioned on consummation of a challenged acquisition, and (2) proposed during litigation in response to a Section 7 challenge. *See Sysco*, 13 F. Supp. 3d at 72 (citing *Ford*, 405 U.S. at 573, and *du Pont II*, 366 U.S. at 326). Defendants' proposed divestiture here is just such a remedy. It is conditional on closing the separate, challenged acquisition; it was proposed during litigation to "eliminate" the "anticompetitive effects" of the challenged acquisition, ASSA ABLOY Answer at 31 (Eighth Defense); and it would not have been pursued absent this lawsuit. Defendants concede the point by requesting that the Court "order the divestiture," ASSA ABLOY Answer ¶ 93; Spectrum Answer ¶ 93, which is relief that could only be granted as a remedy to "prevent [or] restrain" a "violation[]." 15 U.S.C. § 25; *accord Gen. Bldg. Contractors Ass'n*, 458 U.S. at 399. Defendants chose to offer the divestiture as a remedy to avoid having it investigated under the HSR Act.

**Defendants must show their entitlement to an alternative remedy.** The choice between two competing remedies—full-stop injunction or partial divestiture—should be made only after a violation has been found. *See supra* pp.8-9. Accordingly, courts should assess the sufficiency of a divestiture remedy only after concluding that the challenged acquisition is illegal. Alternatively, courts have considered divestiture remedies as rebuttals under the *Baker Hughes* burden-shifting framework.[2] In either case, Defendants bear the burden to show that the remedy would restore competition. *See, e.g., du Pont II*, 366 U.S. at 331-34; *Aetna*, 240 F. Supp. 3d at

---

[2] *See Aetna*, 240 F. Supp. 3d at 53, 60; *Sysco*, 113 F. Supp. 3d at 72; *FTC v. Staples, Inc.*, 190 F. Supp. 3d 100, 137 n.15 (D.D.C. 2016); *UnitedHealth*, 2022 WL 4365867, at *11; *FTC v. RAG-Stiftung*, 436 F. Supp. 3d 278, 304 (D.D.C. 2020).

9

53, 60; *Sysco*, 113 F. Supp. 3d at 72. Defendants must show their entitlement to a divestiture remedy because it is relief they affirmatively seek as an alternative to the presumptive remedy of full-stop injunction. *See, e.g., Woods v. Flowers*, 323 F.R.D. 448, 450 (D.D.C. 2018) ("The party seeking relief has the burden of showing that he is entitled to relief."); *Competitive Enter. Inst. v. U.S. Dept. of Agriculture*, 954 F. Supp. 265, 269 (D.D.C. 1996) (similar, in context of "party seeking injunctive relief"). Moreover, to obtain a mandatory injunction, which Defendants seek here, *e.g.*, ASSA ABLOY Answer ¶ 93, they "must meet a higher standard than in the ordinary case." *Elec. Privacy Info. Ctr. v. Dept. of Justice*, 15 F. Supp. 3d 32, 39 (D.D.C. 2014).

***Defendants must show that their divestiture remedy would replace competitive intensity.*** An antitrust remedy must "restore competition," *Ford*, 405 U.S. at 573, and "eliminate the effects of the [illegal] acquisition," *du Pont I*, 315 U.S. at 607. Therefore, a Section 7 defendant proposing a divestiture remedy must "introduce evidence that [the] proposed divestiture would restore the competition lost by the merger[,] counteracting the anticompetitive effects of the merger." *Aetna*, 240 F. Supp. 3d at 60; *accord Sysco*, 113 F. Supp. 3d at 72 (quoting *Ford*, 405 U.S. at 573). In other words, they must show that their divestiture remedy would "replace the competitive intensity lost as a result of the [challenged] merger." *Aetna*, 240 F. Supp. 3d at 60; *see id.* at 99 (divestiture must "replace competition eliminated by the merger"); *Sysco*, 113 F. Supp. 3d at 78 (divestiture must "remedy the anticompetitive effects of the merger"); *RAG-Stiftung*, 436 F. Supp. 3d at 304 (divestiture must "replace the merging firm's competitive intensity"); *see also Staples*, 190 F. Supp. 3d at 137 n.15 (defendants must show that "any proposed remedy would negate any anticompetitive effects of the merger").

***Courts should view self-serving remedy proposals with appropriate skepticism.***
Divestiture remedies, especially carveout divestitures like the one proposed by Defendants,

10

create many risks to competition. For example, assets that have competed most effectively together can become separated; assets that have competed effectively in the hands of one firm can become less competitive in the hands of another; and incentives to compete can become dampened by ongoing entanglements, the divestee's differing financial circumstances, and other factors. *See*, *e.g.*, *Aetna*, 240 F. Supp. 3d at 64-73 (discussing risks to competition from proposed divestiture remedy); *Sysco*, 113 F. Supp. 3d at 73-77 (similar).

