**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff,* | |
| v. | Civil No. 1:22-cv-02791-ACR |
| ASSA ABLOY AB, *et al.*, | |
| *Defendants.* | |

**DEFENDANTS' SUPPLEMENTAL PRE-TRIAL BRIEF**

## INTRODUCTION

Defendants ASSA ABLOY AB ("ASSA ABLOY") and Spectrum Brands Holdings, Inc. ("Spectrum Brands") submit this supplemental pretrial brief in response to the questions the Court raised at the March 14, 2023 status conference. The Court's questions are answered below.

## QUESTIONS AND ANSWERS

**Question 1:** For purposes of considering whether DOJ's *prima facie* burden under *Baker Hughes* requires consideration of a divestiture, is the word "acquisition" in Section 7 of the Clayton Act limited to acquisitions either as originally agreed upon or as disclosed to the Federal Trade Commission ("FTC") and Antitrust Division of the Department of Justice ("DOJ") in Hart-Scott-Rodino Antitrust Improvements Act ("HSR") filings? *See* March 14, 2023 Hr'g Tr. 31:17-33:2.

**Answer:** No. Under the plain language of Section 7, the Court should take the divestiture into account when considering whether DOJ has proven its *prima facie* case. Section 7 applies only to the combination that will actually occur, regardless of the form of transaction that was originally agreed upon or disclosed in an HSR filing. Nothing in the text of the Clayton Act defines "acquisition" as the transaction originally agreed upon or disclosed in an HSR filing. Indeed, while "acquisition" is not a defined term, the statute refers to a "person . . . acquir[ing] the whole or any part of the assets of another person," 15 U.S.C. § 18, which plainly encompasses all acquisitions, not just those as originally agreed upon or disclosed in an HSR filing.[1] Nor is there legislative history that defines "acquisition" to mean anything other than the acquisition that will actually take place, as that is the only "acquisition" that could have an actual effect on competition.

The term "acquisition" cannot be read in isolation and instead must be interpreted in light of the surrounding text. Section 7 of the Clayton Act instructs courts to consider whether "the *effect* of such acquisition may be substantially to lessen competition." 15 U.S.C. § 18. The

---

[1]     Relatedly, the text of the Clayton Act enumerates various exceptions for acquisitions not subject to Section 7. 15 U.S.C. § 18. Because Congress could have added divestitures, modified transactions, or non-HSR reported transactions to the list of exceptions—and did not—this Court should not presume that Congress intended to carve such transactions out of Section 7.

"effect" of the acquisition must take into account "the record evidence relating to the market and its *probable* future." *F.T.C. v. Arch Coal, Inc.*, 329 F. Supp. 2d 109, 116-17 (D.D.C. 2004) (emphasis added); *see also United States v. Baker Hughes Inc.*, 908 F. 2d 981, 991 (D.C. Cir. 1990) (same). The probable future of a relevant market necessarily includes an assessment of the transaction that will actually occur, not a transaction that will never occur. This has been the law for over 20 years. In *F.T.C. v. Libbey, Inc.*, 211 F. Supp. 2d 34 (D.D.C. 2002), the defendants amended their agreement after the lawsuit was filed and the FTC argued that the court should consider only the original form of transaction. The court rejected this argument, holding that the amended agreement became "the new agreement that the Court must evaluate in deciding whether an injunction should be issued." *Id.* at 46; *see also United States v. UnitedHealth Grp. Inc.*, No. 1:22-cv-0481 (CJN), 2022 WL 4365867, at *10 n.5 (D.D.C. Sept. 21, 2022) (The government cannot carry "its *prima facie* burden based on a fictional transaction and fictional market shares.").

At step one of the *Baker Hughes* analysis, the government must "show[ ] that a transaction *will lead* to undue concentration in the market," thus establishing "a presumption that the transaction *will* substantially lessen competition." *Baker Hughes*, 908 F.2d at 982 (emphasis added). In this case, the Court should consider the divestiture as part of DOJ's *prima facie* case because, if ASSA ABLOY acquires certain Spectrum Brands businesses, the divestiture to Fortune Brands of ASSA ABLOY's overlapping businesses necessarily will proceed as well, by way of contract and court order. The originally proposed transaction without the divestiture will have no "effect" on the market or its "probable future" because the overlapping businesses will never be combined. The Court should reject DOJ's argument that *Baker Hughes* requires the Court to consider a fictional combination for the same reasons it was rejected in *Libbey* and *UnitedHealth*.

