**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

UNITED STATES OF AMERICA,

                 *Plaintiff*,

         v.

ASSA ABLOY AB, *et al.*,

                 *Defendants*.

Civil Case No. 22-2791-ACR

---

**FINAL PRETRIAL HEARING SUBMISSION OF**
**<u>PLAINTIFF UNITED STATES OF AMERICA</u>**

Plaintiff United States of America makes this submission in advance of the April 11, 2023 Pretrial Hearing pursuant to the Court's Minute Orders of March 24 and March 30, 2023.

## I.    Questions from the March 29 Hearing

### A.  A Court-Ordered Divestiture Is an Injunctive Remedy, Which the Court May Order Only If It First Finds a Violation of Section 7

The Court requested authorities supporting the proposition that a court-ordered divestiture is a remedy. We are not aware of any source of authority for this Court to order a divestiture in a Section 7 case except as an affirmative injunction. A "divestiture is a form of injunctive relief," *California v. Am. Stores Co.*, 495 U.S. 271, 275 (1990); *see* Dobbs, *Law of Remedies* § 2.9(1) ("divestiture of holdings to comply with antitrust laws" is an "injunctive order[]"), and injunctions are inherently remedial, *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311 (1982) ("[A]n injunction is an equitable remedy.").

Federal courts "are courts of limited jurisdiction," including with respect to their jurisdiction to order equitable relief. *United States v. Philip Morris USA, Inc.*, 396 F.3d 1190, 1192, 1197 (D.C. Cir. 2005). The Court's authority to order a divestiture here stems solely from Section 15 of the Clayton Act, 15 U.S.C. § 25, under which the United States brought this action. ECF No. 43 ¶ 86. Section 15 provides that "[t]he several district courts of the United States are invested with jurisdiction *to prevent and restrain violations* of this Act" and to "enjoin[] or otherwise prohibit[]" any "such violation." 15 U.S.C. § 25 (emphasis added). This jurisdictional grant is "only for forward-looking remedies that prevent and restrain violations of the Act" and is not "a plenary grant of equitable jurisdiction." *Philip Morris*, 396 F.3d at 1192, 1198 (examining same language in RICO Act). The power to order a divestiture is thus predicated on finding a "violation" for the Court to "prevent," "restrain," "enjoin[]," or "otherwise prohibit[]." 15 U.S.C. § 25; *see Shriver v. Woodbine Sav. Bank*, 285 U.S. 467, 478 (1932) ("[I]n every case conditions

precedent to the statutory liability must be satisfied before any form of remedy can be resorted to."); *Cause of Action Inst. v. OMB*, 10 F.4th 849, 854 (D.C. Cir. 2021) (jurisdiction "to prevent and restrain" "go[es] to the court's remedial authority"); *see also* ECF No. 59 at 8-9. For this reason, any order of divestiture—including the order Defendants seek here under 16 C.F.R. § 802.70(a) to bypass the HSR Act[1]—must be issued after finding a violation of the Clayton Act. *See Nat'l Soc. of Pro. Eng'rs v. United States*, 435 U.S. 679, 697 (1978) (court "was empowered to fashion appropriate restraints" because it "found . . . a violation of the Sherman Act").

Consistent with these principles, a Federal Trade Commission decision recently concluded that "the approach most faithful to the law" is to consider proposed fixes to challenged mergers "as a proposed remedy, at the remedy stage, following a finding of liability." *Illumina, Inc. and Grail, Inc.*, Dkt. No. 9401, Op. at 64 & n.42 (Mar. 31, 2023) (citing *Otto Bock HealthCare N. Am., Inc.*, 168 F.T.C. 324, 378-85 (2019)), *appeal docketed*, No. 23-60167 (5th Cir. Apr. 4, 2023). In evaluating the proposed fix in that case (a long-term supply agreement), the Commission found it was "evident" that the agreement is "a proposed remedy" because (1) it was offered to allay concerns regarding the acquisition, (2) it is "conditional on the closing of the Acquisition," and (3) "a Commission order would likely be required" to ensure the efficacy of the agreement. *Id.* at 62-63. All three circumstances also apply here. Similarly, the concurring opinion urged the "proposed remedy" should be part of defendants' burden on

---

[1] 16 C.F.R. § 802.70 requires a court to order, rather than merely allow, a divestiture. Section 802.70(a) originally exempted "assets [that] are to be acquired from an entity *ordered to divest such . . . assets by order . . . of any Federal court*." 43 Fed. Reg. 33,450, 33,547 (1978) (emphasis added); *see id.* at 33,505 (exemption refers to "divestiture orders issued . . . by a Federal court."); *id.* (rejecting comment that the rule "also should exempt acquisitions expressly *permitted* by the terms of Commission or Federal court orders") (emphasis added). When the regulation was amended to its current form, the agencies made clear the amendment carried forward that interpretation. 63 Fed. Reg. 34,592, 34,592 (1998).

rebuttal. Concurring Op. of Comm'r Christine S. Wilson at 4; *see* ECF No. 102 at 8-12.

