**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*Plaintiff*,<br><br>v.<br><br>ASSA ABLOY AB<br><br>and<br><br>SPECTRUM BRANDS HOLDINGS, INC.<br><br>*Defendants.* | Case No. 1:22-cv-02791-ACR |

**DEFENDANTS' SECOND SUPPLEMENTAL PRE-TRIAL BRIEF**

## INTRODUCTION

Defendants ASSA ABLOY AB ("ASSA ABLOY") and Spectrum Brands Holdings, Inc. ("Spectrum Brands") submit this supplemental pretrial brief in response to the Court's minute order on March 24, 2023 directing the parties to address evidentiary disputes in advance of trial, and in response to the questions raised by the Court at the March 29, 2023 pretrial hearing.

## I.   EVIDENTIARY ISSUES RAISED BY THE PARTIES

### A.   Sworn declarations from known third parties are admissible under Rule 807.

The Parties procured several sworn declarations from third parties in the course of this litigation, all of which are admissible under Rule 807.  Defendants seek to admit into evidence sworn declarations from third parties Latch (DX290), GoKeyless (DX296), Direct Door Hardware (DX306), and Eufy (DX307).  The declarations of Latch, Direct Door Hardware, and Eufy correct or supplement statements those companies made in declarations previously provided to Plaintiff before the proposed divestiture with Fortune Brands was publicly announced.  Plaintiff seeks to admit one declaration from third-party Banner Door Hardware (PX359).

Plaintiff objects to the inclusion of sworn declarations from third parties, unless the third party was deposed.  The practical effect of Plaintiff's position is to exclude the supplemental declarations that clarified or amended statements made in previous declarations procured by Plaintiff.  That result would be unfairly prejudicial, and in any event has no foundation in the Federal Rules of Evidence.

Declarations are admissible if they are "supported by sufficient guarantees of trustworthiness" and "more probative on the point for which [they are] offered than any other evidence that the proponent can obtain through reasonable efforts."  Fed. R. Evid. 807.  Courts in merger litigations frequently admit and consider analogous sworn declarations.  *See, e.g., F.T.C.*

1

*v. Sysco Corp.*, 113 F. Supp. 3d 1, 21 (D.D.C. 2015) ("[t]he parties submitted a total of 185 declarations into evidence . . . ."). And in a bench trial, there is no risk of tainting a jury with purportedly unreliable evidence. *Cobell v. Norton*, 224 F.R.D. 1, 5 (D.D.C. 2004) (citing McCormick on Evidence, § 137 (2d ed.1972)).

The sworn third-party declarations are supported by sufficient guarantees of trustworthiness. The sworn declarations were made under penalty of perjury in proceedings with the government, and the third parties are known to both Plaintiff and Defendants. Plaintiff itself interviewed and procured initial sworn declarations from Latch, Direct Door Hardware, and Eufy. These third parties ultimately wished to clarify or amend their initial declarations after learning about the proposed divestiture to Fortune Brands. *See* DX290, DX306, DX307. Defendants promptly forwarded Plaintiff the supplemental sworn declarations from each third party. *See* Ex. 1, Ex. 2, Ex. 3. After receiving these supplemental declarations, Plaintiff chose not to depose (or were otherwise unable to secure their own counter declaration from) Latch, Direct Door Hardware, or Eufy, despite knowing how to contact each. Plaintiff cannot sincerely contest the trustworthiness of these sworn declarations.

The sworn declarations are also "more probative on the point for which [they are] offered than any other evidence that [Defendants] can obtain through reasonable efforts." Fed. R. Evid. 807. Defendants sought discovery from dozens of third parties in this action and have endeavored to avoid saddling third parties with avoidable burden. Procuring clarifying or counter declarations from third parties Latch, Direct Door Hardware, and Eufy was the most efficient and least burdensome way for these third parties to supplement their initial declarations, which were each signed prior to the public announcement of the proposed divestiture with Fortune Brands. The sworn declarations are therefore admissible under Rule 807.

**B.      Draft documents included on Plaintiff's exhibit list are inadmissible to the extent offered as final or complete documents.**

Plaintiff included two nonfinal documents, PX256 and PX515, on its exhibit list. Defendants reserve the right to object to these documents at trial or in post-trial briefing to the extent that Plaintiff attempts to rely on particular facts in these documents that are inaccurate or were later corrected in final versions of the documents.

