# Exhibit 1

**ATTORNEY WORK PRODUCT – RULE 408 PROTECTED**

To achieve a divestiture that would allow the divestiture buyer to maintain the same competitive intensity as the current Yale business, the United States proposes a divestiture of the following assets. ("Fortune" and "Fortune Brands", as used below, means Fortune Brands so long as the divestiture and underlying merger close [*]substantially simultaneously; if not then provision for an alternate acquiror will need to be made in the event the divestiture is not completed. Fortune may be needed to be made a defendant by stipulation for purposes of enforcement of the proposed Final Judgment.)

1. All ~~assets and agreements previously offered as Divestiture Assets by Assa Abloy, including all assets subject to the December 1, 2022 SPA between Assa Abloy and Fortune Brands, as well as all additional agreements contained in the April 10, 2023 closing implementation letter between Assa Abloy and Fortune Brands, and any other agreements entered into by Assa Abloy and Fortune Brands, subject to the further assurances and wrong pockets clause in the SPA. These assets include all~~ Emtek~~-~~, Yale Smart Residential~~-~~, and August assets that had been previously proposed as part of a divestiture remedy, tangible and intangible, and whether in the U.S. or elsewhere~~.~~ previously offered as Divestiture Assets by ASSA ABLOY, including all assets subject to the December 1, 2022 SPA between ASSA ABLOY and Fortune Brands, as well as all additional agreements contained in the April 10, 2023 closing implementation letter between ASSA ABLOY and Fortune Brands, and any other agreements entered into by ASSA ABLOY and Fortune Brands, subject to the further assurances and wrong pockets clause in the SPA.

2. ~~In addition to the~~To the extent not already included in the assets and agreements described in 1., contemporaneous transfer at closing of the following IP assets associated with ~~Assa Abloy's~~ASSA ABLOY's Yale brand and related IP in the United States and Canada:

    a. Ownership and exclusive unrestricted use of the Yale brand name and the business goodwill associated therewith in the U.S. and Canada for all residential and multifamily smart lock[1] uses (including all interconnect ~~and nexTouch products~~ smart locks for residential and multifamily[2] uses and nexTouch smart locks for residential and multifamily uses and any future products with similar functionality and applications) without further limitation as to category or customer segment, subject to 2.c below;

    b. An exclusive irrevocable license to the Yale Access software platform in the United States and Canada for all uses in products or services described in 1. or 2.a;

---

[1] Settlement agreement will contain a definition of smart locks that carves out unrelated products.
[2] Settlement agreement will contain a definition of multifamily that covers mixed use buildings with an agreed upon magnitude of residential usage.

**ATTORNEY WORK PRODUCT – RULE 408 PROTECTED**

c. ~~Assa Abloy~~ASSA ABLOY shall have the right to use the Yale brand name in the US and Canada solely for commercial products for a transitional, wind- down period ~~for [*] months, and (i)~~as set forth in the transaction documents, and (i) in addition to its acquisition of residential Yale branded smart locks in connection with the acquisition of August Home, Inc. and ASSA ABLOY Residential Group Inc., Fortune shall purchase all of Seller's inventory as of Closing that is branded Yale ~~smart locks~~in the residential mechanical space subject to the terms and conditions of the supply agreement; (ii) ~~Assa Abloy~~ASSA ABLOY shall within **[*]** months following the closing commence a brand

**ATTORNEY WORK PRODUCT – RULE 408 PROTECTED**

transition for its Yale branded commercial products in the United States and Canada, which shall be completed no later than **[*]** months after commencement.

3. ~~Assa Abloy~~ASSA ABLOY and Fortune will perform their obligations under the SPA in a manner consistent with the implementation letter.

4. ~~Assa Abloy must transfer to Fortune the nonexclusive rights to use all patents, trademarks, designs, or other intellectual property necessary to effectuate 1) and 2).~~ If at any time after the closing, Fortune notifies ~~Assa Abloy~~ASSA ABLOY in writing of any Patents that (i) are owned by ~~Assa Abloy~~ASSA ABLOY or its Affiliates as of the Closing Date; (ii) are not licensed to an Acquired Entity under the Seller Patent License Agreement; and (iii) ~~are necessary to effectuate transfers contemplated in 1) or 2~~were used on or before the closing date in the Business (as defined in the SPA)) or contemplated to be used in connection with the Business' product roadmap provided to Fortune, such Patents shall automatically be deemed "Licensed Patents" (as defined in the Seller Patent License Agreement) and licensed to Buyer pursuant to the Seller Patent License Agreement effective as of the closing.

