# Exhibit 2

# HAUSFELD.

888 16th Street NW
Suite 300
Washington DC 20006

T: +202 540 7200

## ENGAGEMENT AGREEMENT FOR SERVICE OF
## MELINDA R. COOLIDGE AS MONITORING TRUSTEE

On August 22, 2023, Melinda R. Coolidge was appointed by a United States court with lawful jurisdiction (the "Court") to serve as the Monitoring Trustee in *United States v. ASSA ABLOY AB*, et al., Case No. 1:22-cv-02791-ACR (D.D.C.). This letter agreement (the "Agreement") sets forth the agreement between Hausfeld and ASSA ABLOY AB ("ASSA ABLOY") with respect to Melinda R. Coolidge's service as the Monitoring Trustee.

## Effect of Court Orders

ASSA ABLOY understands and agrees that where this Agreement conflicts with the terms of any Court order, including the Final Judgment, May 5, 2023 Asset Preservation Stipulation and Order, and Amended Stipulated Protective Order and Order Governing Production of Investigation Materials ("Protective Order") (each an "Order," and together the "Orders"), the Order shall control.

The Final Judgment, Asset Preservation Stipulation and Order, and Protective Order are attached as Exhibits A, B, and C to this Agreement and are incorporated by reference.

## Power, Authority, Responsibilities, and Obligations

The Monitoring Trustee shall have all power, authority, responsibilities, and obligations conferred upon her by the Court necessary to execute her duties as Monitoring Trustee in the above-captioned matter as set out in the Orders (the "Monitorship"). Nothing in this Agreement shall change, amend, modify, or otherwise expand or limit those powers or responsibilities.

## Access and Information

Subject to the provisions of the Protective Order and solely to the extent necessary to fulfil her obligations under the Final Judgment, the Monitoring Trustee shall have full and complete access to (i) ASSA ABLOY's employees or agents who have knowledge relevant to the proper discharge of the Orders and ASSA ABLOY's obligations with respect to the December 1, 2022 Stock Purchase Agreement between ASSA ABLOY and Fortune and all ancillary agreements attached thereto; (ii) ASSA ABLOY's books

AMSTERDAM | BERLIN | BOSTON | BRUSSELS | DÜSSELDORF | LONDON | NEW YORK | PARIS | PHILADELPHIA | SAN FRANCISCO | STOCKHOLM | WASHINGTON, DC

and records; and (iii) ASSA ABLOY's facilities. Such access shall include the right to copy documents and interview employees, either informally or on the record. ASSA ABLOY will provide access to its employees and facilities at times mutually-agreeable to the Monitoring Trustee and ASSA ABLOY, and shall use reasonable best efforts to promptly respond to requests for information or documents and to arrange meetings and discussions (including tours of facilities, site visits, inspections, and interviews).

Nothing in this Agreement shall be construed as a waiver of any legally recognized claim of privilege.

All reports by the Monitoring Trustee submitted to the United States will be labeled "CONFIDENTIAL" when submitted to the United States. Unless ordered by the Court, the Monitoring Trustee will not file on the public docket any such report labeled as CONFIDENTIAL. If the Monitoring Trustee is required to file a report on the public docket, the Monitoring Trustee shall provide such report to ASSA ABLOY prior to filing, unless the Monitoring Trustee is expressly ordered by the Court to do otherwise. ASSA ABLOY may, in good faith, ask for Confidential Information (as defined in the Protective Order), information derived from Confidential Information, and personally identifiable information to be redacted or placed in a confidential schedule or exhibit prior to filing such report and the Monitoring Trustee shall take the requested steps to protect that information. In the event that the Court expressly orders the Monitoring Trustee not to submit a report to ASSA ABLOY prior to filing it on the public docket, the Monitoring Trustee will take reasonable steps to ensure that information she reasonably believes to be Confidential Information, information derived from Confidential Information, and personally identifiable information is redacted or contained in a confidential schedule or exhibit prior to filing such report.

