# Exhibit 8



U.S. Department of Justice

Antitrust Division

*Liberty Square Building*

*450 5th Street, N.W.*
*Washington, DC 20530*

June 11, 2024

*Via Electronic Mail*

Lauren E. Battaglia, Esq.
Hogan Lovells LLP
555 13th Street, NW
Washington, DC 20004
lauren.battaglia@hoganlovells.com

      Re: *U.S. v. ASSA ABLOY AB, et al.*, Case No. 1:22-cv-02791-ACR

Dear Lauren:

The Department of Justice is in receipt of your letter dated June 3, 2024. We are disappointed with ASSA ABLOY's refusal to further engage in discussions with the Monitoring Trustee on a path forward. Nonetheless, we identify below the DOJ's position on the disputes between ASSA ABLOY and the Monitoring Trustee and if necessary, we too are prepared to bring these issues to the attention of the Court.

### ASSA ABLOY'S Refusal to Pay the Monitor as Required by the Settlement Agreement is a Breach of the Final Judgment

We are surprised ASSA ABLOY responded and rejected further discussion even before receiving the estimated projections from the Monitoring Trustee on June 7 as identified in our recent correspondence. We have reviewed the Monitoring Trustee's timelines and cost estimates and believe they provide ASSA ABLOY with a detailed insight into the anticipated work for competitive intensity and should facilitate further discussion between ASSA ABLOY and the Monitoring Trustee. Indeed, a review of the materials submitted by the Monitoring Trustee on June 7 shows a substantial reduction in the pace of work on competitive intensity in 2025 through Q1 of 2026.

ASSA ABLOY appears to have escalated its objections beyond the competitive intensity work and belatedly expanded its objections to now include *all* compliance work completed by the Monitoring Trustee. From the meet and confer on May 28, DOJ understood ASSA ABLOY's objections were limited to work performed pursuant to Section IV of the Final Judgment (competitive intensity). ASSA ABLOY's objections to the Monitoring Trustee's work related to compliance are a significant departure and change in substance and tone from the meet and confer on May 28. The Monitoring Trustee is tasked with assessing ASSA ABLOY's compliance with the Final Judgment. *See* Section X.B of the Final Judgment. DOJ understands that the Monitoring Trustee has been useful in resolving disputes between ASSA ABLOY and Fortune as to what is required under the Final Judgment. And, at the request of DOJ, the Monitoring Trustee

investigated whether Fortune had gained "operational control" of the Vietnam facility when delayed approvals from the Vietnamese government prohibited ASSA ABLOY from fully divesting to the facility to Fortune by December 31, 2023, as required by Section VI.C of the Final Judgment. These actions, as well as other work performed by the Monitoring Trustee, are the core work of monitoring the agreement that is contemplated by the Final Judgment.

DOJ's position remains that ASSA ABLOY is responsible for paying *all* outstanding invoices to the Monitoring Trustee in full. As explained in our letter of May 31, 2024, Section X.C of the Final Judgment limits ASSA ABLOY's ability to object to actions taken by the Monitor to grounds of "malfeasance" and requires that ASSA ABLOY raise malfeasance objections "within 10 calendar days"; ASSA ABLOY's current refusal to pay the Monitor's invoices is neither permissible nor timely under the plain terms of the Final Judgment. ASSA ABLOY's failure to pay any portion of the outstanding invoices – and raising tardy objections to excuse all payment – is very concerning. Throughout this monitorship, DOJ has consulted with the Monitoring Trustee about the need to engage in compliance-related workstreams to fulfill the Monitor's responsibilities under the Final Judgment. It is the DOJ's view that actions taken by the Monitoring Trustee to date are reasonable interpretations of its responsibilities under the Final Judgment.  As a result, ASSA ABLOY's unilateral refusal to pay the Monitor's invoices represent a breach of the Final Judgment.

**The Final Judgment Requires Present Day Competitive Intensity Analysis**

DOJ does not agree with ASSA ABLOY's interpretation of Section IV of the Final Judgment regarding competitive intensity. Section IV of the Final judgment provides, in full:

> If, after three years following the Divestiture Date and until the date that is five years from entry of this Final Judgment, the monitoring trustee determines, after investigation and consultation with the United States, ASSA ABLOY and Acquirer, that:
>
> a. Acquirer's competitive intensity in the residential Smart Locks business has diminished relative to ASSA ABLOY's competitive intensity in that business as of the Divestiture Date; and
>
> b. Such diminishment in competitive intensity is in material part due to limitations on Acquirer's right to use the rights held by ASSA ABLOY to the Yale brand name or trademarks in the U.S. and Canada as of the Divestiture Date, then
>
> the monitoring trustee may, after consultation with the United States, provide a written report of the monitoring trustee's conclusions to the United States.

This section requires the Monitoring Trustee to conduct an investigation regarding Fortune Brands' competitive intensity relative to ASSA ABLOY's pre-transaction competitive intensity for smart locks and make a determination as to whether that competitive intensity has decreased. While the Final Judgment provides a time period in which the Monitoring Trustee is to make her determination and issue a report, the

language in this section *does not limit* this investigation to begin only after three years following the Divestiture Date, June 20, 2026.

Additionally, establishing a competitive baseline and understanding how competition in the industry evolves over time, activities of competitors, product changes and innovations, and consumer preferences are all relevant to investigating competitive intensity. In DOJ's view, the Monitoring Trustee's interpretation of its responsibilities under Section IV are reasonable. Indeed, public reports of price increases by ASSA ABLOY[1] only underscore the need to understand the reasons for changing market dynamics, a process best conducted in real-time with fresh information, rather than as a retrospective many years into the future.

If ASSA ABLOY continues to refuse payment of the outstanding invoices, we are available to discuss procedures for bringing these items to the attention of the Court.

Sincerely,

/s/ Miranda Isaacs

Miranda Isaacs
Trial Attorney
U.S. Department of Justice, Antitrust Division

cc:   Melinda Coolidge
      mcoolidge@hausfeld.com

---

[1] *See* https://www.morningstar.com/news/dow-jones/202404241962/assa-abloy-cost-cuts-and-price-hikes-help-offset-challenging-market (last visited 6/5/2024).