# EXHIBIT 1

| | |
|---|---|
| **From:** | Melinda R. Coolidge |
| **Sent:** | Tuesday, August 22, 2023 9:36 PM |
| **To:** | Lazarus, Gabriel; Battaglia, Lauren  E. |
| **Cc:** | Owen, Jay (ATR); Huppert, Matthew (ATR); Choe, Soyoung (ATR); Isaacs, Miranda (ATR) |
| **Subject:** | ASSA ABLOY Monitoring Trustee - Engagement Agreement |
| **Attachments:** | Coolidge Engagement 8-22-23.docx |

Gabriel and Lauren,

I see that the court entered the order on the Monitoring Trustee today, so our clock is running. Please find attached an engagement agreement for our team, which has been reviewed by the Division.

For Exhibit D, Hausfeld and StoneTurn have worked hard to identify all the potential people who may work on or consult for the monitorship, and to identify who we actually expect to play a key role. The full list is long, mainly because it is difficult to project capacity and where different people will be in their careers over time; you will note that the key team is much smaller. Mainly, I want to be able to briefly consult with a partner where helpful, give spot assignments to associates if prime associates are unavailable, and use paralegals interchangeably, so I have listed them in Exhibit D. For Bates White, it is currently unclear when work outside the core team will be needed over the next five years, but we anticipate that the competitive intensity study may require more resources in the later years of the monitorship than in the beginning. For now, outside the core team, we have just listed titles and billing rates.

Please let me know who the signatory will be on your end, and I can add the signature page. I am happy to discuss at your convenience.

Thank you,


**MELINDA R. COOLIDGE**
US Managing Partner
mcoolidge@hausfeld.com
+1 202-540-7144 direct
*Pronouns: she/her/hers*

# HAUSFELD

888 16th Street, N.W.
Suite 300
Washington, DC 20006
+1 202 540 7200

**hausfeld.com**

This electronic mail transmission from Hausfeld LLP may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.

**HAUSFELD**

888 16th Street NW
Suite 300
Washington DC 20006

T: +202 540 7200

### ENGAGEMENT AGREEMENT FOR SERVICE OF
### MELINDA R. COOLIDGE AS MONITORING TRUSTEE

On August 22, 2023, Melinda R. Coolidge was appointed by a United States court with lawful jurisdiction (the "Court") to serve as the Monitoring Trustee in *United States v. ASSA ABLOY AB*, et al., Case No. 1:22-cv-02791-ACR (D.D.C.). This letter agreement (the "Agreement") sets forth the agreement between Hausfeld and ASSA ABLOY AB ("ASSA") with respect to Melinda R. Coolidge's service as the Monitoring Trustee.

**Effect of Court Orders**

ASSA understands and agrees that where this Agreement conflicts with the terms of any Court order, including the Proposed Final Judgment, Final Judgment (to be entered into the Court docket following the date hereof), and May 5, 2023 Asset Preservation Stipulation and Order, (each, an "Order" and together, the "Orders"), the Order shall control.

The Proposed Final Judgment and Asset Preservation Stipulation and Order are attached as Exhibits A and B to this Agreement and are incorporated by reference. Once entered by the Court, the Final Judgment shall be attached as Exhibit C and incorporated by reference and shall control wherever the Proposed Final Judgment conflicts with the Final Judgment.

**Power, Authority, Responsibilities, and Obligations**

The Monitoring Trustee shall have all powers and responsibilities conferred upon her by the Court with respect to her service as Monitoring Trustee in the above-captioned matter, including those reflected in all Orders (the "Monitorship"). Nothing in this Agreement shall change, amend, modify, or otherwise limit those powers or responsibilities.

To the extent this Agreement makes reference to the Monitoring Trustee acting in a manner that is "reasonable" or "appropriate" when performing her responsibilities, the Monitoring Trustee shall have exclusive discretion to determine what is reasonable or appropriate under the relevant circumstances.

hausfeld.com

AMSTERDAM | BERLIN | BOSTON | BRUSSELS | DÜSSELDORF | LONDON | NEW YORK | PARIS | PHILADELPHIA |
SAN FRANCISCO | STOCKHOLM | WASHINGTON, DC

**Access and Information**

The Monitoring Trustee shall have full and complete access during normal business hours, to personnel, books, records, and facilities of ASSA, in connection with the Monitorship (which shall include the right to copy documents and interview employees, either informally or on the record). To the extent reasonably possible and where appropriate under the circumstances, the Monitoring Trustee will use her best efforts to (i) give ASSA at least three (3) business days to respond to requests for information and/or documents; and (ii) provide reasonable notice in advance of any site visit, inspection, in-person meeting, or interview. At the request of the Monitoring Trustee, ASSA shall promptly arrange meetings and discussions, including tours of facilities, at reasonable times and locations between the Monitoring Trustee and officers, employees or agents of ASSA who have knowledge relevant to the proper discharge of the Orders and ASSA's obligations with respect to the Stock Purchase Agreement, dated December 1, 2022 by and among ASSA ABLOY Inc. and Fortune Brands Innovations, Inc., and all ancillary agreements attached thereto.

At the request of an interviewee or where otherwise appropriate, the Monitoring Trustee may exclude counsel for ASSA from interviews.

The Monitoring Trustee shall comply with the terms of the [Amended] Stipulated Protective Order and Order Governing Production of Investigation Materials [ECF 33, amended ____] ("Protective Order").

**Term and Termination**

This Agreement shall expire upon the earliest of (a) the expiration or termination of the Orders, (b) the appointment by the Court of a substitute Monitoring Trustee (or, if sooner, the date the Monitoring Trustee no longer serves in such capacity) pursuant to Article X(K) of the Proposed Final Judgment, (c) the death or resignation of the Monitoring Trustee, or (d) the occurrence of all of the events specified in Article X(J) of the Proposed Final Judgment. Upon the termination or expiration of this Agreement, the confidentiality obligations set forth in this Agreement will remain in force, as will the compensation provisions (with respect to fees already accrued and costs and expenses already incurred by the Monitoring Trustee and Monitoring Trustee Team pursuant to confidential Schedule A attached hereto) and indemnification provisions.

**Monitoring Trustee and Team**

The Monitoring Trustee will be assisted by agents, investment bankers, attorneys, accountants, or consultants, who will be solely accountable to the Monitoring Trustee, reasonably necessary in the Monitoring Trustee's judgment (each, a "member of the

Monitoring Trustee Team" and together, the "Monitoring Trustee Team"), as identified in Exhibit D to this Agreement, as amended; provided, within three (3) business days of engaging any additional member of the Monitoring Trustee Team such additional member of the Monitoring Trustee Team shall execute Appendix A to the Protective Order. The Monitoring Trustee may modify the Monitoring Trustee Team at any time by delivering an amended Exhibit D to ASSA and the United States.

Any request for access to personnel, books, records, and facilities by a member of the Monitoring Trustee Team shall be treated by ASSA as a request from the Monitoring Trustee herself, subject to the terms of the Agreement.

**No Agency, Attorney-Client or Fiduciary Relationship**

The Monitoring Trustee, and the members of the Monitoring Trustee Team shall not be treated for any purpose as an agent, employee, consultant, advisor, legal counsel or affiliate of ASSA. No attorney-client relationship shall be created between ASSA and any other person or entity as a result of this Agreement. The Monitoring Trustee and the Monitoring Trustee Team shall not owe any fiduciary duties to ASSA or their directors, officers, employees, agents, security holders or creditors and no employment relationship shall exist between the Monitoring Trustee or any member of the Monitoring Trustee Team and ASSA.

**Confidentiality and Non-Disclosure**

The Monitoring Trustee and Monitoring Trustee Team shall be bound by the Protective Order in connection with the Monitorship concerning ASSA.

In the event the Monitoring Trustee or a member of the Monitoring Trustee Team is requested pursuant to applicable law, regulation, or legal or judicial process, including through a subpoena for documents or testimony ("Applicable Law"), to disclose Confidential Information, or any materials or information relating to the Monitoring Trustee's or Monitoring Trustee Team's performance of services relating to the Monitorship, the Monitoring Trustee will, except as otherwise required by Applicable Law, promptly notify the United States and ASSA so that they may seek a protective order or other similar or appropriate relief. The Monitoring Trustee and the Monitoring Trustee Team agrees that it will not oppose any reasonable action taken by ASSA or the United States in its efforts to obtain such protective order or other similar or appropriate relief. In the event ASSA is requested pursuant to Applicable Law to disclose any materials or information relating to the Monitoring Trustee's or Monitoring Trustee Team's performance of services relating to the Monitorship, ASSA will, except as otherwise required by Applicable Law, promptly notify the United States and the Monitoring Trustee so that they may seek a protective order or other similar or

appropriate relief. ASSA agrees that it will not oppose any reasonable action taken by the Monitoring Trustee, any member of the Monitoring Trustee Team, or the United States in its efforts to obtain such protective order or other similar or appropriate relief. ASSA and the Monitoring Trustee and the members of the Monitoring Trustee Team will reasonably cooperate with one another in responding to any request pursuant to Applicable Law. For the avoidance of doubt, in the event the Monitoring Trustee or Monitoring Trustee Team must respond or object to any such request, ASSA will compensate the Monitoring Trustee or Monitoring Trustee Team for costs (including time and expenses such as attorneys' fees) incurred in responding or objecting to such request, according to the provisions of confidential Schedule A attached hereto and the "Indemnification" section below, as applicable.

The Monitoring Trustee will inform the United States and ASSA if the Monitoring Trustee has reason to believe that Confidential Information may have been disclosed in a manner inconsistent with the Protective Order or this Agreement (including but not limited to a data breach). Each member of the Monitoring Trustee Team shall inform the Monitoring Trustee if it has reason to believe that Confidential Information may have been disclosed in a manner inconsistent with the Protective Order or this Agreement (including but not limited to a data breach). Notwithstanding any return or destruction of Confidential Information, all Confidential Information will continue to be subject to the provisions of the Protective Order and this Agreement.

## Fees and Expenses

ASSA agrees to pay the Monitoring Trustee and Monitoring Trustee Team's fees, costs and expenses incurred in connection with the Monitorship, Orders, and this Agreement. ASSA shall compensate the Monitoring Trustee for her services and expenses, and the services and expenses of the Monitoring Trustee Team, in accordance with the confidential Schedule A attached hereto.

## Other Engagements

ASSA agrees that this engagement does not present a conflict to Hausfeld LLP, Hausfeld & Co. LLP, Hausfeld Rechtsanwälte LLP, or Hausfeld Advocaten in representing a current or future client in another matter adverse to ASSA (or any parent, subsidiary or affiliate), so long as it involves a factually unrelated matter, and the Monitoring Trustee and members of the Monitoring Trustee Team are screened from that matter. ASSA further agrees that this engagement does not present a conflict for Stoneturn Group LLP or Bates White in performing work on behalf of a current or future client in another matter adverse to ASSA (or any parent, subsidiary or affiliate), so long as, during the course of this engagement, the consulting teams from Stoneturn Group LLP and Bates White who perform services on this matter are screened from any other

4

matters adverse to ASSA.

**Indemnification and Limitation of Liability**

ASSA shall indemnify, defend and hold harmless the Monitoring Trustee, Hausfeld LLP, and the members of the Monitoring Trustee Team, Stoneturn Group LLP, and Bates White (in such capacity, an "Indemnified Person") from and against any and all claims, damages, losses, liabilities, obligations, demands, charges, suits, judgments, penalties, fines, awards, settlements, fees, costs and expenses of any type whatsoever (whether in contract, tort or otherwise, and including without limitation the duty to defend and indemnify against any claims for damages, injunctive relief, or any other relief, including but not limited to special, indirect, consequential or punitive damages, court costs, attorneys' fees and other actual costs of counsel who may be selected in the sole discretion of the Indemnified Person), and any other liabilities or expenses of any nature, that may be incurred, sustained, suffered, paid or accrued by or asserted or awarded against the Indemnified Person ("Liabilities"), in connection with, based upon, resulting from, attributable to, related to or arising directly or indirectly out of the Monitorship, the Orders and this Agreement, or any services or other action taken in connection with the Monitorship or this Agreement, except to the extent that such Liabilities result from bad faith, willful misconduct, or a willful, material breach of this Agreement by the Indemnified Person. ASSA must indemnify the Indemnified Person to the fullest extent required by the terms of this Agreement until a Court enters a final order finding the Indemnified Person engaged in bad faith, willful misconduct, or made a willful, material breach of this Agreement and all appellate rights concerning that order have been exhausted; provided, in the event a Court enters such a final order and all appellate rights concerning that order have been exhausted, the Indemnified Person shall promptly repay to ASSA all amounts paid by ASSA to such Indemnified Person pursuant to this indemnification section in connection with such matter.

This indemnification applies to any Liability to any person or entity whatsoever and shall be effective regardless of whether the obligations of the Monitoring Trustee under the Orders have been fulfilled. ASSA's indemnity obligations under this Agreement shall be the sole remedy available from ASSA and their respective affiliates to the Indemnified Person. For the avoidance of doubt, nothing in this Agreement limits any Indemnified Person's rights to seek any remedy from any other third party.

ASSA, and any director, officer, employee or agent of ASSA, shall not, without the prior written consent of the Indemnified Person, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit, investigation, litigation, proceeding or other matter in respect of which the Indemnified Person is an actual party to such claim, action, suit, investigation, litigation, proceeding or matter if such settlement includes non-monetary damages or behavioral remedies. The Indemnified

Person, and any employee or agent of the Indemnified Person, shall not, without the prior written consent of ASSA, not to be unreasonably withheld, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit, investigation, litigation, proceeding or other matter in respect of which the Indemnified Person is an actual party to such claim, action, suit, investigation, litigation, proceeding or matter if such settlement includes monetary damages.

This Indemnification section shall be binding upon and inure to the benefit of and be enforceable by the parties hereto and their respective successors (including any direct or indirect successor by purchase, merger, consolidation or otherwise to all or substantially all of the business and/or assets of ASSA), assigns, spouses, heirs and personal and legal representatives. This Indemnification section shall continue in effect regardless whether the Monitoring Trustee continues to provide services to ASSA. This Indemnification section applies as of August 10, 2023; shall survive termination of this Agreement; and shall remain in effect after the term of this Agreement.

Neither the Monitoring Trustee, Hausfeld LLP, the members of the Monitoring Trustee Team, Stoneturn Group LLP, nor Bates White shall not be liable to ASSA for direct or indirect, special, consequential, or exemplary damages, except to the extent that such damages result from bad faith, willful misconduct, or a willful, material breach of this Agreement by the Indemnified Person, in which case damages shall not exceed fees paid with respect to services performed under this agreement.

**Integration and Amendment**

This Agreement, including Exhibits A, B, C and D, constitutes the full and complete understanding between the Monitoring Trustee and ASSA. Any other oral or written prior agreements or understandings are superseded hereby. Any amendment to this Agreement must be in writing signed by all parties. This Agreement may be executed in counterparts, and facsimile signatures are considered original.

**No Third-Party Beneficiaries**

This Agreement, including all exhibit and schedules attached hereto, is not intended to and does not confer any rights or remedies upon any other person other than the parties hereto.

**Assignment**

This Agreement may not be assigned or otherwise transferred by ASSA or the Monitoring Trustee without the consent of ASSA and the approval of the United States. Any such assignment or transfer shall be consistent with the terms of the Orders.

**Modification**

No amendment, modification, termination, or waiver of any provision of this Agreement shall be effective unless made in writing, signed by all parties, and approved by the United States. Any such amendment, modification, termination, or waiver shall be consistent with the terms of the Orders.

**Governing Law**

This Agreement and the rights and obligations of the parties hereunder shall in all respects be governed by the substantive laws of the District of Columbia, including all matters of construction, validity and performance.

If you are in agreement with the terms of this letter, please sign and date in the space provided below and return to me via facsimile or electronic mail.

*[Signature pages follow]*

## Schedule A

**Monitoring Trustee and Monitoring Trustee Fees, Expenses and Costs**

For the period starting August 10, 2023, until the expiration or termination hereof, ASSA shall compensate the Monitoring Trustee and Monitoring Trustee Team, (a) for services rendered to the Monitoring Trustee in accordance with Exhibit D to this Agreement, as amended hereafter in accordance with the terms of this Agreement, including with respect to ordinary course of business adjustments to billing rates, and (b) actual out-of-pocket expenses reasonably incurred by the members of the Monitoring Trustee Team in the performance of the Monitorship.

From the date of this Agreement, until the expiration or termination hereof, ASSA will pay actual out-of-pocket expenses reasonably incurred by the Monitoring Trustee in the performance of the Monitorship.

**Travel**

When traveling for the Monitorship, the Monitoring Trustee may book refundable business-class airfare and bill for travel time when not working on this or other matters. Travel arrangements for members of the Monitoring Trustee Team shall be reasonable and commensurate with the individual's experience and responsibilities.

**Invoices & Billing**

The Monitoring Trustee will invoice ASSA on a monthly basis for the fees, expenses and costs of the Monitoring Trustee and the Monitoring Trustee Team. Such invoices shall include high-level summaries of all matters for which the Monitoring Trustee submits an invoice to ASSA. The invoice shall provide the total monthly charges for services and expenses individually for the Monitoring Trustee and the members of the Monitoring Trustee Team and shall include a high-level description of services rendered, as well as the hours worked by each member of the Monitoring Trustee Team, along with an itemized list of expenses (other than with respect to expenses deemed inappropriate to share by the Monitoring Trustee, making such determination in good faith).

ASSA agrees that the Monitoring Trustee's and Monitoring Trustee Team's fees, expenses and other costs are ASSA's sole responsibility, and ASSA will promptly pay all invoices upon presentation, and in no case later than 30 days following presentation, by wire transfer in U.S. dollars to the Monitoring Trustee pursuant to written instructions to be provided with the first invoice.

The Monitoring Trustee shall ensure that all members of the Monitoring Trustee Team submit to her sufficiently detailed accounts of all time billed and expenses and costs and shall retain such information from the date of this Agreement until six months following its termination or expiration in accordance with the terms hereof.

**<u>EXHIBIT A</u>**

**PROPOSED FINAL JUDGMENT**

[To be attached.]

## **EXHIBIT B**


## **ASSET PRESERVATION STIPULATION AND ORDER**


[To be attached.]

**<u>EXHIBIT C</u>**

**FINAL JUDGMENT**

[To be attached.]

## EXHIBIT D

### MEMBERS OF THE MONITORING TRUSTEE TEAM

| Firm | Timekeeper Name | Timekeeper Rank | 2023 Bill Rate |
|------|-----------------|-----------------|----------------|
| **Hausfeld** | **Melinda R. Coolidge*** | **Partner** | **920.00** |
| Hausfeld | Timothy Kearns | Partner | 920.00 |
| Hausfeld | Walter Kelley | Partner | 1,370.00 |
| Hausfeld | Scott Martin | Partner | 1,370.00 |
| Hausfeld | Brian A. Ratner | Partner | 995.00 |
| **Hausfeld** | **Daniel Weick*** | **Counsel** | **850.00** |
| **Hausfeld** | **Emma Blake*** | **Associate** | **470.00** |
| Hausfeld | Hill Brakefield | Associate | 560.00 |
| Hausfeld | Annabelle Emuze | Associate | 480.00 |
| Hausfeld | Kartik Madiraju | Associate | 560.00 |
| **Hausfeld** | **Camila Ringeling*** | **Associate** | **500.00** |
| **Hausfeld** | **Jane Shin*** | **Associate** | **580.00** |
| Hausfeld | Andrea Furman | Senior Staff Attorney | 500.00 |
| Hausfeld | Lisandra Aguiar | Paralegal | 350.00 |
| Hausfeld | Hazel Berkoh | Paralegal | 350.00 |
| Hausfeld | Angel Dorsey | Paralegal | 350.00 |
| Hausfeld | Thomas Loughran | Paralegal | 350.00 |
| Hausfeld | Kenya McCune | Paralegal | 350.00 |
| Hausfeld | Suzanne McPhail | Paralegal | 350.00 |
| Hausfeld | James Mitchell | Paralegal | 350.00 |
| Hausfeld | Krishna Patel | Paralegal | 350.00 |
| **Hausfeld** | **Elliot Robinson*** | **Paralegal** | **350.00** |
| Hausfeld | Ramon Rodriguez | Paralegal | 350.00 |
| **StoneTurn** | **Michele Edwards*** | **Partner** | **950.00** |
| **StoneTurn** | **Jason Liew*** | **Partner** | **875.00** |
| StoneTurn | Chris Hoyle | Partner | 825.00 |
| **StoneTurn** | **Lisa Van Houten*** | **Managing Director** | **750.00** |
| StoneTurn | Chuck Soha | Managing Director | 750.00 |
| **StoneTurn** | **Dana Ball*** | **Managing Director** | **700.00** |
| **StoneTurn** | **Lauren Nowakowski*** | **Manager** | **625.00** |
| StoneTurn | Tanya Philip | Manager | 625.00 |
| **StoneTurn** | **Erica Levy*** | **Senior Consultant** | **425.00** |
| StoneTurn | Jack Aerni | Senior Consultant | 425.00 |
| **StoneTurn** | **Thanh Nguyen*** | **Senior Consultant** | **425.00** |
| StoneTurn | Midori Knowles | Senior Consultant | 425.00 |
| StoneTurn | Christina Doherty | Senior Consultant | 425.00 |
| StoneTurn | Tate Dixon | Consultant | 350.00 |

| StoneTurn | Belvon Luk | Paraprofessional | 300.00 |
|---|---|---|---|
| **Bates White** | **Mr. Scott Lobel*** | **Partner** | **875.00** |
| **Bates White** | **Dr. Steven Schulenberg*** | **Partner** | **1100.00** |
| **Bates White** | **Dr. Slava Zayats*** | **Partner** | **1100.00** |
| Bates White | TBD | Partner | 750.00 – 2000.00 |
| Bates White | TBD | Principal | 625.00 – 825.00 |
| Bates White | TBD | Managing Economist | 600.00 – 725.00 |
| Bates White | TBD | Managing Consultant | 550.00 – 700.00 |
| Bates White | TBD | Senior Economist | 550.00 – 625.00 |
| Bates White | TBD | Senior Consultant | 480.00 – 550.00 |
| Bates White | TBD | Economist | 500.00 – 550.00 |
| Bates White | TBD | Consultant II | 425.00 – 465.00 |
| Bates White | TBD | Consultant | 395.00 – 410.00 |
| Bates White | TBD | Data Specialist | 280.00 |
| Bates White | TBD | Project Coordinator | 280.00 |
| Bates White | TBD | Project Assistance | 230.00 |

* denotes key team member


All rates of the members of the Monitoring Trustee Team are to be as is reasonable and customary commensurate with the individual's experience and responsibilities.

# EXHIBIT 2

| | |
|---|---|
| **From:** | Melinda R. Coolidge |
| **Sent:** | Thursday, September 28, 2023 5:02 PM |
| **To:** | Lazarus, Gabriel; Isaacs, Miranda (ATR); Owen, Jay (ATR); Huppert, Matthew (ATR) |
| **Cc:** | Gelfand, David I.; Justin.bernick@hoganlovells.com; Battaglia, Lauren E. |
| **Subject:** | RE: United States v. ASSA ABLOY - Monitoring Trustee Engagement |

Thank you, Gabriel. I can accept the modification you propose. I will circulate this to Stoneturn and Bates White to inform them, and assuming this all works for DOJ, we should be able to execute tomorrow. If you are able to create the signature page for your side, that would be great.

**MELINDA R. COOLIDGE**
US Managing Partner
mcoolidge@hausfeld.com
+1 202-540-7144 direct
*Pronouns: she/her/hers*

# HAUSFELD

888 16th Street, N.W.
Suite 300
Washington, DC 20006

+1 202 540 7200

**hausfeld.com**

This electronic mail transmission from Hausfeld LLP may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.

**From:** Lazarus, Gabriel <glazarus@cgsh.com>
**Sent:** Thursday, September 28, 2023 10:13 AM
**To:** Melinda R. Coolidge <mcoolidge@hausfeld.com>; Isaacs, Miranda (ATR) <Miranda.Isaacs@usdoj.gov>; Owen, Jay (ATR) <Jay.Owen@usdoj.gov>; Huppert, Matthew (ATR) <Matthew.Huppert@usdoj.gov>
**Cc:** Gelfand, David I. <dgelfand@cgsh.com>; Justin.bernick@hoganlovells.com; Battaglia, Lauren E. <lauren.battaglia@hoganlovells.com>
**Subject:** RE: United States v. ASSA ABLOY - Monitoring Trustee Engagement

⊘ **External email ›**

Melinda and DOJ team,

Thank you again for the productive discussions regarding the engagement letter.  ASSA ABLOY accepts the proposed approach for dealing with adverse representations, subject to adding the following acknowledgment that it does not limit ASSA ABLOY's ability to raise concerns about specific adverse engagements if they come up.

*This Agreement does not limit ASSA ABLOY's ability to inform the Court if it believes that work on a particular matter adverse to ASSA ABLOY or its affiliates by a partner or employee of a firm or a company associated with a member of the*

*Monitoring Trustee Team impedes the actual or apparent independence of the Monitorship. Nor does this Agreement limit ASSA ABLOY's ability to bring concerns about the engagement of a partner or employee of a firm or a company associated with a member of the Monitoring Trustee Team in a matter adverse to ASSA ABLOY or its affiliates to the attention of the adjudicator(s) in such a matter.*

The attached version of the letter has the proposed addition in track.  Assuming the language is agreeable, we believe all of the outstanding issues with the engagement are now resolved.

Best,

Gabriel

___

**Gabriel J. Lazarus**
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
T: +1 202 974 1812 | M: +1 301 915 7048
glazarus@cgsh.com  |  clearygottlieb.com
Pronouns: he/him/his

---

**From:** Lazarus, Gabriel
**Sent:** Tuesday, September 26, 2023 17:02
**To:** Huppert, Matthew (ATR) <Matthew.Huppert@usdoj.gov>
**Cc:** Isaacs, Miranda (ATR) <Miranda.Isaacs@usdoj.gov>; Owen, Jay (ATR) <Jay.Owen@usdoj.gov>; Melinda R. Coolidge <mcoolidge@hausfeld.com>; Gelfand, David I. <dgelfand@cgsh.com>; Justin.bernick@hoganlovells.com; Battaglia, Lauren E. <lauren.battaglia@hoganlovells.com>
**Subject:** RE: United States v. ASSA ABLOY - Monitoring Trustee Engagement

Matt,

We're available to chat any time before 11am tomorrow.  Please let me know if you'd like me to circulate an invitation, and if so, for what time.

ASSA ABLOY won't have a final position until it has an opportunity to consider the information from the call tomorrow, but like you we are driving to get the engagement resolved.

Best,

Gabriel

___

**Gabriel J. Lazarus**
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
T: +1 202 974 1812 | M: +1 301 915 7048
glazarus@cgsh.com  |  clearygottlieb.com
Pronouns: he/him/his

---

**From:** Huppert, Matthew (ATR) <Matthew.Huppert@usdoj.gov>
**Sent:** Tuesday, September 26, 2023 16:00
**To:** Lazarus, Gabriel <glazarus@cgsh.com>
**Cc:** Isaacs, Miranda (ATR) <Miranda.Isaacs@usdoj.gov>; Owen, Jay (ATR) <Jay.Owen@usdoj.gov>; Melinda R. Coolidge <mcoolidge@hausfeld.com>; Gelfand, David I. <dgelfand@cgsh.com>; Justin.bernick@hoganlovells.com; Battaglia,

Lauren E. <lauren.battaglia@hoganlovells.com>
**Subject:** RE: United States v. ASSA ABLOY - Monitoring Trustee Engagement

Gabriel,

We're glad to hear that ASSA ABLOY and Melinda were able to reach agreement on the personnel and budget issues.

We are also available to talk further about your question regarding adverse representations.  Are you available to speak first thing tomorrow morning?  To be clear, we would like to resolve this issue as soon as possible, so our expectation is that we will understand ASSA ABLOY's final position on this adverse representation issue during our call or right afterward.  Please advise.

Thanks,

Matt

_____

**Matthew R. Huppert** (he/him)
**U.S. Department of Justice | Antitrust Division**
450 Fifth Street, NW, Suite 8700
Washington, DC 20001
(202) 476-0383 (cell)

**From:** Lazarus, Gabriel <glazarus@cgsh.com>
**Sent:** Tuesday, September 26, 2023 12:13 PM
**To:** Huppert, Matthew (ATR) <Matthew.Huppert@usdoj.gov>
**Cc:** Isaacs, Miranda (ATR) <Miranda.Isaacs@usdoj.gov>; Owen, Jay (ATR) <Jay.Owen@usdoj.gov>; Melinda R. Coolidge <mcoolidge@hausfeld.com>; Gelfand, David I. <dgelfand@cgsh.com>; Justin.bernick@hoganlovells.com; Battaglia, Lauren E. <lauren.battaglia@hoganlovells.com>
**Subject:** [EXTERNAL] RE: United States v. ASSA ABLOY - Monitoring Trustee Engagement

Matt and colleagues,

Melinda and I spoke this morning.  ASSA ABLOY is agreed with the modifications to the trustee team list that Melinda shared last week.

Regarding future adverse representations, after the conversation with Jay and Miranda last week, we had been thinking about a case-by-case approach where ASSA ABLOY would consent to adverse representations, and the court would have the last word if there's a dispute.  Melinda raised concerns that approach may entail disclosure of other clients' confidential information to ASSA ABLOY, and sees the proposal involving the DOJ as a way around that issue.

It would be helpful to get a better understanding from the DOJ about how it would evaluate adverse representations if they come up.  Is that something you could provide?  Happy to find a time for a call if that's best.

Regards,

Gabriel
_____

**Gabriel J. Lazarus**
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037

T: +1 202 974 1812 | M: +1 301 915 7048
glazarus@cgsh.com | clearygottlieb.com
Pronouns: he/him/his

---

**From:** Huppert, Matthew (ATR) <Matthew.Huppert@usdoj.gov>
**Sent:** Monday, September 25, 2023 17:24
**To:** Lazarus, Gabriel <glazarus@cgsh.com>
**Cc:** Isaacs, Miranda (ATR) <Miranda.Isaacs@usdoj.gov>; Owen, Jay (ATR) <Jay.Owen@usdoj.gov>; Melinda R. Coolidge <mcoolidge@hausfeld.com>; Gelfand, David I. <dgelfand@cgsh.com>; Justin.bernick@hoganlovells.com; Battaglia, Lauren E. <lauren.battaglia@hoganlovells.com>; Cohen-Millstein, Peter <peter.cohen-millstein@hoganlovells.com>
**Subject:** RE: United States v. ASSA ABLOY - Monitoring Trustee Engagement

Gabriel,

We'd like to know whether any of the additional information that's been provided and/or the further changes that have been proposed since our September 20 call have resolved any of the disputed issues concerning the monitoring trustee's engagement.  We'd appreciate if you could provide ASSA ABLOY's position on these matters by the close of business tomorrow, September 26. As previously discussed, time is of the essence in resolving outstanding disputes about this engagement.

Thanks,

Matt

---

**Matthew R. Huppert** (he/him)
U.S. DEPARTMENT OF JUSTICE | ANTITRUST DIVISION
450 FIFTH STREET, NW, SUITE 8700
WASHINGTON, DC 20001
(202) 476-0383 (CELL)

---

**From:** Lazarus, Gabriel <glazarus@cgsh.com>
**Sent:** Friday, September 22, 2023 5:34 PM
**To:** Melinda R. Coolidge <mcoolidge@hausfeld.com>
**Cc:** Huppert, Matthew (ATR) <Matthew.Huppert@usdoj.gov>; Isaacs, Miranda (ATR) <Miranda.Isaacs@usdoj.gov>; Owen, Jay (ATR) <Jay.Owen@usdoj.gov>; Gelfand, David I. <dgelfand@cgsh.com>; Justin.bernick@hoganlovells.com; Battaglia, Lauren E. <lauren.battaglia@hoganlovells.com>; Cohen-Millstein, Peter <peter.cohen-millstein@hoganlovells.com>
**Subject:** [EXTERNAL] RE: United States v. ASSA ABLOY - Monitoring Trustee Engagement

Melinda,

Thank you—we will review this proposal with ASSA ABLOY as well and provide an update once we've discussed on our side.

