**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| *Plaintiff,* ) | **Civil Action No. 1:22-cv-2791** |
| ) | |
| v. ) | |
| ) | **REDACTED PUBLIC VERSION** |
| **ASSA ABLOY AB, et al.,** ) | |
| ) | |
| *Defendants.* ) | |

**MOTION FOR LIMITED INTERVENTION
BY FORTUNE BRANDS INNOVATIONS, INC.**

Pursuant to Rule 24(b) of the Federal Rules of Civil Procedure and Local Civil Rule 7(j), Fortune Brands Innovations, Inc. ("Fortune"), by and through its undersigned counsel, hereby moves to intervene in this matter for the limited purpose of seeking clarification of the terms of the Final Judgment. Ex. 1, ECF No. 143.  Under the terms of the Final Judgment, Fortune, as Acquirer, and Defendant ASSA ABLOY AB ("ASSA ABLOY") entered into supply contracts "for all products necessary to operate [the specified divested businesses]."[1] *Id.* §§ V(J); VI(J). The Final Judgment also granted the United States, "in its sole discretion," the authority to "approve up to two extensions of any supply contract for a period of 12 months each." *Id.* §§ V(K); VI(K).  ASSA ABLOY, however, now disputes Fortune's rights and the government's authority under these terms: Fortune has sought, and the government has approved, a brief extension of the supply contracts, but ASSA ABLOY now claims the government's approval has

---

[1]    The Final Judgment sets out a 12-month term for the supply contracts, Final Judgment §§ V(J); VI(J), but pursuant to Section VI(B) of the Asset Preservation Stipulation and Order, the United States approved the "the initial conditions for and terms of" the supply agreements contained in the Divestiture Agreements, which set an initial term of two years.  Ex. 2, ECF. No. 128-1 § VI(B).

no effect when ASSA ABLOY has separately refused to agree to an extension.  Under ASSA ABLOY'S interpretation of the Final Judgment, the supply agreements will end at the conclusion of their initial term on June 20, 2025.  Given ASSA ABLOY's position, Fortune now seeks to intervene in this matter for the limited purpose of seeking the Court's clarification of the terms of the Final Judgment, specifically Sections V(K) and VI(K). *Id*. In support, Fortune relies on the accompanying Memorandum of Points and Authorities and exhibits thereto, including Fortune's Proposed Motion for Clarification. As demonstrated in its papers, Fortune's limited intervention in this matter is proper, and the Court should clarify the terms of the Final Judgment with respect to the Governments' authority, in its sole discretion, to approve requests to extend the supply contracts ordered under the Final Judgment.

Pursuant to Local Rule 78.1, Fortune respectfully requests an oral hearing.  Additionally, Fortune respectfully requests that the Court grant expedited review of this Motion and set an accelerated briefing schedule.

**Local Rule 7(m) Statement**

Pursuant to Local Rule 7(m), Fortune's counsel has conferred with counsel for the relevant parties. The United States takes no position on Fortune's Motion to Intervene. Defendant ASSA ABLOY opposes the Motion.


Dated: June 15, 2025                              Respectfully Submitted,

                                                 */s/ Sarah E. McVay*

                                                 Sarah E. McVay, DC Bar ID: 1046280
                                                 Tracie L. Bryant, P.C., DC Bar ID: 1018783
                                                 KIRKLAND & ELLIS LLP
                                                 1301 Pennsylvania Avenue, N.W.
                                                 Washington, D.C. 20004
                                                 Telephone: +1 202 389 5271
                                                 Facsimile: +1 202 389 5200
                                                 sarah.mcvay@kirkland.com
                                                 tracie.bryant@kirkland.com


                                                 *Counsel for Movant Fortune Brands*
                                                 *Innovations, Inc.*

3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| *Plaintiff,* ) | **Civil Action No. 1:22-cv-2791** |
| ) | |
| v. ) | |
| ) | |
| **ASSA ABLOY AB, et al.,** ) | |
| ) | |
| *Defendants.* ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**FORTUNE BRANDS INNOVATIONS, INC.'S**
**MOTION FOR LIMITED INTERVENTION**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 3