These risks compound when companies sidestep the HSR Act and unilaterally propose a divestiture to remedy their own illegal merger because such divestitures involve an unavoidable conflict of interest: The merging parties pick a divestiture buyer, which will be their future competitor, and therefore the merging parties have an incentive to pick a weak buyer. Also, the divestiture buyer has an incentive to help the merged firm maintain higher prices because it also benefits from charging higher prices. Because of these anticompetitive incentives, a court should be skeptical and not assume that a defendant-proposed divestiture will restore competition.

***Evaluating restoration of competitive intensity is a rigorous inquiry.*** To "replace the competitive intensity lost as a result of the merger," *Aetna*, 240 F. Supp. 3d at 60, a divestiture must, *inter alia*, (1) include all assets necessary to enable the buyer to compete as effectively as the seller, in both the short run and the long run; (2) create a new competitor capable of using and operating the divested assets as effectively as the seller does; and (3) leave the buyer with the incentive to compete as effectively as the seller does. *See*, *e.g.*, *id.* at 64-73; *Sysco*, 113 F. Supp. 3d at 73-77; *FTC v. Libbey, Inc.*, 211 F. Supp. 2d 34, 48 (D.D.C. 2002); *United States v. Franklin Elec. Co.*, 130 F. Supp. 2d 1025, 1033-34 (W.D. Wis. 2000).

For example, in *Aetna*, the court rejected the proposed divestiture remedy because the buyer would not receive assets "essential" to a competitive offering, it might not transfer its

expertise from an adjacent market to the relevant market, it lacked the same internal capacity as the seller to operate the assets, and it was buying the assets at a discount, reflecting a reduced incentive to compete vigorously. 240 F. Supp. 3d at 64-73. Similarly, in *Sysco* the divestiture remedy was insufficient because the buyer would have received insufficient assets to be "on equal competitive footing with the merged firm" "on day one," could face higher costs than the merged firm, would lack expertise compared to its competitors, and would be "dependent on the merged entity for years following the transaction."[3] 113 F. Supp. 3d at 73-77.

*The remedy standard comports with the liability standard.* Requiring an antitrust remedy to restore competition is consistent with Section 7's liability standard. An antitrust remedy must be viewed in the context of the violation it is supposed to cure. Once it becomes apparent that an acquisition would violate Section 7, "[t]he burden is not on the Government to show" that a remedy short of full-stop injunction "would violate § 7," *i.e.*, substantially lessen competition. *du Pont II*, 366 U.S. at 331. Instead, the proponent of an alternative remedy (here, Defendants) must show that such a remedy would "eliminate the effects of the [illegal] acquisition," *du Pont I*, 315 U.S. at 607. Even if there were doubts as to the necessity of a full-stop injunction, "all doubts as to the remedy are to be resolved in [the Government's] favor." *du Pont II*, 366 U.S. at 334. Additionally, *contra UnitedHealth*, 2022 WL 4365867, at *9, replacing competitive intensity does not require competition to remain "exactly the same." Rather, replacing competitive intensity "reasonably assures the elimination" of the risk Section 7 was designed to prevent— substantial lessening of competition. *du Pont II*, 366 U.S. at 326.

---

[3] The "continuing relationships" between buyer and seller in *Sysco*, which would also exist here, "increase the buyer's vulnerability to the seller's behavior," 113 F. Supp. 3d at 77, and exacerbate "a likelihood of interdependent anticompetitive behavior," *Heinz*, 246 F.3d at 716.

Dated: January 13, 2023

                                         Respectfully submitted,

                                             /s/ *Matthew R. Huppert*
                                    Matthew R. Huppert (DC Bar #1010997)

                                    Trial Attorney
                                    UNITED STATES DEPARTMENT OF JUSTICE
                                    ANTITRUST DIVISION
                                    450 Fifth Street N.W., Suite 8700
                                    Washington, DC 20530
                                    Telephone: (202) 476-0383
                                    Fax: (202) 514-9033
                                    Email: Matthew.Huppert@usdoj.gov

                                    David E. Dahlquist
                                    Senior Litigation Counsel
                                    UNITED STATES DEPARTMENT OF JUSTICE
                                    ANTITRUST DIVISION
                                    209 South LaSalle Street, Suite 600
                                    Chicago, Illinois 60604
                                    Email: David.Dahlquist@usdoj.gov

                                    *Counsel for Plaintiff United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2023, I caused the foregoing to be filed with the Clerk of Court using the Court's Electronic Document Filing System, which served copies on all counsel of record.

                              */s/ Matthew R. Huppert*
                              Matthew R. Huppert
                              *Counsel for Plaintiff United States of America*