While an amicus brief argued that the HSR Act should impact DOJ's *prima facie* burden under the Clayton Act (ECF No. 62), that argument is inconsistent with the statute and its history. First, the HSR Act was enacted in 1976 and did not exist when the Clayton Act was passed in 1914 and amended in 1950.  And nowhere in its text does the HSR Act purport to change the meaning of the word "acquisition" in Section 7 or alter a plaintiff's pleading burden under Section 7.  In fact, the legislative history of the HSR Act could not be clearer:  the statute "in no way alters the substantive legal standard of Section 7," which would "remain unaffected" by the new law.  H.R. Rep. No. 94-1373, at 5 (July 28, 1976).  The HSR Act was not intended to "ease in any way the traditional burden of proof that must be borne by the government when it seeks equitable relief." *Id.* at 8.  Congress also intended the HSR Act only to require advance notice "for the very largest corporate mergers—about the 150 largest out of the thousands that take place every year," *id.* at 11, yet does not exclude the remaining thousands of transactions from the reach of Section 7.  The HSR Act therefore has no bearing on the scope of the acquisitions that are subject to challenge under the Clayton Act or the legal standard under which they are evaluated.

Case precedent also supports the interpretation that the word "acquisition" in the Clayton Act is not limited to transactions as originally agreed upon or disclosed in an HSR filing.  First, the agencies have challenged dozens of acquisitions under Section 7 that were not subject to an HSR filing.[2]  Second, as discussed in response to Question 2 below, both agencies and Courts routinely apply Section 7 to acquisitions as modified by further agreements or divestitures proposed during the review process, making clear that the "acquisition" relevant for purposes of

---

[2]      *See, e.g.*, Leslie Overton, Deputy Assistant Attorney General, Non-reportable Transactions and Antitrust Enforcement (2014), *available at* https://www.justice.gov/atr/file/517791/download; J. Thomas Rosch, Commissioner, Remarks to the ABA Section of Antitrust Law at 2 (2012) *available at* https://www.ftc.gov/sites/default/files/documents/public_statements/consummated-merger-challenges-past-never-dead/120329springmeetingspeech.pdf.

the Clayton Act is the one that will actually occur, regardless of what the acquisition looked like when initially announced or disclosed in an HSR filing.

**Question 2:**  Putting aside the June 30, 2023 execution deadline, could Defendants have withdrawn their original HSR filing and refiled the proposal with the divestiture?  *See* March 14, 2023 Hr'g Tr. 33:3-37:3.

**Answer:**  Yes.  However, refiling an HSR would have been a major departure from decades of agency practice under regulations that exempt divestitures subject to court order from the filing requirement, and the government provided no notice that it expected the Defendants to take a contrary approach here.  Refiling also would have been futile because DOJ already had unilaterally terminated discussions with the parties regarding the divestiture and decided to challenge the transaction in Court, knowing full well that DOJ would be challenging a different transaction from the transaction as originally proposed.

The "principal purpose" of the HSR Act is "to facilitate Government identification of mergers and acquisitions likely to violate federal antitrust laws before the proposed deals are consummated."  *Pharm. Rsch. & Mfrs. of Am. v. F.T.C.*, 790 F.3d 198, 199 (D.C. Cir. 2015); *see also United States v. Blavatnik*, 168 F. Supp. 3d 36, 47 (D.D.C. 2016) (The HSR Act remedied situations in which "the agencies' only recourse was to sue to unwind the parties' merger.").  The House Judiciary Committee explained that the HSR Act was intended to "help prevent the consummation of so-called 'midnight' mergers, which are designed to deny the government any opportunity to secure preliminary injunctions."  H.R. Rep. No. 94-1373, at 11 (July 28, 1976).