### B.  Defendants Bear the Burden of Persuasion for the Divestiture They Propose

The Court asked for authorities addressing "affirmative defenses" in antitrust law and the burden of persuasion for such defenses. For defenses such as the failing or flailing firm defense, defendants bear the burden of proof. *See, e.g.*, *Citizen Pub. Co. v. United States*, 394 U.S. 131, 138-39 (1969) ("The burden of proving that the conditions of the failing company doctrine have been satisfied is on those who seek refuge under it."); *United States v. Gen. Dynamics Corp.*, 415 U.S. 486, 507 & n.14 (1974) ("A company invoking the defense" has "the burden of proving that the conditions of the failing company doctrine have been satisfied."). Defendants likewise bear the burden of persuasion on the proposed divestiture here. *Cf. United States v. Dairy Farmers of Am., Inc.*, 426 F.3d 850, 857 (6th Cir. 2005) (burden was on defendants to show challenge to original agreement was moot, which they did not carry by pointing to subsequent divestiture, and so district court had to evaluate original agreement).

### C.  HHI Measures Market Concentration, Not Competitive Intensity, and Courts Evaluate a Variety of Factors to Assess Competitive Intensity

The Court asked about the interplay between HHI and competitive intensity. HHI is "a standard measure of market concentration." *W. Res., Inc. v. Surface Transp. Bd.*, 109 F.3d 782, 785 (D.C. Cir. 1997). But reducing HHI levels is not, standing alone, sufficient to assess restoration of competition, because "[r]estoring competition requires replacing the *competitive intensity* lost as a result of the merger rather than focusing narrowly on returning to premerger HHI levels." *FTC v. Sysco Corp.*, 113 F. Supp. 3d 1, 72 (D.D.C. 2015). To assess competitive intensity, courts evaluate several other factors. *See United States v. Aetna, Inc.*, 240 F. Supp. 3d 1, 60, 64-74 (D.D.C. 2017) (evaluating multiple factors to find divestiture that fully de-concentrated relevant markets was insufficient to restore competition). Therefore, post-merger

HHI is not indicative of restoration of competition when other factors are at play, such as limits

on firms' ability or incentive to compete. *See, e.g.*, *id.* at 64-73 (lack of skills, insufficient assets,

lack of internal capacity, reduced incentive to compete); *Sysco*, 113 F. Supp. 3d at 74-78

(insufficient facilities, higher costs, insufficient product offering, lack of expertise, dependence

on competitor); *FTC v. Libbey, Inc.*, 211 F. Supp. 2d 34, 52 (D.D.C. 2002) (higher costs).

## II.    Evidentiary Issues

### A.  Pre-Complaint Settlement Discussions Are Not Admissible

Defendants' Exhibits 395-98 and 421-23 are documents relating to pre-complaint

settlement discussions with the Department of Justice "concerning a 'remedy proposal.'" Such

discussions are "not admissible . . . either to prove or disprove the validity . . . of a disputed

claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a).

Moreover, no fact witness listed on any party's final witness lists has personal knowledge of the

settlement discussions, Fed. R. Evid. 602, and the pre-complaint settlement discussions do not

bear on the merits of the United States' Section 7 claim, Fed. R. Evid. 401, 403. Thus, the Court

should not admit testimony or documents about the settlement discussions. To allow settlement

discussions to bear substantively on the merits of the proceeding would run afoul of the goals of

Fed. R. Evid. 408—free and candid negotiations—and risks chilling such future negotiations.

If the Court is inclined to admit evidence regarding the settlement discussions, either as

testimony or exhibits, there will be factual disputes about those discussions because the United

States respectfully disagrees with Defendants' characterization of the pre-settlement period.[2] For

the limited purpose of correcting the existing record on this issue, we note that the United States

---

[2] In the event the Court admits such evidence, the United States requests leave to supplement its exhibit list with additional documents regarding the discussions.