PX256 contains previous iterations of attachments to the final Transition Service Agreement ("TSA"): the TSA Schedule and Exhibit A of the TSA.  The final versions of the TSA Schedule and Exhibit A of the TSA are included on the Joint Exhibit List at JX015 and JX033. Moreover, PX256 is plagued by numerous data discrepancies relative to the final documents.  For example, PX256 overstates the occupancy costs of one of Yale's warehouses by hundreds of thousands of dollars.  Over the course of multiple meet-and-confers, Plaintiff did not articulate a basis for retaining PX256, despite the Parties agreeing to jointly submit the final versions of these documents.  *See* JX015, JX033.

Likewise, PX515 is Fortune Brands' initial, unsigned offer letter to Jason Williams, President of ASSA ABLOY's United States and Canada Smart Residential business.  The details of Mr. Williams' employment with Fortune Brands have not yet been finalized, and PX515 does not reflect the ultimate terms of Mr. Williams' employment with Fortune Brands.

Defendants therefore reserve the right to object to both PX256 and PX515 to the extent Plaintiff tries to rely on particular facts in these documents that are inaccurate or were later corrected in final versions of the documents.

**C.      Defendants' exhibits demonstrating Plaintiff had adequate notice of the proposed divestiture are not barred by Rule 408.**

If necessary, Defendants intend to introduce several exhibits that demonstrate Plaintiff had notice of the proposed divestiture as early as May 2022, and that Plaintiff chose to terminate

settlement negotiations related to the proposed divestiture.  *See* DX395, DX396, DX397, DX398, DX421, DX422, DX423.  Plaintiff incorrectly asserts that these documents and communications are inadmissible pursuant to Rule 408 because they relate to settlement negotiations between the parties.  But Rule 408 only applies to evidence introduced "to prove or disprove the validity or amount of a disputed claim."  Fed. R. Evid. 408.  Rule 408(b) specifically exempts evidence introduced to "negat[e] a contention of undue delay," and the Advisory Committee Notes confirm that Rule 408 does not bar evidence intended to prove notice.  *See* Fed. R. Evid. 408, advisory comm. note (2006 Amendment).  Plaintiff put notice at issue in its Complaint, *see* ECF No. 1 at ¶¶ 80-85, and in its argument to the Court, *see* March 29, 2023 Hr'g Tr. 43:12-48:11, that the lack of a Hart-Scott-Rodino ("HSR") Act filing deprived Plaintiff of sufficient notice of the proposed divestiture.  Plaintiff cannot have it both ways by asserting lack of notice only to later seek to exclude evidence regarding that notice.  Defendants are entitled to present evidence to rebut Plaintiff's argument regarding inadequate notice.

## II.      ISSUES RAISED AT THE MARCH 29, 2023 PRETRIAL HEARING

The Court raised two issues at the March 29, 2023 pretrial hearing for Defendants to address.  First, the Court asked whether Defendants were aware of any "affirmative defenses" to a Clayton Act merger challenge other than the "failing firm" defense discussed in *United States v. General Dynamics Corp.*, 415 U.S. 486, 508 (1974).  *See* March 29, 2023 Hr'g Tr. 120:11-125:2.  Second, the Court requested that Defendants address Plaintiff's citation to *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1131 (D.C. Cir. 2009), made at oral argument.  *See* March 29, 2023 Hr'g Tr. 157:9-158:18.

### A.      Defendants are not aware of any alternative "affirmative defenses" to a Clayton Act merger challenge.

Defendants are not aware of any recognized "affirmative defense" to a Clayton Act merger

challenge outside of the "failing firm" defense established in *International Shoe Co. v. F.T.C.*, 280 U.S. 291 (1930).  And nothing in the text, structure, or legislative history suggests that a proposed divestiture—or any "defense" to a Clayton Act merger challenge for that matter—shifts the ultimate burden of persuasion to defendants under Section 7.

The "failing firm" defense only applies in the unique circumstance where (1) the company to be acquired is in imminent danger of failure; (2) there is no realistic prospect for successful reorganization under the bankruptcy laws; and (3) there is no other viable alternative purchaser. *See Dr. Pepper/Seven-Up Cos. v. F.T.C.*, 991 F.2d 859, 864-65 (D.C. Cir. 1993).  While there is authority for the proposition that defendants may bear the burden of proof with respect to these particular elements of the defense, *Citizen Publishing Co. v. United States*, 394 U.S. 131, 138-39 (1969), Defendants are aware of no authority that suggests that the "failing firm" defense shifts the ultimate burden of persuasion under Section 7 of the Clayton Act to defendants.