5. For a period of five (5) years following the closing, Fortune shall have the right to request a code base assessment of the Yale Access software platform once per year in order to inventory the proprietary libraries comprising the Yale Access Software and confirm whether any of the baseline libraries are included within ~~Assa Abloy's~~ASSA ABLOY's US or Canadian products.

6. A monitoring trustee selected ~~solely~~jointly by the United States, ASSA ABLOY, and Fortune Brands with power and authority to monitor compliance with the PFJ (including all portions of this term sheet) and interparty agreements. The term of the monitorship will be no longer than **[*]** years.

~~7.~~ In addition to any other rights provided for in the transaction agreements, ~~Assa Abloy~~ASSA ABLOY and Fortune will each have the right to initiate a mutually agreed upon expedited dispute resolution process in the event of a dispute over the extent of either party's rights under the transaction documents, including whether an application is multifamily, commercial or residential and all other intellectual property rights set forth in the agreements between the parties in connection with the transaction. In any such dispute over whether an application is multifamily, commercial or residential, ASSA ABLOY shall bear the burden of proof, and the losing party will pay all expenses. With respect to a dispute under the supply agreement~~, Assa Abloy and Fortune will each have the right to initiate a one-day binding arbitration by the monitoring trustee to be held within 5 days of notice by either party for the term of the monitorship. After the expiration of the~~

and

**ATTORNEY WORK PRODUCT – RULE 408 PROTECTED**

~~monitorship~~ until the expiration of the Final Judgment, <ins>ASSA ABLOY and Fortune will</ins> each ~~party will~~ have the right to initiate a one-day binding arbitration to be held within ~~30~~<ins>15</ins> days of notice by either party.

8. The term of the supply agreement may be extended, at the buyer's election, with respect to the ~~NextTouch~~<ins>nexTouch</ins> and the interconnect locks for a period of a total of **[*]** years (including the initial term). During this additional extension, the price for such products will escalate according to a mutually agreed escalation mechanism. ~~Disputes over the pricing term will be resolved by the monitoring trustee.~~

9. A damages provision whereby ~~Assa Abloy~~<ins>ASSA ABLOY</ins> will pay the United States $~~50,120~~**[*]** per day for every day after **[*]**, 2023 on which the closing in any of Vietnam, South Korea, or Hong Kong has not occurred <ins>to the extent any such delay is caused by ASSA ABLOY</ins>.

10. ~~Assa Abloy has represented that it is divesting all of the assets necessary for Fortune (or the other acquiror) to compete in residential smart locks and premium mechanical door hardware in the United States as intensely as Assa Abloy did before the Divestiture Date. If, anytime up to~~ **[*]**<ins>If, after three years following the closing and until the date that is five</ins> years from entry of this Final Judgment, the monitoring trustee determines, after investigation and consultation with ~~Assa Abloy~~<ins>ASSA ABLOY</ins> and Fortune (or the other acquiror), that:

    a. Fortune's (or the other acquiror's) competitive intensity in the residential smart locks ~~or premium mechanical door hardware~~ business has diminished relative to ~~Assa Abloy's~~<ins>ASSA ABLOY's</ins> competitive intensity in ~~those businesses~~<ins>that business</ins> before the Divestiture Date; and

    ~~b. Assets that were not conveyed to Fortune (or the other acquiror) as a part of the divestiture (whether or not those assets were supposed to have been conveyed to Fortune (or the other acquiror) pursuant to the divestiture) contributed in a non de minimus way to that diminishment in competitive intensity, then~~

    <ins>b. such diminishment in competitive intensity is due to limitations on Fortune's right to use the Yale marks in the United States and Canada previously held by ASSA ABLOY, then</ins>

   the monitoring trustee may provide a written report of the monitoring trustee's conclusions to the United States, and the United States, in its sole discretion, will have the ability to seek leave of the Court to re-open this proceeding and seek <ins>the transfer of</ins> additional ~~relief~~<ins>Yale trademark rights in the United States and Canada to Fortune Brands</ins>.

*[Link-to-previous setting changed from original to modified.]* **ATTORNEY WORK PRODUCT – RULE 408 PROTECTED**

11. All procedural provisions of the United States' standard Final Judgment shall apply and the United States retains and reserves all rights to enforce the provisions of the Final Judgment.

|  |  |
|---|---|
| **Summary report:** <br> **Literа® Change-Pro for Word 10.10.0.103 Document comparison done on 4/30/2023 8:01:33 PM** | |
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** Friday Term Sheet Final (Rule 408).docx | |
| **Modified filename:** Revised Term Sheet (April 30).doc | |
| **Changes:** | |
| Add | 42 |
| Delete | 41 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 83 |