At the request of an interviewee, the Monitoring Trustee may exclude counsel for ASSA ABLOY from interviews. Any person interviewed by the Monitoring Trustee or a member of the Monitoring Trustee Team shall be entitled to have their personal counsel present for the duration of any such interview.

**Term and Termination**

This Agreement shall expire upon the earliest of (a) the expiration or termination of the Orders, (b) the appointment by the Court of a substitute Monitoring Trustee (or, if sooner, the date the Monitoring Trustee no longer serves in such capacity) pursuant to Article X(K) of the Final Judgment, (c) the death or resignation of the Monitoring Trustee, or (d) the occurrence of all of the events specified in Article X(J) of the Final Judgment. Upon the termination or expiration of this Agreement, the confidentiality obligations set forth in this Agreement will remain in force, as will the compensation provisions (with respect to fees already accrued and costs and expenses already

incurred by the Monitoring Trustee and Monitoring Trustee Team pursuant to confidential Schedule A attached hereto) and indemnification provisions.

**Monitoring Trustee and Team**

The Monitoring Trustee will be assisted by agents, investment bankers, attorneys, accountants, or consultants reasonably necessary for the Monitorship, who will be solely accountable to the Monitoring Trustee, (each, a "member of the Monitoring Trustee Team" and together, the "Monitoring Trustee Team"), as identified in confidential Exhibit D to this Agreement, as amended; provided, (a) prior to becoming a member of the Monitoring Trustee Team, any additional member shall execute Appendix A to the Protective Order; and (b), within three (3) business days of engaging any additional member of the Monitoring Trustee Team, the Monitoring Trustee shall notify the United States and ASSA ABLOY in writing of such engagement and provide the rate of compensation for such additional proposed member. The Monitoring Trustee may modify the Monitoring Trustee Team at any time by (1) delivering an amended confidential Exhibit D to ASSA ABLOY and the United States, (2) providing the United States with a copy of Appendix A to the Protective Order executed by any additional members, and (3) confirming that any additional members do not have a conflict as described in the "Other Engagements" section of this letter.

Any request for access to personnel, books, records, and facilities by a member of the Monitoring Trustee Team, shall be treated by ASSA ABLOY as a request from the Monitoring Trustee herself, subject to the terms of this Agreement.

**No Agency, Attorney-Client or Fiduciary Relationship**

The Monitoring Trustee and the members of the Monitoring Trustee Team shall not be treated for any purpose as an agent, employee, consultant, advisor, legal counsel or affiliate of ASSA ABLOY. No attorney-client relationship shall be created between ASSA ABLOY and any other person or entity as a result of this Agreement. The Monitoring Trustee and the Monitoring Trustee Team shall not owe any fiduciary duties to ASSA ABLOY or its directors, officers, employees, agents, security holders or creditors and no employment relationship shall exist between the Monitoring Trustee or any member of the Monitoring Trustee Team and ASSA ABLOY.

**Confidentiality and Non-Disclosure**

The Monitoring Trustee and Monitoring Trustee Team shall be bound by the Protective Order in connection with the Monitorship concerning ASSA ABLOY.

In the event the Monitoring Trustee or a member of the Monitoring Trustee Team is requested pursuant to applicable law, regulation, or legal or judicial process, including