Best,

Gabriel

---

**Gabriel J. Lazarus**
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037

T: +1 202 974 1812 | M: +1 301 915 7048
glazarus@cgsh.com | clearygottlieb.com
Pronouns: he/him/his

---

**From:** Melinda R. Coolidge <mcoolidge@hausfeld.com>
**Sent:** Friday, September 22, 2023 17:29
**To:** Lazarus, Gabriel <glazarus@cgsh.com>; Gelfand, David I. <dgelfand@cgsh.com>; Justin.bernick@hoganlovells.com; Battaglia, Lauren E. <lauren.battaglia@hoganlovells.com>; Cohen-Millstein, Peter <peter.cohen-millstein@hoganlovells.com>
**Cc:** Huppert, Matthew (ATR) <Matthew.Huppert@usdoj.gov>; Isaacs, Miranda (ATR) <Miranda.Isaacs@usdoj.gov>; Owen, Jay (ATR) <Jay.Owen@usdoj.gov>
**Subject:** RE: United States v. ASSA ABLOY - Monitoring Trustee Engagement

All,

I have been thinking about how to bridge our final gap and brainstorming with folks on my side. As we have all agreed, the final concept remains a purely theoretical one – and one that will likely never come to pass – so it would be unfortunate if we were unable to find common ground. I have heard concerns about information leakage, which I think are addressed by the protective order and firewalls, and are commonplace to all our firms. I think we have cleared up what does and does not constitute an actual conflict, and we all share the goal of ensuring that the monitorship is not compromised.

Considering all of this, I propose to add a further restriction on the monitoring team. In addition to agreeing that the monitoring team not be adverse to ASSA ABLOY in any matter, and agreeing that Hausfeld and Stoneturn not to be adverse to ASSA ABLOY (1) for any work substantially related to the monitorship, and (2) agreeing to firewall off the monitoring team, I propose that prior to taking any such representation, we (3) be required to obtain clearance from the Department of Justice under its normal practice of evaluating such issues for monitoring trustees. If the Department of Justice identifies any concerns, we will not undertake the representation. You can review the attached for my proposed language, as well as that for Bates White.

I hope that this will allow us to move on with our work ahead.

Best regards,

**MELINDA R. COOLIDGE**
US Managing Partner
mcoolidge@hausfeld.com
+1 202-540-7144 direct
*Pronouns: she/her/hers*

# HAUSFELD

888 16th Street, N.W.
Suite 300
Washington, DC 20006
+1 202 540 7200
**hausfeld.com**

This electronic mail transmission from Hausfeld LLP may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.

**From:** Lazarus, Gabriel <glazarus@cgsh.com>
**Sent:** Thursday, September 21, 2023 7:37 PM
**To:** Melinda R. Coolidge <mcoolidge@hausfeld.com>; Gelfand, David I. <dgelfand@cgsh.com>; Justin.bernick@hoganlovells.com; Battaglia, Lauren E. <lauren.battaglia@hoganlovells.com>; Cohen-Millstein, Peter <peter.cohen-millstein@hoganlovells.com>
**Cc:** Huppert, Matthew (ATR) <Matthew.Huppert@usdoj.gov>; Isaacs, Miranda (ATR) <Miranda.Isaacs@usdoj.gov>; Owen, Jay (ATR) <Jay.Owen@usdoj.gov>
**Subject:** RE: United States v. ASSA ABLOY - Monitoring Trustee Engagement


Melinda,

Thank you—we will review with ASSA ABLOY and get back to you as soon as we can.

Best,

Gabriel

––––

**Gabriel J. Lazarus**
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
T: +1 202 974 1812 | M: +1 301 915 7048
glazarus@cgsh.com  | clearygottlieb.com
Pronouns: he/him/his

**From:** Melinda R. Coolidge <mcoolidge@hausfeld.com>
**Sent:** Thursday, September 21, 2023 19:34
**To:** Lazarus, Gabriel <glazarus@cgsh.com>; Gelfand, David I. <dgelfand@cgsh.com>; Justin.bernick@hoganlovells.com; Battaglia, Lauren E. <lauren.battaglia@hoganlovells.com>; Cohen-Millstein, Peter <peter.cohen-millstein@hoganlovells.com>
**Cc:** Huppert, Matthew (ATR) <Matthew.Huppert@usdoj.gov>; Isaacs, Miranda (ATR) <Miranda.Isaacs@usdoj.gov>; Owen, Jay (ATR) <Jay.Owen@usdoj.gov>
**Subject:** RE: United States v. ASSA ABLOY - Monitoring Trustee Engagement

All,

Following our call yesterday, in an effort to facilitate moving forward with agreeing on the retention terms, I will agree to **remove** the following individuals from the latest draft of Exhibit D at the time of our retention:

| Firm | Timekeeper Name | Timekeeper Rank |
|------|-----------------|-----------------|
| Hausfeld | Walter Kelley | Partner |
| Hausfeld | Scott Martin | Partner |
| Hausfeld | Brian Ratner | Partner |
| Hausfeld | Emma Blake | Associate |
| Hausfeld | James Mitchell | Paralegal |
| Hausfeld | Hazel Berkoh | Paralegal |
| StoneTurn | Jack Aerni | Senior Consultant |
| StoneTurn | Christina Doherty | Senior Consultant |

As discussed, I will provide written notice of the hiring and the rate of compensation to ASSA and DOJ within three business days of hiring any additional agents or consultants not currently included in Exhibit D, as outlined in Section X.F., that are reasonably necessary in my judgment to assist with my duties, as described in Section X.E.

In addition, I thought it would be helpful to provide an overview of our workstream structure and the types of activities for which the personnel that remain on Exhibit D will be responsible.

Based on a very preliminary assessment, which will naturally be refined once we meet with ASSA and begin reviewing documentation to better understand what ASSA has done to comply with the terms of the Stipulation and Order and Final Judgment to date, I anticipate organizing the team members into workstreams as follows:

## Task 1

The workstreams/sub-workstreams associated with Task 1 will be responsible for assessing ASSA's compliance with their obligations under the terms of the SO and FJ. In addition to me, the main personnel working I expect to be responsible are as follows:

| Firm | Timekeeper Name | Timekeeper Rank |
|------|-----------------|-----------------|
| Hausfeld | Camila Ringeling | Associate |
| StoneTurn | Michele Edwards | Partner |
| StoneTurn | Jason Liew | Partner |
| StoneTurn | Lisa Van Houten | Managing Director |
| StoneTurn | Dana Ball | Managing Director |
| StoneTurn | Lauren Nowakowski | Manager |
| StoneTurn | Erica Levy | Senior Consultant |
| StoneTurn | Thanh Nguyen | Senior Consultant |
| StoneTurn | Tate Dixon | Consultant |

I expect that these individuals will be responsible for the following main tasks:

- Assessment and testing of compliance of obligations under the Asset Preservation Stipulation and Order related to the operation, preservation and maintenance of the Premium Mechanical and Smart Lock divestiture assets (Lisa, Erica)
- Assessment and testing of ASSA ABLOY's divestiture of the Premium Mechanical and Smart Lock Divestiture Assets (Lisa, Lauren, Erica)
- Assessment and testing of compliance with obligations related to the identification and hiring of Premium Mechanical and Smart Lock Divestiture relevant personnel (Dana, Tate)
- Assessment and testing of compliance with obligations, including ASSA ABLOY's ongoing efforts to assist Fortune Brands in assigning or otherwise transferring all contracts, agreements, and customer relationships included in the Premium Mechanical and Smart Lock Divestiture Assets (Dana, Tate)
- Assessment and testing of compliance with obligations, including ASSA ABLOY's warranties related to the operational condition of divestiture assets (Dana, Tate)
- Assessment and testing of compliance with obligations, including ASSA ABLOY's ongoing efforts to assist Fortune Brands in obtaining all necessary licenses, registrations, and permits to operate the Premium Mechanical and Smart Lock Divestiture Businesses (Lauren, Erica)

- Assessment and testing of compliance with obligations, including ASSA ABLOY's ongoing efforts to assist Fortune Brands in entering into supply contract(s) for all products necessary to operate the Premium Mechanical and Smart Lock Divestiture Businesses (Lisa, Lauren)
- Assessment and testing of compliance with obligations, including ASSA ABLOY's ongoing efforts to assist Fortune Brands in providing transition services to cover all services necessary to operate the Premium Mechanical and Smark Lock Divestiture Businesses including services for back office, human resources, accounting, employee health and safety, and information technology services and support (Lisa, Lauren)
- Assessment, on-site visits and testing related to all services necessary to operate the manufacturing facility at Lot A10, Ba Thien II IP, Thien Ke, Binh Xuyen, Vinh Phuc, Vietnam (Jason, Thanh)
- Assessment and testing of compliance with obligations and monitoring of the Yale brand name transition and wind-down (Lauren, Erica)
- Assessment and testing of compliance with obligations and monitoring of the Yale access control system (Lauren, Erica)
- Assessment and testing of compliance with obligations and monitoring of patents (Lisa)

Camila and I will oversee all of the above.

## Task 2

The workstream associated with Task 2 will be responsible for monitoring changes to competitive intensity as outlined in the Additional Relief section of the FJ. In addition to me, the main personnel working I expect to be responsible are as follows:

| Firm | Timekeeper Name | Timekeeper Rank |
|------|-----------------|-----------------|
| Hausfeld | Daniel Weick | Counsel |
| Hausfeld | Jane Shin | Associate |
| Bates White | Scott Lobel | Partner |
| Bates White | Steven Schulenberg | Partner |
| Bates White | Slava Zayats | Partner |

Dr. Steve Schulenberg, an economist, will apply his experience in economic analysis of complex competition issues to design and implement a study that measures changes in competitive intensity in the residential Smart Locks business over time. Scott Lobel, a certified public accountant, will advise on the metrics of that study, including components of financial analysis and causation for changes to competitive intensity. Dr. Slava Zayats, an economist who has served as an expert in numerous merger matters, will advise on merger specific issues related to the study of competitive intensity. The work done by Bates White professionals will be complementary, not duplicative.

## Engagement Management and Reporting

Both tasks will be supported by me and various other Partner, Managing Director and Associates included above who will be responsible for managing drafting reports and communicating progress and findings to the DOJ and where appropriate, ASSA.

## Administration

Finally, both tasks will be supported by paralegals or paraprofessionals who will be responsible for administrative activities, such as collecting, tracking, organizing and storing documentation received from ASSA for the Monitoring Trustee team so they can access the documentation relevant to their

workstream, establishing technology platforms to store documentation and Monitoring Trustee team work product and other administrative duties.  At this time, this includes the following personnel:

| Firm | Timekeeper Name | Timekeeper Rank |
|------|-----------------|-----------------|
| Hausfeld | Elliot Robinson | Paralegal |
| StoneTurn | Belvon Luk | Paraprofessional |

I am attaching what I hope will be a final draft of the engagement letter, with these changes reflected.

Kind regards,
Melinda

**MELINDA R. COOLIDGE**
US Managing Partner
mcoolidge@hausfeld.com
+1 202-540-7144 direct
*Pronouns: she/her/hers*

# HAUSFELD

888 16th Street, N.W.
Suite 300
Washington, DC 20006
+1 202 540 7200

**hausfeld.com**

This electronic mail transmission from Hausfeld LLP may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.

**From:** Lazarus, Gabriel <glazarus@cgsh.com>
**Sent:** Wednesday, September 20, 2023 10:31 AM
**To:** Huppert, Matthew (ATR) <Matthew.Huppert@usdoj.gov>
**Cc:** Gelfand, David I. <dgelfand@cgsh.com>; Justin.bernick@hoganlovells.com; Battaglia, Lauren E. <lauren.battaglia@hoganlovells.com>; Cohen-Millstein, Peter <peter.cohen-millstein@hoganlovells.com>; Isaacs, Miranda (ATR) <Miranda.Isaacs@usdoj.gov>; Owen, Jay (ATR) <Jay.Owen@usdoj.gov>; Melinda R. Coolidge <mcoolidge@hausfeld.com>
**Subject:** RE: United States v. ASSA ABLOY - Monitoring Trustee Engagement

Matt,

ASSA ABLOY can do 5pm as well.

Separately, the chart below sets out positions on the outstanding items.  I understand Melinda agrees it's an accurate summary.

Best,

Gabriel

| Issue | Trustee | ASSA ABLOY |
|---|---|---|
| **Representations Adverse to ASSA ABLOY** | Hausfeld and StoneTurn may engage in adverse representations during the monitorship as long as individual trustee team members are firewalled and the matter isn't substantially related to the Monitorship.<br><br>Bates White may engage in adverse representations for the duration of the monitorship without any restriction on the subject of the representation, as long as trustee team members are not involved, and subject to typical restrictions on data access and discussing confidential information outside of teams. | None of the trustee firms will engage in adverse representations during the monitorship. |
| **Exhibit D/Budget** | Exhibit D lists individuals who the Trustee currently expects to consult, have complete occasional assignments, or serve as backup, and cannot be cut down (apart from the caps noted in the Exhibit).<br><br>It is not feasible to estimate a budget at the outset as the Trustee does not have complete information about what work will be required.  It may (or may not) be feasible to draft a budget around the beginning of next year, once the Trustee reviews the record and gathers more information. | The list of 25 individuals in Exhibit D (with caps) is excessive for the immediate, known needs of the Monitorship.  Exhibit D should include only individuals necessary at this point.  The engagement letter sets out a process to add team members if and when necessary later on.<br><br>The Trustee should be able to provide periodic budgets estimating Monitorship costs from "day 1." |

**Gabriel J. Lazarus**
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
T: +1 202 974 1812 | M: +1 301 915 7048
glazarus@cgsh.com  | clearygottlieb.com
Pronouns: he/him/his

**From:** Huppert, Matthew (ATR) <Matthew.Huppert@usdoj.gov>
**Sent:** Wednesday, September 20, 2023 10:01
**To:** Melinda R. Coolidge <mcoolidge@hausfeld.com>; Lazarus, Gabriel <glazarus@cgsh.com>
**Cc:** Gelfand, David I. <dgelfand@cgsh.com>; Justin.bernick@hoganlovells.com; Battaglia, Lauren E. <lauren.battaglia@hoganlovells.com>; Cohen-Millstein, Peter <peter.cohen-millstein@hoganlovells.com>; Isaacs, Miranda (ATR) <Miranda.Isaacs@usdoj.gov>; Owen, Jay (ATR) <Jay.Owen@usdoj.gov>
**Subject:** Re: United States v. ASSA ABLOY - Monitoring Trustee Engagement

2:30 doesn't work for DOJ. By process of elimination, does 5 pm work for everyone?

**From:** Melinda R. Coolidge <mcoolidge@hausfeld.com>
**Sent:** Wednesday, September 20, 2023 9:47:21 AM
**To:** Lazarus, Gabriel <glazarus@cgsh.com>; Huppert, Matthew (ATR) <Matthew.Huppert@usdoj.gov>
**Cc:** Gelfand, David I. <dgelfand@cgsh.com>; Justin.bernick@hoganlovells.com <Justin.bernick@hoganlovells.com>; Battaglia, Lauren E. <lauren.battaglia@hoganlovells.com>; Cohen-Millstein, Peter <peter.cohen-

millstein@hoganlovells.com>; Isaacs, Miranda (ATR) <Miranda.Isaacs@usdoj.gov>; Owen, Jay (ATR) <Jay.Owen@usdoj.gov>
**Subject:** [EXTERNAL] RE: United States v. ASSA ABLOY - Monitoring Trustee Engagement

I can.

**MELINDA R. COOLIDGE**
US Managing Partner
mcoolidge@hausfeld.com
+1 202-540-7144 direct
*Pronouns: she/her/hers*

# HAUSFELD

888 16th Street, N.W.
Suite 300
Washington, DC 20006
+1 202 540 7200

**hausfeld.com**

This electronic mail transmission from Hausfeld LLP may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.

**From:** Lazarus, Gabriel <glazarus@cgsh.com>
**Sent:** Wednesday, September 20, 2023 9:44 AM
**To:** Huppert, Matthew (ATR) <Matthew.Huppert@usdoj.gov>; Melinda R. Coolidge <mcoolidge@hausfeld.com>
**Cc:** Gelfand, David I. <dgelfand@cgsh.com>; Justin.bernick@hoganlovells.com; Battaglia, Lauren E. <lauren.battaglia@hoganlovells.com>; Cohen-Millstein, Peter <peter.cohen-millstein@hoganlovells.com>; Isaacs, Miranda (ATR) <Miranda.Isaacs@usdoj.gov>; Owen, Jay (ATR) <Jay.Owen@usdoj.gov>
**Subject:** RE: United States v. ASSA ABLOY - Monitoring Trustee Engagement

All,

With apologies for the switch—could we possibly do 2:30 instead?

Thank you,

Gabriel

**Gabriel J. Lazarus**
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
T: +1 202 974 1812 | M: +1 301 915 7048
glazarus@cgsh.com  | clearygottlieb.com
Pronouns: he/him/his

**From:** Lazarus, Gabriel
**Sent:** Wednesday, September 20, 2023 09:41

**To:** 'Huppert, Matthew (ATR)' <Matthew.Huppert@usdoj.gov>; Melinda R. Coolidge <mcoolidge@hausfeld.com>
**Cc:** Gelfand, David I. <dgelfand@cgsh.com>; Justin.bernick@hoganlovells.com; Battaglia, Lauren E. <lauren.battaglia@hoganlovells.com>; Cohen-Millstein, Peter <peter.cohen-millstein@hoganlovells.com>; Isaacs, Miranda (ATR) <Miranda.Isaacs@usdoj.gov>; Owen, Jay (ATR) <Jay.Owen@usdoj.gov>
**Subject:** RE: United States v. ASSA ABLOY - Monitoring Trustee Engagement

Matt,

2pm works for ASSA ABLOY.

Gabriel

___

**Gabriel J. Lazarus**
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
T: +1 202 974 1812 | M: +1 301 915 7048
glazarus@cgsh.com  | clearygottlieb.com
Pronouns: he/him/his

___

**From:** Huppert, Matthew (ATR) <Matthew.Huppert@usdoj.gov>
**Sent:** Wednesday, September 20, 2023 09:39
**To:** Melinda R. Coolidge <mcoolidge@hausfeld.com>; Lazarus, Gabriel <glazarus@cgsh.com>
**Cc:** Gelfand, David I. <dgelfand@cgsh.com>; Justin.bernick@hoganlovells.com; Battaglia, Lauren E. <lauren.battaglia@hoganlovells.com>; Cohen-Millstein, Peter <peter.cohen-millstein@hoganlovells.com>; Isaacs, Miranda (ATR) <Miranda.Isaacs@usdoj.gov>; Owen, Jay (ATR) <Jay.Owen@usdoj.gov>
**Subject:** Re: United States v. ASSA ABLOY - Monitoring Trustee Engagement

Could we all do 2 pm?

___

**From:** Melinda R. Coolidge <mcoolidge@hausfeld.com>
**Sent:** Wednesday, September 20, 2023 9:35:23 AM
**To:** Huppert, Matthew (ATR) <Matthew.Huppert@usdoj.gov>; Lazarus, Gabriel <glazarus@cgsh.com>
**Cc:** Gelfand, David I. <dgelfand@cgsh.com>; Justin.bernick@hoganlovells.com <Justin.bernick@hoganlovells.com>; Battaglia, Lauren E. <lauren.battaglia@hoganlovells.com>; Cohen-Millstein, Peter <peter.cohen-millstein@hoganlovells.com>; Isaacs, Miranda (ATR) <Miranda.Isaacs@usdoj.gov>; Owen, Jay (ATR) <Jay.Owen@usdoj.gov>
**Subject:** [EXTERNAL] RE: United States v. ASSA ABLOY - Monitoring Trustee Engagement

I'm sorry, I can move anything in my day except my meeting from 11:00-1:00. I'm available any other time.

___

**MELINDA R. COOLIDGE**
US Managing Partner
mcoolidge@hausfeld.com
+1 202-540-7144 direct
*Pronouns: she/her/hers*

# HAUSFELD

888 16th Street, N.W.
Suite 300
Washington, DC 20006
+1 202 540 7200

**hausfeld.com**

This electronic mail transmission from Hausfeld LLP may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.

---

**From:** Huppert, Matthew (ATR) <Matthew.Huppert@usdoj.gov>
**Sent:** Wednesday, September 20, 2023 8:26 AM
**To:** Lazarus, Gabriel <glazarus@cgsh.com>
**Cc:** Gelfand, David I. <dgelfand@cgsh.com>; Justin.bernick@hoganlovells.com; Battaglia, Lauren E. <lauren.battaglia@hoganlovells.com>; Cohen-Millstein, Peter <peter.cohen-millstein@hoganlovells.com>; Melinda R. Coolidge <mcoolidge@hausfeld.com>; Isaacs, Miranda (ATR) <Miranda.Isaacs@usdoj.gov>; Owen, Jay (ATR) <Jay.Owen@usdoj.gov>
**Subject:** RE: United States v. ASSA ABLOY - Monitoring Trustee Engagement


Thanks, Gabriel.

To both Melinda and ASSA:  Before the call, please send us an email concisely describing the disputed issues, as you understand them, and your rationale(s) for maintaining the position you're taking as to each.  This will help us use our half hour most efficiently.

---

**Matthew R. Huppert** (he/him)
U.S. Department of Justice | Antitrust Division
450 Fifth Street, NW, Suite 8700
Washington, DC 20001
(202) 476-0383 (cell)

---

**From:** Lazarus, Gabriel <glazarus@cgsh.com>
**Sent:** Wednesday, September 20, 2023 8:01 AM
**To:** Huppert, Matthew (ATR) <Matthew.Huppert@usdoj.gov>
**Cc:** Gelfand, David I. <dgelfand@cgsh.com>; Justin.bernick@hoganlovells.com; Battaglia, Lauren E. <lauren.battaglia@hoganlovells.com>; Cohen-Millstein, Peter <peter.cohen-millstein@hoganlovells.com>; mcoolidge@hausfeld.com; Isaacs, Miranda (ATR) <Miranda.Isaacs@usdoj.gov>; Owen, Jay (ATR) <Jay.Owen@usdoj.gov>
**Subject:** [EXTERNAL] Re: United States v. ASSA ABLOY - Monitoring Trustee Engagement

Matt,

Yes, 12:30 is good on our end.  We have a hard stop at 1:00 but we think a half hour will work.

Best,

Gabriel

---

**Gabriel J. Lazarus**
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
T: +1 202 974 1812 | M: +1 301 915 7048

glazarus@cgsh.com | clearygottlieb.com
Pronouns: he/him/his

On Sep 20, 2023, at 06:38, Huppert, Matthew (ATR) <Matthew.Huppert@usdoj.gov> wrote:

Thanks, Gabriel.  Could we try for 12:30?  Melinda, would that time work for you?

**Matthew R. Huppert** (he/him)
U.S. DEPARTMENT OF JUSTICE | ANTITRUST DIVISION
450 FIFTH STREET, NW, SUITE 8700
WASHINGTON, DC 20001
(202) 476-0383 (CELL)

**From:** Lazarus, Gabriel <glazarus@cgsh.com>
**Sent:** Tuesday, September 19, 2023 8:18 PM
**To:** Huppert, Matthew (ATR) <Matthew.Huppert@usdoj.gov>; Gelfand, David I. <dgelfand@cgsh.com>;
Justin.bernick@hoganlovells.com; Battaglia, Lauren E. <lauren.battaglia@hoganlovells.com>; Cohen-
Millstein, Peter <peter.cohen-millstein@hoganlovells.com>; mcoolidge@hausfeld.com
**Cc:** Isaacs, Miranda (ATR) <Miranda.Isaacs@usdoj.gov>; Owen, Jay (ATR) <Jay.Owen@usdoj.gov>
**Subject:** [EXTERNAL] RE: United States v. ASSA ABLOY - Monitoring Trustee Engagement

All,

The ASSA ABLOY side is available 11:30am-1pm, 2-3:45pm, or 5-5:30pm.

Regards,

Gabriel

‾‾‾

**Gabriel J. Lazarus**
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
T: +1 202 974 1812 | M: +1 301 915 7048
glazarus@cgsh.com | clearygottlieb.com
Pronouns: he/him/his

**From:** Huppert, Matthew (ATR) <Matthew.Huppert@usdoj.gov>
**Sent:** Tuesday, September 19, 2023 19:03
**To:** Lazarus, Gabriel <glazarus@cgsh.com>; Gelfand, David I. <dgelfand@cgsh.com>;
Justin.bernick@hoganlovells.com; Battaglia, Lauren E. <lauren.battaglia@hoganlovells.com>; Cohen-
Millstein, Peter <peter.cohen-millstein@hoganlovells.com>; mcoolidge@hausfeld.com
**Cc:** Isaacs, Miranda (ATR) <Miranda.Isaacs@usdoj.gov>; Owen, Jay (ATR) <Jay.Owen@usdoj.gov>
**Subject:** United States v. ASSA ABLOY - Monitoring Trustee Engagement
**Importance:** High

All,

It's come to our attention that, despite extensive discussions over the course of several
weeks, you have been unable to reach agreement on the terms of Melinda's engagement as
the monitoring trustee.  Because your discussions have gone well past the 14 days of

negotiation contemplated in Section X(F) of the Final Judgment, we'd like to convene a call as soon as possible among ASSA, Melinda, and DOJ personnel to make sure we fully understand the nature of the outstanding items and to discuss appropriate next steps.  Given the time that has already elapsed, we consider this a time-sensitive matter that requires everyone's prompt attention.  Therefore, please let us know your availability for a call tomorrow, September 20.

Thanks,

Matt

_____

**Matthew R. Huppert** (he/him)
U.S. DEPARTMENT OF JUSTICE | ANTITRUST DIVISION
450 FIFTH STREET, NW, SUITE 8700
WASHINGTON, DC 20001
(202) 476-0383 (CELL)

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities. Our external privacy statement is available at: https://www.clearygottlieb.com/footer/privacy-statement

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities. Our external privacy statement is available at: https://www.clearygottlieb.com/footer/privacy-statement

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities. Our external privacy statement is available at: https://www.clearygottlieb.com/footer/privacy-statement

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities. Our external privacy statement is available at: https://www.clearygottlieb.com/footer/privacy-statement

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities. Our external privacy statement is available at: https://www.clearygottlieb.com/footer/privacy-statement

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities. Our external privacy statement is available at: https://www.clearygottlieb.com/footer/privacy-statement

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities. Our external privacy statement is available at: https://www.clearygottlieb.com/footer/privacy-statement

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and

the term "offices" includes offices of those affiliated entities. Our external privacy statement is available at:
https://www.clearygottlieb.com/footer/privacy-statement

# EXHIBIT 3



**U.S. Department of Justice**

Antitrust Division

*Matthew R. Huppert*
*950 Pennsylvania Ave., NW*
*Washington, DC 20530*
*Matthew.Huppert@usdoj.gov*

February 29, 2024

**<u>Via E-Mail</u>**

Gabriel J. Lazarus
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue NW
Washington, DC 20037
glazarus@cgsh.com

Re:    *ASSA ABLOY Monitorship - Vietnam Asset Transfer*

Dear Gabriel:

Pursuant to the Final Judgment in *United States v. ASSA ABLOY AB*, No. 22-cv-2791 (D.D.C), the United States writes regarding the transfer of ASSA ABLOY's Smart Lock Foreign Divestiture Assets located in Vietnam.  It is at best unclear whether ASSA ABLOY has transferred these Vietnam assets to divestiture buyer Fortune Brands, and more information is required to demonstrate that ASSA ABLOY has given operational control of those assets to Fortune Brands.

Under the Final Judgment, if the Vietnam assets are not transferred to Fortune Brands by December 31, 2023, ASSA ABLOY must pay a daily fine of $50,120 until the assets have been transferred.  Final Judgment ¶ VI.C.  The Final Judgment provides that ASSA ABLOY can avoid paying the fine in certain circumstance, including if it "can demonstrate to the United States" that, notwithstanding the failure to formally transfer the Vietnam assets, "operational control has otherwise been given to [Fortune Brands] such that the purposes of the divestiture have been carried out."  *Id*.  If ASSA ABLOY wants to demonstrate that "operational control" has been given to Fortune Brands, it must "confer with the United States in an effort to reach agreement on whether the steps taken carry out the purposes of the divestiture."  *Id*.

On December 15, 2023, as required by Paragraph IX.A of the Final Judgment, ASSA ABLOY provided a sworn declaration describing its compliance with the Final Judgment.  In that declaration, ASSA ABLOY averred, among other things, that it was still "working to obtain the necessary Vietnamese regulatory approvals and to make appropriate business arrangements for the Transfer of Smart Lock Foreign Divestiture Assets."  Later that day, in response to ASSA ABLOY's declaration, we requested that "[i]f the Transfer of Smart Lock Foreign Divestiture Assets occurs before your next

1

affidavit would otherwise be due [on January 14, 2024], could you please let [the United States and Monitoring Trustee] know when that occurs?"  You responded, "Will do."

On December 28, 2023, you sent us an email providing an "update and additional detail regarding the Vietnam divestiture."  We understand several things from that email.  *First*, your email stated that the purchase price Fortune Brands plans to pay for the Vietnam assets was "being held in an escrow account" and would not "be released to ASSA ABLOY" until a Vietnamese governmental agency issued "an amended enterprise registration certificate evidencing a wholly owned subsidiary of Fortune Brands as the owner of the Vietnam Entity."  *Second*, your email did not describe any "necessary Vietnamese regulatory approvals" secured since ASSA ABLOY's December 15 declaration, and we are not aware of any such approvals being secured since December 15.  *Third*, neither your December 28 email nor any other communication from ASSA ABLOY to the United States has claimed that the actions you described in your December 28 email constituted a Transfer of Smart Lock Foreign Divestiture Assets, despite our specific request that you notify us when that event occurred.  At bottom, our understanding is that that the purchase price remains in escrow and that the divestiture transaction has not yet closed.  Accordingly, and based on the information we have received to date, it is at best unclear whether ASSA ABLOY has transferred the Vietnam assets as contemplated by the Final Judgment.

Under these circumstances, our expectation following your December 28 email was that ASSA ABLOY would rely on the "operational control" exception contemplated by the Final Judgment to avoid having to pay a fine that, unless excused under an exception set forth in the Final Judgment, would currently exceed $3 million.  We further expected prompt and substantive engagement from ASSA ABLOY to resolve this issue, but several weeks passed before we heard anything further from ASSA ABLOY.

It was not until February 2, 2024, at the recommendation of the Monitoring Trustee, that you finally contacted the United States and requested to confer with us about the operational control issue.  On February 7, 2024, counsel for ASSA ABLOY, the United States, and the Monitoring Trustee met by videoconference to discuss that issue.  At this meeting, counsel for ASSA ABLOY largely repeated the same information conveyed in your December 28 email and were unable to answer several questions we posed about the operation of the Vietnam smart lock manufacturing facility and the entity that owns it.  Given counsel's inability to answer these questions on February 7—answers we view as necessary to "demonstrate" transfer of operational control under the Final Judgment—ASSA ABLOY agreed to reach out to Fortune Brands to gather more information about the operation of the Vietnam entity.

On February 16, 2024, counsel for ASSA ABLOY forwarded to the United States and the Monitoring Trustee an email from counsel for Fortune Brands, dated February 14.  That email stated, in conclusory fashion, that (1) Chris Demko, who we understand is a Fortune Brands employee, "directs the day-to-day operations of the business" of the company that owns the Smart Lock Foreign Divestiture Assets in Vietnam, (2) Mr. Demko "takes direction from Jason Williams," who "directs all aspects of the business and operations of" that Vietnamese company, (3) the Vietnamese company "generate[s] sufficient cash to fund its working capital requirements," (4) the Vietnamese company's employees "are paid via the entity's own payroll," and (5) "[n]o member of the ASSA ABLOY group has any role in the oversight, management, or control of" the Vietnam entity.  In short, the February 14 email forwarded to us on February 16 did not provide

2

any meaningful detail, repeated statements that ASSA ABLOY had already made on February 7, and did not answer any of the unanswered questions we posed to you and your colleagues on February 7. We have received no further communications from ASSA ABLOY about this issue.

As the foregoing shows, our view is that ASSA ABLOY has not satisfied its obligation under the Final Judgment to "demonstrate to the United States" that "operational control has otherwise been given to [Fortune Brands] such that the purposes of the divestiture have been carried out." Neither the minimal amount of information ASSA ABLOY has provided us to date nor the conclusory statements that have accompanied that information is sufficient to satisfy this obligation. Nevertheless, we plan to continue to consider the operational-control issue and to consult with the Monitoring Trustee to determine whether information she has gathered or will gather might demonstrate that operational control has been given to Fortune Brands in Vietnam. As always, we welcome additional information from ASSA ABLOY about operational control, but we are disappointed by ASSA ABLOY's lack of engagement to date on this important issue.