ARGUMENT ...................................................................................................................... 5

I.     THE COURT SHOULD GRANT INTERVENTION AS OF RIGHT ............................ 6

      A.     Fortune Has A Protectable Interest As Acquirer Under The Final
            Judgment's Extension Terms ................................................................. 6

      B.     Without Clarification, Fortune's Rights Under The Final Judgment's
            Extension Terms Will Be Impaired ...................................................... 8

      C.     No Party To The Case Can Serve As An Adequate Representation Of
            Fortune's Interests ............................................................................... 9

      D.     Fortune's Limited Intervention Request Is Timely ............................. 10

II.    ALTERNATIVELY, THE COURT SHOULD GRANT PERMISSIVE
      INTERVENTION ....................................................................................................... 11

      A.     Fortune Presents A "Claim Or Defense" Concerning The Final Judgment
            That Supports Permissive Intervention .............................................. 11

      B.     Fortune's Intervention Would Not Unduly Delay The Proceedings And Is
            Timely ................................................................................................ 13

III.   CONCLUSION .......................................................................................................... 13

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*100Reporters LLC v. U.S. Dep't of Just.*,
307 F.R.D. 269 (D.D.C. 2014)................................................................12

*B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*,
440 F.3d 541 (1st Cir. 2006)................................................................6

*Children's Health Def. v. FCC*,
25 F.4th 1045 (D.C. Cir. 2022)................................................................8

*Crossroads Grassroots Pol'y Strategies v. FEC*,
788 F.3d 312 (D.C. Cir. 2015)................................................................6

*EEOC v. Nat'l Children's Ctr, Inc.*,
146 F.3d 1042 (D.C. Cir. 1998)................................................................12

*Farmer v. EPA*,
759 F. Supp. 3d 101 (D.D.C. 2024)................................................................9

*Forest Conservation Council v. U.S. Forest Serv.*,
66 F.3d 1489 (9th Cir. 1995)................................................................5

*Fund for Animals, Inc. v. Norton*,
322 F.3d 728 (D.C. Cir. 2003)................................................................6, 8, 9

*United States ex rel. Hernandez v. Team Fin.*,
LLC, 80 F.4th 571 (5th Cir. 2023)................................................................12

*Hodgson v. United Mine Workers of Am.*,
473 F.2d 118 (D.C. Cir. 1972)................................................................3, 5, 10

*Humane Soc'y of U.S. v. U.S. Dep't of Agric.*,
No. 19-cv-2458-BAH, 2023 WL 3433970 (D.D.C. May 12, 2023)................................................................6

*Karsner v. Lothian*,
532 F.3d 876 (D.C. Cir. 2008)................................................................6, 10

*Nat. Res. Def. Council v. Costle*,
561 F.2d 904 (D.C. Cir. 1977)................................................................5, 9, 10, 11

*Nuesse v. Camp*,
385 F.2d 701 (D.C. Cir. 1967)................................................................12

iii

*Roane v. Leonhart*,
    741 F.3d 147 (D.C. Cir. 2014)..................................................................................10

*Sw. Ctr. for Biological Diversity v. Berg*,
    268 F.3d 810 (9th Cir. 2001) ......................................................................................7

*Textile Workers Union of Am., CIO v. Allendale Co.*,
    226 F.2d 765 (D.C. Cir. 1955)..................................................................................12

*Trbovich v. United Mine Workers*,
    404 U.S. 528 (1972)....................................................................................................9

*United Airlines, Inc. v. McDonald*,
    432 U.S. 385 (1977)..................................................................................................11

*Waterkeeper All., Inc. v. Wheeler*,
    330 F.R.D. 1 (D.D.C. 2018)........................................................................................9

*Wolpe v. Poretsky*,
    144 F.2d 505 (D.C. Cir. 1944)..............................................................................5, 10

*Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*,
    701 F.3d 938 (3d Cir. 2012)........................................................................................5

**Rules**

Fed. R. Civ. P. 24 .............................................................................................. *passim*

**INTRODUCTION**

ASSA ABLOY AB ("ASSA ABLOY") agreed in May 2023, to be bound by the Final Judgment entered in this action, and represented that the "divestitures and other relief required by th[e] Final Judgment can and will be made." Ex. 1 (Final Judgment) at 1. As part of that agreement, ASSA ABLOY also agreed to Paragraphs V.J and VI.J of the Final Judgment, which require ASSA ABLOY, at Fortune Brands Innovations, Inc.'s ("Fortune") option, to enter into supply contracts for all products necessary to operate the Premium Mechanical Divestiture Business and the Smart Lock Divestiture Business, including nexTouch and Interconnect branded products produced by ASSA ABLOY prior to the divestiture date. ASSA ABLOY also agreed that "that United States, in its sole discretion, may approve up to two extensions of any supply contract of 12 months each." Ex. 1 (Final Judgment) § V(K); VI(K). As the United States explained at the time, the supply agreements are meant to "help to ensure that Fortune will not face disruption to its supply during an important transitional period." Ex. 3 (Competitive Impact Stmt.), ECF No. 129 at 10–11.

Now, barely two years later, ASSA ABLOY threatens to walk that promise back through creative reinterpretation of the simple terms of the Final Judgment. Fortune requested an extension of the supply agreement, which is set to expire on June 20, 2025. The United States granted the extension, but ASSA ABLOY has stated that it will not recognize the extension, because ASSA ABLOY did not also agree to the extension. Thus, it appears that under ASSA ABLOY's view of the world, the supply agreements can only be extended if both ASSA ABLOY and Fortune agree first agree to the extension. That is plainly not what the Final Judgment envisions. Indeed, were this correct, ASSA ABLOY's actions would be able to dramatically alter Fortune's contractual rights, its ability to effectively conduct portions of the businesses it acquired, and its ability compete in the relevant markets. This would also thwart

the competitive goals of the Final Judgment, effectively giving ASSA ABLOY a veto right on decisions meant to improve competition. Accordingly, Fortune respectfully requests intervention in this matter for the limited purpose of seeking the Court's clarification of the terms of the Final Judgment, an issue that cannot and will not be brought to the Court's attention absent Fortune's intervention.

Intervention here is warranted. Fortune meets the requirements for intervention as of right, because (1) it has protectable interests (2) that are likely to be impacted by implementation of the Final Judgment, (3) no party to the matter can represent these interests, and (4) Fortune's motion is timely. Fortune acquired the businesses divested under the Final Judgment in this matter, which governs ASSA ABLOY's divestiture obligations. Many of those obligations inure to Fortune's benefit, affect Fortune's contract rights, and impact Fortune's ability to successfully stand up the suite of competitive products Fortune acquired. This more than meets Rule 24's protectable interest requirement. Those interests are now also threatened by ASSA ABLOY's recent reinterpretation of the Final Judgment: ASSA ABLOY contends that it may avoid any extension to certain supply agreements by withholding its consent, even though the Final Judgment places approval of contract extensions in the hands of the government, *in its sole discretion*. Were the Final Judgment to be implemented in such a manner, Fortune's rights under its supply agreements with ASSA ABLOY would be substantially impaired and its ability to compete could be thwarted. Fortune stands in the best position to vigorously defend these rights, and it now timely seeks to intervene in this matter—within days of ASSA ABLOY's threatened conduct—to vindicate these rights. Fortune thus squarely meets each of Rule 24's requirements for intervention as of right.

Even were this not the case, though, Fortune also meets Rule 24's requirements for permissive intervention. Fortune's intervention is timely and will not prejudice any of the parties to the matter as it presently stands post-Final Judgment. Fortune does not seek to reopen any of the issues litigated in the matter, but rather seeks limited intervention that would ensure the fair and faithful implementation of the Final Judgment in this matter.