The regulations implementing the HSR Act contain various exemptions from the statute's reporting requirement, including "acquisitions subject to order."  16 C.F.R. § 802.70.  The Statement of Basis and Purpose for revisions to this regulation articulate the agencies' understanding of Congress' intent in enacting the HSR Act:

Congress wanted to assure that large acquisitions were subjected to meaningful

> scrutiny under the antitrust laws prior to consummation. To this end, Congress expressly intended to eliminate the large "midnight merger," which is negotiated in secret and announced just before, or sometimes only after, the closing takes place. . . . Thus, the act requires that the antitrust agencies receive prior notification of certain acquisitions, provides certain tools to facilitate a prompt, thorough investigation of the competitive implications of those acquisitions; and assures the enforcement agencies an opportunity to seek a preliminary injunction before the parties to an acquisition are legally free to consummate it, reducing the problem of unscrambling the assets after the transaction has taken place.

Premerger Notification, 63 Fed. Reg. 34,592, 34,593 (June 25, 1998).  The regulations exempt acquisitions from the HSR Act's reporting requirements if the acquisition is "pursuant to and in accordance with:  (a) an order … of any Federal court in an action brought by the Federal Trade Commission or the Department of Justice; … or (c) a proposal for a consent judgment that has been submitted to a Federal court by the Federal Trade Commission or the Department of Justice and that is subject to public comment."  16 C.F.R. § 802.70.  The agencies clearly explained why exempting acquisitions either (1) pending review by a Federal court or (2) subject to a negotiated consent decree, is consistent with Congressional intent and does not circumvent agency review:

> The agencies have recognized that there is no need for filing under HSR in these circumstances. Under existing procedures the agencies already review divestitures required by final orders. This review gives the agencies the full opportunity to weigh the competitive impact of the proposed transaction prior to consummation and to prevent the transaction if appropriate, the same goal that HSR was designed to accomplish.

Premerger Notification, 63 Fed. Reg. at 34,593.  The Statement of Basis and Purpose for the original exemption is consistent with this rationale:

> Because the information normally obtained by the courts, the Commission, or the Department of Justice in these divestiture situations will be much the same as that required by the Notification and Report form, the Commission determined that the imposition of the act's requirements was unnecessary. These groups of acquisitions are by their nature already subject to careful antitrust scrutiny by the agencies.

Premerger Notification, 43 Fed. Reg. 33,450, 33,505 (July 31, 1978).

For many decades, the agencies and courts have evaluated divestitures without requiring a

further HSR filing pursuant to the above regulations.  DOJ routinely asks courts to approve consent decrees negotiated with the merging parties that involve divestitures that were never reported under the HSR Act.[3]  In fact, the Government has negotiated—and sought court approval for—more than 70 divestitures to resolve Section 7 concerns since 2000 alone.  *See generally* Antitrust Case Filings, U.S. Dep't of Justice, *available at* https://www.justice.gov/atr/antitrust-case-filings?f%5B0%5D=field_case_type%3Acivil_merger (last visited Mar. 27, 2023).  This is the process Defendants sought to engage in with DOJ here.

In situations where the agencies and the merging parties are unable to negotiate a divestiture as part of a consent decree, the agencies then bring lawsuits in court.  Courts have considered numerous divestitures in this context without requiring an HSR filing.  *See, e.g.*, *UnitedHealth*, 2022 WL 4365867, at *15 n.8 (ordering divestiture pursuant to HSR Act exemption in 16 C.F.R. § 802.70); *see also infra*, n.4.  In an analogous situation where the parties modified a transaction agreement, the court in *Libbey* rejected the FTC's argument that, by doing so, the defendants "sought to evade FTC and judicial review" and that therefore "the Court should evaluate the original agreement" that was reported pursuant to the HSR Act.  211 F. Supp. 2d at 46.  Defendants are aware of no contrary precedent in which, despite the regulatory exemption, a court or agency required an additional HSR filing for a divestiture resolved through litigation or a negotiated consent decree.  Here, DOJ was well aware that ASSA ABLOY would be selecting a divestiture buyer during litigation, negotiated a deadline for doing so and a period for divestiture-related discovery, and never even hinted that an additional HSR filing was somehow required.