and Defendants' counsel engaged in good-faith discussions about the remedy proposal for several months, including after the formal settlement period ended. *See* Att. A. At the time the United States ended the settlement tolling period, the United States had advised Defendants' counsel about the United States' specific outstanding questions and concerns, including that representations made about the divestiture proposal were contradicted by ASSA ABLOY's internal documents. *See* Att. B. The United States also advised Defendants' counsel that it was willing to engage in further discussions if Defendants provided adequate answers to, or otherwise addressed, the United States' outstanding questions and concerns. Defendants' counsel responded by communicating that their proposal was their best and final offer. Given Defendants' position and the several fundamental outstanding questions and concerns that remained, the United States, as any party who is weighing the productivity of negotiations, elected to terminate the settlement tolling period. During the investigation, the United States determined that Defendants' unwillingness to modify their proposal would not result in a settlement that is in the public interest.[3] This set of facts—firms seeking pre-approval of an incomplete divestiture with many unresolved gaps and ambiguities—was the basis of the allegations in the Complaint about the divestiture.[4]

### B. Declarations Are Inadmissible Hearsay

The United States respectfully requests that all declarations be excluded as inadmissible

---

[3] The Tunney Act "provides that before a settlement agreement between the Department and a party charged with violating the antitrust laws can take effect, 'the court shall determine that the entry of such judgment is in the public interest.'" *Massachusetts Sch. of L. at Andover, Inc. v. United States*, 118 F.3d 776, 778 (D.C. Cir. 1997) (quoting 15 U.S.C. § 16(e)).

[4] The United States will consider all remedies that restore competition and is open to all avenues of resolution. To that end, the United States has advised Defendants of its interest in engaging a mediator and will update the Court should there be mutual interest in proceeding with mediation.

hearsay. *Bortell v. Eli Lilly & Co.*, 406 F. Supp. 2d 1, 8 (D.D.C. 2005) (noting that sworn declarations are "technically hearsay" (citation omitted)). But if this Court is inclined to admit declarations, it should only do so for declarations where a non-party was deposed during discovery.[5] Only declarations supported by deposition testimony bear "sufficient guarantees of trustworthiness" to overcome the rule against hearsay. Fed. R. Evid 807(a)(1). For a court to admit a declaration without deposition testimony, that court "must be 'confident . . . that the declarants' truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility.'" *Bortell*, 406 F. Supp. 2d at 9 (quoting *Lilly v. Virginia*, 527 U.S. 116, 136 (1999)). No circumstances relating to these declarations (other than their sworn nature, which is true of any declaration) would make their truthfulness "so clear."[6]

### C.  The Best Evidence Rule Does Not Support Defendants' Objections

Defendants object to two exhibits proposed by the United States on best-evidence grounds because "there are inaccuracies in the documents that were later corrected in subsequent, final drafts of the documents." Email from J. Bernick to Chambers (Mar. 20, 2023, 11:50 AM). The best evidence rule does not apply because that rule only requires "[a]n original writing, recording, or photograph . . . to prove its content," Fed. R. Evid. 1002, and Defendants do not dispute that the exhibits are originals.[7]  That the document may have been revised later does not impact the admissibility of the earlier version and is instead fodder for cross-examination.

---

[5] The United States has conditionally included one declaration on its exhibit list, PX359, for a witness that was deposed.  Defendants' declarations include three non-parties that were not deposed, DX290, DX306-307, and one declaration for a non-party that was deposed, DX296.

[6] Indeed, one of the declarations is a supplemental declaration that was used to "revise and clarify" a prior declaration made under penalty of perjury. DX307.

[7] To the contrary, Plaintiff's Exhibit 256 was used and authenticated at the deposition of Kent Winter. And Plaintiff's Exhibit 515 is the only non-duplicative version of this document produced by Defendants and in the possession of all parties.

Dated: April 7, 2023

Respectfully submitted,

/s/ *Matthew R. Huppert*

David E. Dahlquist
Senior Trial Counsel
UNITED STATES DEPARTMENT OF JUSTICE
ANTITRUST DIVISION
209 South LaSalle Street, Suite 600
Chicago, Illinois 60604
Email:  David.Dahlquist@usdoj.gov

Matthew R. Huppert (DC Bar #1010997)
Alexander D. Andresian (DC Bar #1602464)
Elizabeth A. Gudis
Alice A. Wang (DC Bar #198745)

Trial Attorneys
UNITED STATES DEPARTMENT OF JUSTICE
ANTITRUST DIVISION
450 Fifth Street N.W., Suite 8700
Washington, DC 20530
Telephone: (202) 476-0383
Email:  Matthew.Huppert@usdoj.gov

*Counsel for Plaintiff United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2023, I caused the foregoing to be filed with the Clerk of

Court using the Court's Electronic Document Filing System, which served copies on all counsel

of record.

/s/ Matthew R. Huppert
Matthew R. Huppert
*Counsel for Plaintiff United States of America*