Indeed, the core holding of *Baker Hughes* is that the ultimate burden of persuasion never shifts to defendants.  *United States v. Baker Hughes Inc.*, 908 F. 2d 981, 983 (D.C. Cir. 1990) ("[T]he ultimate burden of persuasion . . . remains with the government at all times.").  As discussed in Defendants' Supplemental Pretrial Brief, there are a number of factors, sometimes referred to by courts as "defenses," that can overcome a presumption of illegality established by market concentration statistics at step two of the *Baker Hughes* framework.  *See* ECF No. 101 at 14.  For example, in *General Dynamics*, the Supreme Court found that the district court properly relied on evidence of the acquired firm's weakening financial position in declining to enjoin the proposed merger.  415 U.S. at 508.  But Defendants are not aware of any court that has held that a defendant bears the ultimate burden of persuasion under Section 7 when asserting such a defense.  And, as discussed in Defendants' prior submissions, a divestiture is fundamentally different

because a plaintiff should not be able to carry its *prima facie* burden at step one of the *Baker Hughes* framework based on hypothetical market concentration statistics from a fictional combination.  *United States v. UnitedHealth Grp. Inc.*, No. 1:22-cv-0481 (CJN), 2022 WL 4365867, at *10 n.5 (D.D.C. Sept. 21, 2022).  The proposed divestiture is more properly viewed as a fact about the transaction that affects the scope of the businesses being combined for purposes of Section 7, rather than a "defense."  *See* ECF No. 101 at 14.

**B.      Plaintiff's reliance on *Philip Morris* and *Zenith Radio* is misguided.**

Plaintiff cited *Philip Morris*, 566 F.3d at 1131, and *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 141 (1969) at oral argument, but neither case has anything to do with the burden of proof with respect to a divestiture in a Clayton Act merger challenge.  Plaintiff points to *Philip Morris* and *Zenith Radio* for the unremarkable proposition that courts enjoining a defendant's conduct must first find that a violation of the antitrust laws is "actual or threatened." *Zenith Radio*, 395 U.S. at 141.  But here, there has been no finding of a violation in the first place and there is no relief sought by Defendants.  Indeed, as a matter of contract, the proposed divestiture to Fortune Brands is certain to occur if the transaction with Spectrum Brands occurs. *See* ECF No. 50.  Defendants seek an order pursuant to 16 C.F.R. § 802.70 in the event the Court finds that Plaintiff cannot carry its ultimate burden of proving a likely and substantial lessening of competition under Section 7.  *See UnitedHealth*, 2022 WL 4365867, at *10.  But this does not somehow convert Defendants' agreed-upon divestiture transaction into a court-ordered remedy, much less one that flips the entire burden of proof under Section 7 of the Clayton Act.

## <u>CONCLUSION</u>

Defendants welcome the Court's questions at the April 11, 2023 pretrial conference.

Dated: April 7, 2023

Respectfully submitted,

/s/ *Justin Bernick*
Justin W. Bernick (DC Bar #988245)
Charles A. Loughlin (D.C. Bar #448219)
William L. Monts, III (DC Bar # 428856)
**HOGAN LOVELLS US LLP**
555 Thirteenth Street, NW
Washington, D.C. 20004
(202) 637-5600
justin.bernick@hoganlovells.com

/s/ *David Gelfand*
David I. Gelfand (D.C. Bar No. 416596)
Daniel P. Culley (D.C. Bar No. 988557)
**CLEARY GOTTLIEB STEEN &
HAMILTON LLP**
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 974-1500
Facsimile: (202) 974-1999
dgelfand@cgsh.com

*Counsel for Defendant ASSA ABLOY AB*

/s/ *Paul Spagnoletti*
Paul Spagnoletti
Greg D. Andres
Howard Shelanski
Nikolaus J. Williams
**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, NY 10017
(212) 450-4000
paul.spagnoletti@davispolk.com

*Counsel for Defendant
Spectrum Brands Holdings, Inc.*

7