through a subpoena for documents or testimony ("Applicable Law"), to disclose Confidential Information, or any materials or information relating to the Monitoring Trustee's or Monitoring Trustee Team's performance of services relating to the Monitorship, the Monitoring Trustee will, except as otherwise required by Applicable Law, promptly notify the United States and ASSA ABLOY so that they may seek a protective order or other similar or appropriate relief. The Monitoring Trustee and the Monitoring Trustee Team agrees that it will not oppose any reasonable action taken by ASSA ABLOY or the United States to obtain such protective order or other similar or appropriate relief. In the event ASSA ABLOY is requested pursuant to Applicable Law to disclose any materials or information relating to the Monitoring Trustee's or Monitoring Trustee Team's performance of services relating to the Monitorship, ASSA ABLOY will, except as otherwise required by Applicable Law, promptly notify the United States and the Monitoring Trustee so that they may seek a protective order or other similar or appropriate relief. ASSA ABLOY agrees that it will not oppose any reasonable action taken by the Monitoring Trustee, any member of the Monitoring Trustee Team, or the United States to obtain such protective order or other similar or appropriate relief. ASSA ABLOY and the Monitoring Trustee and the members of the Monitoring Trustee Team will reasonably cooperate with one another in responding to any request pursuant to Applicable Law. For the avoidance of doubt, in the event the Monitoring Trustee or Monitoring Trustee Team must respond or object to any such request, ASSA ABLOY will compensate the Monitoring Trustee or Monitoring Trustee Team for costs (including time and expenses such as attorneys' fees) incurred in responding or objecting to such request, according to the provisions of confidential Schedule A attached hereto and the "Indemnification" section below, as applicable.

The Monitoring Trustee will inform the United States and ASSA ABLOY if the Monitoring Trustee has reason to believe that Confidential Information may have been disclosed in a manner inconsistent with the Protective Order or this Agreement (including but not limited to a data breach). Each member of the Monitoring Trustee Team shall inform the Monitoring Trustee if it has reason to believe that Confidential Information may have been disclosed in a manner inconsistent with the Protective Order or this Agreement (including but not limited to a data breach). Notwithstanding any return or destruction of Confidential Information, all Confidential Information will continue to be subject to the provisions of the Protective Order and this Agreement.

**Fees and Expenses**

ASSA ABLOY agrees to pay the Monitoring Trustee and Monitoring Trustee Team's reasonable fees, costs and expenses incurred in connection with the Monitorship. ASSA ABLOY shall compensate the Monitoring Trustee for her services and expenses, and the services and expenses of the Monitoring Trustee Team, in accordance with the

4

confidential Schedule A attached hereto.

**Other Engagements**

While this Agreement is in effect, absent an express written waiver from ASSA ABLOY to be given in its sole discretion, the following terms of this "Other Engagements" section shall apply:

a. The Monitoring Trustee and individual persons who are members of the Monitoring Trustee Team shall not personally represent or provide services to clients in any matter adverse to ASSA ABLOY or its affiliates (as identified in an ordinary-course conflicts check).

b. No person who is a partner or employee of a firm or a company associated with a member of the Monitoring Trustee Team (other than Bates White) shall represent or provide services to clients in any matter adverse to ASSA ABLOY or its affiliates (as identified in an ordinary-course conflicts check) unless (i) the representation is not substantially related to the Monitorship; (ii) firewalls are implemented between all members of the Monitoring Trustee Team and the other members of the firm or company working on such other matter; and (iii) the representation has been cleared by the Department of Justice under its normal practice of evaluating such issues for monitoring trustees.

c. Neither the Monitoring Trustee, nor individual persons who are members of the Monitoring Trustee Team, nor any person who is a partner or employee of a firm or a company (other than Bates White) associated with a member of the Monitoring Trustee Team shall represent or provide services to the third parties identified on the attached <u>Exhibit E</u> if the representation or services provided are substantially related to the Monitorship.

d. No person who is a partner or employee of Bates White (excluding the Bates White members of the Monitoring Trustee Team, who are subject to the restrictions in section a., above) shall provide services on behalf of or adverse to ASSA ABLOY or its affiliates, or on behalf of the third parties identified on the attached <u>Exhibit E</u>, in the Monitorship proceeding, including direct follow-on litigation or other direct follow-on proceedings arising from the underlying merger, divestiture, or Monitorship. Bates White shall ensure that all electronic files containing confidential information relating to the work provided under this Agreement are protected by appropriate passwords and/or permissions such that they may be accessed only by authorized members of the Monitoring Team. Consistent with Bates White's ordinary practice, its partners and employees will not discuss confidential information relating to matters outside their respective

engagement teams. To the extent partners or employees of Bates White, other than members of the Monitoring Trustee Team, wish to take an engagement adverse to ASSA ABLOY or its affiliates, Bates White will provide advance notice to the Department of Justice, consistent with its confidentiality obligations to other clients. If the representation is not cleared by the Department of Justice under its normal practice of evaluating such issues for monitoring trustees and Bates White wishes to proceed with the engagement, Bates White will withdraw from the Monitoring Team, and section a. above shall still apply.