Sincerely,

Matthew R. Huppert

cc:   Melinda R. Coolidge
      Jay Owen
      Miranda Isaacs
      Justin W. Bernick
      Logan M. Breed
      Peter Cohen-Millstein

# EXHIBIT 4

(Redacted)

| | |
|---|---|
| **From:** | Jack Melamed |
| **To:** | Melinda R. Coolidge |
| **Cc:** | Hiranda Donoghue; Michele Edwards; Lisa Van Houten; Daniel P. Weick; Jane Shin; Camila Ringeling; Mutchnik, James H.; Jason Liew; Thanh Nguyen |
| **Subject:** | RE: [External] RE: Monitoring Trustee Requests |
| **Date:** | Friday, May 17, 2024 3:28:37 PM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| | external.png |

**External email** ›

Melinda,

- **Escrow Payment/Closing**: We've completed all of our closing logistics in Vietnam and released the $23.5M purchase price from escrow to ASSA today, and they confirmed receipt. I will upload the letter we sent to JPM instructing them to release the funds today to the dataroom.

- **IRC Application**: With the ERC approval received, we were able to submit our post-closing IRC application to the regulator in Vietnam yesterday. I will also upload that application to the data room.

Thank you – and hope you all have a nice weekend.

**Jack N. Melamed**
Associate General Counsel – Corporate and M&A
Fortune Brands Innovations, Inc.
520 Lake Cook Road
Deerfield, Illinois 60015

Jack.Melamed@fbhs.com (email)
(847) 484-4429 (office)
█████████ (mobile)

FBIN.com | FBIN LinkedIn



This communication may contain information that is attorney-client privileged, attorney work product, proprietary, confidential, or exempt from disclosure. If you are not the intended recipient, please note that any other dissemination, distribution, use or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return email and delete it from his or her computer.

---

**From:** Jack Melamed
**Sent:** Tuesday, May 14, 2024 9:39 AM
**To:** 'Melinda R. Coolidge' <mcoolidge@hausfeld.com>
**Cc:** Hiranda Donoghue <H.Donoghue@fbhs.com>; Michele Edwards <medwards@stoneturn.com>; Lisa Van Houten <lvanhouten@stoneturn.com>; Daniel P. Weick <dweick@hausfeld.com>; Jane Shin <jshin@hausfeld.com>; Camila Ringeling <cringeling@hausfeld.com>; Mutchnik, James H. <jmutchnik@kirkland.com>; Jason Liew <jliew@stoneturn.com>; Thanh Nguyen <tnguyen@stoneturn.com>
**Subject:** RE: [External] RE: Monitoring Trustee Requests

Melinda,

1. **ERC Approval**: We received the amended ERC overnight last night (notwithstanding that I believe it is dated May 5), which is attached. We will upload this to the data room as well. We are working closely with AA and local counsel in VN to complete closing logistics and release the purchase price that is being held in escrow. We will separately confirm once the escrow has been released (and upload appropriate documentation to the data room).

2. **Vietnam Site Visit**: In order to prepare for the site visit in Vietnam, can you please send more detailed agendas for each individual meeting later this week? These meetings will likely take longer to prepare for (both because of time zone differences and because these individuals are much further removed from the transaction process than the other individuals you've spoken with). For reference, please see below the list of individuals that we have set aside for you to meet with (note that your agenda had referenced meeting with someone in IT, but Chris confirmed that there is not a local IT person within the VN organization).

   a. Finance/Accounting Leader  Alice Tham
   b. HR Leader  Helen Vu
   c. Procurement/Materials Manager  Jun Huong
   d. Production/Warehousing Manager  Messi Hung, Ben Tuyen
   e. Quality Control/Technical Leader  Azman MdArshad
   f. Line Worker / Supervisor  TBD

**Jack N. Melamed**
Associate General Counsel – Corporate and M&A
Fortune Brands Innovations, Inc.
520 Lake Cook Road
Deerfield, Illinois 60015

Jack.Melamed@fbhs.com (email)
(847) 484-4429 (office)
█████████ (mobile)

FBIN.com | FBIN LinkedIn



This communication may contain information that is attorney-client privileged, attorney work product, proprietary, confidential, or exempt from disclosure. If you are not the intended recipient, please note that any other dissemination, distribution, use or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return email and delete it from his or her computer.

---

**From:** Melinda R. Coolidge <mcoolidge@hausfeld.com>
**Sent:** Friday, April 26, 2024 8:40 AM
**To:** Jack Melamed <Jack.Melamed@fbhs.com>
**Cc:** Hiranda Donoghue <H.Donoghue@fbhs.com>; Michele Edwards <medwards@stoneturn.com>; Lisa Van Houten <lvanhouten@stoneturn.com>; Daniel P. Weick <dweick@hausfeld.com>; Jane Shin <jshin@hausfeld.com>; Camila Ringeling <cringeling@hausfeld.com>; Mutchnik, James H. <jmutchnik@kirkland.com>; Jason Liew <jliew@stoneturn.com>; Thanh Nguyen <tnguyen@stoneturn.com>
**Subject:** RE: [External] RE: Monitoring Trustee Requests

Thank you, Jack. Jason Liew and Thanh Nguyen have confirmed their availability for the site visit in Vietnam on Tuesday, May 28. Our plan will be to conclude the visit in one day, but they will stay over to Wednesday in case any follow-up is needed. Separate agendas per interview will follow.

1

Thanks,

**MELINDA R. COOLIDGE**
US Managing Partner
mcoolidge@hausfeld.com
+1 202-540-7144 direct
*Pronouns: she/her/hers*

# HAUSFELD

888 16th Street, N.W.
Suite 300
Washington, DC 20006
+1 202 540 7200
hausfeld.com
[hausfeld.com]

This electronic mail transmission from Hausfeld LLP may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.

**From:** Jack Melamed <Jack.Melamed@fbhs.com>
**Sent:** Thursday, April 25, 2024 1:58 PM
**To:** Melinda R. Coolidge <mcoolidge@hausfeld.com>
**Cc:** Hiranda Donoghue <Hiranda.Donoghue@fbhs.com>; Michele Edwards <medwards@stoneturn.com>; Lisa Van Houten <lvanhouten@stoneturn.com>; Daniel P. Weick <dweick@hausfeld.com>; Jane Shin <jshin@hausfeld.com>; Camila Ringeling <cringeling@hausfeld.com>; Mutchnik, James H. <jmutchnik@kirkland.com>
**Subject:** RE: [External] RE: Monitoring Trustee Requests

Thanks, Melinda.  Will do on getting both meeting invites out.  Also – I just wanted to confirm that I spoke with Chris Demko this morning who confirmed that, as of now, any day that week would work.  I've asked him to please try to keep availability that week until we've finally scheduled a day.

**Jack N. Melamed**
Associate General Counsel – Corporate and M&A
Fortune Brands Innovations, Inc.
520 Lake Cook Road
Deerfield, Illinois 60015

Jack.Melamed@fbhs.com (email)
(847) 484-4429 (office)
          (mobile)

FBIN.com [fbin.com] | FBIN LinkedIn [linkedin.com]



This communication may contain information that is attorney-client privileged, attorney work product, proprietary, confidential, or exempt from disclosure.  If you are not the intended recipient, please note that any other dissemination, distribution, use or copying of this communication is strictly prohibited.  Anyone who receives this message in error should notify the sender immediately by telephone or by return email and delete it from his or her computer.

**From:** Melinda R. Coolidge <mcoolidge@hausfeld.com>
**Sent:** Thursday, April 25, 2024 12:54 PM
**To:** Jack Melamed <Jack.Melamed@fbhs.com>
**Cc:** Hiranda Donoghue <Hiranda.Donoghue@fbhs.com>; Michele Edwards <medwards@stoneturn.com>; Lisa Van Houten <lvanhouten@stoneturn.com>; Daniel P. Weick <dweick@hausfeld.com>; Jane Shin <jshin@hausfeld.com>; Camila Ringeling <cringeling@hausfeld.com>; Mutchnik, James H. <jmutchnik@kirkland.com>
**Subject:** RE: [External] RE: Monitoring Trustee Requests

Jack,

Thanks for your response. Our team is available to meet with Alistair Turner and David Patton on Monday, May 6 from 4-5 PM CT.

If you could distribute the calendar invites for this meeting, as well as the meeting with Jacqueline Wan, that would be great. We will aim to provide both agendas early next week.

Regarding the historical data requests, I plan to follow-up with ASSA on this topic in the near future.

Separately, I will follow-up with you and Hiranda once we have further updates on the additional topics discussed yesterday, including the Vietnam site visit.

Thanks,

**MELINDA R. COOLIDGE**
US Managing Partner
mcoolidge@hausfeld.com
+1 202-540-7144 direct
*Pronouns: she/her/hers*

# HAUSFELD

888 16th Street, N.W.
Suite 300
Washington, DC 20006
+1 202 540 7200
hausfeld.com
[hausfeld.com]

This electronic mail transmission from Hausfeld LLP may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.

**From:** Jack Melamed <Jack.Melamed@fbhs.com>
**Sent:** Tuesday, April 23, 2024 5:13 PM
**To:** Melinda R. Coolidge <mcoolidge@hausfeld.com>
**Cc:** Hiranda Donoghue <Hiranda.Donoghue@fbhs.com>; Michele Edwards <medwards@stoneturn.com>; Lisa Van Houten <lvanhouten@stoneturn.com>; Daniel P. Weick <dweick@hausfeld.com>;

Jane Shin <jshin@hausfeld.com>; Camila Ringeling <cringeling@hausfeld.com>; Mutchnik, James H. <jmutchnik@kirkland.com>
**Subject:** RE: [External] RE: Monitoring Trustee Requests

Melinda,

Thanks for the note.  Please see below a few updates.

- Meetings:

  - Alistair Turner / David Patton Meeting: We are (and have publicly announced that we are) issuing earnings on April 30, so neither of the proposed time slots for this call will work.  However, I, Alistair and David can be available from: (i) Monday May 6: 4-5 PM CT, (ii) Tuesday May 7: 4-5 PM CT and (iii) Wednesday May 8: 12-1 PM CT.  Please let us know if any of those windows work for you and, if so, we can proceed with scheduling this meeting then.

  - Jacqueline Wan Meeting: We can be available during the Tues. 5/7: 7am – 9am Hong Kong time slot.

  - Meeting Times: For both of these calls, we believe that you should be able to have all of your questions answered in 1 hour and ask that the calls be limited to that length of time.

  - Meeting Agendas: For these meetings (and going forward more generally) we would ask that you please provide your call agenda 1 week in advance of the call (or earlier).  These folks obviously have less insight into the monitorship process and we will need a bit more time to prepare for these calls (and Jacqueline in particular is not based in the US, so scheduling prep time will take longer).  We think it's in everyone's benefit for us to have the opportunity to review the questions further in advance to ensure that the call is as productive as possible.

- Historical Data

  - I also wanted to circle back on the historical data requests we had previously made.  Our IT team confirmed that they need 3 years of data in the fields identified below.  This data request represents a subset of the data requests that we made on January 8th in the attached "Historical Data Request" email (I've separately attached the excel spreadsheet that is hyperlinked in that email).  Our IT team also confirmed that they need 5 years of documents per the below.  This documentation request was made on March 6 in the attached "Historical Redmap Documents" email.

  - As we previously confirmed, the data and file requests are for Yale only.

  - If you can please ask AA to work with our IT team to provide this information, that would be great.

*Data*

| | |
|---|---|
| F5548421 | *Serial Numbers* |
| F03B11 | *AR Ledger* |
| F03B13 | *Receipts Header* |
| F03B14 | *Receipts Detail* |
| F03012 | *Customer Master by Line of Business* |
| F0401 | *Supplier Master* |
| F4072 | *Pricing (Price Adjustment Detail)* |
| F4211\F42119 | *Sales Order Detail  (Merge both into 1 file)* |
| F4908 | *Shipping Information (Freight Class)* |

*This data is needed for Warranty Reference and Demand Planning.*

*Files*

| Document Type | Justification |
|---|---|
| Invoices | These are necessary this references the cost / value of the sale of the item shipped which is required for the customs/duties calculation |
| Purchase Orders | Includes required purchase prices/item specifics for items brought into the US which require customs/duties clearance. |
| Bills of Lading | Required document for customs clearance |
| Canadek declaration | This is documentation specific to shipments to Canada. |
| Commercial Invoice | Required document for customs clearance |
| Certificate of Origin from all Suppliers | This provides the originating country which is used in the calculation of customs/duties. |
| Shippers Letter of Instructions (SLI) | Required for customs clearance. |
| EEI Filings | |

**Jack N. Melamed**
Associate General Counsel – Corporate and M&A
Fortune Brands Innovations, Inc.
520 Lake Cook Road
Deerfield, Illinois 60015

Jack.Melamed@fbhs.com (email)
(847) 484-4429 (office)
███████ (mobile)

FBIN.com [fbin.com] | FBIN LinkedIn [linkedin.com]

 Fortune Brands Innovations

This communication may contain information that is attorney-client privileged, attorney work product, proprietary, confidential, or exempt from disclosure.  If you are not the intended recipient, please note that any other dissemination, distribution, use or copying of this communication is strictly prohibited.  Anyone who receives this message in error should notify the sender immediately by telephone or by return email and delete it from his or her computer.

**From:** Melinda R. Coolidge <mcoolidge@hausfeld.com>
**Sent:** Tuesday, April 16, 2024 9:09 AM
**To:** Hiranda Donoghue <Hiranda.Donoghue@fbhs.com>; Jack Melamed <Jack.Melamed@fbhs.com>; Mutchnik, James H. <jmutchnik@kirkland.com>
**Cc:** Michele Edwards <medwards@stoneturn.com>; Lisa Van Houten <lvanhouten@stoneturn.com>; Daniel P. Weick <dweick@hausfeld.com>; Jane Shin <jshin@hausfeld.com>; Camila Ringeling <cringeling@hausfeld.com>
**Subject:** [External] RE: Monitoring Trustee Requests

****Caution: This email originated from outside the FBIN organization. Be careful when you click links or open attachments contained in this email****

All,

As a follow-up to my meeting request submitted on March 7, please see below our proposed times to speak with Alistair Turner and David Patton regarding AAVN finance and accounting topics.

Please note, as shown in the table below, this meeting request is now designated as "FB_MR_06." We also designated our prior meeting requests submitted for the Fortune business with request IDs using this naming convention (including several meetings with Jason Williams, Steve Kamp, and Chris Demko), thus the requests below start with FB_MR_06.

In addition, we would like to meet with Jacqueline Wan (FB_MR_07) and have provided below the high-level meeting topics and proposed meeting dates / times.

Please let us know if the requested individuals are available at the times offered below. We will provide detailed agendas once finalized.

| Meeting Request ID | Name / Title | Location | Objective / Topic | Proposed Meeting Times | Comments |
|---|---|---|---|---|---|
| FB_MR_06 | ·Alistair Turner (Corporate): Director – External Reporting<br><br>·David Patton (Business Unit): Vice President, Finance – Security | ·Deerfield, IL – Central Time<br><br>·Milwaukee, WI – Central Time | ·Operational Control – Finance / Accounting for Vietnam | ● Mon. 4/29: 7am - 12pm CT<br>● Tues. 4/30: 7am - 11am CT<br><br>Requested Length: 1.5 Hours | We propose scheduling one meeting with both individuals given the overlap in agenda topics. |
| FB_MR_07 | Jacqueline Wan - VP of Supply Chain of Yale and August | Hong Kong | ·Compliance – Supply Agreements; Third-Party Contracts; supply chain / sourcing activities including for Vietnam<br>·Competitive Intensity | ● Tues. 4/30: 7am – 9am Hong Kong<br>● Tues. 5/7: 7am – 9am Hong Kong<br>● Fri. 5/10: 7am – 9am Hong Kong<br><br>Requested Length: 1.5 Hours | Confirm if translation is required |

Thank you,

---

**MELINDA R. COOLIDGE**
US Managing Partner
mcoolidge@hausfeld.com
+1 202-540-7144 direct
*Pronouns: she/her/hers*

## HAUSFELD

888 16th Street, N.W.
Suite 300
Washington, DC 20006
+1 202 540 7200
hausfeld.com
[hausfeld.com]

This electronic mail transmission from Hausfeld LLP may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.

---

**From:** Melinda R. Coolidge
**Sent:** Thursday, March 7, 2024 5:38 PM
**To:** Hiranda Donoghue <Hiranda.Donoghue@fbhs.com>; Jack Melamed <Jack.Melamed@fbhs.com>; Mutchnik, James H. <jmutchnik@kirkland.com>
**Subject:** Monitoring Trustee Requests

All,

Please see the document and interrogatories attached.

Note that document requests DR_07 and DR_08 included in the attached letter are intended to supplement our prior document request DR_04 relating to Fortune Brands' business and marketing plans. Also note that FB_DR_07 and FB_DR_08 are recurring requests for monthly/quarterly data.

Additionally, we would like to request meetings with the following individuals to discuss several topics relating to the Vietnam entity, including relating to funding/finances and other topics regarding Chris's management of the AAVN employees. We can work with you to coordinate schedules and will provide proposed meeting times based on our availability early next week. Additionally, we will provide more detailed agendas in advance of each call.
•     Chris Demko
•     Primary individual responsible for accounting and finance for the Vietnam entity

Thank you,

**MELINDA R. COOLIDGE**
US Managing Partner
mcoolidge@hausfeld.com
+1 202-540-7144 direct
*Pronouns: she/her/hers*

## HAUSFELD

888 16th Street, N.W.
Suite 300
Washington, DC 20006
+1 202 540 7200
hausfeld.com
[hausfeld.com]

This electronic mail transmission from Hausfeld LLP may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.

# EXHIBIT 5

| | |
|---|---|
| **From:** | Sega, Eric Richard <eric.sega@hoganlovells.com> |
| **Sent:** | Friday, May 17, 2024 6:33 PM |
| **To:** | Melinda R. Coolidge |
| **Cc:** | Breed, Logan M.; Scott Lobel; Daniel P. Weick; Battaglia, Lauren  E. |
| **Subject:** | RE: Monitoring Trustee Requests |
| **Attachments:** | Prime Conditions Precedent Satisfaction Notice.pdf; Prime Notice of Conditions Precedent Satisfaction.pdf; Prime Wire Transfer Confirmation.pdf |

⊘ External email ⟩

Hi Melinda,

Please find attached the executed conditions precedent satisfaction notices for the Capital Contribution Transfer Agreement dated October 19, 2023 (the "CTA").  In addition, we are attaching confirmation from JPMorgan that the escrow has been released.  The closing of the transfer of the Purchased Capital Contribution under the CTA occurred on May 17, 2024.

Sincerely,

Eric

**Eric Sega**
Senior Associate

**Hogan Lovells US LLP**
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004-1109
Tel:      +1 202 637 5600
Direct:  +1 202 637 4641
Fax:      +1 202 637 5910
Cell:     +1 202 993 0311
Email:   eric.sega@hoganlovells.com
          www.hoganlovells.com

---

**From:** Melinda R. Coolidge <mcoolidge@hausfeld.com>
**Sent:** Thursday, May 16, 2024 6:02 PM
**To:** Sega, Eric Richard <eric.sega@hoganlovells.com>
**Cc:** Breed, Logan M. <logan.breed@hoganlovells.com>; Scott Lobel <scott.lobel@bateswhite.com>; Daniel P. Weick <dweick@hausfeld.com>; Battaglia, Lauren E. <lauren.battaglia@hoganlovells.com>
**Subject:** RE: Monitoring Trustee Requests

**[EXTERNAL]**
Thank you, Eric; this is received.

**MELINDA R. COOLIDGE**
US Managing Partner
mcoolidge@hausfeld.com
+1 202-540-7144 direct

1

*Pronouns: she/her/hers*

# HAUSFELD

888 16th Street, N.W.
Suite 300
Washington, DC 20006
+1 202 540 7200

**hausfeld.com**

This electronic mail transmission from Hausfeld LLP may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.

**From:** Sega, Eric Richard <eric.sega@hoganlovells.com>
**Sent:** Thursday, May 16, 2024 2:23 PM
**To:** Melinda R. Coolidge <mcoolidge@hausfeld.com>
**Cc:** Breed, Logan M. <logan.breed@hoganlovells.com>; Scott Lobel <scott.lobel@bateswhite.com>; Daniel P. Weick <dweick@hausfeld.com>; Battaglia, Lauren E. <lauren.battaglia@hoganlovells.com>
**Subject:** RE: Monitoring Trustee Requests

Melinda,

I hope this email finds you well.  Please find attached the final ERC.  As we stated in our response to DRs 13 and 14 from March 22, we agreed to provide you with a copy of the amended ERC if and when we received it.  We also are providing a convenience translation in case helpful.

Sincerely,

Eric

**Eric Sega**
Senior Associate

Hogan Lovells US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004-1109
Tel:         +1 202 637 5600
Direct:    +1 202 637 4641
Fax:        +1 202 637 5910
Cell:        +1 202 993 0311
Email:     eric.sega@hoganlovells.com
              www.hoganlovells.com

**From:** Melinda R. Coolidge <mcoolidge@hausfeld.com>
**Sent:** Tuesday, April 16, 2024 3:12 PM
**To:** Lazarus, Gabriel <glazarus@cgsh.com>
**Cc:** Breed, Logan M. <logan.breed@hoganlovells.com>; Scott Lobel <scott.lobel@bateswhite.com>; Daniel P. Weick <dweick@hausfeld.com>; Sega, Eric Richard <eric.sega@hoganlovells.com>
**Subject:** RE: Monitoring Trustee Requests

[EXTERNAL]
Hi all,

I wanted to follow-up on our call a couple weeks ago about our document and data requests, and see if a further conversation would be productive, or if you otherwise have a plan to start rolling productions.

Thank you,

___

**MELINDA R. COOLIDGE**
US Managing Partner
mcoolidge@hausfeld.com
+1 202-540-7144 direct
*Pronouns: she/her/hers*

# HAUSFELD

888 16th Street, N.W.
Suite 300
Washington, DC 20006

+1 202 540 7200

**hausfeld.com**

This electronic mail transmission from Hausfeld LLP may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.

___

**From:** Lazarus, Gabriel <glazarus@cgsh.com>
**Sent:** Thursday, March 28, 2024 1:46 PM
**To:** Melinda R. Coolidge <mcoolidge@hausfeld.com>
**Cc:** Breed, Logan M. <logan.breed@hoganlovells.com>; Scott Lobel <scott.lobel@bateswhite.com>; Daniel P. Weick <dweick@hausfeld.com>; Sega, Eric Richard <eric.sega@hoganlovells.com>
**Subject:** RE: Monitoring Trustee Requests


Hi Melinda,

We're available 1-2pm ET on the 2nd.

Best,

Gabriel

___

**Gabriel J. Lazarus**
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
T: +1 202 974 1812 | M: +1 301 915 7048
glazarus@cgsh.com  | clearygottlieb.com
Pronouns: he/him/his

**From:** Melinda R. Coolidge <mcoolidge@hausfeld.com>
**Sent:** Wednesday, March 27, 2024 7:54 PM
**To:** Sega, Eric Richard <eric.sega@hoganlovells.com>
**Cc:** Lazarus, Gabriel <glazarus@cgsh.com>; Breed, Logan M. <logan.breed@hoganlovells.com>; Scott Lobel
<scott.lobel@bateswhite.com>; Daniel P. Weick <dweick@hausfeld.com>
**Subject:** RE: Monitoring Trustee Requests

Eric et al –

Following up on this, thanks.

**MELINDA R. COOLIDGE**
US Managing Partner
mcoolidge@hausfeld.com
+1 202-540-7144 direct
*Pronouns: she/her/hers*

# HAUSFELD

888 16th Street, N.W.
Suite 300
Washington, DC 20006

+1 202 540 7200

**hausfeld.com**

This electronic mail transmission from Hausfeld LLP may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.

**From:** Melinda R. Coolidge <mcoolidge@hausfeld.com>
**Sent:** Monday, March 25, 2024 6:14 PM
**To:** Sega, Eric Richard <eric.sega@hoganlovells.com>
**Cc:** Lazarus, Gabriel <glazarus@cgsh.com>; Breed, Logan M. <logan.breed@hoganlovells.com>; Scott Lobel
<scott.lobel@bateswhite.com>; Daniel P. Weick <dweick@hausfeld.com>
**Subject:** RE: Monitoring Trustee Requests

Dear Eric, Gabriel, and Logan,

Thank you for uploading certain requested documents to our share site. We would like to discuss your response to
AA_DR_06 with you. Please let me know if you would be available April 2 between 1-3pm ET.

Best,

**MELINDA R. COOLIDGE**
US Managing Partner
mcoolidge@hausfeld.com
+1 202-540-7144 direct
*Pronouns: she/her/hers*

# HAUSFELD

888 16th Street, N.W.
Suite 300
Washington, DC 20006

+1 202 540 7200

**hausfeld.com**

This electronic mail transmission from Hausfeld LLP may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.

**From:** Sega, Eric Richard <eric.sega@hoganlovells.com>
**Sent:** Friday, March 22, 2024 4:46 PM
**To:** Melinda R. Coolidge <mcoolidge@hausfeld.com>
**Cc:** Lazarus, Gabriel <glazarus@cgsh.com>; Breed, Logan M. <logan.breed@hoganlovells.com>
**Subject:** RE: Monitoring Trustee Requests

Hi Melinda,

Please see the attached correspondence.  I hope you have an enjoyable weekend.

Sincerely,

Eric

**Eric Sega**
Senior Associate

**Hogan Lovells US LLP**
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004-1109
Tel:     +1 202 637 5600
Direct:  +1 202 637 4641
Fax:     +1 202 637 5910
Cell:    +1 202 993 0311
Email:   eric.sega@hoganlovells.com
         www.hoganlovells.com

**From:** Melinda R. Coolidge <mcoolidge@hausfeld.com>
**Sent:** Thursday, March 7, 2024 3:24 PM
**To:** Lazarus, Gabriel <glazarus@cgsh.com>; Breed, Logan M. <logan.breed@hoganlovells.com>
**Subject:** Monitoring Trustee Requests

Dear Gabriel and Logan,

Please see the attached.

Thank you,

**MELINDA R. COOLIDGE**
US Managing Partner
mcoolidge@hausfeld.com
+1 202-540-7144 direct
*Pronouns: she/her/hers*

# HAUSFELD

888 16th Street, N.W.
Suite 300
Washington, DC 20006
+1 202 540 7200

**hausfeld.com**

This electronic mail transmission from Hausfeld LLP may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.

---

**About Hogan Lovells**
Hogan Lovells is an international legal practice that includes Hogan Lovells US LLP and Hogan Lovells International LLP. For more information, see www.hoganlovells.com.

CONFIDENTIALITY. This email and any attachments are confidential, except where the email states it can be disclosed; it may also be privileged. If received in error, please do not disclose the contents to anyone, but notify the sender by return email and delete this email (and any attachments) from your system.

PRIVACY. Hogan Lovells processes personal data, including data relating to email communications, in accordance with the terms of its privacy policy which is available at www.hoganlovells.com/en/privacy.

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities. Our external privacy statement is available at: https://www.clearygottlieb.com/footer/privacy-statement

## CONDITIONS PRECEDENT SATISFACTION NOTICE

Date:     May 16, 2024

To:      **ASSA ABLOY ASIA HOLDING AB**
         P.O. Box 70340 SE-107 23 Stockholm, Sweden
         Attention  :  Ann-Charlotte Högberg
                       Board Member
         Email      :  anncharlotte.hogberg@assaabloy.com

*With copy to*:

         **HOGAN LOVELLS US LLP**
         390 Madison Avenue, New York, NY 10017
         Attention  :  Peter Cohen-Millstein and Megan Ridley-Kaye
                       Partner
         Email      :  peter.cohen-millstein@hoganlovells.com;
                       megan.ridley-kaye@hoganlovells.com

Dear Mesdames/Sirs

1.    We refer to Article III(d) in relation to Schedule I of the Capital Contribution Transfer Agreement dated October 19, 2023 between Assa Abloy Asia Holding AB as the "**Seller**" and Master Lock Company LLC as the "**Buyer**" (the *"Agreement"*). Unless otherwise defined in this Conditions Precedent Satisfaction Notice ("**Notice**") or context otherwise warrants, capitalized terms used in this Notice shall have the same meaning given to them in the Agreement.

2.    We, the Buyer, hereby confirm that as of the date hereof:

      (a)    All Conditions Precedent have been satisfied (and in the case of the Condition Precedent under paragraph (d), Part B of Schedule I of the Agreement, has been deemed satisfied) in accordance with the Agreement; and

      (b)    the Seller has completed and delivered all deliverables, including those set forth under Article IV(b)(i) of the Agreement, as far as they relate to deliverables to completed and delivered by the Seller on or prior to the Vietnam Closing Date.

3.    Articles 8.03, 8.07, 8.08 and 8.10 of the Agreement shall be incorporated into this Notice *mutatis mutandis*.

Best regards,

*[Signature page follows]*

1

FOR AND ON BEHALF OF
**MASTER LOCK COMPANY LLC**


JASON RAYMOND WILLIAMS
President

**NOTICE OF CONDITIONS PRECEDENT SATISFACTION**

Date:  May 16, 2024

To:     **Master Lock Company LLC**

        520 Lake Cook Road Suite 300, Deerfield, IL 60015, USA

        Attention to:      **Jack N. Melamed**
                           Associate General Counsel – M&A
                           Jack.Melamed@fbhs.com

Dear Sirs/Mesdames:

The undersigned, on behalf of AASA ABLOY Asia Holding AB, a company duly incorporated under the laws of Sweden under the Certificate of Registration No. 556602 - 4500 issued by Swedish Companies Registration Office on December 11, 2000 and having the registered address at PO Box 70340, 107 23 Stockholm, Sweden (the "**Seller**") hereby delivers this Notice of Conditions Precedent Satisfaction to Master Lock Company LLC, a company duly established and organized under the laws of the State of Delaware under the Certificate of Formation No. 765425 issued by Secretary of State of the State of Delaware, USA on August 15, 2005 and having the registered address at 251 Little Falls Drive, Wilmington, Delaware 19808, USA (the "**Buyer**") pursuant to Article III(d) of the Capital Contribution Transfer Agreement dated October 19, 2023 and entered into by and between the Seller and the Buyer (the "**CTA**"). Each capitalized term used but not defined in this document shall have the meaning assigned to it in the CTA.

The undersigned hereby certify to the Buyer, on behalf of the Seller, and not in any individual capacity, that on the Vietnam Closing Date, each of the Conditions Precedent set forth in Schedule 1 of the CTA has been satisfied in accordance with the CTA.


*[The remainder of this page is intentionally left blank; signature page follows.]*

Best regards,

**FOR AND ON BEHALF OF ASSA ABLOY ASIA HOLDING AB**

PER JONAS AXEL GÅRDMARK
Board Member

ULRIKA ANN-CHARLOTTE HÖGBERG
Board Member

**Sega, Eric Richard**

---

**From:** Wrobel, Eydie <eydie.wrobel@jpmchase.com>
**Sent:** Friday, May 17, 2024 8:47 AM
**To:** Martinez, Nicole Aiello <nmartinez@sidley.com>
**Cc:** Jack Melamed <Jack.Melamed@fbhs.com>; Blackburn, Jonathan <jblackburn@sidley.com>; Utset, Karla E. <kutset@sidley.com>; Shaner, Jake <jake.shaner@hoganlovells.com>; anncharlotte.hogberg@assaabloy.com; Cohen-Millstein, Peter <peter.cohen-millstein@hoganlovells.com>; Ridley-Kaye, Megan <megan.ridley-kaye@hoganlovells.com>; Moy, Susie X <susie.moy@jpmorgan.com>; McKenney, Sara E <sara.e.mckenney@jpmorgan.com>; Ryan, Kevin M <kevin.m.ryan@jpmorgan.com>
**Subject:** RE: [EXTERNAL]Prime - Vietnam Closing - ESP28529
**Importance:** High

[EXTERNAL]
Good morning All,

The wire has been released, below are the payment details:

DATE:  5/17/2024
AMOUNT:  $23,500,000.00
PAYEE:  ASSA ABLOY Asia Holding AB
WIRE REFERENCE NUMBER/CHIPS:  SSN# 00353631


--------------------------------------------------------------------------------------------------------------------------------------------------
------------------------------------------------------------------------------------------------------------------------
**Eydie Wrobel** | Vice President | Escrow Services | **J.P.Morgan Payments** | Commercial & Investment Bank | 312-954-0159 |10 S Dearborn 44th Floor Mail Code IL1-0113 Chicago IL 60603| **eydie.wrobel@jpmchase.com**

**Alternate Contacts:**  Susie Moy|312-954-0144|susie.moy@jpmorgan.com & Lorna Tippett |312-954-0114|lorna.v.tippett@jpmorgan.com

Simplify your experience with **Escrow Direct** – our self-service platform listing all your accounts and providing access to check balances, view statements/agreements and initiate payment requests. Learn more **here**.