The bar to intervene is low, and federal courts favor intervention to allow parties with an interest in the subject of the action to participate in the proceedings of that case. Because ASSA ABLOY's conduct, and thus implementation of the Final Judgment, threatens Fortune's protectable interests, intervention for the limited purpose of seeking the Court's clarification of its own Orders is warranted. Courts frequently have granted limited intervention at the remedial phase in analogous circumstances. *See, e.g.*, *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 129-30 (D.C. Cir. 1972). This Court should do the same.

## BACKGROUND

In November 2022, the United States sued ASSA ABLOY to prevent the company from acquiring a division of its largest competitor in the residential door hardware industry. *See generally* Ex. 4 (Compl., ECF No. 1). The suit was ultimately resolved by agreement of the parties, with the Court entering Final Judgment in the matter on September 13, 2023. Pursuant to that Final Judgment, ASSA ABLOY was required to divest two identified businesses—its Premium Mechanical business and its Smart Lock business—which Fortune acquired. *See generally* Ex. 1 (Final Judgment). To effectuate the divestiture, ASSA ABLOY was also required to undertake certain activities that would assist in Fortune's successful stand-up of the acquired businesses. This included, at Fortune's option and with the government's approval, that ASSA ABLOY "enter into a supply contract or contracts for all products necessary to operate the [divested businesses] for a period of up to 12 months, on terms and conditions reasonably related

3

to market conditions for the provision of such products." Ex. 1 (Final Judgment) §§ V(J), VI(J).

The Final Judgment further provided that the supply contracts could be extended in the event

Fortune requested and the government approved of such an extension:

> The United States, *in its sole discretion*, may approve up to two extensions of any supply contract for a period of 12 months each.  Any supply contract extension will be on terms and conditions reasonably related to market conditions for the provision of such products, as agreed to by Acquirer.  *If Acquirer seeks an extension* of the term of any supply contract, *ASSA ABLOY must notify the United States* in writing at least 30 calendar days prior to the date the supply contract expires.

Ex. 1 (Final Judgment) §§ V(K); VI(K).  Under the Final Judgment, the Court retained

jurisdiction to hear disputes and enter "further orders and directions as may be necessary or

appropriate to carry out or construe th[e] Final Judgement."  *Id.* § XV.

On June 20, 2023, and consistent with the terms of the Final Judgment, Fortune and

ASSA ABLOY entered into various supply agreements "in furtherance of and as a condition to"

Fortune's acquisition of the divested businesses.  Ex. 5 (Barry Aff.) ¶ 5.  These included (1) a

supply agreement between Fortune, on the one hand, and ASSA ABLOY Access and Egress

Hardware Group, Inc., on the other; and (2) a supply agreement between Fortune and ASSA

ABLOY Occidente, S.A. de C.V. (together, the "Supply Agreements"), both of which had initial

terms of two years.  *Id.* ¶¶ 4 n.1, 5.  The Supply Agreements initially covered over five hundred

product families, but since they were first entered, Fortune diligently has worked to eliminate its

needs to source parts from ASSA ABLOY.  *See id.* ¶ 10.  ████████████████████████

████████████████████████████████████████████████████████████████████

████████████  *Id.* ¶ 10.  ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████  *Id.*

██████████████████████████  Fortune began discussions with the government about a nine-month extension of the Supply Agreements in December 2024. Over the next several months, Fortune responded to a series of questions from the government regarding its extension request. Ultimately, on June 6, 2025, the government approved Fortune's request to extend the Supply Agreements to March 20, 2026. Ex. 6 (Jun. 6, 2025, M. Huppert Email). Under the terms of the Final Judgment, that should have been the end of the matter. *See* Ex. 1 (Final Judgment) §§ V(K), VI(K) ("The United States, ***in its sole discretion***, may approve up to two extensions of any supply contract for a period of 12 months each."). (emphasis added). Despite this, ASSA ABLOY nevertheless has taken the position that, because "ASSA ABLOY does not agree to extend the Supply Agreement," "that agreement will terminate in accordance with its terms," that is, at the end of their initial term of two years on June 20, 2025. Ex. 6 (Jun. 9, 2025, L. Battaglia Email). This motion to intervene for a limited purpose followed. Fortune now respectfully requests that it may be permitted to intervene in the matter for the limited purpose of seeking the Court's guidance on the terms of its Final Judgment in the matter, without which those terms will certainly be subject to improper interpretation and implementation.