Finally, a new HSR filing would have been futile.  After a lengthy investigation, DOJ

---

[3]    *See, e.g.*, *United States v. Deutsche Telekom AG*, No. CV 19-2232 (TJK), 2020 WL 1873555, at *7 (D.D.C. Apr. 14, 2020); *United States v. CVS Health Corp.*, 407 F. Supp. 3d 45, 54-56 (D.D.C. 2019); *United States v. Newpage Holdings Inc.*, No. 14-CV-2216 (TSC), 2015 WL 9982691, at *5-6 (D.D.C. Dec. 11, 2015).

decided to file a lawsuit to block the transaction at issue here, *despite* the proposed divestiture. Defendants made their HSR filings on September 29, 2021, almost 18 months ago.  At the request of DOJ, Defendants "pulled and refiled" their HSR submission, restarting the 30-day waiting period.  On December 2, 2021, DOJ sent Defendants a "second request" for information, which extended the waiting period until 30 days after the parties certified compliance with the request. On February 16, 2022, Defendants agreed to DOJ's request for a "timing agreement" that both extended the waiting period to 80 days after the parties certified compliance and, in the event of litigation, prohibited Defendants from closing the transaction until 10 days after the Court issues an order.  On May 4, 2022, Defendants certified compliance with the second request.

In May 2022, Defendants began discussing a divestiture with DOJ to resolve DOJ's concerns.   DOJ outlined what a divestiture would need to include, and on May 17, 2022, Defendants presented a proposal to DOJ that addressed those concerns.  Defendants hoped that the proposal would lead to a resolution of DOJ's concerns through a consent order.  To facilitate that process, Defendants agreed to DOJ's request to toll the 80-day waiting period while the parties discussed the proposal.  Over the ensuing six weeks (a period longer than the HSR 30-day waiting period), Defendants expanded the divestiture proposal in response to numerous questions posed by DOJ.  Nevertheless, following extensive dialogue, DOJ rejected the proposal and unilaterally terminated the tolling agreement effective July 8, 2022.  *See* Ex. 1 (July 1, 2022 email from Matthew Huppert).  DOJ's rejection of the divestiture proposal restarted the waiting period, which the parties further agreed to extend to September 19, 2022, for a total *extension* of the statutory HSR waiting period of about *140 days*.  DOJ filed its complaint in this Court on September 15, 2022.  That complaint alleges that "Defendant's proposed divestitures are insufficient to remedy the proposed transaction's anticompetitive effects."  Compl., ECF No. 43, ¶¶ 80-85.

As evidenced by the above timeline, and as further discussed below in response to Question 4, DOJ had an extensive opportunity to evaluate the divestiture, other than the identity of the buyer, and even had the opportunity to make modifications to that divestiture proposal.  Had DOJ not terminated those discussions, the parties could have entered into a consent decree that would have allowed DOJ input on the selection of a divestiture buyer, which is routine with consent decrees. However, DOJ instead decided to file the Complaint seeking to block the transaction, specifically alleging that the transaction (even taking the proposed divestiture into account) likely would substantially lessen competition.  Compl. ¶¶ 80-85.  The Congressional intent of the HSR Act would not have been served by ASSA ABLOY's submission of  another HSR filing because the divestiture was no surprise and the revised transaction was no "midnight merger"—DOJ could freely investigate or litigate with no risk that DOJ would need to "unscrambl[e]" Defendants' assets after consummation of the transaction.  Premerger Notification, 63 Fed. Reg. at 34,593. There also is no precedent for such an HSR filing given the regulation set forth in 16 C.F.R. § 802.70 that exempts acquisitions made pursuant to a court order or negotiated consent decree from the HSR reporting requirement.  Because both the letter and purposes of the HSR Act have been met, the Court should proceed under that exemption when evaluating whether the proposed transaction, including the divestiture, is likely to substantially lessen competition.

**Question 3:**  Word-for-word, what exactly are the burdens under the *Baker Hughes* burden-shifting framework?  *See* March 14, 2023 Hr'g Tr. 40:7-12.

**Answer:**  At step one, DOJ must "show[ ] that a transaction will lead to undue concentration in the market for a particular product in a particular geographic area," thus establishing "a presumption that the transaction will substantially lessen competition."  *Baker Hughes*, 908 F.2d at 982.  DOJ "can carry its initial burden of production simply by presenting market concentration statistics."  *Id.* at 992.  For reasons discussed above and in Defendants'

Pretrial Brief, DOJ must address the divestiture to satisfy its *prima facie* burden, and therefore the "transaction" to be assessed at step one of the *Baker Hughes* framework is that transaction with the divestiture.  *See* Defs.' Pretrial Brief, ECF No. 58, at 3-4 (collecting cases).