To the extent any member of the Monitoring Trustee Team is added following the date hereof, such member shall confirm that it does not have any conflicts as described above.

This Agreement does not limit ASSA ABLOY's ability to inform the Court if it believes that work on a particular matter adverse to ASSA ABLOY or its affiliates by a partner or employee of a firm or a company associated with a member of the Monitoring Trustee Team impedes the actual or apparent independence of the Monitorship. Nor does this Agreement limit ASSA ABLOY's ability to bring concerns about the engagement of a partner or employee of a firm or a company associated with a member of the Monitoring Trustee Team in a matter adverse to ASSA ABLOY or its affiliates to the attention of the adjudicator(s) in such a matter.

**Indemnification and Limitation of Liability**

ASSA ABLOY shall indemnify, defend and hold harmless the Monitoring Trustee, Hausfeld LLP, and the members of the Monitoring Trustee Team, Stoneturn Group LLP, and Bates White (in such capacity, an "Indemnified Person") from and against any and all third-party claims, damages, losses, liabilities, obligations, demands, charges, suits, judgments, penalties, fines, awards, settlements, fees, costs and expenses of any type whatsoever (whether in contract, tort or otherwise, and including without limitation the duty to defend and indemnify against any claims for damages, injunctive relief, or any other relief, including but not limited to special, indirect, consequential or punitive damages, court costs, attorneys' fees and other actual costs of counsel who may be selected in the sole discretion of the Indemnified Person), and any other liabilities or expenses of any nature, that may be incurred, sustained, suffered, paid or accrued by or asserted or awarded against the Indemnified Person ("Third-Party Liabilities"), in connection with, based upon, resulting from, attributable to, related to or arising directly or indirectly out of the Monitorship, the Orders and this Agreement, or any services or other action taken in connection with the Monitorship or this Agreement, except to the extent that such Third-Party Liabilities result from bad faith, willful misconduct, or a willful, material breach of this Agreement by the Indemnified Person. ASSA ABLOY must indemnify the Indemnified Person from Third-Party Liabilities to the fullest extent

required by the terms of this Agreement until a court enters a final order finding the Indemnified Person engaged in bad faith, willful misconduct, or made a willful, material breach of this Agreement and all appellate rights concerning that order have been exhausted; provided, in the event a court enters such a final order and all appellate rights concerning that order have been exhausted, the Indemnified Person shall promptly repay to ASSA ABLOY all amounts paid by ASSA ABLOY to such Indemnified Person pursuant to this indemnification section in connection with such matter.

This indemnification applies to any Third-Party Liability whatsoever and shall be effective regardless of whether the obligations of the Monitoring Trustee under the Orders have been fulfilled. ASSA ABLOY's indemnity obligations under this Agreement shall be the sole remedy available from ASSA ABLOY and their respective affiliates to the Indemnified Person. For the avoidance of doubt, nothing in this Agreement limits any Indemnified Person's rights to seek any remedy from any other third party.

ASSA ABLOY, and any director, officer, employee or agent of ASSA ABLOY, shall not, without the prior written consent of the Indemnified Person, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit, investigation, litigation, proceeding or other matter in respect of which the Indemnified Person is an actual party to such claim, action, suit, investigation, litigation, proceeding or matter if such settlement includes non-monetary damages or behavioral remedies. The Indemnified Person, and any employee or agent of the Indemnified Person, shall not, without the prior written consent of ASSA ABLOY, not to be unreasonably withheld, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit, investigation, litigation, proceeding or other matter in respect of which the Indemnified Person is an actual party to such claim, action, suit, investigation, litigation, proceeding or matter if such settlement includes monetary damages.