---

**From:** Wrobel, Eydie (CIB, USA) <eydie.wrobel@jpmchase.com>
**Sent:** Friday, May 17, 2024 7:00 AM
**To:** Martinez, Nicole Aiello <nmartinez@sidley.com>; mw escrow <mw.escrow@jpmorgan.com>; McKenney, Sara E (CIB, USA) <sara.e.mckenney@jpmorgan.com>
**Cc:** Jack Melamed <Jack.Melamed@fbhs.com>; Blackburn, Jonathan <jblackburn@sidley.com>; Utset, Karla E. <kutset@sidley.com>; Shaner, Jake <jake.shaner@hoganlovells.com>; anncharlotte.hogberg@assaabloy.com; Cohen-Millstein, Peter <peter.cohen-millstein@hoganlovells.com>; megan.ridley-kaye@hoganlovells.com
**Subject:** Re: [EXTERNAL]Prime - Vietnam Closing - ESP28529

Confirming receipt.

Eydie

1

**From:** Martinez, Nicole Aiello <nmartinez@sidley.com>
**Sent:** Friday, May 17, 2024 6:47:47 AM
**To:** mw escrow <mw.escrow@jpmorgan.com>; Wrobel, Eydie (CIB, USA) <eydie.wrobel@jpmchase.com>; McKenney, Sara E (CIB, USA) <sara.e.mckenney@jpmchase.com>
**Cc:** Jack Melamed <Jack.Melamed@fbhs.com>; Blackburn, Jonathan <jblackburn@sidley.com>; Utset, Karla E. <kutset@sidley.com>; Shaner, Jake <jake.shaner@hoganlovells.com>; anncharlotte.hogberg@assaabloy.com <anncharlotte.hogberg@assaabloy.com>; Cohen-Millstein, Peter <peter.cohen-millstein@hoganlovells.com>; megan.ridley-kaye@hoganlovells.com <megan.ridley-kaye@hoganlovells.com>
**Subject:** [EXTERNAL]Prime - Vietnam Closing - ESP28529

All –

Attached please find the executed Purchaser release instructions.  Per our discussion yesterday, please release the funds in accordance with the attached instructions as soon as possible.  Once released, we would greatly appreciate if you could circulate fed reference numbers once available.

Thank you and please let us know if you need anything else!

Best,

Nicole
**NICOLE AIELLO MARTINEZ**
Senior Managing Associate

**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, IL 60603
+1 312 853 0759
nmartinez@sidley.com
www.sidley.com

**SIDLEY**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*
This e-mail is sent by a law firm and may contain information that is privileged or confidential.
If you are not the intended recipient, please delete the e-mail and any attachments and notify us immediately.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*

This message is confidential and subject to terms at: https://www.jpmorgan.com/emaildisclaimer including on confidential, privileged or legal entity information, malicious content and monitoring of electronic messages. If you are not the intended recipient, please delete this message and notify the sender immediately. Any unauthorized use is strictly prohibited.

# EXHIBIT 6

**Suzanne McPhail**

| | |
|---|---|
| **From:** | Lazarus, Gabriel <glazarus@cgsh.com> |
| **Sent:** | Friday, December 15, 2023 4:57 PM |
| **To:** | Melinda R. Coolidge |
| **Cc:** | Gelfand, David I.; Breed, Logan M. |
| **Subject:** | RE: ASSA ABLOY | Invoices |

⊗ External email ›

Melinda,

Received—thank you.  Have a good weekend!

Best,

Gabriel

**Gabriel J. Lazarus**
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
T: +1 202 974 1812 | M: +1 301 915 7048
glazarus@cgsh.com  | clearygottlieb.com
Pronouns: he/him/his

**From:** Melinda R. Coolidge <mcoolidge@hausfeld.com>
**Sent:** Friday, December 15, 2023 4:53 PM
**To:** Lazarus, Gabriel <glazarus@cgsh.com>
**Cc:** Gelfand, David I. <dgelfand@cgsh.com>; Breed, Logan M. <logan.breed@hoganlovells.com>
**Subject:** RE: ASSA ABLOY | Invoices

Gabriel,

Thanks for talking through this with me earlier today. Here are the requested forms and revised invoices.

Best regards,

**MELINDA R. COOLIDGE**
US Managing Partner
mcoolidge@hausfeld.com
+1 202-540-7144 direct
*Pronouns: she/her/hers*

# HAUSFELD

888 16th Street, N.W.
Suite 300
Washington, DC 20006
+1 202 540 7200

**hausfeld.com**

This electronic mail transmission from Hausfeld LLP may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.

---

**From:** Lazarus, Gabriel <glazarus@cgsh.com>
**Sent:** Saturday, December 9, 2023 10:27 AM
**To:** Melinda R. Coolidge <mcoolidge@hausfeld.com>
**Cc:** Gelfand, David I. <dgelfand@cgsh.com>; Breed, Logan M. <logan.breed@hoganlovells.com>
**Subject:** RE: ASSA ABLOY | Invoices

Hi Melinda,

The revised invoices address the time aggregation issue but still don't provide information sufficient to reasonably describe the team's work.  In particular, the invoices still use the vague categories "other," "analysis," and "document/data review."  Please provide descriptions for that time clarifying the work and its relation to the monitorship.

For processing, please also provide a copy of Hausfeld's W-9 and complete the attached ACH form, and address the invoices to:
L. Page Heslin
ASSA ABLOY Inc.
110 Sargent Drive
New Haven, CT  06511

Thank you,

Gabriel

---

**Gabriel J. Lazarus**
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
T: +1 202 974 1812 | M: +1 301 915 7048
glazarus@cgsh.com  | clearygottlieb.com
Pronouns: he/him/his

---

**From:** Melinda R. Coolidge <mcoolidge@hausfeld.com>
**Sent:** Tuesday, December 5, 2023 12:50 PM
**To:** Lazarus, Gabriel <glazarus@cgsh.com>
**Cc:** Gelfand, David I. <dgelfand@cgsh.com>; Breed, Logan M. <logan.breed@hoganlovells.com>
**Subject:** RE: ASSA ABLOY | Invoices

Gabriel, here are revised invoices with additional detail by person. I hope this helps.

Regards,

**MELINDA R. COOLIDGE**
US Managing Partner
mcoolidge@hausfeld.com
+1 202-540-7144 direct
*Pronouns: she/her/hers*

888 16th Street, N.W.
Suite 300
Washington, DC 20006
+1 202 540 7200

**hausfeld.com**

This electronic mail transmission from Hausfeld LLP may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.

**From:** Lazarus, Gabriel <glazarus@cgsh.com>
**Sent:** Monday, November 20, 2023 5:47 PM
**To:** Melinda R. Coolidge <mcoolidge@hausfeld.com>
**Cc:** Gelfand, David I. <dgelfand@cgsh.com>; Breed, Logan M. <logan.breed@hoganlovells.com>
**Subject:** ASSA ABLOY | Invoices

Hi Melinda,

I've learned that the first couple monitorship invoices (attached) unfortunately don't meet the requirement to provide "sufficient detail to reasonably describe the contributions of each member of the Monitoring Trustee Team" per the engagement letter.

In particular:

1. The invoices aggregate the time of all team members at each firm by "Description," rather than providing the "contributions of each member of the Monitoring Trustee Team."

2. The cursory "Descriptions" provided don't offer "sufficient detail to reasonably describe" members' work.

Can the team please provide revised invoices consistent with the requirements of the engagement letter, and continue to do so for future invoices? Hopefully that fix is straightforward, but I'm happy to correspond further or find a time to chat if helpful.

Thank you,

Gabriel

**Gabriel J. Lazarus**
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
T: +1 202 974 1812 | M: +1 301 915 7048
glazarus@cgsh.com  | clearygottlieb.com
Pronouns: he/him/his

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities. Our external privacy statement is available at:
https://www.clearygottlieb.com/footer/privacy-statement

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities. Our external privacy statement is available at:
https://www.clearygottlieb.com/footer/privacy-statement

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities. Our external privacy statement is available at:
https://www.clearygottlieb.com/footer/privacy-statement

# EXHIBIT 7

**Suzanne McPhail**

| | |
|---|---|
| **From:** | Lazarus, Gabriel <glazarus@cgsh.com> |
| **Sent:** | Wednesday, January 24, 2024 5:02 PM |
| **To:** | Melinda R. Coolidge |
| **Subject:** | RE: Monitor invoices |

 External email ❯

Melinda,

As we discussed, the invoices originally submitted did not conform to the requirements of the engagement agreement.  You provided updated invoices on December 15 to address that issue.  I can confirm with ASSA ABLOY, but I would expect they are calculating the 60 days from the date of the corrected invoices.

Best,

Gabriel

**Gabriel J. Lazarus**
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
T: +1 202 974 1812 | M: +1 301 915 7048
glazarus@cgsh.com  | clearygottlieb.com
Pronouns: he/him/his

---

**From:** Melinda R. Coolidge <mcoolidge@hausfeld.com>
**Sent:** Wednesday, January 24, 2024 3:54 PM
**To:** Lazarus, Gabriel <glazarus@cgsh.com>
**Subject:** RE: Monitor invoices

Hi Gabriel,

We sent our first invoice on October 25. From what date is ASSA ABLOY calculating the 60 day due date?

Thank you,

**MELINDA R. COOLIDGE**
US Managing Partner
mcoolidge@hausfeld.com
+1 202-540-7144 direct
*Pronouns: she/her/hers*

# HAUSFELD

888 16th Street, N.W.
Suite 300
Washington, DC 20006
+1 202 540 7200
**hausfeld.com**

This electronic mail transmission from Hausfeld LLP may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.

**From:** Lazarus, Gabriel <glazarus@cgsh.com>
**Sent:** Wednesday, January 24, 2024 11:22 AM
**To:** Melinda R. Coolidge <mcoolidge@hausfeld.com>
**Subject:** RE: Monitor invoices

Hi Melinda,

I checked with ASSA ABLOY and understand the invoices are in line for payment in accordance with the 60-day period in the engagement letter.

Best,

Gabriel

**Gabriel J. Lazarus**
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
T: +1 202 974 1812 | M: +1 301 915 7048
glazarus@cgsh.com | clearygottlieb.com
Pronouns: he/him/his

**From:** Melinda R. Coolidge <mcoolidge@hausfeld.com>
**Sent:** Tuesday, January 23, 2024 4:09 PM
**To:** Lazarus, Gabriel <glazarus@cgsh.com>
**Subject:** Monitor invoices

Gabriel,

Do you have any update on payment of our invoices? We will be reporting on the status of ASSA's compliance with the FJ to the DOJ on Thursday, and payment of the monitor is one of the requirements of the FJ.

Thank you,

**MELINDA R. COOLIDGE**
US Managing Partner
mcoolidge@hausfeld.com
+1 202-540-7144 direct
*Pronouns: she/her/hers*

# HAUSFELD

888 16th Street, N.W.

Suite 300

Washington, DC 20006

+1 202 540 7200

**hausfeld.com**

This electronic mail transmission from Hausfeld LLP may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities. Our external privacy statement is available at:
https://www.clearygottlieb.com/footer/privacy-statement

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities. Our external privacy statement is available at:
https://www.clearygottlieb.com/footer/privacy-statement

# EXHIBIT 8

**Suzanne McPhail**

| | |
|---|---|
| **From:** | Melinda R. Coolidge |
| **Sent:** | Tuesday, March 12, 2024 2:17 PM |
| **To:** | Lazarus, Gabriel |
| **Subject:** | RE: ASSA ABLOY \| Invoices |

Gabriel,

I wanted to let you know that we have a call with DOJ on Thursday, and to give ASSA an opportunity to meet its obligations under our engagement agreement. We have several extremely late to be paid invoices outstanding.

Regards,

**MELINDA R. COOLIDGE**
US Managing Partner
mcoolidge@hausfeld.com
+1 202-540-7144 direct
*Pronouns: she/her/hers*

# HAUSFELD

888 16th Street, N.W.
Suite 300
Washington, DC 20006

+1 202 540 7200

**hausfeld.com**

This electronic mail transmission from Hausfeld LLP may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.

**From:** Melinda R. Coolidge
**Sent:** Saturday, February 24, 2024 8:30 AM
**To:** 'Lazarus, Gabriel' <glazarus@cgsh.com>
**Subject:** RE: ASSA ABLOY \| Invoices

Hi Gabriel,

I hope you are well. Since one of the requirements for ASSA ABLOY to be in compliance with the final judgment is payment of invoices from the monitoring trustee, I wanted to be sure you were aware that ASSA ABLOY only paid one of the three invoices that were due by February 15, stating that it did not have copies of the other two invoices that we had provided to you in final form by December 15. We haven't heard back since we resubmitted these invoices to them at their request on Monday.

Thank you,

**MELINDA R. COOLIDGE**
US Managing Partner
mcoolidge@hausfeld.com

+1 202-540-7144 direct
*Pronouns: she/her/hers*

# HAUSFELD

888 16th Street, N.W.
Suite 300
Washington, DC 20006
+1 202 540 7200

**hausfeld.com**

This electronic mail transmission from Hausfeld LLP may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.

**From:** Lazarus, Gabriel <glazarus@cgsh.com>
**Sent:** Thursday, February 8, 2024 4:12 PM
**To:** Melinda R. Coolidge <mcoolidge@hausfeld.com>
**Subject:** RE: ASSA ABLOY | Invoices

> ⊙ **External email** >

Thanks!

---

**Gabriel J. Lazarus**
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
T: +1 202 974 1812 | M: +1 301 915 7048
glazarus@cgsh.com | clearygottlieb.com
Pronouns: he/him/his

**From:** Melinda R. Coolidge <mcoolidge@hausfeld.com>
**Sent:** Thursday, February 8, 2024 4:10 PM
**To:** Lazarus, Gabriel <glazarus@cgsh.com>
**Subject:** RE: ASSA ABLOY | Invoices

Hi Gabriel,

Here you go.

Best,

---

**MELINDA R. COOLIDGE**
US Managing Partner
mcoolidge@hausfeld.com
+1 202-540-7144 direct
*Pronouns: she/her/hers*

# HAUSFELD

888 16th Street, N.W.
Suite 300
Washington, DC 20006
+1 202 540 7200
**hausfeld.com**

This electronic mail transmission from Hausfeld LLP may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.

---

**From:** Lazarus, Gabriel <glazarus@cgsh.com>
**Sent:** Thursday, February 8, 2024 12:54 PM
**To:** Melinda R. Coolidge <mcoolidge@hausfeld.com>
**Subject:** RE: ASSA ABLOY | Invoices

Hi Melinda,

In getting ready to issue payment on the Hausfeld invoices, ASSA ABLOY just noticed that the certification checkbox on the ACH form was blank.

Can you please confirm that Sue Huberty was authorized to sign for Hausfeld? I understand I can forward that confirmation and everything will remain on track.

Thank you,

Gabriel

---

**Gabriel J. Lazarus**
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
T: +1 202 974 1812 | M: +1 301 915 7048
glazarus@cgsh.com  | clearygottlieb.com
Pronouns: he/him/his

---

**From:** Melinda R. Coolidge <mcoolidge@hausfeld.com>
**Sent:** Friday, December 15, 2023 4:53 PM
**To:** Lazarus, Gabriel <glazarus@cgsh.com>
**Cc:** Gelfand, David I. <dgelfand@cgsh.com>; Breed, Logan M. <logan.breed@hoganlovells.com>
**Subject:** RE: ASSA ABLOY | Invoices

Gabriel,

Thanks for talking through this with me earlier today. Here are the requested forms and revised invoices.

Best regards,

---

**MELINDA R. COOLIDGE**
US Managing Partner
mcoolidge@hausfeld.com
+1 202-540-7144 direct
*Pronouns: she/her/hers*

# HAUSFELD

888 16th Street, N.W.
Suite 300
Washington, DC 20006
+1 202 540 7200

**hausfeld.com**

This electronic mail transmission from Hausfeld LLP may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.

---

**From:** Lazarus, Gabriel <glazarus@cgsh.com>
**Sent:** Saturday, December 9, 2023 10:27 AM
**To:** Melinda R. Coolidge <mcoolidge@hausfeld.com>
**Cc:** Gelfand, David I. <dgelfand@cgsh.com>; Breed, Logan M. <logan.breed@hoganlovells.com>
**Subject:** RE: ASSA ABLOY | Invoices


Hi Melinda,

The revised invoices address the time aggregation issue but still don't provide information sufficient to reasonably describe the team's work.  In particular, the invoices still use the vague categories "other," "analysis," and "document/data review."  Please provide descriptions for that time clarifying the work and its relation to the monitorship.

For processing, please also provide a copy of Hausfeld's W-9 and complete the attached ACH form, and address the invoices to:
L. Page Heslin
ASSA ABLOY Inc.
110 Sargent Drive
New Haven, CT  06511

Thank you,

Gabriel

—

**Gabriel J. Lazarus**
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
T: +1 202 974 1812 | M: +1 301 915 7048
glazarus@cgsh.com  | clearygottlieb.com
Pronouns: he/him/his

4

**From:** Melinda R. Coolidge <mcoolidge@hausfeld.com>
**Sent:** Tuesday, December 5, 2023 12:50 PM
**To:** Lazarus, Gabriel <glazarus@cgsh.com>
**Cc:** Gelfand, David I. <dgelfand@cgsh.com>; Breed, Logan M. <logan.breed@hoganlovells.com>
**Subject:** RE: ASSA ABLOY | Invoices

Gabriel, here are revised invoices with additional detail by person. I hope this helps.

Regards,



**MELINDA R. COOLIDGE**
US Managing Partner
mcoolidge@hausfeld.com
+1 202-540-7144 direct
*Pronouns: she/her/hers*



888 16th Street, N.W.
Suite 300
Washington, DC 20006
+1 202 540 7200

**hausfeld.com**

This electronic mail transmission from Hausfeld LLP may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.

**From:** Lazarus, Gabriel <glazarus@cgsh.com>
**Sent:** Monday, November 20, 2023 5:47 PM
**To:** Melinda R. Coolidge <mcoolidge@hausfeld.com>
**Cc:** Gelfand, David I. <dgelfand@cgsh.com>; Breed, Logan M. <logan.breed@hoganlovells.com>
**Subject:** ASSA ABLOY | Invoices

Hi Melinda,

I've learned that the first couple monitorship invoices (attached) unfortunately don't meet the requirement to provide "sufficient detail to reasonably describe the contributions of each member of the Monitoring Trustee Team" per the engagement letter.

In particular:

1. The invoices aggregate the time of all team members at each firm by "Description," rather than providing the "contributions of each member of the Monitoring Trustee Team."

2. The cursory "Descriptions" provided don't offer "sufficient detail to reasonably describe" members' work.

5

Can the team please provide revised invoices consistent with the requirements of the engagement letter, and continue to do so for future invoices?  Hopefully that fix is straightforward, but I'm happy to correspond further or find a time to chat if helpful.

Thank you,

Gabriel

—

**Gabriel J. Lazarus**
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
T: +1 202 974 1812 | M: +1 301 915 7048
glazarus@cgsh.com  | clearygottlieb.com
Pronouns: he/him/his

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities. Our external privacy statement is available at:
https://www.clearygottlieb.com/footer/privacy-statement

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities. Our external privacy statement is available at:
https://www.clearygottlieb.com/footer/privacy-statement

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities. Our external privacy statement is available at:
https://www.clearygottlieb.com/footer/privacy-statement

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities. Our external privacy statement is available at:
https://www.clearygottlieb.com/footer/privacy-statement

# EXHIBIT 9

| | |
|---|---|
| **From:** | Melinda R. Coolidge |
| **Sent:** | Thursday, March 14, 2024 7:37 PM |
| **To:** | Huppert, Matthew (ATR); Isaacs, Miranda (ATR) |
| **Cc:** | Michele Edwards; Daniel P. Weick; Jane Shin |
| **Subject:** | ASSA ABLOY monitorship invoices |

Matt,

This is to let you know that ASSA ABLOY has not paid the monitor's invoices in a timely manner. At this time, the October and November invoices are overdue.

To put it in terms most favorable to ASSA, October and November were finalized and accepted by ASSA/its counsel (no further changes requested) on December 15 and 20, respectively. Payment terms under our agreement are to pay within 60 days, so we expected payment of these no later than about a month ago. When my accounting manager followed-up with ASSA on February 16 (when payment for our September and December invoices was made), we were told that ASSA didn't have those invoices in its system. My accounting manager provided them with another copy on February 19, and we still have not received payment.

To give you the full context, we originally provided our invoices on these dates:

- September invoice provided 10/25/23; **due 12/25/23; paid 2/16/24**. ASSA counsel requested changes 11/20/23, we went back and forth, and agreed on a final December 15.
- October invoice provided 11/20/23; **due 1/20/23; unpaid**. ASSA counsel requested changes 11/20/23, we went back and forth, and agreed on a final December 15.
- November invoice provided 12/20/23; **due 2/20/23; unpaid**.
- December invoice provided 1/24/24; **due 3/24/24; paid 2/16/24**.
- January invoice provided 2/23/24; due 4/23/24 (not yet due; unpaid).

Thank you,

 

**MELINDA R. COOLIDGE**
US Managing Partner
mcoolidge@hausfeld.com
+1 202-540-7144 direct
*Pronouns: she/her/hers*

# HAUSFELD

888 16th Street, N.W.
Suite 300
Washington, DC 20006

+1 202 540 7200

**hausfeld.com**

This electronic mail transmission from Hausfeld LLP may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.

# EXHIBIT 10

| | |
|---|---|
| **From:** | Melinda R. Coolidge |
| **Sent:** | Thursday, March 28, 2024 4:01 PM |
| **To:** | Lazarus, Gabriel |
| **Cc:** | Breed, Logan M.; Scott Lobel; Daniel P. Weick; Sega, Eric Richard |
| **Subject:** | RE: Monitoring Trustee Requests |

Thank you; I sent an invite.

**MELINDA R. COOLIDGE**
US Managing Partner
mcoolidge@hausfeld.com
+1 202-540-7144 direct
*Pronouns: she/her/hers*

# HAUSFELD

888 16th Street, N.W.
Suite 300
Washington, DC 20006
+1 202 540 7200
**hausfeld.com**

This electronic mail transmission from Hausfeld LLP may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.

**From:** Lazarus, Gabriel <glazarus@cgsh.com>
**Sent:** Thursday, March 28, 2024 1:46 PM
**To:** Melinda R. Coolidge <mcoolidge@hausfeld.com>
**Cc:** Breed, Logan M. <logan.breed@hoganlovells.com>; Scott Lobel <scott.lobel@bateswhite.com>; Daniel P. Weick <dweick@hausfeld.com>; Sega, Eric Richard <eric.sega@hoganlovells.com>
**Subject:** RE: Monitoring Trustee Requests

Hi Melinda,

We're available 1-2pm ET on the 2nd.

Best,

Gabriel

**Gabriel J. Lazarus**
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
T: +1 202 974 1812 | M: +1 301 915 7048

glazarus@cgsh.com | clearygottlieb.com
Pronouns: he/him/his

---

**From:** Melinda R. Coolidge <mcoolidge@hausfeld.com>
**Sent:** Wednesday, March 27, 2024 7:54 PM
**To:** Sega, Eric Richard <eric.sega@hoganlovells.com>
**Cc:** Lazarus, Gabriel <glazarus@cgsh.com>; Breed, Logan M. <logan.breed@hoganlovells.com>; Scott Lobel <scott.lobel@bateswhite.com>; Daniel P. Weick <dweick@hausfeld.com>
**Subject:** RE: Monitoring Trustee Requests

Eric et al —

Following up on this, thanks.

**MELINDA R. COOLIDGE**
US Managing Partner
mcoolidge@hausfeld.com
+1 202-540-7144 direct
*Pronouns: she/her/hers*

# HAUSFELD

888 16th Street, N.W.
Suite 300
Washington, DC 20006
+1 202 540 7200

**hausfeld.com**

This electronic mail transmission from Hausfeld LLP may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.

---

**From:** Melinda R. Coolidge <mcoolidge@hausfeld.com>
**Sent:** Monday, March 25, 2024 6:14 PM
**To:** Sega, Eric Richard <eric.sega@hoganlovells.com>
**Cc:** Lazarus, Gabriel <glazarus@cgsh.com>; Breed, Logan M. <logan.breed@hoganlovells.com>; Scott Lobel <scott.lobel@bateswhite.com>; Daniel P. Weick <dweick@hausfeld.com>
**Subject:** RE: Monitoring Trustee Requests

Dear Eric, Gabriel, and Logan,

Thank you for uploading certain requested documents to our share site. We would like to discuss your response to AA_DR_06 with you. Please let me know if you would be available April 2 between 1-3pm ET.

Best,

**MELINDA R. COOLIDGE**
US Managing Partner
mcoolidge@hausfeld.com
+1 202-540-7144 direct

*Pronouns: she/her/hers*

# HAUSFELD

888 16th Street, N.W.
Suite 300
Washington, DC 20006
+1 202 540 7200

**hausfeld.com**

This electronic mail transmission from Hausfeld LLP may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.

**From:** Sega, Eric Richard <eric.sega@hoganlovells.com>
**Sent:** Friday, March 22, 2024 4:46 PM
**To:** Melinda R. Coolidge <mcoolidge@hausfeld.com>
**Cc:** Lazarus, Gabriel <glazarus@cgsh.com>; Breed, Logan M. <logan.breed@hoganlovells.com>
**Subject:** RE: Monitoring Trustee Requests

Hi Melinda,

Please see the attached correspondence.  I hope you have an enjoyable weekend.

Sincerely,

Eric

**Eric Sega**
Senior Associate

**Hogan Lovells US LLP**
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004-1109
Tel:       +1 202 637 5600
Direct:   +1 202 637 4641
Fax:      +1 202 637 5910
Cell:      +1 202 993 0311
Email:    eric.sega@hoganlovells.com
             www.hoganlovells.com

**From:** Melinda R. Coolidge <mcoolidge@hausfeld.com>
**Sent:** Thursday, March 7, 2024 3:24 PM
**To:** Lazarus, Gabriel <glazarus@cgsh.com>; Breed, Logan M. <logan.breed@hoganlovells.com>
**Subject:** Monitoring Trustee Requests

Dear Gabriel and Logan,

Please see the attached.

3

Thank you,

**MELINDA R. COOLIDGE**
US Managing Partner
mcoolidge@hausfeld.com
+1 202-540-7144 direct
*Pronouns: she/her/hers*

# HAUSFELD

888 16th Street, N.W.
Suite 300
Washington, DC 20006
+1 202 540 7200

**hausfeld.com**

This electronic mail transmission from Hausfeld LLP may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.

---

**About Hogan Lovells**
Hogan Lovells is an international legal practice that includes Hogan Lovells US LLP and Hogan Lovells International LLP. For more information, see www.hoganlovells.com.

CONFIDENTIALITY. This email and any attachments are confidential, except where the email states it can be disclosed; it may also be privileged. If received in error, please do not disclose the contents to anyone, but notify the sender by return email and delete this email (and any attachments) from your system.

PRIVACY. Hogan Lovells processes personal data, including data relating to email communications, in accordance with the terms of its privacy policy which is available at www.hoganlovells.com/en/privacy.

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities. Our external privacy statement is available at:
https://www.clearygottlieb.com/footer/privacy-statement

# EXHIBIT 11

**RESPONSE TO MARCH 7, 2024 DOCUMENT REQUESTS DIRECTED TO ASSA ABLOY**

**<u>Document Request AA DR 06</u>**

This ongoing request for over a dozen categories of materials on a periodic basis is overbroad, and complying with it would be unreasonably burdensome. The Trustee was appointed to "monitor Defendants' compliance with the terms of th[e] Final Judgment and the Asset Preservation Stipulation and Order" (Final Judgment § X.B). The Trustee's targeted questions and requests regarding the divestitures address this task. In contrast, the business and strategy materials sought by the instant request, which are unrelated to the litigation and divestiture, do not. The Trustee's other responsibility is to assess Fortune Brands' competitive intensity in the residential smart lock business as of June 20, 2026, "relative to ASSA ABLOY's competitive intensity as of the divestiture date" (Final Judgment § IV). As part of litigation, there is already extensive discovery into ASSA ABLOY's competitive intensity at the time of the divestiture. As to Fortune Brands' competitive intensity, ASSA ABLOY's periodic reports since settlement cannot be dispositive, or even instructive, of a different company's competitive significance more than two years in the future.

ASSA ABLOY would need to devote substantial resources to identifying and producing responsive materials, disrupting its business. The types of documents sought frequently include information about foreign operations entirely outside the Trustee's purview. ASSA ABLOY's U.S. smart lock business is part of its broader Americas division, and the documents requested are prepared primarily for the division level. ASSA ABLOY's Board of Directors is responsible for the entire company, with materials concerning the U.S. smart lock business embedded in analysis covering global operations. Consequently, ASSA ABLOY would need to identify snippets of responsive information in volumes of irrelevant material. Many of the documents sought also reflect privileged advice from counsel, and would therefore need to be redacted. ASSA ABLOY would incur an outsize financial burden paying for that ongoing review and production of substantially all of its periodic reports, in addition to the cost of paying for the Trustee to review those materials.

These burdens are unjustified given that the requested materials are unnecessary for the Trustee to carry out any of their duties under the Final Judgment.

**<u>Document Request AA DR 07</u>**

The Hong Kong and Korea Foreign Acquisition Agreements and related documents have been uploaded to the folder labeled "DR 07" within the "2024.03.22 Document Request Response" folder on Egress.

**<u>Document Request AA DR 08</u>**

Although the Capital Contribution Transfer Agreement references an "Asset Transfer Agreement," this document was not signed by the parties. In lieu of entering into an Asset Transfer Agreement, ASSA ABLOY Smart Product Vietnam Co., Ltd. and ASSA ABLOY Smart Technology Vietnam Co., Ltd. entered into a Contract of Liquidation of Assets and a Contract on

Liquidation of Inventory on August 1, 2023, pursuant to which the assets of the Vietnam business that were agreed would remain with ASSA ABLOY were transferred from the legal entity that would be purchased by Fortune Brands. These agreements have been uploaded to the folder labeled "DR 09" within the "2024.03.22 Document Request Response" folder on Egress. In addition, an Employment Termination Agreement, dated July 28, 2023, was entered into between AASPV and Nguyen Van Thanh, pursuant to which this employee was transferred from AASPV in order to remain with ASSA ABLOY. This document has been uploaded to the folder labeled "DR 08" within the "2024.03.22 Document Request Response" folder on Egress.

**Document Request AA DR 09**

The Contract of Liquidation of Assets and Contract on Liquidation of Inventory have been uploaded to the folder labeled "DR 09" within the "2024.03.22 Document Request Response" folder on Egress.

**Document Request AA DR 10**

The resolutions (1) authorizing transfer of equity in the Vietnam entity to Master Lock Company LLC ("MLC"); (2) giving MLC the right to appoint its authorized representative as Chairman of the Vietnam entity; and (3) amending the Charter of the Vietnam entity to reflect MLC as the owner of the Vietnam entity, with the right to dismiss and replace the Legal Representative of the Vietnam entity, have been uploaded to the folder labeled "DR 10" within the "2024.03.22 Document Request Response" folder on Egress.

**Document Request AA DR 11**

The amended charter of the Vietnam entity has been uploaded to the folder labeled "DR 11" within the "2024.03.22 Document Request Response" folder on Egress.

**Document Request AA DR 12**

The registration of the change of ownership for the Vietnam entity has been uploaded to the folder labeled "DR 12" within the "2024.03.22 Document Request Response" folder on Egress.

**Document Request AA DR 13**

ASSA ABLOY's application for the M&A approval has been uploaded to the folder labeled "DR 13" within the "2024.03.22 Document Request Response" folder on Egress. ASSA ABLOY submitted the M&A approval application on November 8, 2023.

ASSA ABLOY has provided the suite of documents that were filed with the Vinh Phuc Department of Planning and Investment to obtain an amended ERC application in the folder labeled "DR 13" within the "2024.03.22 Document Request Response" folder on Egress. However, as noted in the second resolution provided in response to AA DR 10, Fortune Brands (Master Lock Company LLC) is responsible for applying to amend the ERC. Accordingly, ASSA ABLOY may not receive a copy of the amended ERC once issued by the relevant authority.

**Document Request AA DR 14**

As noted in our response to DR 13, Fortune Brands is ultimately responsible for filing the ERC application and will receive the amended ERC once issued. To the extent Fortune Brands provides a copy to ASSA ABLOY after it has been issued, ASSA ABLOY will provide a copy of the amended ERC to the Trustee.

**Document Request AA DR 15**

ASSA ABLOY will provide documentation of the release of funds from escrow once those funds are released.

**Interrogatory Request AA IR 06**

ASSA ABLOY will provide an update on the release of funds from escrow once those funds are released.

**Meeting Request**

Per Lisa Van Houten's March 12, 2024 email, ASSA ABLOY understands that the Trustee is evaluating availability and will propose windows to speak with Cassandra Song.