## ARGUMENT

Fortune readily meets Rule 24's requirements for both intervention as of right and permissive intervention. Courts have routinely permitted limited intervention, including after judgment has been entered, to allow affected parties to participate in proceedings that will necessarily impact their rights.[2] And as implementation of the Final Judgment, over which the

---

[2]  *See, e.g.*, *Wolpe v. Poretsky*, 144 F.2d 505, 508 (D.C. Cir. 1944); *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 129 (D.C. Cir. 1972); *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 907–08 (D.C. Cir. 1977); *Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938, 958 (3d Cir. 2012); *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1495–96 (9th Cir. 1995), *abrogated on other grounds by Wilderness Soc'y v. U.S.*

Court has retained jurisdiction, will significantly impact Fortune's rights, the Court should grant Fortune's motion for limited intervention.

## I.    THE COURT SHOULD GRANT INTERVENTION AS OF RIGHT

Intervention as of right has four requirements: (1) "the applicant must demonstrate a legally protected interest in the action"; (2) "the action must threaten to impair that interest"; (3) "no party to the action can be an adequate representative of the applicant's interests"; and (4) "the application to intervene must be timely." *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008) (citation omitted); *see also* Fed. R. Civ. P. 24(a)(2).  Fortune's motion to intervene for the limited purpose of seeking clarification of the Court's Final Judgment satisfies each of these requirements.

### A.    Fortune Has A Protectable Interest As Acquirer Under The Final Judgment's Extension Terms

Fortune easily satisfies the first requirement for intervention in its capacity as Acquirer of the divested businesses and as a party to the Supply Agreements.  The first factor requires that a putative intervenor have "an interest relating to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2).  The D.C. Circuit has explained that, to satisfy this prong, a putative intervenor need only show that it has "constitutional standing." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003); *see also Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 320 (D.C. Cir. 2015).  "An intervenor has a sufficient interest in the subject of the litigation where the intervenor's contractual rights may be affected by a proposed remedy." *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 545 (1st Cir. 2006);

---

*Forest Serv.*, 630 F.3d 1173, 1178–79 (9th Cir. 2011); *Humane Soc'y of U.S. v. U.S. Dep't of Agric.*, No. 19-cv-2458-BAH, 2023 WL 3433970, at *7–10 (D.D.C. May 12, 2023).

*see also Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001) (finding contract rights, as a form of property, "are traditionally protectable interests" under Rule 24).

Here, Fortune has an interest in the subject of the action: Fortune acquired the businesses that ASSA ABLOY divested as part of the Final Judgment, and has been running those businesses since the divestitures pursuant to, among other governing instruments, the terms of the Final Judgment. Accordingly, Fortune has an immediate interest in how the final remedy in this matter, the Final Judgment, is implemented. Indeed, the Final Judgment is replete with references to Fortune's rights, as Acquirer, to effectively obtain and operate the divested businesses in a robustly competitive manner, including, among others:

- The requirement that ASSA ABLOY must "assign or otherwise transfer all contracts, agreements, and customer relationships [of the divested businesses], to the Acquirer," Ex. 1 (Final Judgment) § V(B);

- The requirement that ASSA ABLOY "must not interfere with any negotiations between Acquirer and a contracting party," *Id*. §§ V(B), VI(B);

- The requirement that ASSA ABLOY "must cooperate with and assist Acquirer in identifying and hiring all" relevant personnel of the divested businesses, *Id*. §§ V(G), VI(G);