At step two, the "burden of producing evidence to rebut this presumption then shifts to the defendant." *Id.* at 982.  "A defendant can make the required showing by [1] affirmatively showing why a given transaction is unlikely to substantially lessen competition, or [2] by discrediting the data underlying the initial presumption in the government's favor." *Id.* at 991.  In other words, "a defendant seeking to rebut a presumption of anticompetitive effect must show that the prima facie case inaccurately predicts the relevant transaction's probable effect on future competition." *Id.* As discussed in Defendants' Pretrial Brief, even assuming that the Court adopts the government's view that the divestiture should be ignored in step one, a defendant easily hurdles this "low bar" by "show[ing] that the market share statistics give an inaccurate account of the merger's probable effects on competition in the relevant market." *See* Defs.' Pretrial Brief at 5-6 (quoting *United States v. Anthem, Inc.*, 236 F. Supp. 3d 171, 192 (D.D.C. 2017).

At step three, "the burden of producing additional evidence of anticompetitive effect shifts to the government, and merges with the ultimate burden of persuasion, which remains with the government at all times." *Id.* at 983.  In other words, DOJ must convince the factfinder by a preponderance of the evidence that the proposed transaction is likely to substantially lessen competition in a relevant market.  15 U.S.C. § 18; *Anthem,* 236 F. Supp. 3d at 178.  In the context of a divestiture, this requires evaluating factors such as "the likelihood of the divestiture; the experience of the divestiture buyer; the scope of the divestiture[;] the independence of the divestiture buyer from the merging seller; and the purchase price." *F.T.C. v. RAG-Stiftung*, 436 F. Supp. 3d 278, 304 (D.D.C. 2020).  The burden of proof "remains with the government at all times."

*Baker Hughes*, 908 F.2d at 981-83.  Since Fortune Brands does not currently compete in either relevant market, DOJ cannot carry its burden by showing that competition will be eliminated.  Any head-to-head competition is preserved post-divestiture.  Therefore, DOJ must show that the divested businesses will be so unsuccessful under Fortune Brands that the divestiture will cause a likely substantial lessening of competition.  DOJ cannot do so.

**Question 4:**  If DOJ has the burden at step one of the *Baker Hughes* framework to show a substantial lessening of competition, post-divestiture, how can that be reconciled with the fact that DOJ did not receive notification of the proposed divestiture via an HSR Act filing?  *See* March 14, 2023 Hr'g Tr. 44:23-46:17.

**Answer:**  Requiring DOJ to take a divestiture into account at step one of the *Baker Hughes* framework is consistent with the legislative history and regulations under the HSR Act, the case law, and decades of agency practice.  Parties routinely file HSR notifications on their initial transaction and then propose a divestiture to resolve any agency antitrust concerns as part of the consent decree process.  *See infra*, n.4.  That is what Defendants did here.  As a result, DOJ had an extensive opportunity to evaluate the proposed divestiture during both the investigation and this litigation.  Thus, there is no risk that the Defendants evaded review of the transaction under the Clayton Act, which is the principal motivating purpose of the HSR Act.

As discussed above in response to Question 2, the HSR Act was intended to "assure that large acquisitions were subjected to meaningful scrutiny under the antitrust laws prior to consummation" and to "assure[] the enforcement agencies an opportunity to seek a preliminary injunction before the parties to an acquisition are legally free to consummate it, reducing the problem of unscrambling the assets after the transaction has taken place."  Premerger Notification, 63 Fed. Reg. at 34,593.  That is why regulations specifically exempt acquisitions subject to court order or negotiated consent decree from HSR reporting.  16 C.F.R. § 802.70.  Agency practices have exempted divestitures from the HSR filing requirement in these circumstances for decades.

The legislative history also is clear that the HSR Act neither "alters the substantive legal standard of Section 7" nor "ease[s] in any way the traditional burden of proof that must be borne by the government when it seeks equitable relief." H.R. Rep. No. 94-1373, at 5, 8 (July 28, 1976). That burden requires the government to prove a likely and substantial lessening of competition, "on the basis of the record evidence relating to the market and its *probable* future." *Arch Coal*, 329 F. Supp. 2d at 116-17 (emphasis added). Courts therefore evaluate whether the plaintiff can carry that *prima face* burden in light of "the proposed acquisition agreement including the proposed divestiture." *UnitedHealth*, 2022 WL 4365867, at *10 n.5 ("[T]reating the acquisition and the divestiture as separate transactions that must be analyzed in separate steps" would allow the government to carry "its *prima facie* burden based on a fictional transaction and fictional market shares.").[4] As Defendants have shown, no court has held that non-reported divestitures should be ignored when evaluating a plaintiff's *prima facie* case under Section 7. *See* Defs.' Pretrial Brief at 3-4.