This Indemnification section shall be binding upon and inure to the benefit of and be enforceable by the parties hereto and their respective successors (including any direct or indirect successor by purchase, merger, consolidation or otherwise to all or substantially all of the business and/or assets of ASSA ABLOY), assigns, spouses, heirs and personal and legal representatives. This Indemnification section shall continue in effect regardless of whether the Monitoring Trustee continues to provide services to ASSA ABLOY. This Indemnification section applies as of August 10, 2023; shall survive termination of this Agreement; and shall remain in effect after the term of this Agreement.

Neither the Monitoring Trustee, Hausfeld LLP, the members of the Monitoring Trustee Team, Stoneturn Group LLP, nor Bates White shall be liable to ASSA ABLOY for direct or indirect, special, consequential, or exemplary damages, except to the extent that such

damages result from bad faith, willful misconduct, or a willful, material breach of this Agreement by the Indemnified Person.

**Integration and Amendment**

This Agreement, including Schedule A and Exhibits A, B, C, D, and E, constitutes the full and complete understanding between the Monitoring Trustee and ASSA ABLOY. Any other oral or written prior agreements or understandings are superseded hereby. Any amendment to this Agreement must be in writing signed by all parties. This Agreement may be executed in counterparts, and facsimile signatures are considered original.

**No Third-Party Beneficiaries**

This Agreement, including all exhibits and schedules attached hereto, is not intended to and does not confer any rights or remedies upon any other person other than the parties hereto.

**Assignment**

This Agreement may not be assigned or otherwise transferred by ASSA ABLOY or the Monitoring Trustee without the consent of ASSA ABLOY and the approval of the United States. Any such assignment or transfer shall be consistent with the terms of the Orders.

**Modification**

No amendment, modification, termination, or waiver of any provision of this Agreement shall be effective unless made in writing, signed by all parties, and approved by the United States. Any such amendment, modification, termination, or waiver shall be consistent with the terms of the Orders.

**Governing Law**

This Agreement and the rights and obligations of the parties hereunder shall in all respects be governed by the substantive laws of the District of Columbia, including all matters of construction, validity and performance.

If you are in agreement with the terms of this letter, please sign and date in the space provided below and return to me via facsimile or electronic mail.

*[Signature pages follow]* 

Sincerely,

**Hausfeld LLP**

By: _____
Name: Melinda R. Coolidge
Title: US Managing Partner
Date: September 29, 2023

**Acknowledged and agreed by:**

**ASSA ABLOY AB (PUBL)**

By: _____

Name: Erik Pieder/by PoA
Title: EVP & CFO
Date: 5 October 2023

By: _____

Name: Ann-Charlotte Högberg/by PoA
Title: VP & General Counsel
Date: 5 October 2023

## Schedule A

**Monitoring Trustee and Monitoring Trustee Fees, Expenses and Costs**

From August 10, 2023, until the expiration or termination of this Agreement, ASSA ABLOY shall compensate the Monitoring Trustee and Monitoring Trustee Team, (a) for services rendered in connection with the Monitorship in accordance with confidential Exhibit D to this Agreement, as amended hereafter in accordance with the terms of this Agreement, including with respect to ordinary course of business adjustments to billing rates, and (b) for actual out-of-pocket expenses reasonably incurred by the members of the Monitoring Trustee Team in the performance of the Monitorship.

**Travel**

When traveling for the Monitorship, the Monitoring Trustee and the Monitoring Trustee Team may book non-refundable economy-class domestic airfare and business-class international airfare (for flights scheduled for at least six hours of continuous flight time), and bill for travel time when not working on this or other matters. Travel arrangements for members of the Monitoring Trustee Team shall be reasonable and commensurate with the individual's experience and responsibilities. The Monitoring Trustee and the Monitoring Trustee Team will use reasonable best efforts to book the lowest-cost logical travel routing.