# EXHIBIT 12

**HAUSFELD**

**Melinda R. Coolidge**
**US Managing Partner**

888 16th Street NW
Suite 300
Washington DC 20006

T: 202-540-7144
E: mcoolidge@hausfeld.com

June 7, 2024

Lauren E. Battaglia, Esq.
Hogan Lovells LLP 555 13th Street, NW
Washington, DC 20004
lauren.battaglia@hoganlovells.com

Re: Requested Project Timelines

Dear Lauren,

During the meet and confer with the Department of Justice on May 28, 2024, the ASSA ABLOY Monitoring Trustee Team presented preliminary and estimated project timelines, based on numerous assumptions and facts available as of May 28, 2024. As you have requested, we are providing you with those preliminary and estimated project timelines herewith.

All of the estimated project timelines provide a high-level visual depiction of estimated work efforts by quarter for the five-year term outlined in the FJ. These timelines do not contemplate scenarios for which the term of the Monitoring Trustee's role or the Final Judgment term could be extended as outlined in sections X.J, XVI and XVII of the Final Judgment. They also do not contemplate scenarios for which the United States or the Court could appoint other powers to the Monitoring Trustee as outlined in section X.B.

The purpose of the estimated project timelines was to illustrate the Monitoring Trustee Team's ("MTT") overall risk-based approach for conducting its work, including estimated potential cycles of higher and lower anticipated work effort throughout the term of the monitorship, based on various assumptions.

The "Chart Key" included in the estimated project timelines includes different colors / shading and should be interpreted as follows:

- *Light Green* – The quarters shaded in light green represent time periods of *lower* anticipated work effort. While the MTT is required to monitor the Parties' compliance with the terms of the Final Judgment during these time periods, in general, the MTT expects a much lower work effort will be required. For example, the MTT's procedures could consist of a minimal number of meetings with key stakeholders and minimal document / information requests and review that would allow the MTT to monitor compliance.

- *Dark Green* – The quarters shaded in dark green represent time periods with *higher* anticipated work effort and would involve more meetings with key stakeholders and more document/ information requests, review, and analysis of the data relevant to competitive intensity.

As discussed during the meet and confer, the shading is **not** intended to represent a constant work effort during the time period shaded.

hausfeld.com

AMSTERDAM | BERLIN | BOSTON | BRUSSELS | DÜSSELDORF | LONDON | NEW YORK | PARIS | PHILADELPHIA | SAN FRANCISCO | STOCKHOLM | WASHINGTON, DC

**HAUSFELD**

Scenario 1 and Scenario 2 of the estimated project timelines are based on different assumptions as follows:

- *Scenario 1* - These timelines illustrate the MTT's "lower-end" anticipated work effort, which is based on various assumptions including, but not limited to:
    - Full cooperation and best efforts from the Parties to assist the MTT in meeting its objectives;
    - Full access to personnel and requested documentation / information provided by the Parties;
    - Minimal evidence of non-compliance or concerns raised by the Parties;
    - Minimal involvement by the MTT required relating to disputes raised by the Parties;
    - Minimal involvement by the MTT required as a result of the Parties not exercising certain options (e.g., Yale Access Control audits; TSA extensions) and no triggering events (e.g., missing patents pursuant to FJ Section VI.P and Stock Purchase Agreement Section 6.06 - Licenses); and
    - MTT does not identify any material diminishment of Fortune's competitive intensity in the residential Smart Locks business relative to ASSA ABLOY's competitive intensity in that business as of the Divestiture Date.

- *Scenario 2* - These timelines illustrate the MTT's "higher-end" anticipated work effort, which is based on various assumptions including, but not limited to:
    - Less cooperation from the Parties to assist the MTT in meeting its objectives;
    - Inefficiencies due to limited access to personnel and requested documentation / information;
    - Expanded MTT efforts and additional risk-based procedures required due to evidence of non-compliance or concerns raised by the Parties;
    - More significant involvement by the MTT due to required consultation relating to disputes raised by the Parties;
    - Expanded MTT efforts due to certain options exercised by the Parties (e.g., Yale Access Control audits; TSA extensions) and/or triggering events that occur (e.g., missing patents pursuant to FJ Section VI.P and Stock Purchase Agreement Section 6.06 - Licenses); and
    - MTT identifies material diminishment of Fortune's competitive intensity in the residential Smart Locks business relative to ASSA ABLOY's competitive intensity in that business as of the Divestiture Date and thus must seek to determine whether "such diminishment in competitive intensity is in material part due to limitations on [Fortune's] right to use the rights held by ASSA ABLOY to the Yale brand name or trademarks in the U.S. and Canada as of the Divestiture Date."

Very truly yours,

*/s/ Melinda R. Coolidge*
Melinda R. Coolidge

2

DRAFT – SUBJECT TO CHANGE
PRELIMINARY TIMELINE BASED ON
FACTS AVAILABLE AS OF MAY 2024

# ASSA ABLOY Monitoring Trustee Team – Project Timeline
## Scenario 1





# EXHIBIT 13

| | |
|---|---|
| **From:** | Daniel P. Weick |
| **Sent:** | Thursday, December 21, 2023 9:42 AM |
| **To:** | glazarus@cgsh.com; lauren.battaglia@hoganlovells.com |
| **Cc:** | Melinda R. Coolidge; Camila Ringeling; Michele Edwards; Lisa Van Houten |
| **Subject:** | US v. ASSA ABLOY Document/Interview Requests |
| **Attachments:** | 2023-12-20 Ltr to ASSA ABLOY re Document Requests.pdf |

Dear Gabriel and Lauren:

Pursuant to paragraph X.H of the Final Judgment in *United States v. ASSA ABLOY*, I am reaching out with requests for ASSA ABLOY to provide documents to the Monitoring Trustee and to make employees available for interviews on certain topics as described below.

*First*, please see attached for a letter containing the first set of document requests from the Monitoring Trustee.

*Second*, we request that you identify ASSA ABLOY employees who would be available to sit for interviews with the Monitoring Trustee Team on the following topics:

1. ASSA ABLOY's compliance with the divestiture requirements and other provisions of the Final Judgment and Asset Preservation Stipulation & Order (for compliance monitoring); and

2. ASSA ABLOY's integration of and plans for the residential and multi-family assets it acquired from Spectrum Brands (for the competitive intensity study); and

3. ASSA ABLOY's plans for integrating or transitioning Spectrum's data systems and data management practices going forward, and ASSA ABLOY's plans for maintaining Spectrum's historical data (for the competitive intensity study).

Please advise who would be the most knowledgeable employees on these topics and provide dates in January and February when they might be available for interviews of up to two hours. We would prefer to speak to a relevant ASSA ABLOY employee on topic 1 in January if possible. Thanks.

-Dan

**DANIEL P. WEICK**
Of Counsel
dweick@hausfeld.com
*Pronouns: he/him/his*

# HAUSFELD

33 Whitehall Street
14th Floor
New York, NY 10004

+1 646 357 1100

**hausfeld.com**

This electronic mail transmission from Hausfeld LLP may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.

# HAUSFELD.

December 21, 2023

**CONFIDENTIAL**
**VIA ELECTRONIC MAIL**

33 Whitehall Street
14th Floor
New York, NY 10004

**DANIEL P. WEICK**
**Of Counsel**

**E**: dweick@hausfeld.com
**T**: +1 646 357 1100
**DD**: +1 646 647 1282

Gabriel J. Lazarus, Esq.
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
glazarus@cgsh.com

Lauren E. Battaglia, Esq.
Hogan Lovells LLP
555 13th Street, NW
Washington, DC 20004
lauren.battaglia@hoganlovells.com

Re:     *U.S. v. ASSA ABLOY AB, et al.*, Case No. 1:22-cv-02791-ACR

Dear Gabriel and Lauren:

I write on behalf of the Monitoring Trustee in the above-captioned action to ask ASSA ABLOY AB ("ASSA ABLOY") to produce certain documents and information. As always, the Monitoring Trustee is bound by the Protective Order and will treat any documents and information produced by ASSA ABLOY as "Confidential Information" pursuant to the "Engagement Agreement For Services of Melinda R. Coolidge As Monitoring Trustee" between the Monitoring Trustee and ASSA ABLOY, which was adopted pursuant to Section X.D of the Final Judgment.

The Monitoring Trustee's specific requests are enclosed with this letter, and the Monitoring Trustee asks ASSA ABLOY to respond to her requests no later than 5pm ET on January 5, 2024.

Please let me know if you have any questions about the requests or if you identify any potential hardships associated with formulating ASSA ABLOY's responses (including concerns regarding potential claims of privilege or the burdens of compliance).

Sincerely,

*/s/ Daniel P. Weick*
Daniel P. Weick

hausfeld.com

AMSTERDAM | BERLIN | BOSTON | BRUSSELS | DÜSSELDORF | LONDON | NEW YORK | PARIS | PHILADELPHIA | SAN FRANCISCO | STOCKHOLM | WASHINGTON, DC

**HAUSFELD**

## DOCUMENT REQUESTS DIRECTED TO ASSA ABLOY

### Document Request AA_DR_01

Please produce the final executed and signed versions of the Divestiture Agreements as well as the final version of all annexes, schedules, and any other attachments (except for those previously provided to the MTT).

Requested Due Date: 5pm ET on Friday, January 5, 2023

### Document Request AA_DR_02

Please produce the Vietnam Foreign Acquisition Agreement and all documents referred, attached, or related to the Vietnam Foreign Acquisition Agreement.

Requested Due Date: 5pm ET on Friday, January 5, 2023

### Document Request AA_DR_03

Please produce ASSA ABLOY's formal statements to the U.S. Department of Justice regarding its compliance with the obligations of the Final Judgment and the Asset Preservation Stipulation & Order (APSO), including but not limited to any statement provided under paragraph VII.J of the APSO since May 2023 and any compliance affidavits provided under Section IX of the Final Judgment submitted before August 2023.

Requested Due Date: 5pm ET on Friday, January 5, 2023

EXHIBIT 14

| From: | Daniel P. Weick |
|---|---|
| Sent: | Thursday, January 11, 2024 5:38 PM |
| To: | glazarus@cgsh.com |
| Cc: | logan.breed@hoganlovells.com; Melinda R. Coolidge; Michele Edwards; Lisa Van Houten |
| Subject: | US v. ASSA ABLOY Compliance Follow-Ups |

Gabriel,

During our call with you on 1/2, we discussed that ASSA would submit a narrative / written responses regarding the various APSO and FJ obligations (agreed for 1/19). We have three follow-up items on that:

- *First*, along with ASSA's written response to each requirement, can you please also provide the names / titles of the individuals at ASSA who are responsible for each obligation / area? We do not intend to contact these individuals (and we are not requesting their contact details); rather we are requesting this information for future reference and to enhance our understanding of the individuals responsible for compliance at ASSA.

- *Second*, we wanted to inform you that we plan to submit some additional clarification questions regarding ASSA's response to FJ VI.A and FJ VI.C regarding the Transfer of Smart Lock Foreign Divestiture Assets (as defined in FJ II.Q and S). Our questions will ask for certain information / details that will allow us to assess compliance with the specific requirements outlined in the FJ. We plan to provide this to you early next week. We also discussed during our call that ASSA could prioritize certain topics in order to frontload those documents / responses to our team. We would like to request that ASSA prioritize its response to FJ VI.A and FJ VI.C to the extent possible.

- *Third*, we discussed that ASSA may prefer to offer written documentation / responses regarding the other two interview requests (regarding the integration plans and competitive strategy for the acquired Spectrum assets and ASSA's plans regarding continued data tracking / sources for those products) so as to potentially allow for more limited / focused interviews on those topics. Have you been able to confirm the availability of documents that would pertain to those requests? If so, would ASSA be able to provide those documents on 1/19 along with the written materials for the first interview request?

Relatedly, following up on your December 28, 2023, email to the DOJ and MTT, could you please advise what ASSA ABLOY's position is regarding its compliance with paragraph VI.C of the Final Judgment? Does ASSA ABLOY contend that it "achieve[d] Transfer of Smart Lock Foreign Divestiture Assets" by December 31, 2023, in accordance with paragraph VI.C of the Final Judgment? If not, does ASSA ABLOY contend that either the force majeure or the transfer of "operational control" provisions of that paragraph apply? If ASSA ABLOY is relying on the "operational control" provision, when does it intend to "confer with the United States in an effort to reach agreement on whether the steps taken carry out the purposes of the divestiture"?

Finally, we understand that ASSA did not submit a compliance affidavit in June 2023. Could you please advise whether there was a specific reason for that and whether ASSA had agreed with DOJ that no affidavit would be necessary for that month?

Thanks,
Dan

**DANIEL P. WEICK**
Of Counsel
dweick@hausfeld.com
*Pronouns: he/him/his*

# HAUSFELD

33 Whitehall Street
14th Floor
New York, NY 10004

+1 646 357 1100

**hausfeld.com**

This electronic mail transmission from Hausfeld LLP may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.

EXHIBIT 15

| From: | Lazarus, Gabriel <glazarus@cgsh.com> |
|---|---|
| Sent: | Friday, January 26, 2024 8:41 PM |
| To: | Daniel P. Weick; Camila Ringeling; Michele Edwards; Melinda R. Coolidge; Lisa Van Houten |
| Cc: | Breed, Logan M. |
| Subject: | RE: US v. ASSA ABLOY Document/Interview Requests |
| Attachments: | 2024.01.26 ASSA ABLOY Compliance Summary.pdf |



All,

Please find a summary of ASSA ABLOY's compliance with the APSO and FJ attached and an explanation of the operational integration and financial reporting for the HHI assets below.

Best regards,

Gabriel

▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

Because ASSA ABLOY was required to divest its Premium Mechanical and Smart Lock businesses, there were no ASSA ABLOY businesses competing in the US Premium Mechanical and Smart Lock markets with which to "integrate" the HHI assets acquired from Spectrum Brands. Rather, and consistent with planning prior to the acquisition, ASSA ABLOY has been using the HHI assets in an effort to expand sales of door entry solutions in the consumer, DIY, and home builder segments. (*See, e.g.*, AA-DOJ2R-004730199 at 9). This strategy involves investing in the brands acquired with the HHI assets and supporting the sales channels for those products.

The HHI business was consolidated into ASSA ABLOY's financial reporting beginning June 2023. The performance of the HHI assets is tracked using QAD and SAP. Finances are tracked at the plant level and consolidated under the Opening Solutions Americas division. An allocation for overhead costs is applied at the division level to account for shared services. ASSA ABLOY does not have plans to change the technology or processes it uses for financial reporting pertaining to the HHI assets.

**Gabriel J. Lazarus**
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
T: +1 202 974 1812 | M: +1 301 915 7048
glazarus@cgsh.com  | clearygottlieb.com
Pronouns: he/him/his

**From:** Daniel P. Weick <dweick@hausfeld.com>
**Sent:** Thursday, December 21, 2023 9:42 AM
**To:** Lazarus, Gabriel <glazarus@cgsh.com>; lauren.battaglia@hoganlovells.com
**Cc:** Melinda R. Coolidge <mcoolidge@hausfeld.com>; Camila Ringeling <cringeling@hausfeld.com>; Michele Edwards <medwards@stoneturn.com>; Lisa Van Houten <lvanhouten@stoneturn.com>
**Subject:** US v. ASSA ABLOY Document/Interview Requests

Dear Gabriel and Lauren:

Pursuant to paragraph X.H of the Final Judgment in *United States v. ASSA ABLOY*, I am reaching out with requests for ASSA ABLOY to provide documents to the Monitoring Trustee and to make employees available for interviews on certain topics as described below.

*First*, please see attached for a letter containing the first set of document requests from the Monitoring Trustee.

*Second*, we request that you identify ASSA ABLOY employees who would be available to sit for interviews with the Monitoring Trustee Team on the following topics:

1.  ASSA ABLOY's compliance with the divestiture requirements and other provisions of the Final Judgment and Asset Preservation Stipulation & Order (for compliance monitoring); and

2.  ASSA ABLOY's integration of and plans for the residential and multi-family assets it acquired from Spectrum Brands (for the competitive intensity study); and

3.  ASSA ABLOY's plans for integrating or transitioning Spectrum's data systems and data management practices going forward, and ASSA ABLOY's plans for maintaining Spectrum's historical data (for the competitive intensity study).

Please advise who would be the most knowledgeable employees on these topics and provide dates in January and February when they might be available for interviews of up to two hours. We would prefer to speak to a relevant ASSA ABLOY employee on topic 1 in January if possible. Thanks.

-Dan


**DANIEL P. WEICK**
Of Counsel
dweick@hausfeld.com
*Pronouns: he/him/his*

# HAUSFELD

33 Whitehall Street
14th Floor
New York, NY 10004
+1 646 357 1100

**hausfeld.com**

This electronic mail transmission from Hausfeld LLP may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.


This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities. Our external privacy statement is available at:
https://www.clearygottlieb.com/footer/privacy-statement

EXHIBIT 16

<u>**ASSA ABLOY APSO AND FINAL JUDGMENT COMPLIANCE SUMMARY**</u>

**Compliance with Asset Preservation Stipulation & Order**

**I.      DEFINITIONS**

Section I of the APSO does not impose any affirmative obligation on ASSA ABLOY.

**II.     OBJECTIVES**

Section II of the APSO does not impose any affirmative obligation on ASSA ABLOY.

**III.    JOINDER, JURISDICTION, VENUE**

Section III of the APSO does not impose any affirmative obligation on ASSA ABLOY.

**IV.     CONSUMMATION OF THE TRANSACTION AND DIVESTITURES**

**Defendants will not consummate the Transaction before the Court has signed this Stipulation and Order. The closings for the Transaction and the divestiture of the Premium Mechanical Divestiture Assets and Smart Lock Divestiture Assets will be completed substantially simultaneously and no earlier than May 15, 2023.**

The Court entered the APSO on May 5, 2023.  ASSA ABLOY consummated the Transaction and divested the Premium Mechanical Divestiture Assets and Smart Lock Divestiture Assets on June 20, 2023.

**V.      COMPLIANCE WITH AND ENTRY OF FINAL JUDGMENT**

Section V.A of the APSO does not impose any affirmative obligation on ASSA ABLOY.

**B.      From the date of the signing of this Stipulation and Order by Defendants until the Final Judgment is entered by the Court, or until expiration of time for all appeals of any ruling declining entry of the proposed Final Judgment, Defendants will comply with all of the terms and provisions of the proposed Final Judgment.**

1

Pursuant to Section V.B of the APSO, ASSA ABLOY has complied with the Final Judgment as explained below starting at page 10.

Section V.C of the APSO does not impose any affirmative obligation on ASSA ABLOY.

**D.      Defendants agree to arrange, at their expense, publication of the newspaper notice required by the APPA, which will be drafted by the United States in its sole discretion. The publication must be arranged as quickly as possible and, in any event, no later than three business days after Defendants' receipt of (1) the text of the notice from the United States and (2) the identity of the newspaper or newspapers within which the publication must be made. Defendants must promptly send to the United States (1) confirmation that publication of the newspaper notices have been arranged and (2) the certification of the publication prepared by the newspaper or newspapers within which the notice was published.**

On May 10, 2023, the United States provided the text of the notice required by the APPA to ASSA ABLOY and informed ASSA ABLOY that the notice was to be published in the Washington Post.  The same day, ASSA ABLOY arranged for the notice's publication in the Washington Post and informed the United States it had done so.  The notice ran from May 12 to May 18, 2023.  ASSA ABLOY provided the certification of publication from the Washington Post to the United States on May 23, 2023.

Sections V.E-F of the APSO do not impose any affirmative obligation on ASSA ABLOY.

**VI.    APPLICATION OF THE FINAL JUDGMENT**

Section VI of the APSO does not impose any affirmative obligation on ASSA ABLOY.

## VII.   ASSET PRESERVATION

**From the date of the signing of this Stipulation and Order by Defendants and until the divestitures required by the proposed Final Judgment have been accomplished:**

**A.       ASSA ABLOY must take all actions necessary to operate, preserve, and maintain the full economic viability, marketability, and competitiveness of the Divestiture Assets including by (1) operating the Divestiture Assets in the ordinary course of business and consistent with past practices and (2) providing sufficient working capital and lines and sources of credit.**

From the entry of the APSO on May 5, 2023, until the transfer of the Premium Mechanical Divestiture Business on June 20, 2023, ASSA ABLOY operated the Premium Mechanical Divestiture Assets consistent with its prior practices and did not adjust the working capital or credit available to the Premium Mechanical Divestiture Business.  During that period, the Premium Mechanical Divestiture Business was run by Jason Chau, who had run the business for ASSA ABLOY since 2019 as President of Emtek Products and transferred to Fortune Brands on June 20, 2023, as part of the divestiture.

From the entry of the APSO on May 5, 2023, until the transfer of the Smart Lock Divestiture Business on June 20, 2023, ASSA ABLOY operated the Smart Lock Divestiture Assets consistent with its prior practices and did not adjust the working capital or credit available to the Smart Lock Divestiture Business.  During that period, the Smart Lock Divestiture Business was run by Jason Williams, who had run the business for ASSA ABLOY since 2021 as President of U.S. Smart Residential and transferred to Fortune Brands on June 20, 2023, as part of the divestiture.  With the exception of the Smart Lock Foreign Divestiture Assets located in

3

Vietnam, all Smart Lock Foreign Divesture assets transferred to Fortune Brands on June 20, 2023.  Between June 20, 2023 and the Transfer of Smart Lock Foreign Divestiture Assets in Vietnam, ASSA ABLOY operated the Smart Lock Foreign Divestiture Assets in Vietnam at Fortune Brands' direction and for its benefit in accordance with instruction from Jason Williams. Alison Astarita was responsible for running the Smart Lock Foreign Divestiture Assets during that period.

**B.      ASSA ABLOY must use all reasonable efforts to maintain and increase the sales and revenues of the products provided by the Divestiture Assets and must maintain at 2022 or previously approved levels for 2023, whichever are higher, all promotional, advertising, sales, technical assistance, customer support and service, marketing, research and development, and merchandising support for the Divestiture Assets.**

As described above, from May 5, 2023 to June 20, 2023, the use of the Divestiture Assets to operate the divested businesses was overseen by the leaders who had operated the divestiture businesses for ASSA ABLOY prior to the settlement and who transferred to Fortune Brands to continue running those businesses.  During that period, Jason Chau and Jason Williams continued working to maintain and increase the sales and revenues of the products provided by the Divestiture Assets.  ASSA ABLOY maintained promotional, advertising, sales, technical assistance, customer support and service, marketing, research and development, and merchandising support for the Divestiture Assets at the previously-approved 2023 funding levels.

**C.      ASSA ABLOY must use all reasonable efforts to maintain and preserve existing relationships with customers, suppliers, governmental authorities, vendors,**

**landlords, creditors, agents, and all others having business relationships relating to the Divestiture Assets.**

As described above, from May 5, 2023 to June 20, 2023, the use of the Divestiture Assets to operate the divested businesses was overseen by the leaders who had operated the divestiture businesses for ASSA ABLOY prior to the settlement and who transferred to Fortune Brands to continue running those businesses. During that period, Jason Chau and Jason Williams continued working to maintain existing relationships with customers, suppliers, governmental authorities, vendors, landlords, creditors, agents, and all others with whom the Divestiture Businesses had business relationships.

**D.    ASSA ABLOY must maintain, in accordance with sound accounting principles, accurate and complete financial ledgers, books, or other records that report on a periodic basis, such as the last business day of every month, consistent with past practices, the assets, liabilities, expenses, revenues, and income of the Divestiture Assets.**

From May 5, 2023 to June 20, 2023, ASSA ABLOY continued maintaining financial records for the Divestiture Assets in accordance with its ordinary-course practices and sound accounting principles. Responsibility for financial records ultimately flows up to Erik Pieder, ASSA ABLOY's Executive Vice President and CFO, though leaders of the various regional divisions in which the Divestiture Assets were located oversaw day-to-day creation and maintenance of financial reports. From June 20, 2023 until the Transfer of Smart Lock Foreign Divestiture Assets on December 22, 2023, ASSA ABLOY segregated the profit generated from the Smart Lock Foreign Divestiture Assets for the benefit of Fortune Brands. Cassandra Song,

Finance Director Asia Smart Residential, was responsible for maintaining the accounting of those profits.

**E.      ASSA ABLOY must maintain the working conditions, staffing levels, and work force training and expertise of all Premium Mechanical Divestiture Relevant Personnel and Smart Lock Divestiture Relevant Personnel. Premium Mechanical Divestiture Relevant Personnel and Smart Lock Divestiture Relevant Personnel must not be transferred or reassigned except to Acquirer or via transfer bids initiated by employees pursuant to ASSA ABLOY's regular, established job posting policy. ASSA ABLOY must provide the United States with 10 calendar days' notice of the transfer of Premium Mechanical Divestiture Relevant Personnel and Smart Lock Divestiture Relevant Personnel, and, upon objection by the United States to such transfer, Premium Mechanical Divestiture Relevant Personnel and Smart Lock Divestiture Relevant Personnel may not be transferred or reassigned. ASSA ABLOY must use all reasonable efforts, including by providing financial incentives, to encourage Premium Mechanical Divestiture Relevant Personnel and Smart Lock Divestiture Relevant Personnel to continue in the positions held as of the date of the signing of this Stipulation and Order by ASSA ABLOY, and financial incentives may not be structured so as to disincentivize employees from accepting employment with Acquirer.**

Prior to the transfer of the Divestiture Assets to Fortune Brands, ASSA ABLOY maintained the working conditions, staffing levels, and work force training of the Premium Mechanical and Smart Lock Divestiture Relevant Personnel.  ASSA ABLOY did not transfer Divestiture Relevant Personnel prior to the transfer of the Divestiture Assets to Fortune Brands.

6

Jason Chau and Jason Williams were ultimately responsible for personnel decisions relating to the Divestiture Assets, including the use of financial incentives, over this period.

**F.      ASSA ABLOY must maintain all licenses, permits, approvals, authorizations, and certifications related to or necessary for the operation of the Divestiture Assets and must operate the Divestiture Assets in compliance with all regulatory obligations and requirements.**

ASSA ABLOY maintained all licenses, permits, approvals, authorizations, and certifications related to or necessary for the operation of the Divestiture Assets prior to their transfer to Fortune Brands.  Jason Chau and Jason Williams were ultimately responsible for maintaining those licenses, permits, approvals, authorizations, and certifications.

**G.      ASSA ABLOY must take all steps necessary to ensure that the Divestiture Assets are fully maintained in operable condition at no less than their current capacity and level of sales, with the same level of quality, functionality, access, and customer support, and must, consistent with past practices, maintain and adhere to normal repair and maintenance schedules for the Divestiture Assets.**

Prior to their transfer to Fortune Brands, ASSA ABLOY maintained the Divestiture Assets in operable condition and at no less than their then-current capacity and level of sales, quality, functionality, access, and customer support, and adhered to the normal repair and maintenance schedules for those assets.  (Between June 20, 2023 and the transfer of the Smart Lock Foreign Divestiture Assets, ASSA ABLOY implemented direction from Fortune Brands as relayed by Jason Williams regarding the maintenance and conditions of the Smart Lock Foreign

Divestiture Assets.)  Jason Chau and Jason Williams were ultimately responsible for maintaining the condition and repair of the Divestiture Assets.

**H.      Except as approved by the United States in accordance with the terms of the proposed Final Judgment, ASSA ABLOY must not remove, sell, lease, assign, transfer, pledge, encumber, or otherwise dispose of any of the Divestiture Assets.**

ASSA ABLOY did not remove, sell, lease, assign, transfer, pledge, encumber, or otherwise dispose of any of the Divestiture Assets other than in the course of divesting those assets to Fortune Brands as approved by the United States in accordance with the Final Judgment.

**I.      Defendants must take no action that would jeopardize, delay, or impede the sale of the Divestiture Assets.**

ASSA ABLOY took no actions that would jeopardize, delay, or impede the sale of the Divestiture Assets.

**J.      Within 20 calendar days after the entry of this Stipulation and Order, ASSA ABLOY will inform the United States of the steps Defendants have taken to comply with this Stipulation and Order.**

ASSA ABLOY provided an affidavit to the United States explaining the steps taken to comply with the APSO on May 25, 2023.

**VIII.  DURATION OF OBLIGATIONS**

Section VIII of the APSO does not impose any affirmative obligation on ASSA ABLOY.

8

**Compliance with Final Judgment**

## I.    JURISDICTION

Section I of the Final Judgment does not impose any affirmative obligation on ASSA ABLOY.

## II.    DEFINITIONS

Section II of the Final Judgment does not impose any affirmative obligation on ASSA ABLOY.

## III.    APPLICABILITY

Section III.A of the Final Judgment does not impose any affirmative obligation on ASSA ABLOY.

**B.      If, prior to complying with Section V and Section VI of this Final Judgment, Defendants sell or otherwise dispose of all or substantially all of their assets or of business units that include the Divestiture Assets, Defendants must require any purchaser to be bound by the provisions of this Final Judgment. Defendants need not obtain such an agreement from Acquirer.**

ASSA ABLOY did not sell or otherwise dispose of all or substantially all of its assets or of business units that include the Divestiture Assets prior to complying with Section V and Section VI of the Final Judgment.

## IV.    ADDITIONAL RELIEF

Section IV of the Final Judgment does not impose any affirmative obligation on ASSA ABLOY.

**V.      DIVESTITURE OF THE PREMIUM MECHANICAL DIVESTITURE ASSETS**

**A.      ASSA ABLOY is ordered and directed, within 3 calendar days after the closing of the Transaction, to divest the Premium Mechanical Divestiture Assets in a manner consistent with this Final Judgment to Acquirer, except that, for individual assets subject to Regulatory Approvals, ASSA ABLOY is ordered and directed to divest such assets by the later of 3 calendar days after the closing of the Transaction or 15 days after the relevant Regulatory Approvals have been received. The United States, in its sole discretion, may agree to one or more extensions of these time periods not to exceed 30 calendar days in total for each time period, and ASSA ABLOY must notify the Court of any extensions agreed to by the United States.**

ASSA ABLOY divested the Premium Mechanical Divestiture Assets on June 20, 2023, the same day it completed the Transaction.

Pursuant to Section VI.A of the APSO, the Divestiture Agreements supersede ASSA ABLOY's obligations under Section V.B of the Final Judgment.

**C.      Subject to Paragraph V.A, ASSA ABLOY must use best efforts to divest the Premium Mechanical Divestiture Assets as expeditiously as possible. ASSA ABLOY must take no action that would jeopardize the completion of the divestiture ordered by the Court, including any action to impede the permitting, operation, or divestiture of the Premium Mechanical Divestiture Assets.**

ASSA ABLOY divested the Premium Mechanical Divestiture Assets on June 20, 2023, the same day it completed the Transaction.

**D.      Unless the United States otherwise consents in writing, divestiture pursuant to this Final Judgment must include the entire Premium Mechanical Divestiture Assets.**

ASSA ABLOY divested the entire Premium Mechanical Divestiture Assets on June 20, 2023.

**E.      In the event ASSA ABLOY is attempting to divest the Divestiture Assets to an Acquirer other than Fortune, ASSA ABLOY promptly must make known, by usual and customary means, the availability of the Divestiture Assets. ASSA ABLOY must inform any person making an inquiry relating to a possible purchase of the Divestiture Assets that the Divestiture Assets are being divested in accordance with this Final Judgment and must provide that person with a copy of this Final Judgment. ASSA ABLOY must offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and documents relating to the Divestiture Assets that are customarily provided in a due diligence process; *provided, however,* that ASSA ABLOY need not provide information or documents subject to the attorney-client privilege or work-product doctrine. ASSA ABLOY must make all information and documents available to the United States at the same time that the information and documents are made available to any other person.**

ASSA ABLOY divested the Premium Mechanical Divestiture Assets to Fortune Brands.

Pursuant to Section VI.A of the APSO, the Divestiture Agreements supersede ASSA ABLOY's obligations under Sections V.F-J of the Final Judgment.

**K.      Any amendment to or modification of any provision of any such supply contract is subject to approval by the United States, in its sole discretion. The United**

**States, in its sole discretion, may approve up to two extensions of any supply contract for a period of 12 months each. Any supply contract extension will be on terms and conditions reasonably related to market conditions for the provision of such products, as agreed to by Acquirer. If Acquirer seeks an extension of the term of any supply contract, ASSA ABLOY must notify the United States in writing at least 30 calendar days prior to the date the supply contract expires. Acquirer may terminate a supply contract, or any portion of a supply contract, without cost or penalty, other than payment of any amounts due thereunder, upon 15 calendar days' written notice. The employees of ASSA ABLOY tasked with servicing any supply contracts must not share any competitively sensitive information of Acquirer with any other employee of ASSA ABLOY.**

Fortune Brands has not sought an extension of the term of a supply contract pursuant to the premium mechanical divestiture.  ASSA ABLOY employees who would have access to Fortune Brands' competitively sensitive information must sign a confidentiality agreement protecting that information before being permitted to service the supply contract between Fortune Brands and ASSA ABLOY.  Andrea Appelbaum, Director of Compliance for the Americas, is responsible for implementing that requirement.