- The requirement that ASSA ABLOY provide certain warranties in connection with the divested businesses, *Id*. §§ V(H), VI(H);

- The requirement that ASSA ABLOY "use best efforts to assist Acquirer to obtain all necessary licenses, registrations, and permits to operate the" divested businesses, *Id*. §§ V(I), VI(I);

- The requirement that ASSA ABLOY "enter into a supply contract or contracts for all products necessary to operate the" divested businesses, *Id*. §§ V(J), VI(J);

- The right to an extension of the terms of any supply contract, if approved by the United States "in its sole discretion," *Id*. §§ V(K), VI(K);

- The requirement that ASSA ABLOY "enter into a contract to provide transition services to cover all services necessary to operate the" divested businesses, *Id*. §§ V(L), VI(L); and

- The right to an extension of the terms of any transition services contract, if approved by the United States "in its sole discretion," *Id*. §§ V(M), VI(M).

Fortune also expressly agreed to "abide by the terms of the . . . Final Judgment" and "consented to the Court's exercise of personal jurisdiction over it" pursuant to the Final Judgment. Ex. 3 (Asset Prev. Stip. & Order), ECF No. 128-1 at 3. Together, these terms convey to Fortune a protectable interest—that of securing the rights above, including rights under the Supply Agreements, as governed by the terms of the Final Judgment.

These facts also establish standing. Because even the "[p]otential impairment of contractual or property rights" is an "injury in fact" sufficient for standing, the imminent threat to Fortune's right to an extension of the Supply Agreements, now that the government has approved such extension, is enough. *See Children's Health Def. v. FCC*, 25 F.4th 1045, 1049 (D.C. Cir. 2022). Fortune also satisfies the remaining two prongs of Article III standing—causation and redressability. As to causation, the threatened impairments to Fortune's interests flow directly from how the Final Judgment is implemented. Redressability is just as clear—with the Court's clarification of the terms of the Final Judgment, Fortune's rights to the extension approved by the government can be secured and Fortune can avoid the threatened harms requiring its intervention.

## B. Without Clarification, Fortune's Rights Under The Final Judgment's Extension Terms Will Be Impaired

Fortune likewise satisfies the second prong of the Rule 24 inquiry—that the action's disposition "may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a)(2). Courts examine the "'practical consequences' of denying intervention." *Fund for Animals*, 322 F.3d at 735 (citation omitted). This requirement is met when the case's resolution would "result in a substantial change in the status quo with respect to

[a putative intervenor's] interests." *Farmer v. EPA*, 759 F. Supp. 3d 101, 110 (D.D.C. 2024) (citation omitted); *see Waterkeeper All., Inc. v. Wheeler*, 330 F.R.D. 1, 7 (D.D.C. 2018).

Here, ASSA ABLOY's interpretation of the Final Judgment threatens to work a substantial change to Fortune's rights and responsibilities as Acquirer of the divested businesses, and denying Fortune's motion for limited intervention would deprive Fortune of its primary means of redress: that of asking the Court to provide clarity as to the terms of its own orders. The Final Judgment and common sense do not warrant such an outcome. Rather, the Court "retain[ed] jurisdiction to enable any party to th[e] Final Judgment to apply to the Court at any time for further orders and directions as may be necessary or appropriate to carry out *or construe* th[e] Final Judgment." Ex. 1 (Final Judgment) § XV (emphasis added). Fortune's contractual rights squarely depend on how the Final Judgment is construed, and absent limited intervention, Fortune's interests and a fair implementation of the Final Judgment will no doubt be impaired.