The fact that an HSR filing was unnecessary for the divestiture in this case under DOJ's regulations does not reflect an "end-run" around the HSR Act or somehow allow Defendants to evade review of the transaction and divestiture. Far from it—DOJ has had a full opportunity to investigate the transaction, including the divestiture. Under the HSR Act, DOJ is entitled to an initial 30-day period to review parties' HSR filings. 15 U.S.C. § 18a(b). DOJ also may (as it did here) issue a "second request" for additional information, which extends the waiting period by an additional 30 days following the parties' compliance with the request. *Id*. at § 18a(e). During the

---

[4]     *See also FTC v. Arch Coal Inc.,* No. 1:04-cv-005340JDB, ECF No. 67 at 7 (D.D.C. July 7, 2004) (holding that whether the "challenged transaction may substantially lessen competition . . . requires the Court to review the *entire* transaction in question") (emphasis added); *FTC v. RAG-Stiftung*, 436 F. Supp. 3d 278, 304-308 (D.D.C. 2020) (evaluating post-divestiture market concentration statistics); *FTC v. Sysco Corp.*, 113 F. Supp. 3d 1, 53-54 (D.D.C. 2015) (same).

investigation, Defendants produced over 1 million documents from 26 ASSA ABLOY custodians, 1.3 million documents from 22 Spectrum Brands custodians, more than 150 pages of interrogatory responses, numerous documents from subpoenaed non-parties, and 9 depositions of party and non-party witnesses.  That investigation phase took ten months.  Defendants voluntarily extended the waiting period from 30 days to 80 days, and also tolled that waiting period indefinitely while they engaged in settlement negotiations and DOJ considered the proposed divestiture.  If the Parties had reached an agreement, DOJ would have asked the Court to approve a consent decree, as it has for decades in other matters.  Instead, DOJ rejected the proposed divestiture, restarted the waiting period, and filed this lawsuit.  There was no gamesmanship by Defendants; nor have Defendants evaded the HSR Act's requirements.  Defendants engaged in good faith negotiations, and even revised their divestiture proposal to address DOJ's concerns—which is exactly how this process is supposed to work.  *Cf. Libbey*, 211 F. Supp. 2d at 46 n.27 (finding that defendants "made a good-faith effort to address the FTC's concerns regarding the agreement, which it seems is consistent with the policies underlying Section 7").

After the lawsuit was filed, moreover, DOJ had yet another opportunity to conduct extensive discovery for another five months.  That discovery involved the production of over 860,000 documents from 28 ASSA ABLOY custodians, over 100,000 documents from 22 Spectrum Brands custodians, numerous documents from 20 subpoenaed non-parties, and 29 depositions of party and non-party witnesses.  ASSA ABLOY also conducted an extensive bid process over five months to select the ultimate divestiture buyer, Fortune Brands.  DOJ has had the opportunity to conduct discovery related to Fortune Brands since December 1, 2022, and has done so, obtaining extensive document productions and deposing three Fortune Brands witnesses.

Finally, the equities in this case favor Defendants.  Defendants have been forthright with

DOJ about the divestiture, presenting it during the investigation, extending and later suspending the HSR review period to allow DOJ additional time to assess the divestiture, and adding assets to the divestiture at DOJ's request.  Defendants offered to vet potential buyers with DOJ in hopes of avoiding litigation.  When DOJ nonetheless rejected the divestiture and filed this lawsuit, it had a full opportunity to take discovery.  DOJ also changed decades of divestiture policy, without warning, several months after Defendants' HSR filing in this case.[5]  Finally, DOJ filed this lawsuit and stipulated to a Case Management Order that it agreed specifically provided for sufficient divestiture discovery.  DOJ never suggested that Defendants could have or should have refiled under the HSR Act.  The Court should not be concerned that DOJ has had an insufficient review in this case.  If, in future cases, courts do have such concerns, they can address them at that time.