**Invoices & Billing**

The Monitoring Trustee will invoice ASSA ABLOY on a monthly basis for the fees, expenses and costs of the Monitoring Trustee and the Monitoring Trustee Team. Such invoices shall include high-level summaries of all matters for which the Monitoring Trustee submits an invoice to ASSA ABLOY. The invoice shall provide the total monthly charges for services and expenses individually for the Monitoring Trustee and the members of the Monitoring Trustee Team and shall include a high-level description of services rendered with sufficient detail to reasonably describe the contributions of each member of the Monitoring Trustee Team, as well as the hours worked (rounded to the nearest tenth) by each member of the Monitoring Trustee Team, along with an itemized list of expenses.

ASSA ABLOY agrees that the Monitoring Trustee's and Monitoring Trustee Team's fees, expenses and other costs are ASSA ABLOY's sole responsibility, and ASSA ABLOY will promptly pay all invoices upon presentation, and in no case later than 60 days following presentation, by wire transfer in U.S. dollars to the Monitoring Trustee pursuant to written instructions to be provided with the first invoice.

The Monitoring Trustee shall ensure that all members of the Monitoring Trustee Team

11

submit to her sufficiently detailed accounts of all time billed and expenses and costs and shall retain such information from August 10, 2023until six months following the termination or expiration of this Agreement in accordance with the terms hereof.

## EXHIBIT A

## FINAL JUDGMENT

[To be attached.]

## EXHIBIT B

## ASSET PRESERVATION STIPULATION AND ORDER

[To be attached.]

**EXHIBIT C**

**PROTECTIVE ORDER**

[To be attached.]

## EXHIBIT D

## MEMBERS OF THE MONITORING TRUSTEE TEAM

| Firm | Timekeeper Name | Timekeeper Rank | 2023 Bill Rate |
|------|-----------------|-----------------|----------------|
| Hausfeld | Melinda R. Coolidge | Partner | 920.00 |
| Hausfeld | Daniel Weick | Counsel | 850.00 |
| Hausfeld | Camila Ringeling | Associate | 500.00 |
| Hausfeld | Jane Shin | Associate | 580.00 |
| Hausfeld | Elliot Robinson | Paralegal | 350.00 |
| StoneTurn | Michele Edwards | Partner | 950.00 |
| StoneTurn | Jason Liew | Partner | 875.00 |
| StoneTurn | Lisa Van Houten | Managing Director | 750.00 |
| StoneTurn | Dana Ball | Managing Director | 700.00 |
| StoneTurn | Lauren Nowakowski | Manager | 625.00 |
| StoneTurn | Erica Levy | Senior Consultant | 425.00 |
| StoneTurn | Thanh Nguyen | Senior Consultant | 425.00 |
| StoneTurn | Tate Dixon | Consultant | 350.00 |
| StoneTurn | Belvon Luk | Paraprofessional | 300.00 |
| Bates White | Scott Lobel | Partner | 875.00 |
| Bates White | Steven Schulenberg | Partner | 1100.00 |
| Bates White | Slava Zayats | Partner | 1100.00 |

All rates of the members of the Monitoring Trustee Team are to be as is reasonable and customary commensurate with the individual's experience and responsibilities.

## EXHIBIT E

## ADDITIONAL CONFLICT PARTIES

1. Allegion plc

2. Ashley Norton, Inc.

3. Fortune Brands Innovations, Inc.

4. Lowes Companies, Inc.

5. SmartRent Technologies, Inc.

6. The Home Depot, Inc.

7. Spectrum Brands Holdings, Inc.

8. Wyze Labs, Inc.

9. Any of the controlled affiliates of the above-listed persons; provided, any person that is not reasonably identifiable as a controlled affiliate of any of the above-listed persons shall not be deemed a conflicted party until such time as that person's status as a controlled affiliate is actually known by the Monitoring Trustee or a member of the Monitoring Trustee Team. For the avoidance of doubt, if the Monitoring Trustee or members of the Monitoring Trustee Team conduct an ordinary-course business conflicts check on a person and the check does not identify that person as a controlled affiliate of one of the above-listed persons, the identity of such person as a controlled affiliate shall be deemed not reasonably identifiable.