Pursuant to Section VI.A of the APSO, the Divestiture Agreements supersede ASSA ABLOY's obligations under Section V.L of the Final Judgment.

**M.      Any amendment to or modification of any provision of a contract to provide transition services is subject to approval by the United States, in its sole discretion. The United States, in its sole discretion, may approve one or more extensions of any contract for transition services, for a total of up to an additional 12 months. Any contract extension will**

12

**be on terms and conditions reasonably related to market conditions for the provision of**

**such services, as agreed to by Acquirer. If Acquirer seeks an extension of the term of any**

**contract for transition services, ASSA ABLOY must notify the United States in writing at**

**least 30 calendar days prior to the date the contract expires. Acquirer may terminate a**

**contract for transition services, or any portion of a contract for transition services, without**

**cost or penalty, other than payment of any amounts due thereunder, at any time upon 15**

**calendar days' written notice. The employees of ASSA ABLOY tasked with providing**

**transition services must not share any competitively sensitive information of Acquirer with**

**any other employee of ASSA ABLOY.**

Fortune Brands has not sought an extension of the term of transition services pursuant to

the premium mechanical divestiture.  ASSA ABLOY employees who would have access to

Fortune Brands' competitively sensitive information must sign a confidentiality agreement

protecting that information before being permitted to work on providing transition services to

Fortune Brands.  Andrea Appelbaum, Director of Compliance for the Americas, is responsible

for implementing that requirement.

Pursuant to Section VI.A of the APSO, the Divestiture Agreements supersede ASSA

ABLOY's obligations under Section V.N of the Final Judgment.

## VI.    DIVESTITURE OF SMART LOCK DIVESTITURE ASSETS

**A.    ASSA ABLOY is ordered and directed, within 3 calendar days after the**

**closing of the Transaction, to divest the Smart Lock Divestiture Assets in a manner**

**consistent with this Final Judgment to Acquirer, except that, for individual assets subject**

**to Regulatory Approvals, ASSA ABLOY is ordered and directed to divest such assets by**

the later of 3 calendar days after the closing of the Transaction or 15 days after the relevant Regulatory Approvals have been received. The United States, in its sole discretion, may agree to one or more extensions of these time periods not to exceed 30 calendar days in total for each time period, and ASSA ABLOY must notify the Court of any extensions agreed to by the United States.

ASSA ABLOY divested the Smart Lock Divestiture Assets on June 20, 2023, the same day it completed the Transaction.  The transfer of the Smart Lock Foreign Divestiture Assets in Vietnam was completed on December 22, 2023.

Pursuant to Section VI.A of the APSO, the Divestiture Agreements supersede ASSA ABLOY's obligations under Section VI.B of the Final Judgment.

C.       Subject to Paragraph VI.A, ASSA ABLOY must use best efforts to divest the Smart Lock Divestiture Assets as expeditiously as possible. ASSA ABLOY must take no action that would jeopardize the completion of the divestiture ordered by the Court, including any action to impede the permitting, operation, or divestiture of the Smart Lock Divestiture Assets. To incentivize ASSA ABLOY to achieve Transfer of Smart Lock Foreign Divestiture Assets as expeditiously as possible, after December 31, 2023, ASSA ABLOY is ordered to pay to the United States $50,120 per day until ASSA ABLOY achieves Transfer of Smart Lock Foreign Divestiture Assets, *provided, however,* that such payments will not be due if ASSA ABLOY can demonstrate to the United States, after consultation with the monitoring trustee, that (1) Transfer of Smart Lock Foreign Divestiture Assets was delayed due to a force majeure event, or (2) operational control has otherwise been given to the Acquirer such that the purposes of the divestiture have been

14

**carried out. If ASSA ABLOY relies on point (2) of this provision, it shall confer with the United States in an effort to reach agreement on whether the steps taken carry out the purposes of the divestiture, and if the parties are unable to reach agreement, ASSA ABLOY may ask the Court to resolve this issue. The United States' agreement to an extension pursuant to Paragraph VI.A. will not relieve ASSA ABLOY of the requirement to make these payments. If ASSA ABLOY demonstrates to the United States that unanticipated material difficulties not due to the actions or inaction of ASSA ABLOY have resulted in unavoidable delays to achieve Transfer of Smart Lock Foreign Divestiture Assets, the United States may, in its sole discretion, agree to forgo some or all of the payments.**

ASSA ABLOY transferred the Smart Lock Foreign Divestiture Assets in Vietnam to Fortune Brands on December 22, 2023.  From June 20, 2023 to December 22, 2023, ASSA ABLOY operated the Smart Lock Foreign Divestiture Assets for the benefit of Fortune Brands at the direction of Jason Williams.  ASSA ABLOY moved its inventory and equipment out of the Vietnam facility between July 13 and August 31, 2023, at which point all assets at the Vietnam plant were being used for Fortune's benefit.  On November 23, 2023, ASSA ABLOY amended the charter of the Vietnam entity to reflect that it was owned by a subsidiary of Fortune Brands. On November 27, 2023, the Fortune Brands subsidiary appointed Jason Williams as the Chairman of the Vietnam entity.

**D.     Unless the United States otherwise consents in writing, divestiture pursuant to this Final Judgment must include all Smart Lock Divestiture Assets.**

ASSA ABLOY divested all Smart Lock Divestiture Assets to Fortune Brands.

**E.      In the event ASSA ABLOY is attempting to divest the Divestiture Assets to an Acquirer other than Fortune, ASSA ABLOY promptly must make known, by usual and customary means, the availability of the Divestiture Assets. ASSA ABLOY must inform any person making an inquiry relating to a possible purchase of the Divestiture Assets that the Divestiture Assets are being divested in accordance with this Final Judgment and must provide that person with a copy of this Final Judgment. ASSA ABLOY must offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and documents relating to the Divestiture Assets that are customarily provided in a due diligence process; *provided, however,* that ASSA ABLOY need not provide information or documents subject to the attorney-client privilege or work-product doctrine. ASSA ABLOY must make all information and documents available to the United States at the same time that the information and documents are made available to any other person.**

ASSA ABLOY divested the Divestiture Assets to Fortune Brands.

Pursuant to Section VI.A of the APSO, the Divestiture Agreements supersede ASSA ABLOY's obligations under Sections VI.F-J of the Final Judgment.

**K.      Any amendment to or modification of any provision of any such supply contract is subject to approval by the United States, in its sole discretion. The United States, in its sole discretion, may approve up to two extensions of any supply contract of 12 months each. Any contract extension will be on terms and conditions reasonably related to market conditions for the provision of such products, as agreed to by Acquirer. If Acquirer seeks an extension of the term of any supply contract, ASSA ABLOY must notify the**

16

**United States in writing at least 30 calendar days prior to the date the supply contract expires. Acquirer may terminate a supply contract, or any portion of a supply contract, without cost or penalty, other than payment of any amounts due thereunder, upon 15 calendar days' written notice. The employees of ASSA ABLOY tasked with servicing any supply contracts must not share any competitively sensitive information of Acquirer with any other employee of ASSA ABLOY.**

Fortune Brands has not sought an extension of the term of a supply contract pursuant to the smart lock divestiture.  ASSA ABLOY employees who would have access to Fortune Brands' competitively sensitive information must sign a confidentiality agreement protecting that information before being permitted to service the supply contract between Fortune Brands and ASSA ABLOY.  Andrea Appelbaum, Director of Compliance for the Americas, is responsible for implementing that requirement.

Pursuant to Section VI.A of the APSO, the Divestiture Agreements supersede ASSA ABLOY's obligations under Section VI.L of the Final Judgment.

**M.     Any amendment to or modification of any provision of a contract to provide transition services is subject to approval by the United States, in its sole discretion. The United States, in its sole discretion, may approve one or more extensions of any contract for transition services, for a total of up to 12 additional months,** *provided, however,* **that any contract extension will be on terms and conditions reasonably related to market conditions for the provision of such services. If Acquirer seeks an extension of the term of any contract for transition services, ASSA ABLOY must notify the United States in writing at least 30 calendar days prior to the date the contract expires. Acquirer may terminate a**

**contract for transition services, or any portion of a contract for transition services, without cost or penalty, other than payment of any amounts due thereunder, at any time upon 15 calendar days' written notice. The employees of ASSA ABLOY tasked with providing transition services must not share any competitively sensitive information of Acquirer with any other employee of ASSA ABLOY.**

Fortune Brands has not sought an extension of the term of transition services pursuant to the smart lock divestiture.  ASSA ABLOY employees who would have access to Fortune Brands' competitively sensitive information must sign a confidentiality agreement protecting that information before being permitted to work on providing transition services to Fortune Brands. Andrea Appelbaum, Director of Compliance for the Americas, is responsible for implementing that requirement.

**N.      ASSA ABLOY will have the right to use the Yale brand name in the U.S. and Canada solely for commercial products not sold for Residences for a transitional, wind-down period of up to twelve (12) months following the Divestiture Date. (For these purposes only, Residences does not include commercial products sold in order to fulfill orders in connection with the Yale Accentra platform for up to six months following the Divestiture Date and Acquirer may elect, with consent of the United States, to extend this term for an additional six months.) ASSA ABLOY must within 30 days following the Divestiture Date commence a brand transition for its Yale branded commercial products in the U.S. and Canada, which shall be completed no later than twelve (12) months after commencement, in connection with the wind-down described above in this Paragraph. In addition, ASSA ABLOY will have the right to use the Yale brand name in the U.S. and**

**Canada solely for commercial products for a transitional, wind-down for a period of up to two (2) years following the Divestiture Date with respect to sales of commercial products in connection with honoring any specification or quote, in each case issued prior to the Divestiture Date.**

***For the avoidance of doubt,* nothing in this proposed Final Judgment limits or prohibits Acquirer's use of any non-Yale brand for any purpose.**

ASSA ABLOY commenced a brand transition for its Yale-branded commercial products in the U.S. and Canada within 30 days following the Divestiture Date.  As of December 21, 2023, ASSA ABLOY had already stopped using the "Yale" brand name in connection with sales of the "Yale Accentra" platform (now simply known as "Accentra").  To transition off the "Yale Accentra" branding, and in order to transition Yale-branded commercial products in the coming months, ASSA ABLOY has retooled production equipment, revised marketing materials, and updated the Accentra web portal and mobile application.  To date, ASSA ABLOY has spent approximately $13 million on the brand transition.  Eric Sejourne, President, Access and Egress Hardware, Americas Division, is ultimately responsible for executing the brand transition.

Pursuant to Section VI.A of the APSO, the Divestiture Agreements supersede ASSA ABLOY's obligations under Section VI.O of the Final Judgment.

**P.      At the option of Acquirer, if at any time after the Divestiture Date, Acquirer notifies ASSA ABLOY in writing of any patents that (1) are owned by ASSA ABLOY as of the Divestiture Date; (2) are not licensed or otherwise transferred to Acquirer under Paragraphs II.Q.2.vii; and (3) were contemplated by ASSA ABLOY to be used in the Smart Lock Divestiture Business prior to the Divestiture Date as set forth in the Product**

**Development Roadmap attached to the Stock Purchase Agreement, such patents will automatically be deemed licensed to Acquirer under Paragraph II.Q.2.vii.**

ASSA ABLOY has not received any notice from Fortune Brands as contemplated in Section VI.P of the Final Judgment.

**Q.     At the option of Acquirer, for a period of five years following the Divestiture Date, Acquirer will have the right to request and receive a code base assessment of the Yale Access control system once per year to inventory the proprietary libraries comprising the Yale Access control system and confirm whether any of the baseline libraries are included within ASSA ABLOY's U.S. or Canadian products.**

ASSA ABLOY has not received a request from Fortune Brands for a code base assessment of the Yale Access control system.

Pursuant to Section VI.A of the APSO, the Divestiture Agreements supersede ASSA ABLOY's obligations under Section VI.R of the Final Judgment.

## VII.   FINANCING

**Defendants may not finance all or any part of Acquirer's purchase of all or part of the Divestiture Assets.**

ASSA ABLOY did not finance any part of Fortune Brands' purchase of the Divestiture Assets.

## VIII.   ASSET PRESERVATION

**Defendants must take all steps necessary to comply with their respective obligations under the Asset Preservation Stipulation and Order entered by the Court.**

As described above, ASSA ABLOY took all steps necessary to comply with its

20

obligations under the APSO.

IX.    **AFFIDAVITS**

A.    **Within 20 calendar days of the entry of the Asset Preservation Stipulation and Order in this matter, and every 30 calendar days thereafter until the divestitures required by this Final Judgment have been completed, ASSA ABLOY must deliver to the United States and the monitoring trustee, if one has been appointed, an affidavit, signed by each the Chief Financial Officer and General Counsel of its Americas division, describing in reasonable detail the fact and manner of ASSA ABLOY's compliance with this Final Judgment. The United States, in its sole discretion, may approve different signatories for the affidavits.**

B.    **Each affidavit required by Paragraph IX.A. must include: (1) a description of the efforts ASSA ABLOY has taken to complete the sale of any of the Divestiture Assets and to provide required information to Acquirer; and (2) a description of any limitations placed by ASSA ABLOY on information provided to Acquirer. Objection by the United States to information provided by ASSA ABLOY to Acquirer must be made within 14 calendar days of receipt of the affidavit, except that the United States may object at any time if the information set forth in the affidavit is not true or complete.**

ASSA ABLOY provided affidavits to the United States in accordance with Sections IX.A and B of the Final Judgment on May 25, 2023, July 27, 2023, August 25, 2023, September 22, 2023, October 20, 2023, November 17, 2023, and December 15, 2023.

C.    **ASSA ABLOY must keep all records of any efforts made to divest the Divestiture Assets until one year after the Divestiture Date.**

21

Since May 5, 2023, ASSA ABLOY has maintained (1) the data room used in the sale process for the Divestiture Assets and (2) a document hold for employees involved in the divestiture.  ASSA ABLOY will maintain the data room and document hold through June 20, 2024.

**D.      Within 20 calendar days of entry of the Asset Preservation Stipulation and Order in this matter, ASSA ABLOY must deliver to the United States an affidavit, signed by the Chief Financial Officer and General Counsel of its America's division, that describes in reasonable detail all actions that ASSA ABLOY has taken and all steps that ASSA ABLOY has implemented on an ongoing basis to comply with Section VIII of this Final Judgment. The United States, in its sole discretion, may approve different signatories for the affidavits.**

ASSA ABLOY provided an affidavit to the United States on May 25, 2023, describing its efforts to date to comply with Section VIII of the Final Judgment (*i.e.*, to comply with the APSO).

**E.      If ASSA ABLOY makes any changes to actions and steps described in affidavits provided pursuant to Paragraph IX.D., ASSA ABLOY must, within 15 calendar days after any change is implemented, deliver to the United States an affidavit describing those changes.**

ASSA ABLOY did not make any changes to actions and steps described in affidavits provided pursuant to Paragraph IX.D of the Final Judgment.

**F.      ASSA ABLOY must keep all records of any efforts made to comply with Section VIII until one year after the Divestiture Date.**

Since May 5, 2023, ASSA ABLOY has maintained a document hold for employees involved in the divestiture, covering its efforts to comply with Section VIII of the Final Judgment (*i.e.*, to comply with the APSO).  ASSA ABLOY will maintain the document hold through June 20, 2024.

## X.    APPOINTMENT OF MONITORING TRUSTEE

Sections X.A-G of the Final Judgment do not impose any affirmative obligation on ASSA ABLOY.

**H.    ASSA ABLOY and Acquirer must use best efforts to assist the monitoring trustee to monitor Defendants' compliance with their obligations under this Final Judgment and the Asset Preservation Stipulation and Order. Subject to reasonable protection for trade secrets, other confidential research, development, or commercial information, or any applicable privileges, ASSA ABLOY and Acquirer must provide the monitoring trustee and agents or consultants retained by the monitoring trustee with full and complete access to all personnel, books, records, and facilities of the Divestiture Assets. ASSA ABLOY and Acquirer may not take any action to interfere with or to impede accomplishment of the monitoring trustee's responsibilities.**

ASSA ABLOY has used its best efforts to assist the monitoring trustee, including but not limited to responding to the monitoring trustee's requests for documents and information provided orally or in writing on October, 11, 2024, December 4, 2023, December 21, 2023, January 12, 2024, and January 16, 2024, and meeting with the monitoring trustee on October 11, 2023, to discuss ASSA ABLOY's obligations under the APSO and Final Judgment.

Sections X.I-K of the Final Judgment do not impose any affirmative obligation on ASSA ABLOY.

## XI.     DISPUTE RESOLUTION

Section XI of the Final Judgment does not impose any affirmative obligation on ASSA ABLOY.

## XII.    COMPLIANCE INSPECTION

**A.      For the purposes of determining or securing compliance with this Final Judgment or of related orders such as the Asset Preservation Stipulation and Order or of determining whether this Final Judgment should be modified or vacated, upon written request of an authorized representative of the Assistant Attorney General for the Antitrust Division, and reasonable notice to Defendants, Defendants must permit, from time to time and subject to legally recognized privileges, authorized representatives, including agents retained by the United States:**

**1.      to have access during Defendants' office hours to inspect and copy, or at the option of the United States, to require Defendants to provide electronic copies of all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Defendants relating to any matters contained in this Final Judgment; and**

**2.      to interview, either informally or on the record, Defendants' officers, employees, or agents, who may have their individual counsel present, relating to any matters contained in this Final Judgment. The interviews must be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendants.**

**B.      Upon the written request of an authorized representative of the Assistant**

24

**Attorney General for the Antitrust Division, Defendants must submit written reports or respond to written interrogatories, under oath if requested, relating to any matters contained in this Final Judgment.**

ASSA ABLOY has not received any written request from an authorized representative of the Assistant Attorney General for the Antitrust Division pursuant to Section XII of the Final Judgment.

## XIII.   NO REACQUISITION

**ASSA ABLOY may not reacquire any part of or any interest in the Divestiture Assets during the term of this Final Judgment without prior authorization of the United States.**

ASSA ABLOY has not reacquired any part of or any interest in the Divestiture Assets.

## XIV.   PUBLIC DISCLOSURE

Section XIV of the Final Judgment does not impose any affirmative obligation on ASSA ABLOY.

## XV.   RETENTION OF JURISDICTION

Section XV of the Final Judgment does not impose any affirmative obligation on ASSA ABLOY.

## XVI.   ENFORCEMENT OF FINAL JUDGMENT

Section XVIII of the Final Judgment does not impose any affirmative obligation on ASSA ABLOY.

## XVII.   EXPIRATION OF FINAL JUDGMENT

Section XVII of the Final Judgment does not impose any affirmative obligation on ASSA

ABLOY.

## XVIII. PUBLIC INTEREST DETERMINATION

Section XVIII of the Final Judgment does not impose any affirmative obligation on

ASSA ABLOY.

EXHIBIT 17

Execution Version

# CAPITAL CONTRIBUTION TRANSFER AGREEMENT

**between**

# MASTER LOCK COMPANY LLC

**and**

# ASSA ABLOY ASIA HOLDING AB

**October 19, 2023**

**THIS CAPITAL CONTRIBUTION TRANSFER AGREEMENT** is entered into on October 19, 2023 by and between:

**MASTER LOCK COMPANY LLC** (the "**Buyer**")

| | | |
|---|---|---|
| Registered Address | : | 251 Little Falls Drive, Wilmington, Delaware 19808, USA |
| Establishment | : | Certificate of Formation No. 765425 issued by the Secretary of State of the State of Delaware on August 15, 2005 |
| Authorized Representative | : | Jason Raymond Williams (President) |

**and**

**ASSA ABLOY ASIA HOLDING AB** (the "**Seller**")

| | | |
|---|---|---|
| Registered Address | : | PO Box 70340, 107 23 Stockholm, Sweden |
| Establishment | : | Incorporation Certificate No. 556602 – 4500 issued by the Swedish Companies Registration Office on December 11, 2000 |
| Authorized Representative | : | Högberg Ulrika Ann-Charlotte (Board Member) and Per Jonas Axel Gårdmark (Board Member) |

## RECITALS

**WHEREAS**, the Buyer entered into a Stock Purchase Agreement, dated December 1, 2022, as modified or amended (the "**SPA**") with Assa Abloy Inc., a corporation established in Oregon, USA (the "**SPA Seller**"), and, solely for purposes set forth therein, Assa Abloy AB, an aktiebolag duly incorporated under the laws of Sweden and the parent company of the SPA Seller (the "**Parent**"). Pursuant to the terms of the SPA, the SPA Seller and the Parent intend that the Seller shall transfer all of the Charter Capital (as defined below) of the Company held by it to the Buyer;

**WHEREAS**, as of the Agreement Date, the Company (as defined below) has the Charter Capital as registered in the ERC (as defined below) of VND 115,975,100,000 (One hundred fifteen billion nine hundred seventy-five million one hundred thousand Vietnamese Dongs) equivalent to USD 5,000,000 (Five million United States Dollars);

**WHEREAS**, as of the Agreement Date, the Seller is the sole owner of the Company holding one hundred percent (100%) of the Charter Capital; and

**WHEREAS**, pursuant to and in accordance with the terms and subject to the conditions of this Agreement, the Buyer agrees to purchase from the Seller and the Seller agrees to sell to the Buyer the Purchased Capital Contribution (as defined below) at the Purchase Price (as defined below).

**NOW THEREFORE**, the Parties have agreed as follows:

## ARTICLE I. DEFINITIONS AND INTERPRETATIONS

**1.01    Definitions**

Unless otherwise defined herein, all capitalized terms used herein have the same meanings as set forth in the SPA:

"**AA Retained Business**" has the same meaning given to it under the Asset Transfer Agreement (as defined below).

"**Agreement**" means this Capital Contribution Transfer Agreement along with all appendices and schedules attached hereto and all instruments supplemental to, in amendment or furtherance of this Agreement, entered into in writing, in accordance with its terms and conditions.

"**Agreement Date**" means the date of this Agreement as provided in the first page of this Agreement.

"**Amended Charter**" has the meaning set forth in Part A of Schedule I of this Agreement.

"**Amended IRC**" means the amendment to the investment registration certificate no. 2113779621 issued by the IZ Vinh Phuc on May 28, 2019 in favor of the Company, as amended for the fourth time on April 26, 2023, that reflects the Buyer as the investor of the Project.

"**Asset Transfer Agreement**" means the asset transfer agreement dated on or about the date hereof between the Company and ASSA ABLOY Smart Technology Vietnam Co., Ltd, a company established under the laws of Vietnam and wholly-owned by the Seller.

"**Assumed Liabilities**" has the meaning set forth in the Asset Transfer Agreement.

"**Business Day**" means any day (except Saturday, Sunday and any public holidays in Vietnam) on which banks are open for general business in Vietnam, in New York, USA and in Stockholm, Sweden.

"**Buyer**" has the meaning set forth in the introductory paragraph of this Agreement.

"**Buyer Group**" means the Buyer and Fortune Brands Innovations, Inc. (formerly known as Fortune Brands Home & Security, Inc.), which is the buyer in the SPA.

"**Charter**" means the charter dated March 6, 2019 of the Company, as may be amended from time to time.

"**Charter Capital**" means the charter capital of the Company contributed by the Seller as the sole owner of the Company as set out in the ERC from time to time.

"**Charter Capital Indemnity**" has the meaning set forth in Section 5.03(a).

"**Closing**" has the meaning set forth in the SPA.

3

"**Closing Company Approvals**" has the meaning set forth in Part A of Schedule I of this Agreement.

"**Closing Date**" has the meaning set forth in the SPA.

"**Company**" means ASSA ABLOY Smart Product Vietnam Co. Ltd., a single-member limited liability company incorporated under the ERC and having its registered office at Lot A10, Ba Thien II Industrial Zone, Thien Ke Commune, Binh Xuyen District, Vinh Phuc Province, Vietnam.

"**Conditions Precedent**" has the meaning set forth in Article III(a).

"**CP Satisfaction Notice**" has the meaning set forth in Article III(d).

"**Deputy General Director**" means the deputy (general) director of the Company appointed in accordance with Article 14 of the Charter.

"**DPI Vinh Phuc**" means the Department of Planning and Investment of Vinh Phuc Province.

"**Enterprises Law**" means Law on Enterprises No. 59/2020/QH14 adopted by the National Assembly of Vietnam on June 17, 2020 and taking effect as of January 1, 2021, as amended from time to time.

"**ERC**" means the enterprise registration certificate no. 2500631198 issued by the DPI Vinh Phuc on June 21, 2019 in favor of the Company, as amended for the third time on April 10, 2023 and as may be further amended from time to time.

"**General Director**" means the general director of the Company appointed by the Members' Council in accordance with the Charter.

"**IRC**" means the investment registration certificate no. 2113779621 issued by the IZ Vinh Phuc on May 28, 2019 in favor of the Company, as amended for the fourth time on April 26, 2023 and as may be further amended from time to time.

"**IZ Vinh Phuc**" means the Industrial Zone Management Board of Vinh Phuc Province.

"**Leakage**" means any of the following payments, liabilities or obligations to the extent arising on or after the Closing, up until the Vietnam Closing other than those contemplated under the SPA and the Asset Transfer Agreement:

(a)    any dividend or distribution (whether in cash or in kind) declared, paid or made by the Company;

(b)    any payments made by the Company in respect of any capital stock or other securities of the Company being redeemed, purchased or repaid, or any other return of capital;

(c)    any sale, transfer, assignment or disposal of any asset, property or right, in a single transaction or a series of related transactions, by the Company to an equityholder of the Company;

4

(d)      any purchase of goods or services by, or other transactions with, the Company or an interested third party not on arm's-length terms; or

(e)      any increase in compensation provided to any equityholder of the Company to the extent such increase was made after the Closing (if any).

"**Leased Real Property**" means 24,386 square meters of land located at Land lot No. 535, Map No. 17, Thien Ke Commune, Binh Xuyen District, Vinh Phuc Province.

"**Legal Document**" means any document listed in Articles 2, 4, 172.2 and 172.4 of the Law on Promulgation of Laws No. 80/2015/QH13 adopted by the National Assembly of Vietnam on June 22, 2015, as amended by law No. 63/2020/QH14 adopted by the National Assembly of Vietnam on June 18, 2020, and if these Articles are amended, supplemented or replaced, includes any document thereafter defined as a legal document pursuant to such amendment, supplement or replacement.

"**M&A Approval**" means the written approval from the IZ Vinh Phuc approving the acquisition by the Buyer of the Purchased Capital Contribution from the Seller in accordance with Article 26.2 of the Law on Investment No. 61/2020/QH14 promulgated by the National Assembly of Vietnam on June 17, 2020.

"**Managers**" has the same meaning given to it in the Charter.

"**Material Adverse Effect**" has the meaning set forth under "Material Adverse Effect" under Section 1.01 of the SPA, except that any references to "Business" shall be references to the Company and the references to the "Seller" shall be reference to the Seller in this Agreement.

"**Members' Council**" means the members' council of the Company appointed in accordance with the Charter and the Legal Documents.

"**Parent**" has the meaning set forth in the Recitals of this Agreement.

"**Parties**" means the Seller and the Buyer and "**Party**" means any one of them.

"**Project**" means the investment project of the Company for production of digital smart door locks located at the Leased Real Property as recorded in the Company's IRC.

"**Purchase Price**" means a price to be mutually agreed between the Parties on or prior to the Vietnam Closing, which shall comprise of:

(i)      the fair market value of the Vietnam Business (as defined in the SPA) as of the Closing Date, which the parties agree equals USD 23,500,000 (Twenty-three million, five hundred thousand United States Dollars); *plus*

(ii)      all of the cash standing on the credit of all of the bank accounts in the name of the Company as of the Vietnam Closing Date, but *less* all of the cash standing to credit belonging to the Buyer or Buyer Group pursuant to Section 2.08(c)(iv) of the SPA; *plus*

(iii)     to the extent not included in limb (ii) above, any profits of the Company (as set forth in the financial statements to be provided by the Seller to the Buyer) directly derived from the AA Retained Business between the Closing Date and the Vietnam Closing Date; *plus*

(iv)      the Purchase Price (as defined in the Asset Transfer Agreement) to the extent not included in the cash amount set out in limb (ii) above; *minus*

(v)      fifty percent (50%) of any Transfer Taxes incurred by the Company in connection with the transfer of the AA Retained Business under the Asset Transfer Agreement up to but not exceeding USD 10,000 (Ten thousand United States Dollars); *minus*

(vi)     Closing Indebtedness (as defined in the SPA, except that "Acquired Entities" shall mean the Company, and the "Measurement Time" shall mean the relevant time to be agreed by the Parties before the Vietnam Closing) solely as it relates to the Company; *minus*

(vii)    Leakage of the Company (if any);

which such Purchase Price is payable by the Buyer to the Seller in accordance with this Agreement for the acquisition of the Purchased Capital Contribution.

"**Purchased Capital Contribution**" means VND 115,975,100,000 (One hundred fifteen billion nine hundred seventy-five million one hundred thousand Vietnamese Dongs) equivalent to USD 5,000,000 (Five million United States Dollars) accounting for one hundred percent (100%) of the Charter Capital of the Company as of the Agreement Date and as of the Vietnam Closing Date to be transferred by the Seller to the Buyer in accordance with this Agreement.

"**Seller**" has the meaning set forth in the introductory paragraph of this Agreement.

"**Seller Group**" means the Seller, the SPA Seller and the Parent.

"**Short Form CTA**" means any short form capital contribution transfer agreement to be entered into by and between the Seller and the Buyer substantially in the form attached as Schedule III (*In-Principle Agreement*) or any other form agreed by the Seller and the Buyer.

"**SPA**" has the meaning set forth in the Recitals of this Agreement.

"**SPA Seller**" has the meaning set forth in the Recitals of this Agreement.

"**Tax**" or "**Taxes**" means all forms of charges, duties, imposts, contributions, levies, withholdings or liabilities, assessments, or similar charges, or tax whether of Vietnam or elsewhere whenever imposed (including without limitation, income tax, corporation income tax, corporation tax, property tax, sales tax, withholding tax, profits tax, real property gains tax, capital gains tax, capital gains or transfer tax, valued added tax, service tax, excise tax, stamp duties, custom or other import or export duties, repatriation levy) and all statutory, governmental, state, provincial, local governmental or municipal fees, charges, impositions, duties, rates, levies and all penalties, costs and interests relating thereto.

6

"**Transaction Documents**" means, collectively, this Agreement, the SPA, the Transaction Documents (as defined in the SPA) and any other documents or agreements delivered pursuant to this Agreement.

"**USA**" means United States of America.

"**USD**" means United States Dollar.

"**Vietnam**" means the Socialist Republic of Vietnam.

"**Vietnam Closing**" has the meaning set forth in Article IV(a) and is considered to be the "Deferred Vietnam Closing" in the SPA.

"**Vietnam Closing Date**" means one (1) Business Day after the delivery by the Buyer of the CP Satisfaction Notice to the Seller.

"**VND**" or "**Vietnamese Dong**" means the lawful currency of Vietnam.

"**Warranties**" means, collectively, the representations and warranties given by the Parties as set out in Article V and Schedule II, and "**Warranty**" means any one of them.

**1.02    Interpretation**

Section 1.02 (*Other Definitional and Interpretative Provisions*) of the SPA shall apply to this Agreement, mutatis mutandis.

## ARTICLE II. SALE AND PURCHASE

**2.01    Sale and Purchase**

(a)    The Seller irrevocably and absolutely agrees to sell, transfer, assign, and convey to the Buyer, and the Buyer agrees to purchase from the Seller, the Purchased Capital Contribution together with any and all rights, benefits and interests pertaining thereto, including, without limitation, the title and all economic rights and right to receive dividends:

(i)    subject to and in accordance with the terms and conditions of this Agreement;

(ii)    at an aggregate consideration of the Purchase Price;

(iii)    fully paid and free and clear from any and all Liens;

(iv)    subject to the satisfaction or waiver by the relevant Party of the Conditions Precedent; and

(v)    with effect upon the Vietnam Closing Date in accordance with Article IV.

(b)    The Parties agree that, notwithstanding anything to the contrary in this Agreement, the Buyer shall be entitled to receive all economic interests, including, without limitation, rights to dividend in cash or in kind and to exercise all owner's rights with respect

7

to the Purchased Capital Contribution with effect from the Closing Date.