### C.    No Party To The Case Can Serve As An Adequate Representation Of Fortune's Interests

Fortune also satisfies Rule 24(a)(2)'s third requirement because Fortune's interests will not be adequately represented by existing parties. This requirement is "not onerous," *Fund for Animals*, 322 F.3d at 735 (citation omitted), and it is met "if the applicant shows that representation of his interest may be inadequate." *Id.* (*quoting Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). One common example is when the applicant can give a "more vigorous presentation" on a particular issue than the existing party can or would provide. *Costle*, 561 F.2d at 912 (citation omitted); *see Fund for Animals*, 322 F.3d at 736 (intervention proper where existing party would not give argument "the kind of primacy" as applicant).

Here, no party to the case can adequately represent Fortune's interests in the valid interpretation of the Final Judgment. ASSA ABBOY's interpretation of the Final Judgment,

which wrests from the government its authority to grant extensions of the supply agreements, is directly adverse to Fortune's interest where, as here, the government has already granted Fortune's request for extension. And the government, for its part, has declined to seek the Court's guidance as to the effect of its approval of Fortune's request for an extension. Under these circumstances, no present party to the matter can or will bring this dispute before the Court, much less represent Fortune's interests in the fair interpretation of the Final Judgment entered in this matter.

### D. Fortune's Limited Intervention Request Is Timely

Fortune also readily meets Rule 23(a)(3)'s final requirement, timeliness. Courts judge timeliness by considering "all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." *Karsner*, 532 F.3d at 886 (citations omitted). The most important consideration among these is "whether the delay in moving for intervention will prejudice the existing parties to the case." *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014) (quoting 7C Charles Alan Wright et al., Federal Practice & Procedure § 1916 (3d ed. 2007)). Courts have found no such prejudice when intervention is sought not "to upset [a] settlement agreement but to participate in its future administration." *Costle*, 561 F.2d at 908; *see also Wolpe v. Poretsky*, 144 F.2d 505, 508 (D.C. Cir. 1944) ("Intervention may be allowed after a final decree where it is necessary to preserve some right which cannot otherwise be protected."); *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 129 (D.C. Cir. 1972) (finding "limited goal" of "participat[ing] in the remedial … phases of the case" "does not appear to impose any untoward burden" on existing parties).

Fortune moved promptly—in a matter of days—after it became clear that its interests would no longer be protected.  Counsel for the government approved Fortune's request for extension on June 6, 2025, after which Counsel for ASSA ABBLOY, on June 9, reaffirmed its position that no such extension could become effective absent its agreement.  At that point, it became clear that Fortune's rights to an extension under the terms of the Final Judgment were likely to be impaired, absent clarification from the Court.  This motion to intervene followed within the week, and seeks intervention for a limited purpose: Fortune does not seek to "reopen the settled issues in the case," *Castle*, 561 F.2d at 908, but rather for clarification of now-disputed terms in the Final Judgment entered in the case.  Under these circumstances, Fortune readily satisfies the fourth requirement for intervention as of right.  *Id.*; *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977) (putative intervenor's motion timely when it moved promptly after it "became clear" its "interests . . . would no longer be protected").

## II.    ALTERNATIVELY, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION

Alternatively, Fortune should be allowed to intervene under Rule 24(b)(1), which allows the Court to grant permissive intervention "on timely motion" of an applicant whose "claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1).  In deciding whether permissive intervention is proper, the Court considers "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).  The Rule "provides basically that *anyone* may be permitted to intervene if his claim and the main action have a common question of law or fact" and as long as intervention does not delay adjudication of the existing parties' rights.  *Nuesse v. Camp*, 385 F.2d 701, 704 (D.C. Cir. 1967) (emphasis added).  Fortune easily meets these requirements.