**Question 5:**  DOJ does not have to prove in its *prima facie* case that defenses—like an efficiencies defense—do not apply.  So why does DOJ need to disprove the "divestiture defense" in their *prima facie* case?  *See* March 14, 2023 Hr'g Tr. 46:18-47:6.

**Answer:**  Defendants respectfully submit that a divestiture is not a "defense."  Instead, it is a fact regarding the transaction that affects the scope of the businesses that are being combined for purposes of Section 7.  DOJ need not "disprove" the divestiture.  Instead, DOJ must take the divestiture into account when attempting to carry its burden at step one of the *Baker Hughes* framework to "show[] that a transaction *will lead* to undue concentration in the market for a particular product in a particular geographic area."  908 F. 2d at 982 (emphasis added).  DOJ cannot simply show that a transaction that will never occur *would lead* to undue concentration if it were to hypothetically occur.  Defendants are aware of no court that has held that hypothetical market concentration statistics based on a fictional combination are sufficient to carry DOJ's *prima*

---

[5]      *See* Ex. 1 to Defs.' Pretrial Brief, ECF No. 58-1 at 4 (January 2022 remarks from assistant attorney general of DOJ antitrust division, stating that "we cannot accept anything less than an injunction blocking the merger" and "we need to be willing to take risks and ask the courts to reconsider the application of old precedents").

*facie* burden.  *UnitedHealth*, 2022 WL 4365867, at 10 n.5 (The government cannot carry "its *prima facie* burden based on a fictional transaction and fictional market shares.").

There is nothing unusual about holding DOJ to its burden of showing an actual increase in market concentration in an actual relevant market at step one of *Baker Hughes*.  Defendants frequently argue that the plaintiff's market definition is flawed at step one and therefore the plaintiff cannot meet its *prima facie* burden based on market share statistics.  *See e.g.*, *United States v. U.S. Sugar Corp.*, No. 21-1644 (MN), 2022 WL 4544025, at *19 (D. Del. Sept. 28, 2022).  DOJ's "Merger Guidelines contain a detailed discussion of [] factors that can overcome a presumption of illegality established by market share statistics," like an efficiencies argument.[6]  *Baker Hughes*, 908 F.2d at 985.  But a divestiture is fundamentally different from efficiencies because the divestiture means there is no presumption based on market concentration statistics to begin with.  *See supra*, n.4.  However, it is unnecessary to resolve this dispute because regardless of whether DOJ's hypothetical market concentration evidence fails at step one or at a later step of *Baker Hughes*, the end result is the same:  DOJ must prove a likely substantial lessening of competition under Section 7 of the Clayton Act.  *See* Defs.' Pretrial Brief.

## CONCLUSION

DOJ cannot survive step one of the *Baker Hughes* framework.  However, Defendants should prevail regardless because the divestiture necessarily rebuts DOJ's *prima facie* case, and DOJ cannot carry its ultimate burden of proving a likely and substantial lessening of competition under Section 7.  *See UnitedHealth*, 2022 WL 4365867, at *10 (concluding "that the evidence leads to the same result under either standard").

---

[6]     Such factors include the existence of powerful buyers, entry, efficiencies, and the failure or exit of the target's assets.  *See* 2010 Horizontal Merger Guidelines, *available at* https://www.justice.gov/atr/horizontal-merger-guidelines-08192010#8.

Dated:  March 27, 2023

Respectfully submitted,

/s/ *Justin Bernick*
Justin W. Bernick (DC Bar #988245)
Charles A. Loughlin (D.C. Bar #448219)
William L. Monts, III (DC Bar # 428856)
**HOGAN LOVELLS US LLP**
555 Thirteenth Street, NW
Washington, D.C. 20004
(202) 637-5600
justin.bernick@hoganlovells.com

/s/ *David Gelfand*
David I. Gelfand (D.C. Bar No. 416596)
Daniel P. Culley (D.C. Bar No. 988557)
**CLEARY GOTTLIEB STEEN &
HAMILTON LLP**
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 974-1500
Facsimile: (202) 974-1999
dgelfand@cgsh.com

*Counsel for Defendant ASSA ABLOY AB*

/s/ *Paul Spagnoletti*
Paul Spagnoletti
Greg D. Andres
Howard Shelanski
Nikolaus J. Williams
**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, NY 10017
(212) 450-4000
paul.spagnoletti@davispolk.com

*Counsel for Defendant
Spectrum Brands Holdings, Inc.*