(c)     The Buyer shall be under no obligation to complete the purchase of the Purchased Capital Contribution unless the transfer of the Purchased Capital Contribution to and in favor of the Buyer are conducted at the same time at the Vietnam Closing Date.

**2.02    Tax**

(a)     The Purchase Price shall be inclusive of any and all Taxes, if any, relating to or arising from the sale and purchase of the Purchased Capital Contribution which the Seller must pay to any Governmental Authority at any level. For the avoidance of doubt, the Seller shall be responsible for such Taxes on the Purchase Price as the Governmental Authority may impose in accordance with Applicable Law. For the avoidance of doubt, any Taxes (irrespective of whether levied by way of assessment or of withholding) triggered on any capital gains of the Seller associated with the Agreement shall be borne by the Seller. The Seller commits that it shall provide all necessary information and documents to the Company for the purpose of declaring and paying Vietnamese capital gains Tax on its behalf in accordance with the statutory timeline. The Seller shall reimburse the Company for any such capital gains Tax incurred by the Company.

(b)     Other than the Purchase Price, the Buyer shall have no obligation to pay the Seller and the Company any other amount, provided that if the Seller is entitled to exemption, reduction or refund of any Taxes arising from the sale and purchase of the Purchased Capital Contribution in accordance with any Legal Documents or applicable international treaties including any double taxation treaty between Vietnam and Sweden, the Buyer shall timely provide, and after the Vietnam Closing shall, at the Seller's expense, cause the Company to, at the Seller's reasonable request, timely provide, all necessary information, documents and support to the Seller to apply for such Tax exemption, reduction or refund including but not limited to preparing, signing and/or submitting any required documents or application to the competent authorities either in the name of the Seller or the Company and immediately reimburse the Seller for any refund of Taxes actually received by the Company in respect of any amount of Taxes arising from the sale and purchase of the Purchased Capital Contribution paid by the Seller to the Buyer and/or the Company for declaring and paying in Vietnam on behalf of the Seller by the Tax authorities as soon as reasonably practicable but no later than ten (10) Business Days from the receipt of such refund amount; provided that the Seller shall repay to the Buyer or the Company, as applicable, the amount paid to the Seller pursuant to this paragraph (b) (plus any penalties, interest or other charges imposed by the relevant Tax authority) in the event that the Buyer or the Company, as applicable, is required to repay such refund to such Tax authority. The Seller shall assess its qualification of the tax exemption under the available tax treaty and if applicable, appoint a representative or its tax advisor to prepare necessary statutory forms and supporting documents required for the purpose of tax reduction application and to work with local tax authority for obtaining the approval on the Seller's behalf.

**2.03    Post-Closing Adjustment of the Purchase Price.**

(a)     The Purchase Price to be paid by the Buyer to the Seller on the Vietnam Closing Date shall constitute Seller's good faith estimate of the Purchase Price as of the Vietnam Closing Date (the "**Estimated Purchase Price**"). The Buyer and the Seller hereby agree that the Purchase Price shall be subject to a post-closing adjustment subject in all respects to the

post-closing timelines and mechanics as set forth under Section 2.04 (*Post-Closing Purchase Price Adjustment*) of the SPA as if such timelines and mechanics were set forth herein and applicable to the definition of Purchase Price as defined herein and the Vietnam Closing, except that, unless the context clearly requires otherwise, all references therein to "Closing" or the "Closing Date" shall be deemed to refer to the Vietnam Closing and the Vietnam Closing Date (each as defined herein), as applicable.

(b)     If the Purchase Price as finally determined pursuant to Section 2.03(a) exceeds the Estimated Purchase Price, the Buyer shall pay to the Seller, within two (2) Business Days of such determination, the amount of such excess by wire transfer of immediately available funds to an account designated by the Seller. If the Purchase Price as finally determined pursuant to Section 2.03(a) is less than the Estimated Purchase Price, the Seller shall pay to the Buyer, within two (2) Business Days of such determination, the amount of such shortfall by wire transfer of immediately available funds to an account designated by the Buyer.

## ARTICLE III. CONDITIONS PRECEDENT

(a)     The Buyer's obligations to purchase the Purchased Capital Contribution are subject to the satisfaction, at or prior to the Vietnam Closing, of the conditions precedent as set forth in Schedule I (the "**Conditions Precedent**"). The Closing Company Approvals may be waived in whole or in part by the Buyer in writing, and other Conditions Precedent may be waived in whole or in part by both Parties in writing.

(b)     The Seller shall be responsible for enabling the Conditions Precedent to be fulfilled as soon as practically possible after the Agreement Date.

(c)     The Seller shall take all necessary and reasonable action and supply all necessary and appropriate information for the purpose of enabling the Conditions Precedent to be fulfilled and the transactions contemplated under this Agreement to be closed at the Vietnam Closing.

(d)     Immediately upon satisfaction of all Conditions Precedent, the Seller shall send a written notice to the Buyer confirming that all Conditions Precedent are satisfied. Within five (5) Business Days upon receipt of such notice from the Seller of satisfaction of the Conditions Precedent, the Buyer shall verify the completion of the Conditions Precedent and, upon the Buyer's reasonable determination that the Conditions Precedent have been satisfied or waived, deliver to the Seller a written notice (the "**CP Satisfaction Notice**") confirming that all and any Conditions Precedent are satisfied or waived. The Vietnam Closing shall then occur in accordance with Article IV.

## ARTICLE IV. VIETNAM CLOSING

(a)     On the Vietnam Closing Date, the purchase by the Buyer of the Purchased Capital Contribution, and the sale, transfer, and conveyance by the Seller of the Purchased Capital Contribution in favor of the Buyer shall take place (the "**Vietnam Closing**").

(b)     At the Vietnam Closing, the following actions shall take place:

(i)     The Seller shall deliver or cause to be delivered to the Buyer the following documents to the extent such documents have not been provided to the Buyer prior to

the Vietnam Closing Date:

    1)     The evidence that the Company shall have submitted to the IZ Vinh Phuc the application for the Amended IRC;

    2)     the original M&A Approval or a written confirmation of the IZ Vinh Phuc that the M&A Approval is not required, provided that this deliverable shall not be required if upon the Vietnam Closing, no M&A Approval or such written confirmation is issued by the IZ Vinh Phuc and the Seller has provided the Buyer with deliverables referred to in paragraphs 1) and 3) of this Article IV(b)(i);

    3)     the original copy of the amended ERC, recording, among others, the Buyer as the sole owner of the Company;

    4)     original copies the Closing Company Approvals as set out in Part A of Schedule I of this Agreement;

    5)     the Amended Charter; and

    6)     duly signed original resignation letters of all the members of the Members' Council, the General Director, Deputy General Director and other Managers of the Company appointed by the Seller with effect from the Vietnam Closing Date;

    all in accordance with applicable Legal Documents and the Charter.

(ii)    The Buyer shall instruct its account bank to transfer the Purchase Price to the designated account as previously provided by the Seller to the Buyer at the Vietnam Closing.

(iii)    All of the actions to be taken at the Vietnam Closing Date shall be deemed to occur simultaneously and none of the actions to be taken at the Vietnam Closing Date pursuant to this Agreement shall be deemed to have occurred until the Vietnam Closing Date.

(iv)    Payment of the Purchase Price by the Buyer to the designated account of Seller (as previously provided by the Seller to the Buyer at the Vietnam Closing) shall discharge in full the Buyer's obligation to pay such Purchase Price under this Agreement (subject to any adjustment pursuant to Section 2.03 of this Agreement, if any) and in no event shall the Buyer be responsible for any claim for payment of the Purchase Price by the Seller.

(v)    Upon the Vietnam Closing, the Buyer shall become the sole owner of the Company with full title to the Purchased Capital Contribution and shall be entitled to exercise all ownership with respect to the Purchased Capital Contribution made or paid on or after the Vietnam Closing Date.

### ARTICLE V. REPRESENTATIONS, WARRANTIES AND INDEMNITIES

**5.01    Representations and Warranties of the Seller**

(a)    The Seller represents and warrants to the Buyer that each of the statements set out in Part A of Schedule II on the Warranties is true, complete, accurate, correct and not misleading from the Agreement Date through the Vietnam Closing Date (unless a different date is specifically mentioned in Schedule II). Each of the Warranties shall be separate and independent and save as expressly provided otherwise, shall not be limited by reference to any other paragraph or article or anything in this Agreement.

(b)    There is no fact or matter that renders any Warranty or any information disclosed to the Buyer untrue, incomplete, inaccurate, incorrect or misleading or the disclosure of which might give rise to a Material Adverse Effect.

**5.02    Representations and Warranties of the Buyer**

The Buyer hereby represents and warrants to the Seller on the Agreement Date and the Vietnam Closing Date that each of the statements set out in Part B of Schedule II on the Warranties is true, complete, accurate, correct and not misleading. Each of the Warranties shall be separate and independent and save as expressly provided otherwise, shall not be limited by reference to any other paragraph or article or anything in this Agreement.

**5.03    Specific Indemnity**

(a)    The Seller shall defend, indemnify, save and keep harmless the Buyer and its Affiliates against and from all Damages (as defined in the SPA) sustained or incurred by any of them resulting from or arising out of the shortfall in the VND-denominated Charter Capital as of the Vietnam Closing Date  (the "**Charter Capital Indemnity**").

(b)    Notwithstanding anything to the contrary:

(i)    The Buyer shall take, and cause its Affiliates to take, all reasonable steps to mitigate, in accordance with applicable Law, any Damages upon becoming aware of any event or circumstance that would be reasonably expected to, or does, give rise thereto;

(ii)    The Buyer and its Affiliates shall use reasonable best efforts to recover any insurance proceeds that may be available to cover any Damages payable in connection with the Charter Capital Indemnity. All such Damages shall be reduced by the amount of any third party insurance or reimbursement proceeds that are actually recovered by the Buyer or any of its Affiliates in connection with the facts giving rise to the right of indemnification related to Charter Capital Indemnity. In the event that any insurance payment is received by the Buyer or its Affiliates for which it has been indemnified pursuant to the Charter Capital Indemnity, then a refund equal to the amount of such payment (net of out-of-pocket recovery costs) shall be paid promptly in immediately available funds to the Seller;

(iii)    Any obligation of the Seller to indemnify the Buyer for the Charter Capital Indemnity shall be limited to, and its obligations under this Agreement shall be satisfied

upon achievement of, in a cost-effective manner, the minimum standards required to be met under Applicable Law or the written demand of a Governmental Authority;

(iv)     The Seller shall not be liable to the Buyer or its Affiliates under the Charter Capital Indemnity for Damages in excess of USD 300,000 (Three hundred thousand United States Dollars); and

(v)     Any claim for indemnification for Damages pursuant to the Charter Capital Indemnity must be asserted on or prior to the sixth anniversary of the Vietnam Closing Date.

## ARTICLE VI. COVENANTS

### 6.01   Conduct of Business, Tax matters

From the Agreement Date until the Vietnam Closing Date, Section 5.01 (*Conduct of the Business*) and Article 8 (*Tax Matters*) of the SPA shall apply to this Agreement, mutatis mutandis.

### 6.02   No leakage

The Seller hereby agrees, on behalf of itself and the Company, that from and after the Closing, it will not permit any Leakage.

### 6.03   Reimbursement of Assumed Liabilities

(a)     Subject to Section 6.03(b), the Seller hereby covenants with and undertakes to the Buyer that from the Vietnam Closing, it shall reimburse the Buyer for all or any Assumed Liabilities incurred by the Buyer or the Company upon its receipt of a written request for payment and sufficient supporting documents and evidence from the Buyer.

(b)     The Buyer shall procure that after the Vietnam Closing, the Company shall not make any claim against ASSA ABLOY Smart Technology Vietnam Co., Ltd. for any Assumed Liabilities under the Asset Transfer Agreement unless (i) the Buyer has sent a written request for payment and reimbursement to the Seller for such Assumed Liabilities with sufficient supporting documents and evidence in accordance with Section 6.03(a) hereof; and (ii) the Seller fails to pay and reimburse the Buyer for such liabilities within six (6) months from the date of its receipt of the written request from the Buyer.

### 6.04   Amendment of the IRC

Without limiting any obligations of the Parties under the SPA:

(a)     Each Party agrees and undertakes to the other Party that from the Agreement Date until the Vietnam Closing Date, such Party shall cooperate with the other Party and the Company in connection with the preparation and submission of the application for the M&A Approval, the amended ERC reflecting the Buyer as the sole owner of the Company holding the Purchased Capital Contribution, and the Amended IRC, including promptly preparing and providing to the other Party and the Company all documents required by Applicable Law to be prepared, provided or signed by either Party, each in the form required by Applicable Law.

12

(b)     To the extent that the Amended IRC has not been issued on or prior to the Vietnam Closing Date, the Seller agrees and undertakes to the Buyer that after the Vietnam Closing upon the request of the Buyer, the Seller shall, at its own cost, support and cooperate with the Buyer and the Company in connection with the Buyer's application for the Amended IRC, including promptly preparing and providing to the Buyer all documents required by Applicable Law to be prepared, provided, or signed by the Seller, each in the form required by Applicable Law.

## ARTICLE VII. TERMINATION

### 7.01   Termination

(a)     This Agreement shall only be terminated upon mutual written agreement of the Seller and the Buyer.

(b)     In the event of the termination of this Agreement in accordance with this Section 7.01, this Agreement shall cease to have effect and none of the Parties, their respective affiliates, subsidiaries and representatives of any of the foregoing shall have any liability of any nature whatsoever under this Agreement (except for liabilities which have occurred upon or before the termination), provided that the provisions in this Section 7.01(b), Sections 8.02, 8.03 and 8.07 shall survive any termination of this Agreement.

### 7.02   No Survival

The representations and warranties of the Parties hereto contained in this Agreement shall not survive the Vietnam Closing and, except with respect to claims of Actual Fraud against either party, there shall be no liability in respect thereof, whether such liability has accrued prior to, at or after the Vietnam Closing, on the part of any party, its Affiliates, and their respective Representatives. The covenants and agreements of the Parties contained in this Agreement shall not survive the Vietnam Closing, except to the extent such covenants and agreements by their terms are to be performed in whole or in part at or after the Vietnam Closing, which covenants and agreements shall survive in accordance with their terms.

## ARTICLE VIII. MISCELLANEOUS

### 8.01   Cumulative Rights

Any right granted to a Party hereunder or by Applicable Law is exercised on a regular basis (if necessary), cumulative (unless otherwise expressly provided herein) and not exclusive of any other rights or remedies that may be available to such Party, whether provided by Applicable Law or in any other agreement between the Parties or otherwise.

### 8.02   No double claims

Neither Party is liable under a claim for any loss that the other Party or its Affiliates (as defined in the SPA) recovers, or is compensated for, under the SPA, other Transaction Documents (as defined in the SPA), the Asset Transfer Agreement or otherwise from any third party.

**8.03    Confidentiality**

Section 7.08 (*Confidentiality*) of the SPA is hereby incorporated by reference into, and deemed to be made part of, this Agreement and shall apply mutatis mutandis to the provisions of this Agreement unless stated otherwise, except:

(a)    references to "this Agreement" shall be reference to this Agreement;

(b)    references to the "Seller" shall be references to the Seller;

(c)    references to the "Closing Date" shall be references to the Vietnam Closing Date; and

(d)    references to the "Transaction Documents" shall be references to the Transaction Documents as defined herein.

**8.04    Expenses**

Each Party shall bear its own costs arising out of the negotiation, preparation and execution of this Agreement and the documents and instruments referred to herein.

**8.05    Assignment**

(a)    The Seller shall not assign or create any trust in respect of, or purport to assign or create any trust in respect of, its rights or obligations under this Agreement without the prior written consent of the Buyer.

(b)    To the extent permitted by Applicable Law, the Buyer may, at its own costs and expenses, freely assign or transfer the Purchased Capital Contribution (or portions thereof) and/or its rights and obligations hereunder (without any consent of the Seller) to any of its Affiliates. The Buyer shall be liable for all and any Taxes in relation to its transfer of the Purchased Capital Contribution and/or its rights and obligations hereunder to any Affiliate of the Buyer.

**8.06    Relationship between the Parties**

None of the provisions of this Agreement shall be deemed to constitute a partnership or joint venture between the Parties; and save as specifically provided, none of the Parties shall have any authority to bind the other Party in any way.

**8.07    Notices**

(a)    Except as otherwise expressly provided herein, all notices and other communications provided for hereunder shall be made in writing in English and sent by (i) post mail, (ii) hand-delivery, or (iii) email transmission, so long as a receipt of such email is confirmed by the recipient thereof, in each case at the address specified below:

To the Seller:

14

**ASSA ABLOY ASIA HOLDING AB**

| | | |
|---|---|---|
| Address | : | P.O. Box 70340 SE-107 23 Stockholm, Sweden |
| Attention | : | Ann-Charlotte Högberg |
| Title | : | Board Member |
| Email | : | anncharlotte.hogberg@assaabloy.com |

and with a copy (which shall not constitute notice) to:

**HOGAN LOVELLS US LLP**

| | | |
|---|---|---|
| Address | : | 390 Madison Avenue, New York, NY 10017 |
| Attention | : | Peter Cohen-Millstein; and |
| | | Megan Ridley-Kaye |
| Title | : | Partner |
| Email | : | peter.cohen-millstein@hoganlovells.com; |
| | | megan.ridley-kaye@hoganlovells.com |

To the Buyer:

**MASTER LOCK COMPANY LLC**

| | | |
|---|---|---|
| Address | : | 520 Lake Cook Road Suite 300, Deerfield, IL 60015 |
| Attention | : | Jack N. Melamed |
| Title | : | Associate General Counsel – Corporate and M&A |
| Tel | : | (847) 484-4429 |
| Email | : | Jack.Melamed@fbhs.com |

or at such other address as shall be designated by a Party in a written notice to the other.

(b)      All notices and communications shall be immediately effective upon receipt (i) from the post office, (ii) by hand-delivery, or (iii) via email transmission by the intended recipient at the address or at the email specified in Section 8.07(a) above.

(c)      Each Party shall from time to time notify the other Party of any changes on the contact details provided in Section 8.07(a) above.

**8.08    Governing Law; Dispute Resolution**

Sections 13.08 (*Governing Law*) and 13.09 (*Jurisdiction*) of the SPA shall apply to this Agreement, mutatis mutandis.

**8.09    Modification**

No variation or modification of this Agreement and no waiver of any of the provisions and conditions hereof, or granting of any consent contemplated hereby, shall be valid unless in writing and signed by the party against whom enforcement of any such a variation, modification, waiver or consent is sought.

**8.10    Severance and Validity**

(a)    If any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect under the laws of any jurisdiction, then such invalidity, illegality or unenforceability shall not affect:

(i)    any other provision of this Agreement, but this Agreement shall be construed under the applicable law of such jurisdiction as if such invalid, illegal or unenforceable provision had never been set forth herein, and this Agreement shall be carried out as nearly as possible according to its original terms and intent; and

(ii)    the validity, legality and enforceability of such provisions under the applicable law of any other jurisdiction.

(b)    The Parties shall use their respective reasonable best efforts to replace any such invalid, illegal or unenforceable provision with a valid, legal and enforceable provision which as far as possible reflects the original intent of the Parties.

**8.11    No Strict Construction**

The Parties have participated jointly in the negotiation and drafting of this Agreement. In the event any ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by all Parties, and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any provision of this Agreement.

**8.12    Entire Agreement**

This Agreement shall supersede any or all prior agreements, documents or other instruments with respect to the matters covered hereby. This Agreement (including the Schedules attached hereto), together with the SPA, Transaction Documents and any other documents referred to herein, constitute the entire agreement and supersede any or all previous agreements, documents or other instruments between the Parties relating to the subject matter covered hereby and thereby.

**8.13    Counterparts**

This Agreement may be executed in any number of counterparts, each of which shall be enforceable against the Parties actually executing such counterparts, and all of which together shall constitute one instrument.

**8.14    Short Form CTA**

The Parties hereby agree that for the purposes of implementing this Agreement, the

Parties may prepare, execute and deliver one or multiple Short Form CTA(s), provided that this Agreement will prevail over such Short Form CTA(s) in the event of any discrepancy.

**8.15    Originals; Languages**

This Agreement shall be executed in three (3) originals in Vietnamese and three (3) originals in English. Each Party shall keep one (1) original in English and one (1) original in Vietnamese and one (1) original in English and one (1) original in Vietnamese will be given to the Company for filing. In case there is any discrepancy between the English version and the Vietnamese version, the English version shall prevail.

[*Intentionally left blank*]

17

## SCHEDULE I
## CONDITIONS PRECEDENT

A.    The Buyer shall have received from the Seller original copies of the duly passed resolutions and meeting minutes or decisions by the owner of the Company (as the case may be) (the "**Closing Company Approvals**"), among others,

(a)    approving the sale of the Purchased Capital Contribution by the Seller to the Buyer pursuant to the terms and conditions of this Agreement;

(b)    approving the execution, delivery and performance of this Agreement to which it is a party (including any amendment thereto), and the transactions contemplated hereunder and thereunder;

(c)    authorizing the legal representative of the Company to execute and deliver this Agreement;

(d)    approving the amendment to the Charter, with effect from Vietnam Closing Date, to (i) record that the Buyer is the new owner of the Company; (ii) remove the provisions relating to and the requirement of appointing an Inspector of the Company; (iii) adding "VSIC: 4690 (*General wholesale*)" and "VSIC: 8299 (*Other uncategorized business assistant services*)" in the business lines of the Company (collectively, the Charter with the amendments contemplated herein, the "**Amended Charter**"); and

(e)    with effect from the Vietnam Closing Date, approving the resignation of all the current legal representatives, members of the Members' Council, the General Director, Deputy General Director and other Managers of the Company appointed by the Seller, and the appointment of the new legal representative(s) of the Company, as selected by and communicated to the Seller by the Buyer prior to the Vietnam Closing Date.

B.    The Buyer shall have received from the Seller and/or the Company the following regulatory and third-party approvals:

(a)    the original copy of the M&A Approval, or a written confirmation of the IZ Vinh Phuc that the M&A Approval is not required, provided that if no such written confirmation is issued by the IZ Vinh Phuc, the IZ Vinh Phuc shall be deemed to have issued such confirmation if it has issued and approved the Amended IRC and the DPI Vinh Phuc has issued the amended ERC reflecting the Buyer as the sole owner of the Company holding the Purchased Capital Contribution;

(b)    evidence that the Company submitted to the IZ Vinh Phuc the application for the Amended IRC;

(c)    the original copy of the amended ERC reflecting the Buyer as the sole owner of the Company holding the Purchased Capital Contribution; and

(d)    the original copy of the Amended IRC issued and approved by the IZ Vinh Phuc; provided, that if the original copy of the Amended IRC has not been issued by the IZ Vinh Phuc by 4 December 2023, the condition set forth in this item (d), Part B of this Schedule I shall be deemed to have been satisfied.

C.      The Completion (as defined under the Asset Transfer Agreement) has occurred in accordance with the Asset Transfer Agreement.

## SCHEDULE II
## REPRESENTATIONS AND WARRANTIES

**A.     Representations and Warranties of the Seller**

Section 3.01 (*Corporate Existence and Power*), Section 3.02 (*Seller Authorization*), Section 3.04(a) (*Non-contravention*), Section 3.05 (*Purchased Shares*), Section 3.06 (other than subsection (c)) (*Acquired Entities*), Section 3.12 (*Compliance with Laws; Permits*), Section 3.17(k) (*Employees and Benefit Plans*), Section 3.18 (*Taxes*) and Section 3.19 (*Environmental Compliance*) of the SPA are hereby incorporated by reference into, and deemed to be made part of, this Agreement and shall apply mutatis mutandis to the provisions of this Agreement unless stated otherwise and references to the "Acquired Entities" or any "Acquired Entity" shall be references to the Company; references to the "Purchased Shares" shall be references to the Purchased Capital Contribution; and references to the "Business" shall be references to the Vietnam Business.

**B.     Representations and Warranties of the Buyer**

Section 4.01 (*Corporate Existence and Power*) and Section 4.02 (*Buyer Authorization*) of the SPA are hereby incorporated by reference into, and deemed to be made part of, this Agreement and shall apply mutatis mutandis to the provisions of this Agreement unless stated otherwise.

**SCHEDULE III**

**IN-PRINCIPLE AGREEMENT**

**This In-principle Capital Contribution Transfer Agreement** (hereinafter referred to as the "**Agreement**") is entered into on _____ by and among:

**MASTER LOCK COMPANY LLC** (the "**Buyer**")

| | | |
|---|---|---|
| Registered Address | | 251 Little Falls Drive, Wilmington, Delaware 19808, USA |
| Establishment | : | Certificate of Formation No. 765425 issued by the Secretary of State of the State of Delaware on August 15, 2005 |
| Authorized Representative | : | Jason Raymond Williams (President) |

**and**

**ASSA ABLOY ASIA HOLDING AB** (the "**Seller**")

| | | |
|---|---|---|
| Registered Address | : | PO Box 70340, 107 23 Stockholm, Sweden |
| Establishment | : | Incorporation Certificate No. 556602 – 4500 issued by the Swedish Companies Registration Office on December 11, 2000 |
| Authorized Representative | : | Högberg Ulrika Ann-Charlotte (Board Member) and Per Jonas Axel Gårdmark (Board Member) |

The parties have agreed as follows:

## <u>ARTICLE 1.</u>  PURCHASED CAPITAL CONTRIBUTION

A.  Given the Seller is the sole owner of Assa Abloy Smart Product Vietnam Co. Ltd. ("**Company**"), and subject to terms of this Agreement and other written agreement entered in by the Buyer and the Seller on or about the date of this Agreement in connection with the transaction contemplated herein, the Seller agrees to sell, and the Buyer agrees to purchase a capital contribution of VND 115,975,100,000 (One hundred fifteen billion nine hundred seventy-five million one hundred thousand Vietnamese Dongs) equivalent to USD 5,000,000 (Five million United States Dollars) accounting for one hundred percent (100%) of the charter capital of the Company which is a limited liability company wholly owned by the Seller and incorporated under the enterprise registration certificate no. 2500631198 issued by the Department of Planning and Investment of Vinh Phuc Province on June 21, 2019 (as amended from time to time) with its registered office at Lot A10, Ba Thien II Industrial Zone, Thien Ke Commune, Binh Xuyen District, Vinh Phuc Province, Vietnam, together with all rights and interests attached thereto (hereinafter referred to as the "**Purchased Capital Contribution**").

B.      The Purchased Capital Contribution includes all rights and interests attached thereto in accordance with laws or regulations of the Company, including but not limited to the title and all economic rights and right to receive dividends.

## ARTICLE 2.  PURCHASE PRICE AND PAYMENT

A.      Total purchase price: VND 571,379,000,000 (Five hundred seventy-one billion three hundred seventy-nine million Vietnamese Dongs), equivalent to USD 23,500,000 (Twenty-three million five hundred thousand United States Dollars) (hereinafter referred to as the "**Purchase Price**"), subject to adjustment in accordance with the written agreement between the Seller and the Buyer.

## ARTICLE 3.  COMPLETION

A.      The sale and purchase of the Purchased Capital Contribution shall be completed in accordance with the written agreement between the Seller and the Buyer.

B.      Each of the Buyer and the Seller shall bear its own costs and expenses arising from or related to the transaction contemplated hereunder, including any applicable taxes. For the avoidance of doubt, any applicable capital gains taxes arising from the transfer of the Purchase Capital Contribution here under shall be borne by the Seller.

## ARTICLE 4.  GOVERNING LAW AND DISPUTE RESOLUTION

A.      This Agreement shall be governed by and construed in accordance with the law of the State of Delaware, without regard to the conflicts of law rules of such state.

B.      Any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby shall be brought in the Delaware Court of Chancery and any state appellate court therefrom within the State of Delaware (or, only if the Delaware Court of Chancery declines to accept jurisdiction over a particular matter, any federal court within the State of Delaware), so long as one of such courts shall have subject matter jurisdiction over such action, and that any cause of action arising out of this Agreement shall be deemed to have arisen from a transaction of business in the State of Delaware, and each of the parties hereto hereby irrevocably consents to the jurisdiction of such courts (and of the appropriate appellate courts therefrom) in any such action and irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of the venue of any such action in any such court or that any such action brought in any such court has been brought in an inconvenient forum. Process in any such action may be served on any party anywhere in the world, whether within or without the jurisdiction of any such court.

## ARTICLE 5.  MISCELLANEOUS

A.      This Agreement shall be made into two (4) originals, two (2) in Vietnamese and two (2) in English, each with the same validity. Each party shall keep one (1) original, each in Vietnamese and English, for implementation.

B.      This Agreement shall be effective from the date hereof.

      **IN WITNESS WHEREOF**, the parties, acting for themselves or through its duly authorized representative, have caused this Agreement to be signed in their respective names as of the date first above written.

**MASTER LOCK COMPANY LLC**

By: _____

Name: _____

Title: _____

**ASSA ABLOY ASIA HOLDING AB**

By: _____
Name: _____
Title: _____


By: _____
Name: _____
Title: _____

**Acknowledgement of Assa Abloy Smart Product Vietnam Co. Ltd.**

By:_____
Name: _____
Title: _____
Date: _____

By:_____
Name: _____
Title: _____
Date: _____

**IN WITNESS WHEREOF**, the Parties have caused their authorized representatives to execute this Agreement as of the date first above written.

**MASTER LOCK COMPANY LLC**

By:

Name: Jason Raymond Williams
Title:   President

**ASSA ABLOY ASIA HOLDING AB**

By:

Name: HÖGBERG ULRIKA ANN-CHARLOTTE

Title:   Board Member

**ASSA ABLOY ASIA HOLDING AB**

By:

Name: PER JONAS AXEL GÅRDMARK

Title:   Board Member

EXHIBIT 18

## CAPITAL CONTRIBUTION TRANSFER AGREEMENT

**This Capital Contribution Transfer Agreement** (hereinafter referred to as the "**Agreement**") is entered into on November _13_ , 2023 by and among:

## MASTER LOCK COMPANY LLC (the "**Buyer**")

| Registered Address | : | 251 Little Falls Drive, Wilmington, Delaware 19808, USA |
| --- | --- | --- |
| Establishment | : | Certificate of Formation No. 765425 issued by the Secretary of State of the State of Delaware on August 15, 2005 |
| Authorized Representative | : | Jason Raymond Williams (President) |

**and**

## ASSA ABLOY ASIA HOLDING AB (the "**Seller**")

| Registered Address | : | PO Box 70340, 107 23 Stockholm, Sweden |
| --- | --- | --- |
| Establishment | : | Incorporation Certificate No. 556602 – 4500 issued by the Swedish Companies Registration Office on December 11, 2000 |
| Authorized Representative | : | Högberg Ulrika Ann-Charlotte (Board Member) and Per Jonas Axel Gårdmark (Board Member) |

**WHEREAS**, the Industrial Zone Management Board of Vinh Phuc Province issued its approval over the acquisition of the Buyer of the Purchased Capital Contribution (as defined below) from the Seller to be the sole owner of the Company (as defined below) as evidenced by Letter No. 54/TB-BQLKCN dated November 13, 2023.

The parties have agreed as follows:

## ARTICLE 1. PURCHASED CAPITAL CONTRIBUTION

A.  Given the Seller is the sole owner of Assa Abloy Smart Product Vietnam Co. Ltd. ("**Company**"), and subject to terms of this Agreement and other written agreement entered in by the Buyer and the Seller on or about the date of this Agreement in connection with the transaction contemplated herein, the Seller agrees to sell, and the Buyer agrees to purchase a capital contribution of VND 115,975,100,000 (One hundred fifteen billion nine hundred seventy-five million one hundred thousand Vietnamese Dongs) equivalent to USD 5,000,000 (Five million United States Dollars) accounting for one hundred percent (100%) of the charter capital of the Company which is a limited liability company wholly owned by the Seller and incorporated under the enterprise registration certificate no. 2500631198 issued by the Department of Planning and Investment of Vinh Phuc Province on June 21, 2019 (as amended from time to time) with its registered office at Lot A10, Ba Thien II Industrial Zone, Thien Ke Commune, Binh Xuyen District, Vinh Phuc Province, Vietnam, together with all rights and interests

attached thereto (hereinafter referred to as the "**Purchased Capital Contribution**").

B.     The Purchased Capital Contribution includes all rights and interests attached thereto in accordance with laws or regulations of the Company, including but not limited to the title and all economic rights and right to receive dividends.

## ARTICLE 2.  PURCHASE PRICE AND PAYMENT

A.     Unless otherwise agreed in writing by the Seller and the Buyer, the total purchase price for the Purchased Capital Contribution shall be VND 571,379,000,000 (Five hundred seventy-one billion three hundred seventy-nine million Vietnamese Dongs), equivalent to USD 23,500,000 (Twenty-three million five hundred thousand United States Dollars) (hereinafter referred to as the "**Purchase Price**").