### A.    Fortune Presents A "Claim Or Defense" Concerning The Final Judgment That Supports Permissive Intervention

Fortune shares a common "claim or defense" with the main action, as that requirement has been construed for purposes of Rule 24. Circuit courts, including the DC Circuit Court, are in accord that the phrase "claim or defense" should not be read strictly, and intervention can be appropriate "even in situations where the existence of any nominate 'claim or defense' is difficult to find." *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998) (formatting modified and citation omitted); *see also Nuesse v. Camp*, 385 F.2d 701, 704 (D.C. Cir. 1967) (explaining that "[a]lthough the rule speaks in terms of 'claim or defense' this is not interpreted strictly so as to preclude permissive intervention"); *United States ex rel. Hernandez v. Team Fin.*, LLC, 80 F.4th 571, 577 (5th Cir. 2023) (recognizing the phrase "claim or defense" is "construed liberally"). Accordingly, an intervenor applicant may have a "claim or defense" in instances where that party has "a real economic stake in the outcome of the litigation." *Textile Workers Union of Am., CIO v. Allendale Co.*, 226 F.2d 765, 769 (D.C. Cir. 1955) (en banc). Likewise, the "claim or defense" prong can be met where there are "similarities between the issues presented by" the applicant and the existing parties to the case. *100Reporters LLC v. U.S. Dep't of Just.*, 307 F.R.D. 269, 286 (D.D.C. 2014).

Fortune has a clear economic stake in how the Final Judgment's terms are construed and obeyed. Under a normal reading of the terms, the Supply Agreements will continue in force for the nine months approved by the government, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Under ASSA ABLOY's contrary reading, the Supply Agreements will terminate on June 20, 2025, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Likewise, the issue for

which Fortune seeks limited intervention falls squarely within the issues attendant to the current parties in the case. It is in respect of the very Final Judgment resolving the dispute between the United States and ASSA ABLOY that Fortune now seeks limited intervention.

**B.** **Fortune's Intervention Would Not Unduly Delay The Proceedings And Is Timely**

As explained above, Fortune likewise meets the second requirement for permissive intervention, as Fortune's intervention would not cause any meaningful delay to the proceedings. Fortune seeks to intervene for the limited purpose of seeking the Court's clarification of the terms of the Final Judgment, not to reopen any of the issues litigated in the case prior to Final Judgment. Thus, rather than effecting any delay, Fortune's intervention would assist the Court in speedily resolving how its Orders are to be construed and obeyed.

**III.** **CONCLUSION**

Federal courts favor intervention and the bar to intervention is low. As Fortune holds a substantial interest in the fair and faithful implementation of the Final Judgment, and specifically its right to an extension of the supply agreements following the government's approval Fortune's extension request, Fortune's motion for limited intervention should be granted and Fortune should be permitted to file the attached Motion for Clarification, Ex. 7, and related papers, and participate in any hearing related to these matters.

13

Dated: June 15, 2025                                      Respectfully Submitted,


                                                          */s/ Sarah E. McVay.*
                                                          _____

                                                          Sarah E. McVay
                                                          DC Bar ID: 1046280
                                                          Tracie L. Bryant, P.C.
                                                          DC Bar ID: 1018783
                                                          KIRKLAND & ELLIS LLP
                                                          1301 Pennsylvania Avenue, N.W.
                                                          Washington, D.C. 20004
                                                          Telephone: +1 202 389 5271
                                                          Facsimile: +1 202 389 5200
                                                          sarah.mcvay@kirkland.com
                                                          tracie.bryant@kirkland.com

                                                          *Counsel for Movant Fortune Brands*
                                                          *Innovations, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the United States District Court for the District of Columbia on the 13th day of June 2025, via the Court's CM/ECF system, and that parties and their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system.

Dated: June 15, 2025                      Respectfully Submitted,


                                          */s/ Sarah E. McVay*

                                          Sarah E. McVay
                                          DC Bar ID: 1046280
                                          Tracie L. Bryant, P.C.
                                          DC Bar ID: 1018783
                                          KIRKLAND & ELLIS LLP
                                          1301 Pennsylvania Avenue, N.W.
                                          Washington, D.C. 20004
                                          Telephone: +1 202 389 5271
                                          Facsimile: +1 202 389 5200
                                          sarah.mcvay@kirkland.com
                                          tracie.bryant@kirkland.com

                                          *Counsel for Movant Fortune Brands
                                          Innovations, Inc.*