## ARTICLE 3.  COMPLETION

A.     The sale and purchase of the Purchased Capital Contribution shall be completed in accordance with the written agreement between the Seller and the Buyer.

B.     Each of the Buyer and the Seller shall bear its own costs and expenses arising from or related to the transaction contemplated hereunder, including any applicable taxes. For the avoidance of doubt, any applicable capital gains taxes arising from the transfer of the Purchase Capital Contribution here under shall be borne by the Seller.

## ARTICLE 4.  GOVERNING LAW AND DISPUTE RESOLUTION

A.     This Agreement shall be governed by and construed in accordance with the law of the State of Delaware, without regard to the conflicts of law rules of such state.

B.     Any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby shall be brought in the Delaware Court of Chancery and any state appellate court therefrom within the State of Delaware (or, only if the Delaware Court of Chancery declines to accept jurisdiction over a particular matter, any federal court within the State of Delaware), so long as one of such courts shall have subject matter jurisdiction over such action, and that any cause of action arising out of this Agreement shall be deemed to have arisen from a transaction of business in the State of Delaware, and each of the parties hereto hereby irrevocably consents to the jurisdiction of such courts (and of the appropriate appellate courts therefrom) in any such action and irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of the venue of any such action in any such court or that any such action brought in any such court has been brought in an inconvenient forum. Process in any such action may be served on any party anywhere in the world, whether within or without the jurisdiction of any such court.

## ARTICLE 5.  MISCELLANEOUS

A.     This Agreement shall be made into six (6) originals, three (3) in Vietnamese and three (3) in English, each with the same validity. Each party shall keep one (1) original, each in Vietnamese and English; and one (1) original in English and one (1) original in Vietnamese shall be used by the parties to submit to governmental authorities.

B.     This Agreement shall be effective from the date hereof.

2

**IN WITNESS WHEREOF**, the parties, acting for themselves or through its duly authorized representative, have caused this Agreement to be signed in their respective names as of the date first above written.

**MASTER LOCK COMPANY LLC**


By: _____
Name: Jason Raymond Williams
Title:   President

**ASSA ABLOY ASIA HOLDING AB**

By: _____

Name: PER JONAS AXEL GÅRDMARK

Title:   Board Member

**ASSA ABLOY ASIA HOLDING AB**

By: _____

Name: HÖGBERG ULRIKA ANN-CHARLOTTE

Title:   Board Member

Date: November 14, 2023

**CONFIRMATION ON THE COMPLETION OF THE TRANSFER OF CAPITAL CONTRIBUTION IN ASSA ABLOY SMART PRODUCT VIETNAM CO. LTD.** (the "**Confirmation**")

Respectfully to:    Department of Planning and Investment of Vinh Phuc Province

The Business Registration Office of Vinh Phuc Province

Dear Sir or Madam:

Reference is made to the Capital Contribution Transfer Agreement dated November 23, 2023 (the "**Agreement**") between the following parties:

(A)    **MASTER LOCK COMPANY LLC**, as the Buyer; and

(B)    **ASSA ABLOY ASIA HOLDING AB**, as the Seller.

Unless otherwise defined herein, capitalized terms shall have the same meaning given to them in the Agreement.

Each of the parties hereby confirms and acknowledges that the transfer of the Purchased Capital Contribution has been completed for the purpose of Article 53.1(d) of Decree 01/2021/ND-CP dated 4 January 2021 of the Government of Vietnam on registration of enterprises.

Additionally, Assa Abloy Smart Product Vietnam Co. Ltd confirms and acknowledges that transfer of Purchased Capital Contribution from the Seller to the Buyer has been completed for the purpose of Article 53.1(d) of Decree 01/2021/ND-CP dated 4 January 2021 of the Government of Vietnam on registration of enterprises.

Lastly, each of the parties hereby confirms and acknowledges that this Confirmation is hereby incorporated into, and deemed to be made integral part of, the Agreement.

Thank you.

Yours sincerely,

[*Intentionally left blank. Signature pages follow*]

**MASTER LOCK COMPANY LLC**

By:

Name:  Jason Raymond Williams
Title:    President

**ASSA ABLOY ASIA HOLDING AB**

By:

Name: PER JONAS AXEL GÅRDMARK
Title:   Board Member

**ASSA ABLOY ASIA HOLDING AB**

By:

Name: HÖGBERG ULRIKA ANN-CHARLOTTE

Title:   Board Member

## HỢP ĐỒNG CHUYỂN NHƯỢNG PHẦN VỐN GÓP

**Hợp Đồng Chuyển Nhượng Phần Vốn Góp này** (sau đây được gọi là "**Hợp Đồng**") được ký kết vào ngày 23 tháng 11 năm 2023 bởi và giữa:

## MASTER LOCK COMPANY LLC ("Bên Mua")

| | | |
|---|---|---|
| Địa chỉ đăng ký | : | 251 Little Falls Drive, Wilmington, Delaware 19808, Mỹ |
| Thành lập | : | Giấy Chứng Nhận Thành Lập số 765425 cấp bởi Bộ Trưởng Ngoại giao Bang Delaware ngày 15 tháng 8 năm 2005 |
| Đại diện theo ủy quyền | : | Jason Raymond Williams (Chủ Tịch) |

**và**

## ASSA ABLOY ASIA HOLDING AB ("Bên Bán")

| | | |
|---|---|---|
| Địa chỉ đăng ký | : | PO Box 70340, 107 23 Stockholm, Thụy Điển |
| Thành lập | : | Giấy Chứng Nhận Thành Lập số 556602 – 4500 cấp bởi Văn phòng đăng ký công ty Thụy Điển ngày 11 tháng 12 năm 2000 |
| Đại diện theo ủy quyền | : | Högberg Ulrika Ann-Charlotte (Thành viên Hội Đồng Quản Trị) và Per Jonas Axel Gårdmark (Thành viên Hội Đồng Quản Trị) |

**XÉT RẰNG**, Ban Quản Lý Các Khu Công Nghiệp tỉnh Vĩnh Phúc đã chấp thuận việc mua lại của Bên Mua đối với Phần Vốn Góp Được Mua Lại (như được định nghĩa phía dưới) từ Bên Bán là chủ sở hữu duy nhất của Công Ty (như được định nghĩa phía dưới) như được chứng minh tại Văn bản số 54/TB-BQLKCN ngày 13 tháng 11 năm 2023.

Các bên đã đồng ý như sau:

## ĐIỀU 1.     MUA LẠI PHẦN VỐN GÓP

A.     Do Bên Bán là chủ sở hữu duy nhất của Công Ty TNHH Sản Phẩm Thông Minh Assa Abloy Việt Nam ("**Công Ty**") và phụ thuộc vào các điều khoản của Hợp Đồng này và các thỏa thuận bằng văn bản khác được ký kết bởi Bên Mua và Bên Bán vào ngày của Hợp Đồng này liên quan đến giao dịch được thực hiện trong Hợp Đồng này, Bên Bán đồng ý bán và Bên Mua đồng ý mua phần vốn góp là 115.975.100.000 (Một trăm mười lăm tỷ chín trăm bảy mươi lăm triệu một trăm nghìn) đồng Việt Nam tương đương 5.000.000 (Năm triệu đồng) đô la Mỹ chiếm một trăm phần trăm (100%) vốn điều lệ của Công Ty, một công ty trách nhiệm hữu hạn do Bên Bán sở hữu và được thành lập theo giấy chứng nhận đăng ký doanh nghiệp số 2500631198 do Sở Kế hoạch và Đầu tư tỉnh Vĩnh Phúc cấp ngày 21 tháng 6 năm 2019 (được sửa đổi, bổ sung tùy từng thời điểm) với địa chỉ đăng ký tại Lô A10, Khu công nghiệp Bá Thiện II, Xã Thiện Kế, Huyện Bình Xuyên, Tỉnh Vĩnh Phúc, Việt Nam, cùng các quyền và lợi ích đính kèm theo đó (sau đây được gọi là "**Phần Vốn Góp Được Mua Lại**").

1

B.      Phần Vốn Góp Được Mua Lại gồm tất cả các quyền và lợi ích kèm theo theo quy định của pháp luật hoặc quy định của Công Ty, bao gồm nhưng không giới hạn tới quyền sở hữu và toàn bộ quyền kinh tế và quyền nhận cổ tức.

## ĐIỀU 2.      GIÁ MUA VÀ THANH TOÁN

A.      Trừ khi Bên Bán và Bên Mua có thỏa thuận khác bằng văn bản, tổng giá mua của Phần Vốn Góp Được Mua Lại sẽ là 571.379.000.000 (Năm trăm bảy mươi mốt tỷ ba trăm bảy mươi chín triệu đồng Việt Nam), tương đương với 23.500.000 (Hai mươi ba triệu năm trăm nghìn đô la Mỹ) (sau đây được gọi là "**Giá Mua**").

## ĐIỀU 3.      HOÀN TẤT

A.      Việc mua bán Phần Vốn Góp Được Mua Lại sẽ được hoàn tất theo thỏa thuận bằng văn bản giữa Bên Bán và Bên Mua.

B.      Mỗi Bên Mua và Bên Bán sẽ tự chịu phí tổn và chi phí phát sinh hoặc liên quan đến giao dịch được thực hiện theo Hợp Đồng này, bao gồm bất kỳ khoản thuế hiện hành nào. Để tránh nhầm lẫn, mọi khoản thuế lãi vốn hiện hành phát sinh từ việc chuyển nhượng Phần Vốn Góp Được Mua Lại theo Hợp Đồng này sẽ do Bên Bán chi trả.

## ĐIỀU 4.      LUẬT ĐIỀU CHỈNH VÀ GIẢI QUYẾT TRANH CHẤP

A.      Hợp Đồng này được điều chỉnh và được giải thích theo pháp luật Bang Delaware, bất kể những xung đột về quy định pháp luật của bang đó.

B.      Bất kỳ vấn đề nào phát sinh từ hoặc liên quan đến Hợp Đồng này hoặc các giao dịch được thực hiện theo Hợp Đồng này sẽ được đưa ra Tòa án Delaware của Chancery và bất kỳ tòa phúc thẩm tiểu bang nào trong phạm vi Bang Delaware (hoặc, chỉ khi Tòa án Delaware của Chancery từ chối chấp nhận quyền tài phán đối với một vấn đề cụ thể, bất kỳ tòa án liên bang nào trong Bang Delaware), miễn là một trong các tòa án đó sẽ có quyền tài phán đối với vụ kiện đó và mọi nguyên nhân của vụ kiện đó phát sinh từ Hợp Đồng này sẽ được coi là phát sinh từ một giao dịch kinh doanh ở Bang Delaware và mỗi bên theo đây đồng ý không hủy ngang đối với thẩm quyền tài phán của các tòa án đó (và của các tòa phúc thẩm phù hợp) đối với bất kỳ vụ kiện như vậy và từ bỏ không hủy ngang, trong phạm vi tối đa được cho phép bởi luật, bất kỳ sự phản đối nào mà có thể bây giờ hoặc sau này đối với việc ấn định địa điểm của bất kỳ vụ kiện như vậy tại bất kỳ tòa án như vậy hoặc bất kỳ vụ kiện nào như vậy được đưa ra tại bất kỳ tòa án nào như vậy đều đã dẫn đến việc thụ lý vụ kiện gặp nhiều bất tiện. Quy trình xử lý bất kỳ vụ kiện nào tương tự có thể được thực hiện cho bất kỳ bên nào ở bất kỳ đâu trên thế giới, dù thuộc hoặc không thuộc thẩm quyền tài phán của bất kỳ tòa án nào như vậy.

## ĐIỀU 5.      CÁC ĐIỀU KHOẢN KHÁC

A.      Hợp Đồng này sẽ được lập thành sáu (6) bản chính, ba (3) bản tiếng Việt và ba (3) bản tiếng Anh, mỗi bản có giá trị pháp lý như nhau. Mỗi bên giữ một (1) bản chính tiếng Anh và một (1) bản chính tiếng Việt; và một (1) bản chính tiếng Anh và một (1) bản chính tiếng Việt sẽ được các bên sử dụng để nộp cho cơ quan có thẩm quyền.

B.      Hợp Đồng này có hiệu lực kể từ ngày ký.

2

     **ĐỂ LÀM BẰNG CHỨNG,** các bên, nhân danh chính mình hoặc thông qua đại diện theo ủy quyền của mình, ký kết Hợp Đồng này dưới tên tương ứng vào ngày được nêu tại phần giới thiệu ở trên.

**MASTER LOCK COMPANY LLC**


Bởi: _____

Tên:    Jason Raymond Williams

Chức vụ: Chủ Tịch

**ASSA ABLOY ASIA HOLDING AB**

Bởi:

Họ và tên:     PER JONAS AXEL GÅRDMARK

Chức vụ:      Thành viên Hội Đồng Quản Trị

**ASSA ABLOY ASIA HOLDING AB**

Bởi:

Họ và tên:     HÖGBERG ULRIKA ANN-CHARLOTTE

Chức vụ:      Thành viên Hội Đồng Quản Trị

Ngày: _14_ tháng 11 năm 2023

## XÁC NHẬN HOÀN THÀNH VIỆC CHUYỂN NHƯỢNG PHẦN VỐN GÓP TRONG CÔNG TY TNHH SẢN PHẨM THÔNG MINH ASSA ABLOY VIỆT NAM ("Xác nhận")

Kính gửi:               Sở Kế hoạch và Đầu tư tỉnh Vĩnh Phúc

                          Phòng Đăng ký Kinh doanh tỉnh Vĩnh Phúc

Kính thưa Ông/Bà:

Tham chiếu tới Hợp Đồng Chuyển Nhượng Phần Vốn Góp ngày _23_ tháng 11 năm 2023 ("**Hợp Đồng**") giữa các bên sau đây:

(A)     **MASTER LOCK COMPANY LLC**, với tư cách là Bên Mua; và

(B)     **ASSA ABLOY ASIA HOLDING AB**, với tư cách là Bên Bán.

Trừ trường hợp có quy định khác, các thuật ngữ viết hoa sẽ có nghĩa như đã được quy định trong Hợp Đồng.

Mỗi bên sau đây xác nhận và thừa nhận rằng việc chuyển nhượng Phần Vốn Góp Được Mua Lại đã hoàn tất theo Điều 53.1(d) của Nghị định 01/2021/NĐ-CP ban hành ngày 04 tháng 01 ngày 2021 của Chính Phủ Việt Nam về đăng ký doanh nghiệp.

Ngoài ra, Công Ty TNHH Sản Phẩm Thông Minh Assa Abloy Việt Nam xác nhận và thừa nhận rằng việc chuyển nhượng Phần Vốn Góp Được Mua Lại từ Bên Bán cho Bên Mua đã được hoàn tất theo Điều 53.1(d) của Nghị định 01/2021/NĐ-CP ngày 04 tháng 01 ngày 2021 của Chính Phủ Việt Nam về đăng ký doanh nghiệp.

Cuối cùng, mỗi bên sau đây xác nhận và thừa nhận rằng Xác Nhận này được đưa vào và là một phần không thể thiếu của Hợp Đồng.

Xin chân thành cảm ơn.

Trân trọng,

*[Cố ý bỏ trống. Trang ký tiếp theo]*

**MASTER LOCK COMPANY LLC**

Bởi:

Tên:     Jason Raymond Williams

Chức vụ:  Chủ Tịch

**ASSA ABLOY ASIA HOLDING AB**

Bởi:

Họ và tên:  PER JONAS AXEL GÅRDMARK

Chức vụ:   Thành viên Hội Đồng Quản Trị

**ASSA ABLOY ASIA HOLDING AB**

Bởi:

Họ và tên:     HÖGBERG ULRIKA ANN-CHARLOTTE

Chức vụ:     Thành viên Hội Đồng Quản Trị

EXHIBIT 19

## CAPITAL CONTRIBUTION TRANSFER AGREEMENT

**This Capital Contribution Transfer Agreement** (hereinafter referred to as the "**Agreement**") is entered into on December 12, 2023 by and among:

**MASTER LOCK COMPANY LLC** (the "**Buyer**")

| | | |
|---|---|---|
| Registered Address | : | 251 Little Falls Drive, Wilmington, Delaware 19808, USA |
| Establishment | : | Certificate of Formation No. 765425 issued by the Secretary of State of the State of Delaware on August 15, 2005 |
| Authorized Representative | : | Jason Raymond Williams (President) |

**and**

**ASSA ABLOY ASIA HOLDING AB** (the "**Seller**")

| | | |
|---|---|---|
| Registered Address | : | PO Box 70340, 107 23 Stockholm, Sweden |
| Establishment | : | Incorporation Certificate No. 556602 – 4500 issued by the Swedish Companies Registration Office on December 11, 2000 |
| Authorized Representative | : | Högberg Ulrika Ann-Charlotte (Board Member) and Per Jonas Axel Gårdmark (Board Member) |

**WHEREAS**, the Industrial Zone Management Board of Vinh Phuc Province issued its approval over the acquisition of the Buyer of the Purchased Capital Contribution (as defined below) from the Seller to be the sole owner of the Company (as defined below) as evidenced by Letter No. 54/TB-BQLKCN dated November 13, 2023.

The parties have agreed as follows:

## ARTICLE 1.  PURCHASED CAPITAL CONTRIBUTION

A.      Given the Seller is the sole owner of ASSA ABLOY Smart Product Vietnam Co. Ltd. ("**Company**"), and subject to terms of this Agreement and other written agreement entered in by the Buyer and the Seller on or about the date of this Agreement in connection with the transaction contemplated herein, the Seller agrees to sell, and the Buyer agrees to purchase a capital contribution of VND 115,975,100,000 (One hundred fifteen billion nine hundred seventy-five million one hundred thousand Vietnamese Dongs) equivalent to USD 5,000,000 (Five million United States Dollars) accounting for one hundred percent (100%) of the charter capital of the Company which is a limited liability company wholly owned by the Seller and incorporated under the enterprise registration certificate no. 2500631198 issued by the Department of Planning and Investment of Vinh Phuc Province on June 21, 2019 (as amended from time to time) with its registered office at Lot A10, Ba Thien II Industrial Zone, Thien Ke Commune, Binh Xuyen District, Vinh Phuc Province, Vietnam, together with all rights and interests

attached thereto (hereinafter referred to as the "**Purchased Capital Contribution**").

B.     The Purchased Capital Contribution includes all rights and interests attached thereto in accordance with laws or regulations of the Company, including but not limited to the title and all economic rights and right to receive dividends.

## ARTICLE 2.  PURCHASE PRICE AND PAYMENT

A.     Unless otherwise agreed in writing by the Seller and the Buyer, the total purchase price for the Purchased Capital Contribution shall be VND 571,379,000,000 (Five hundred seventy-one billion three hundred seventy-nine million Vietnamese Dongs), equivalent to USD 23,500,000 (Twenty-three million five hundred thousand United States Dollars) (hereinafter referred to as the "**Purchase Price**").

B.     The Buyer shall promptly open an escrow account (the "**Escrow Account**") at a bank to be mutually agreed upon by the Parties and make payment of the Purchase Price to the Escrow Account. Within ten (10) days after the Department of Planning and Investment of Vinh Phuc Province has issued the amended enterprise registration certificate to the Company recording the Buyer as the new owner of 100% of the charter capital of the Company (the "**Amended ERC**"), the Buyer shall ensure that the Purchase Price shall be transferred by bank transfer to an account of the Seller, which shall be communicated in writing (e-mail being acceptable) by the Seller to the Buyer no later than two (2) business days prior to the date falling on the last day of such ten-day period.

## ARTICLE 3.  RIGHTS AND OBLIGATIONS OF THE PARTIES

A.     The Buyer and the Seller shall be jointly responsible for the establishment and administration of, and costs and expenses arising from or related to, the Escrow Account.

B.     Within ten (10) days following the issuance of the Amended ERC, the Buyer shall release the amount equal to the Purchase Price from the Escrow Account to the Seller in accordance with Article 2B.

C.     The Seller shall ensure that upon the receipt of Amended ERC and the Purchase Price from the Buyer, the Purchase Capital Contribution will be free of any security interests or rights of any third party and that the Buyer shall be the sole and lawful owner of the Purchased Capital Contribution.

D.     Each of the Buyer and the Seller shall bear its own costs and expenses arising from or related to the transaction contemplated hereunder, including any applicable taxes. For the avoidance of doubt, any applicable capital gains taxes arising from the transfer of the Purchase Capital Contribution here under shall be borne by the Seller.

## ARTICLE 4.  GOVERNING LAW AND DISPUTE RESOLUTION

A.     This Agreement shall be governed by and construed in accordance with the law of Vietnam to the extent that the law of Vietnam so requires.  Otherwise, to the extent that Vietnamese law does not require that this Agreement or any provisions hereunder be governed by and construed in accordance with the Vietnamese law, this Agreement or

such provisions shall be governed by and construed in accordance with the law of the State of Delaware.

B.      Any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby shall be brought in the Delaware Court of Chancery and any state appellate court therefrom within the State of Delaware (or, only if the Delaware Court of Chancery declines to accept jurisdiction over a particular matter, any federal court within the State of Delaware), so long as one of such courts shall have subject matter jurisdiction over such action, and that any cause of action arising out of this Agreement shall be deemed to have arisen from a transaction of business in the State of Delaware, and each of the parties hereto hereby irrevocably consents to the jurisdiction of such courts (and of the appropriate appellate courts therefrom) in any such action and irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of the venue of any such action in any such court or that any such action brought in any such court has been brought in an inconvenient forum. Process in any such action may be served on any party anywhere in the world, whether within or without the jurisdiction of any such court.

## ARTICLE 5.  MISCELLANEOUS

A.      This Agreement shall be effective from the date hereof. The Capital Contribution Transfer Agreement signed by and between the Seller and the Buyer on November 23, 2023 ("**Former CTA**") shall be terminated in its entirety as of the date of this Agreement. Neither party shall be liable to the other party as a result of any act or omission in connection with such Former CTA whether undertaken before or after the date of this Agreement.

B.      This Agreement shall be made into six (6) originals, three (3) in Vietnamese and three (3) in English, each with the same validity. Each party shall keep one (1) original, each in Vietnamese and English; and one (1) original in English and one (1) original in Vietnamese shall be used by the parties to submit to governmental authorities.

**IN WITNESS WHEREOF**, the parties, acting for themselves or through its duly authorized representative, have caused this Agreement to be signed in their respective names as of the date first above written.

**FOR AND ON BEHALF OF THE BUYER**          **FOR AND ON BEHALF OF THE SELLER**

JASON RAYMOND WILLIAMS
President
MASTER LOCK COMPANY LLC

PER JONAS AXEL GÅRDMARK
Board Member
ASSA ABLOY ASIA HOLDING AB

ULRIKA ANN-CHARLOTTE HÖGBERG
Board Member
ASSA ABLOY ASIA HOLDING AB

**ACKNOWLEDGMENT OF ASSA ABLOY SMART PRODUCT VIETNAM CO. LTD.**

WU KIN-BOND
General Director

LEE IL SUP
Deputy General Director

Date: December 23, 2023

**CONFIRMATION ON THE COMPLETION OF THE TRANSFER OF CAPITAL CONTRIBUTION IN ASSA ABLOY SMART PRODUCT VIETNAM CO. LTD.** (the "**Confirmation**")

Reference is made to the Capital Contribution Transfer Agreement dated December 12, 2023 (the "**Agreement**") between the following parties:

(A)     **MASTER LOCK COMPANY LLC**, as the Buyer; and

(B)     **ASSA ABLOY ASIA HOLDING AB**, as the Seller.

Unless otherwise defined herein, capitalized terms shall have the same meaning given to them in the Agreement.

Each of the parties hereby confirms and acknowledges that the Buyer, in performance of its obligation under the Agreement, has successfully paid the Purchase Price into the Escrow Account No. 878261095 opened at JPMorgan Chase Bank, N.A. on December 22, 2023.

The Buyer hereby undertakes that, within ten (10) days from the issuance of the Amended ERC, the Buyer shall release the Purchase Price from the Escrow Account to the Seller's designated account in accordance with the Agreement.

Each of the parties hereby confirms and acknowledges that this Confirmation is hereby incorporated into, and deemed to be made integral part of, the Agreement.

Thank you.

Yours sincerely,

**IN WITNESS WHEREOF**, the parties, acting for themselves or through its duly authorized representative, have caused this Confirmation to be signed in their respective names as of the date first above written.

FOR AND ON BEHALF OF THE BUYER

FOR AND ON BEHALF OF THE SELLER

JASON RAYMOND WILLIAMS
President
MASTER LOCK COMPANY LLC

PER JONAS AXEL GÅRDMARK
Board Member
ASSA ABLOY ASIA HOLDING AB

ULRIKA ANN-CHARLOTTE HÖGBERG
Board Member
ASSA ABLOY ASIA HOLDING AB

<u>ACKNOWLEDGMENT OF ASSA ABLOY SMART PRODUCT VIETNAM CO. LTD.</u>

WU KIN-BOND
General Director

LEE JI SUP
Deputy General Director

<u>EXHIBIT 20</u>

| | |
|---|---|
| **From:** | Lazarus, Gabriel <glazarus@cgsh.com> |
| **Sent:** | Thursday, December 28, 2023 2:04 PM |
| **To:** | Melinda R. Coolidge; Daniel P. Weick; Huppert, Matthew (ATR) |
| **Cc:** | Isaacs, Miranda (ATR); Camila Ringeling; Owen, Jay (ATR); Michele Edwards; Lisa Van Houten; Breed, Logan M. |
| **Subject:** | United States v. ASSA ABLOY |

All,

Please see the following update and additional detail regarding the Vietnam divestiture.

Between July 13 and August 31, 2023, ASSA ABLOY moved out of the facility owned by the Vietnam entity, relocating its inventory and equipment.  In accordance with such move, the Vietnam entity and the New ASSA ABLOY Vietnam entity entered into a Contract of Liquidation of Assets and a Contract on Liquidation of Inventory.

Effective as of November 23, 2023, ASSA ABLOY Asia Holding AB, a wholly owned subsidiary of ASSA ABLOY and the then-direct shareholder of the Vietnam entity, passed resolutions:
1. authorizing the transfer of the equity in the Vietnam entity to Master Lock Company LLC ("MLC"), a wholly owned subsidiary of Fortune Brands;
2. giving MLC the right to appoint its authorized representative as Chairman of the Vietnam entity; and
3. amending the Charter of the Vietnam entity to reflect MLC as the owner of the Vietnam entity, with the right to dismiss and replace the Legal Representative of the Vietnam entity.

Effective as of November 27, 2023, MLC appointed Jason Williams as the Chairman of the Vietnam entity.

Notice of the foregoing was provided to Vinh Phuc Business Registration Division on November 27, 2023.

On December 22, 2023, (1) an affiliate of Fortune Brands paid the US$23,500,000 purchase price in consideration for the transfer of ownership of the shares of the Vietnam Entity and (2) Fortune Brands and ASSA ABLOY registered the change of ownership of the Vietnam entity with the Department of Planning and Investment of Vinh Phuc ("DPI").  The purchase price is being held in an escrow account at JP Morgan Chase Bank, N.A. and will be released to ASSA ABLOY upon issuance by the DPI of an amended enterprise registration certificate evidencing a wholly owned subsidiary of Fortune Brands as the owner of the Vietnam Entity.  The purchase price is subject to a customary post-closing adjustment.

Best regards,

Gabriel

**Gabriel J. Lazarus**
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
T: +1 202 974 1812 | M: +1 301 915 7048
glazarus@cgsh.com  | clearygottlieb.com
Pronouns: he/him/his

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and

the term "offices" includes offices of those affiliated entities. Our external privacy statement is available at:
https://www.clearygottlieb.com/footer/privacy-statement

# EXHIBIT 21

| | |
|---|---|
| **From:** | Melinda R. Coolidge |
| **Sent:** | Thursday, February 1, 2024 11:10 AM |
| **To:** | Lazarus, Gabriel; Breed, Logan M. |
| **Cc:** | Daniel P. Weick |
| **Subject:** | RE: ASSA ABLOY |

Gabriel and Logan,

Thank you for the update. We have not discussed with DOJ what they might request from ASSA ABLOY to show operational control, but I do think the final judgment provides some guidance. The relevant inquiry, as I read it, is whether "operational control has otherwise been given to the Acquirer <u>such that the purposes of the divestiture have been carried out</u>." The final judgment contemplates "confer[ring] with the United States in an effort to reach agreement on whether the steps taken carry out the purposes of the divestiture," so I think if an initial proffer from ASSA to show how operational control has been transferred "such that the purposes of the divestiture have been carried out" does not result in agreement, then I believe you will receive guidance on what else the DOJ may need to see in order to reach agreement.

Best regards,

**MELINDA R. COOLIDGE**
US Managing Partner
mcoolidge@hausfeld.com
+1 202-540-7144 direct
*Pronouns: she/her/hers*

# HAUSFELD

888 16th Street, N.W.
Suite 300
Washington, DC 20006
+1 202 540 7200

**hausfeld.com**

This electronic mail transmission from Hausfeld LLP may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.

**From:** Lazarus, Gabriel <glazarus@cgsh.com>
**Sent:** Thursday, February 1, 2024 9:47 AM
**To:** Melinda R. Coolidge <mcoolidge@hausfeld.com>; Daniel P. Weick <dweick@hausfeld.com>
**Cc:** Breed, Logan M. <logan.breed@hoganlovells.com>
**Subject:** ASSA ABLOY

Melinda and Dan,

Following up on our call Monday, while ASSA ABLOY maintains that the Vietnam facility transferred to Fortune, we appreciate the concerns you shared.  Therefore, as you suggested, we plan to contact the DOJ tomorrow to propose discussing the transfer of operational control.

We'd appreciate if you have any additional detail about what information the DOJ will want so that we can collect it.

Thank you,

Gabriel

——

**Gabriel J. Lazarus**
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
T: +1 202 974 1812 | M: +1 301 915 7048
glazarus@cgsh.com | clearygottlieb.com
Pronouns: he/him/his

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities. Our external privacy statement is available at:
https://www.clearygottlieb.com/footer/privacy-statement

EXHIBIT 22

| | |
|---|---|
| **From:** | Cohen-Millstein, Peter <peter.cohen-millstein@hoganlovells.com> |
| **Sent:** | Friday, February 16, 2024 8:53 AM |
| **To:** | Isaacs, Miranda (ATR); Huppert, Matthew (ATR); Melinda R. Coolidge |
| **Cc:** | Bernick, Justin W.; Breed, Logan M.; Lazarus, Gabriel |
| **Subject:** | FW: Vietnam operational control |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |



Dear all,
I'm forwarding to you an email from Jonathan Blackburn, Fortune Brands' M&A counsel, containing a description of the manner in which Fortune Brands exercises operational control over the Vietnam entity.
Please let us know if any additional information would be helpful.

Peter

**Peter Cohen-Millstein**
Partner
he/him/his

**Hogan Lovells US LLP**
390 Madison Avenue
New York, NY 10017
Tel:      +1 212 918 3000
Direct:  +1 212 918 3832
Mobile:  +1 917 494 8182
Fax:      +1 212 918 3100
Email:   peter.cohen-millstein@hoganlovells.com
          www.hoganlovells.com



**From:** Blackburn, Jonathan <jblackburn@sidley.com>
**Sent:** Wednesday, February 14, 2024 9:46 PM
**To:** Cohen-Millstein, Peter <peter.cohen-millstein@hoganlovells.com>
**Subject:** RE: Vietnam operational control

**[EXTERNAL]**
See below.

Jason Williams, as legal representative and Chairman of ASSA ABLOY Smart Product Vietnam Co., Ltd. ("AASPV"), directs all aspects of the business and operations of AASPV.  **Chris Demko, the Director of Operations of AASPV,** takes direction from Jason Williams, and, in turn, directs the day-to-day operations of the business.

Employees of AASPV are paid via the entity's own payroll.  The entity's operations generate sufficient cash to fund its working capital requirements.

No member of the ASSA ABLOY group has any role in the oversight, management, or control of AASPV.

**JONATHAN A. BLACKBURN**

**SIDLEY AUSTIN LLP**
+1 312 853 7168
jblackburn@sidley.com

**About Hogan Lovells**
Hogan Lovells is an international legal practice that includes Hogan Lovells US LLP and Hogan Lovells International LLP. For more information, see www.hoganlovells.com.

CONFIDENTIALITY. This email and any attachments are confidential, except where the email states it can be disclosed; it may also be privileged. If received in error, please do not disclose the contents to anyone, but notify the sender by return email and delete this email (and any attachments) from your system.

PRIVACY. Hogan Lovells processes personal data, including data relating to email communications, in accordance with the terms of its privacy policy which is available at www.hoganlovells.com/en/privacy.